UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN POLYNICE,<br><br>      Plaintiff,<br><br>    v.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS,<br><br>      Defendants. | Civil Action No.  19-16875 (MCA)<br><br>MEMORANDUM OPINION |

       This matter has been opened to the Court by Defendants New Jersey Department of Corrections ("NJDOC"), Northern State Prison, and Administrator George Robinson's (collectively "State Defendants") motion to dismiss Plaintiff Edwin O. Polynice's ("Polynice" or "Plaintiff") Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).  For the reasons explained in this Memorandum Opinion, the motion is granted in part and denied in part.

    **I.**    **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

       The Court recounts only the facts relevant to the instant motion to dismiss.  According to the Complaint, Polynice was incarcerated in the Detention Unit of Northern State Prison on September 30, 2017.  *See* Complaint ¶ 20.  On or about that date, S.C.O John Doe instructed Plaintiff to move to the top bunk of cell 104.  *Id.* at ¶ 21.  Polynice told S.C.O. John Doe that he could not be on the top bunk due to "mandated medical restrictions and persistent medical issues" and could only be assigned to the bottom bunk.  *Id.* at ¶ 22.  Plaintiff further "advised that his mandatory medical accommodation was for the remainder of his incarceration." *Id.*  S.C.O. John Doe nevertheless ordered Plaintiff  to utilize the top bulk and told him that this order

1

came from Sergeant Gibson. *Id.* at ¶ 23.  Plaintiff complied because the assignment was ordered by Sergeant Gibson.[1]  *Id.* at ¶ 24.

On October 1, 2017, when dismounting the top bunk to take his daily shower, Plaintiff "became extremely dizzy and fell." *Id.* at ¶ 25.  He attempted to step on a stool but slipped and fell "striking his head on the toilet and his leg against the stool." *Id.* at ¶ 26.  Plaintiff sustained severe injuries including thirteen stitches, five staples, a dislocated shoulder, severe neck pain, and bruising on his legs. *Id.* at ¶¶ 27-28.  The Complaint alleges that the failure of Defendants "to properly protect and carry out medical instructions for [Plaintiff]", which created the "imminent risk for a head, neck, and back injuries" evinced "deliberate indifference to and a conscious disregard for medical needs and . . . overall safety of [Plaintiff]." *Id.* at ¶ 35; *see id.* at ¶ 37.

In addition to S.C.O. John Doe and Sergeant Gibson, Plaintiff has sued the NJDOC, Northern State Prison, and Administrator George Robinson.  In the First Count for relief, which asserts claims pursuant to 42 U.S.C. § 1983 against all Defendants, Plaintiff asserts that NJDOC and Northern State Prison, through their Administrator George Robinson and other policymakers, "developed policies, procedures and/or customs which caused the deprivation of [Plaintiff's] constitutional rights, and these policies were "inherently deficient, or inappropriate as formulated, as to the adherence of mandated medical care provided to an inmate that presented with documented medical issues." *Id.* at ¶¶ 39-40.  Plaintiff further alleges that the NJDOC and Northern State Prison, through Administrator George Robinson, negligently, recklessly, or intentionally:

> a. failed to properly train and supervise Defendant Sergeant Gibson and Defendant S.C.O. John Doe with regard to

---

[1] Sergeant Gibson has not entered an appearance in this matter.

2

       adequately assessing, monitoring and providing necessary and reasonable accommodations for inmates with medical issues, including but not limited to inmates with documented medical restrictions and;

    b. failed to properly train and supervise Defendant Sergeant Gibson and Defendant S.C.O. John Doe, or other prison staff to maintain a safe and suitable environment, and to keep inmates safe from injury or serious harm;

    c. maintained policies, procedures and/or customs that were deliberately indifferent to the constitutional rights of inmates to be adequately screened for medical issues, to provide necessary and reasonable accommodations for inmates with medical issues; and to be kept safe from injury or serious harm;

    d. failed to enforce the contractual obligations of the Health Services Unit for the Department of Corrections for the State of New Jersey, to monitor and treat inmates with medical issues, including but not limited to inmates with documented medical restrictions;

    e. with full knowledge, allowed institutional policies and procedures regarding intake, medical screening, custodial watch and medical treatment to be ignored and violated with reckless abandon; and

    f. failed to provide adequate and needed healthcare for inmates at the Detention Unit of the Northern State Prison.

*Id.* at ¶ 41. In Count Three, which asserts a claim for supervisory liability under 42 U.S.C. § 1983, Plaintiff further asserts that Administrator George Robinson and Sergeant Gibson

    were aware of, should have been aware of, and/or had actual knowledge of the pattern and culture of unconstitutional behavior and indifference, including failure to properly screen inmates for medical injuries, or other mental health problems, failure to adequately monitor and guard inmates, failure to have inmates properly treated medically, failure to have inmates provided necessary and reasonable medical accommodations, and failure to protect inmates from injury or harm whether self-inflicted or by other inmates, staff, employees and/or corrections officers at the Northern State Prison.

*Id.* at ¶ 53. Plaintiff also asserts in Count Three that Administrator George Robinson and Sergeant Gibson "not only directed, encouraged, tolerated, acquiesced to this behavior, but were deliberately indifferent to the likelihood that their staff, employees and/or corrections officers would fail to properly screen inmates for medical issues, fail to adequately monitor inmates, fail

3

to have inmates provided necessary and reasonable medical accommodations, fail to treat inmates medically and fail to protect inmates from injury or harm at the Northern State Prison[,]" and that this conduct was a proximate cause of Plaintiff's injuries. *See id.* at ¶¶ 54-55; *see also* ¶¶ 59-60 (Count Four).

In Count Five, Plaintiff also asserts state law claims for negligence under the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. § 59:1–1 et seq, based on the same facts.

Plaintiff commenced this action by filing a Complaint through counsel on August 19, 2019.  *See* ECF No. 1.  On or about September 19, 2019, the State Defendants sought an extension of time within which to Answer Plaintiff's Complaint.  *See* ECF No. 6.  The Court granted the request on September 23, 2019.  *See* ECF No. 7.  This motion to dismiss followed on October 2, 2020.  Petitioner's counsel filed his response in opposition on November 5, 2020.  ECF No. 12.  The State Defendants did not file a Reply.

## II.     STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R .Civ. P. 12(b)(6).  On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. CIV. 11–4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  All reasonable inferences must be made in the plaintiff's favor.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314

(3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create what amounts to a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The State Defendants also assert they are entitled to sovereign immunity under the Eleventh Amendment. This motion "may properly be considered a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)" because "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996).

### III. DISCUSSION

#### a. Official Capacity Claims for Damages

Plaintiff has sued the State Defendants for civil rights violations under 42 U.S.C. § 1983. As a general matter, a plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was

5

committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

The State Defendants argue that the claims against the NJDOC, Northern State Prison, and the damages claims against Administrator George Robinson in his official capacity are subject to dismissal because they are barred by the Eleventh Amendment and because the NJDOC, Northern State Prison, and Robinson in his official capacity are not "persons" subject to suit under 42 U.S.C. § 1983.[2] *See* ECF No. 9, State's Brief at 6-8. Plaintiff concedes this point, *see* Plaintiff's Opposition at 5-6, and the Court will grant the motion to dismiss and dismiss <u>with prejudice</u> the § 1983 claims against the NJDOC, Northern State Prison, and the official capacity claims for damages against Administrator George Robinson.

### a. § 1983 Claims Against Administrator George Robinson

Defendants next argue that the § 1983 claims against Administrator George Robinson in his personal capacity are based on the impermissible theory of *respondeat superior*. At issue is whether Plaintiff has pleaded sufficient facts to suggest that Administrator George Robinson was personally involved in these alleged wrong and may be held liable as a supervisor.

---

[2] The Eleventh Amendment incorporates a general principle of sovereign immunity which bars citizens from bringing suits for damages against any state in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–101 (1984). In general, Eleventh Amendment immunity extends to state agencies and state officials in their official capacities, and, in doubtful cases, the Court analyzes several factors to determine whether an entity is an agency of the State, i.e., whether the State is the real party in interest. *See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659-60 (3d Cir. 1989). In addition, neither a State itself nor a department of a State is considered a "person" for the purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989); s*ee also Jones v. Minner*, 752 F. App'x 112, 113 (3d Cir. 2019); *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 854 (3d Cir. 2014). Similarly, as a claim against a state official in his or her official capacity is essentially a claim against the state, § 1983 claims are not permitted against state officials in their official capacities, except to the extent that such claims seek prospective injunctive relief. *Will*, 491 U.S. at 71, & n.10 (1989).

It is well established that to be held liable under § 1983, a supervisor must be personally involved in the alleged wrongs, and liability may not be premised solely on *respondeat superior*. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). There are two basic ways that a supervisor may be held liable under § 1983 for the conduct of subordinates – through direct participation or through policymaking. With respect to direct participation, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004). A supervisor-defendant may be also liable for unconstitutional acts undertaken by subordinates if the supervisor-defendant "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (alteration in original).

In *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015), the Third Circuit reaffirmed its holding in *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989), which set forth a four-part test for supervisor claims premised on deficient policies and/or failure to supervise and train. In *Sample*, the Third Circuit recognized that "'supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Id.* As explained in *Barkes*, "Sample involved an Eighth Amendment claim against a supervisor for implementing deficient policies and being deliberately indifferent to the risk that the policies would result in the deprivation of a

7

constitutional right." *Id.*; *see also Beers–Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir.2001) (discussing *Sample* ). Under *Sample*,

> The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

*Id.* (citing *Sample*, 885 F.2d at 1118); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3d Cir. 2001). "Failure to" claims – failure to train, failure to discipline, or, failure to supervise – are generally considered a subcategory of policy or practice liability. *See id.* As the Third Circuit explained, "[t]he essence of the type of claim [it] approved in *Sample* is that a state official, by virtue of his or her own deliberate indifference to known deficiencies in a government policy or procedure, has allowed to develop an environment in which there is an unreasonable risk that a constitutional injury will occur, and that such an injury does occur." *Barkes*, 766 F.3d at 319–20.

Here, the State Defendants assert that "the Complaint fails to set forth any factual allegations regarding personal involvement or even actual knowledge on the part of [A]dministrator George Robinson" State's Brief at 12. The State Defendants further assert that "the only individual Polynice informs about his alleged medical issue is S.C.O. John Doe. Furthermore, Polynice does not allege that [A]dministrator George Robinson was present during the conversation with S.C.O John Doe nor does he allege that any information was given to anyone in the jail regarding his alleged accommodation." *Id.* The State Defendants provide no other analysis of Plaintiff's allegations against this Defendant.

8

The Complaint alleges that Plaintiff has medical restrictions that require him to have a bottom bunk and he told S.C.O. John Doe about his medical restrictions. Nevertheless S.C.O. John Doe assigned him to a top bunk on the order of Sergeant Gibson. Plaintiff subsequently fell and was seriously injured. *See* Complaint at ¶¶ 20-28. The Complaint asserts that Administrator George Robinson failed to train and supervise Sergeant Gibson and S.C.O John Doe and created deficient policies in numerous areas, including the failure to properly screen inmates for medical injuries, failure to adequately monitor and guard inmates, failure to have inmates properly treated for medical issues, failure to have inmates provided necessary and reasonable medical accommodations, and the failure to protect inmates from injury or harm whether self-inflicted or by other inmates. *See* Complaint at ¶¶ 39-41. Plaintiff also alleges that Administrator George Robinson knew that there was pattern of unconstitutional behavior by subordinates and also knew about the need for additional training and supervision of subordinates. *See id.* ¶¶ 53-55.

The State Defendants do not address the sufficiency of these allegations and instead focus on the fact that Administrator George Robinson did not personally order Plaintiff to take the top bunk, did not personally speak to Plaintiff about his need for medical accommodations, and was not present at the time Plaintiff spoke to S.C.O. John Doe. As explained above, this type of direct participation is only <u>one way</u> that a supervisor-defendant may be liable under § 1983.[3] A

---

[3] "Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in ... the subordinate's conduct." *Bennett v. Washington*, No. CIV.A. 11-176, 2015 WL 731227, at *11 (E.D. Pa. Feb. 19, 2015) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), abrogated on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 76–78 (2007)). Although the Complaint asserts that Administrator George Robinson "directed, encouraged, tolerated, acquiesced to" certain behavior, there are insufficient factual allegations to suggest that this Defendant had knowledge that S.C.O John Doe assigned Plaintiff to the top bunk in spite of Plaintiff's medical restrictions and thus approved or acquiesced in his subordinate's alleged misconduct.

supervisor-defendant may also be liable under § 1983 where he or she fails to supervise or train his or her subordinates and/or has created deficient policies, knew that the deficiencies in training, supervision, or policymaking were likely to result in a constitutional violation, and such violation(s) did occur. At this early stage, and in the absence of specific arguments by the State Defendants, the Court finds that the supervisory liability claims against Administrator George Robinson premised on deficient policymaking and/or failure to train/supervise are sufficient to survive a motion to dismiss. As such, the Court will deny without prejudice the motion to dismiss as to Administrator George Robinson as to the supervisor liability claims premised on policymaking and failure to train and/or supervise.

### b. Exhaustion of Administrative Remedies

The Court will also deny without prejudice the motion to dismiss for failure to exhaust administrative remedies. The Prisoner Litigation Reform Act of 1995 ("PLRA") provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *Ball v. Famiglio*, 726 F.3d 448, 456 (3d Cir. 2013), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015). The exhaustion requirement is mandatory and, thus, bars an inmate from commencing such an action without first properly exhausting available administrative remedies. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 85, 93–94 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Coulston v. Glunt*, 665 F. App'x 128, 132 (3d Cir. 2016).

Nevertheless, failure to exhaust administrative remedies is an affirmative defense, which the defendant bears the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). Inmates are not required to plead or demonstrate exhaustion in their complaints. *Id.* For this reason, the Court will deny without prejudice the motion to dismiss for failure to plead exhaustion of administrative remedies. At the appropriate time, State Defendants are free to file a motion for summary judgment on exhaustion of administrative remedies.

### c. The Notice Requirement of the NJTCA

Finally, the Court will dismiss without prejudice the state law negligence claims for failure to comply with the notice requirements of the NJTCA.[4] Pursuant to N.J.S.A. 59:8–8., a person bringing a tort claim against a public official must give notice to the entity within ninety days of the injury. A claimant is "forever barred from recovering against a public entity or public employee" if the claimant fails to file the notice of claim with the public entity within 90 days of accrual of the claim and fails to obtain permission of a judge to file a late notice within one year; or if two years have elapsed since accrual of the claim. *See* N.J.S.A. 59:-8-8(a).

Here, Plaintiff's alleged injuries occurred on October 1, 2017. The Complaint does not contain allegations that Plaintiff complied with the notice requirements of the NJTCA, and the time in which Plaintiff was required to present his notice under the NJTCA has expired. Federal courts to have considered the question have found the failure to file a notice of claim under N.J.S.A. 59:-8-8 to be grounds for dismissal at the motion to dismiss stage. *See e.g. Niblack v.*

---

[4] State Defendants also argue that Plaintiff's § 1983 claims must be dismissed because negligent conduct is insufficient to sustain a constitutional violation. The Court does not read Plaintiff's Complaint to assert § 1983 claims based on negligence. Instead, the Court reads the Complaint to assert § 1983 claims and separate state law claims for negligence and need not reach this argument.

11

*SCO Malbreen*, No. 15-5298, 2016 WL 1628881, at *3 (D.N.J. Apr. 25, 2016) (dismissing TCA claims for failure to allege the plaintiff met the notice of claim requirements); *Van Valen v. Lanigan*, No. 18-11441, 2020 WL 859330, at *5 (D.N.J. Feb. 21, 2020) (same). Other courts have construed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to comply with the notice of claim provision as a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), because the State has conditioned its waiver of sovereign immunity on compliance with TCA procedures. *See e.g.*, *Baldeo v. City of Paterson*, No. 18-5359, 2019 WL 277600, at *5 n.6 (D.N.J. Jan. 18, 2019).

In either case, Plaintiff appears to acknowledge in his brief that he has not complied with the notice of claim requirement but vaguely references the doctrine of substantial compliance and appears to assert that the State Defendants had sufficient notice of Plaintiff's injuries. Although more than two years has elapsed since Plaintiff's injuries occurred and his claims accrued, Plaintiff also asserts that "this lawsuit was filed less than two years after the incident in question occurred, and as a result, this Court should allow a late notice, related back to the filing of this action." *See* Plaintiff's Brief at 10. There is nothing to suggest that Plaintiff has substantially complied with the notice requirement. In *Lebron v. Sanchez*, 407 N.J. Super. 204 (App. Div. 2009), for instance, the court applied the equitable doctrine of substantial compliance to prevent barring legitimate claims due to a technical defect in the notice of tort claim filed by plaintiff. *Id.* at 215–21. Plaintiff does not assert that he filed the NJTCA notice, albeit with a technical defect. At this time, the Court will grant the motion to dismiss the state law negligence claims for failure to comply with the notice of tort provision of the NJTCA. Nevertheless, because it is not clear if Plaintiff may be able to comply with the notice of tort

requirement at this late date, the Court will dismiss the state law negligence claims without prejudice.

### IV. CONCLUSION

For the reasons explained in this Memorandum Opinion, the Court will grant the motion to dismiss in part and deny it in part. The Court grants the motion to dismiss the § 1983 claims as to the NJDOC, Northern State Prison, and the damages claims against Administrator George Robinson in his official capacity. The Court also grants the motion to dismiss the state law negligence claims for failure to comply with the notice provision of the NJTCA. The Court denies the motion to dismiss the § 1983 claims against Administrator George Robinson in his personal supervisory capacity and also denies the motion to dismiss for failure to exhaust administrative remedies under the PLRA. An appropriate Order follows.

Dated:  May 28, 2020  /s *Madeline Cox Arleo*_____
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**