UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

|  |  |  |
|---|---|---|
| EDWIN POLYNICE, | : | Civil Action No.19-16875-MCA-LDW |
|  | : |  |
| Plaintiff, | : |  |
| v. | : |  |
| NJ DEPARTMENT OF CORRECTIONS, et al., | : |  |
|  | : |  |
| Defendants. |  |  |

**BRIEF IN SUPPORT OF DEFENDANT's MOTION TO DISMISS THREE COUNTS IN PLAINTIFF'S COMPLAINT WITH PREJUDICE FOR FAILURE TO STATE A CLAIM PURSUANT TO <u>FED. R. CIV. P.</u> 12(b)(6)**

ANDREW J. BRUCK, ACTING
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625-0112
*Attorney for Defendant State
of New Jersey Judiciary*

Chanell Branch
Deputy Attorney General
  On the Brief

## INTRODUCTION

Plaintiff seeks leave to file an amended complaint to add additional defendants and to assert violations of the New Jersey Law Against Discrimination, ("LAD") the Americans with Disabilities, ("ADA") and Rehabilitation Act ("RA"). For the reasons outlined below, Plaintiff's motion to amend requesting leave to add claims three, four, and five should be denied.

Plaintiff alleges that the DOC denied him a safe place to sleep by failing to provide him with a bottom bunk, which led to his injuries. While incarceration requires the provision for a place to sleep, it is not a program, service or activity as defined under the ADA, RA, or LAD. Because sleeping in one's cell is not a program, service, or activity, Plaintiff cannot prove claims three, four, and five. As such, Plaintiff's request to amend the complaint to add claims three, four, and five, should be denied.

## STATEMENT OF FACTS[1]

Plaintiff alleges that he was incarcerated at the Detention Unit of Northern State Prison (hereinafter "NSP") on or about September 30, 2017. *See* Exhibit A, Amended Complaint ¶ 24. On that date a corrections officer instructed him to utilize the top bunk

---

[1] The information in this section is drawn from Polynice's Complaint. While the Court must treat the allegations therein as true for purposes of the Defendant's Rule 12(b)(6) motion, Defendants submits that any reference made to these allegations should not be construed as admissions of fact or as a waiver of any counterclaim or defense.

of cell 104. *Id.* Although plaintiff informed the officer that he could not be on the top bunk due to his disabilities, plaintiff was told this order came from Sergeant Gibbons. *Id.* at ¶ 25; 29. Given the ranking of Sergeant Gibbons, Plaintiff alleges he felt compelled to follow the order to sleep on the top bulk. *Id.* at ¶ 30.

On October 1, 2017, at or about 12:35 p.m. when dismounting the top bunk to take his daily shower he "became extremely dizzy and fell." *Id.* at ¶ 31.  While falling, he attempted to step on a stool but slipped and fell "striking his head on the toilet and his leg against the stool." *Id.* at ¶ 32. Due to the fall, Plaintiff allegedly sustained severe injuries including thirteen stitches, five staples, a dislocated shoulder, severe neck pain, and bruising on his legs. *Id.* at ¶¶ 33-34.

Plaintiff's request to amend his Complaint to add claims three, four, and five should be denied for failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

There are two working principles underlying the motion to dismiss standard, pursuant to Fed. R. Civ. P. 12(b)(6).  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Instead, legal conclusions

"must be supported by factual allegations" in order to be "entitled to the assumption of truth." *Id.* at 679.

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.; see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, supra*, 556 U.S. at 678 (citing *Twombly, supra*, 550 U.S. at 556). This standard is not a probability requirement, but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal, supra*, 556 U.S. at 678.

In other words, a complaint that pleads facts "merely consistent with a defendant's liability" raises the possibility that the defendant is liable for the alleged misconduct, but "stops short of the line" of plausibility required for entitlement to relief. *Id.* When the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is

entitled to relief." *Id.* (citing Fed. R. Civ. P. 8(a)(2)) (quotations omitted).

## POINT I

**PLAINTIFF CANNOT PROVE A VIOLATION OF THE ADA, RA, AND LAD, AS A SAFE PLACE TO SLEEP IS NOT A PROGRAM, SERVICE, OR ACTIVITY AND THUS CLAIMS THREE, FOUR, AND FIVE SHOULD BE DISMISSED.**

Title II of the ADA provides that qualified disabled persons shall not "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 43 U.S.C.A. § 12132. To prove a violation of Title II of the ADA, plaintiff must show: "1) he is a qualified individual with a disability"; 2) he was either excluded from participation in, or denied the benefits of, … defendant's services, programs, or activities, or was otherwise discriminated against by defendant; and 3) such exclusion, denial of benefits, or discrimination was by reason of his disability. Id.

Title II of the ADA is an expansion of the Rehabilitation Act, which prohibits discrimination against people with disabilities in programs that receive federal financial assistance. Precedent developed under the Rehabilitation Act has

been applicable to Title II of the ADA. Similarly, precedent developed under the ADA has been applicable to Rehabilitation Act decisions. "The standards applied in state-law LAD cases are the same as those established in federal ADA cases." Chisolm v. McManimon, 97 F.Supp.2d 615, 621-22 (D.N.J. 2000), rev'd on other grounds, 275 F.3d 315 (3d Cir. 2001).

Here, Plaintiff alleges a safe place to sleep is a program, service, or activity that Defendants violated by assigning Plaintiff to the bottom bunk. While incarceration requires prisoners be provided with a place to sleep, "the provision of a place to sleep, is not a 'program' or 'activity.' Sleeping in one's cell is not a "program" or "activity." Riley v. Grainey, No. 3:12-cv-02470, 2015 WL 5693805 (M.D. PA September 24, 2015) (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996).

In Riley, the prisoner filed suit against several correctional staff, alleging violation of the ADA based on a refusal to reinstate his single cell housing restriction as an accommodation for his disability. Id. The court dismissed the complaint, finding plaintiff failed to adequately plead a denial of a specific prison service, program, or activity. Id. As is the case here, plaintiff failed to plead a denial of a specific prison service, program, or activity as the provision of a safe place to sleep is not a program service or activity.

Lastly, if Plaintiff is making ADA, RA, and LAD claims against individual defendants they should also be dismissed as they are not public entities subject to suit under the ADA or RA. See 42 U.S.C. § 12132.

## CONCLUSION

For all of the reasons set forth above, Defendants requests the court dismiss claims, three, four and five of the amended complaint.

Respectfully submitted,

ANDREW J. BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY

By: s/Chanell Branch
    Chanell Branch
    Deputy Attorney General

Date: August 26, 2021

ANDREW J. BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112
*Attorney for Defendants New Jersey Department of Corrections,
Northern State Prison, Administrator George Robinson*

By:   Chanell Branch
      Deputy Attorney General
      (609) 376-3376
      Chanell.Branch@law.njoag.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

|  |  |
|---|---|
| EDWIN POLYNICE, | :   Civil Action No.19-16875-MCA-LDW |
|  | : |
|         Plaintiff, | : |
|       v. | |
|  | :   **CERTIFICATION OF COUNSEL** |
| NJ DEPARTMENT OF CORRECTIONS, et al., | : |
|  | : |
|         Defendants. | |

I, Chanell Branch, of full age hereby certify:

1.    I am a Deputy Attorney General employed by the State of New Jersey, Department of Law and Public Safety, which provides legal representation to the State of New Jersey and its entities and employees.

2.    I am assigned to the State Police, Employment, and Corrections Section of the Division of Law, which provides legal representation to the Department of Corrections and its employees.

3.    I represent Defendants in the above-captioned matter. As such, I am familiar with the facts set forth herein.

4.    I make this Certification in support of Defendants' Motion to Dismiss Claims Thee, Four and Five of Plaintiff's Motion to Amend the Complaint in this matter.

5.    Plaintiff, Edwin Polynice, was an inmate incarcerated at Northern State Prison. On or about May 26, 2021, Plaintiff filed a motion for a Second Amended complaint to correct and/or add defendants and claims to the original Complaint filed with the United States District Court, Vicinage of Newark on August 19, 2019. Plaintiff's Motion for a Seconded Amended Complaint is attached as **Exhibit A.**

6.    Per Order, I received a redlined version of the amended complaint from Plaintiff's counsel on July 10, 2021.

7.    Defendants now seek to dismiss claims three, four, and five of Plaintiff's Motion for a Second Amended Complaint for failure to state a claim upon which relief can be granted, as explained by the reasoning set forth in Defendants' supporting brief.

8.    In the supporting brief, Defendant references an unpublished opinion attached as **Exhibit B.**

I hereby certify that the foregoing statements are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

ANDREW J BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY

By: /s/ Chanell Branch
    Chanell Branch
    Deputy Attorney General

DATED: August 26, 2021

# EXHIBIT A



# WLB
## WRONKO  LOEWEN  BENUCCI
— *Attorneys at Law* —

JAMES R. WRONKO
JAMES V. LOEWEN
MARCO M. BENUCCI

KEVIN P. HEWITT, JR.•
MICHAEL POREDA ♦

  • Member of MI Bar
  ♦ Member of NY Bar

OF COUNSEL
GILBERT G. MILLER

website: www.newjerseylawyer.org
main email: WLB@newjerseylawyer.org

69 GROVE STREET
SOMERVILLE, NJ 08876
TEL: (908) 704-9200
FAX: (908) 704-9291

1130 U.S 202, SUITE A/7
RARITAN, NJ 08869
TEL: (908) 393-6445
FAX: (908 393-6447

**Please reply to Somerville**

July 10, 2021

**VIA ECF**
The Honorable Leda D. Wettre
U.S. District Court for the District of New Jersey
50 Walnut Street
Newark, NJ 07114

**Re: Edwin Polynice v. New Jersey Department of Corrections**
Docket No. 2:19-cv-16875-MCA-LDW

Dear Judge Wettre:

    Enclosed is a Local Rule 15.1 Redlined Complaint being filed in conjunction with the pending motion to amend the Complaint.

    Sincerely,

    Michael Poreda

Encl.

**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN POLYNICE, | Docket No. No. 2:19-cv-16875-MCA-LDW |
| *Plaintiff*, | <u>Civil Action</u> |
| vs. | **LOCAL RULE 15.1 AMENDED COMPLAINT** |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, ~~NORTHERN STATE PRISON~~, ADMINISTRATOR GEORGE ROBINSON, ~~SERGEANT GIBSON, S.C.O. JOHN DOE~~ <u>SERGEANT CHRISTOPHER GIBBONS</u>, <u>OFFICER RYAN MOLLOY, OFFICER RAYMOND REYES, RUTGERS, UNIVERSITY – UNIVERSITY CORRECTIONAL HEALTH CARE ("UCHC"), LATIFA FEDAI, APN, UCHC JOHN DOES 1-20, DOC JOHN DOES 1-10,</u> , | |
| *Defendants*. | |

1

Edwin Polynice, by way of this Amended Complaint hereby brings the following action against the Defendants as follows:

~~NOW COMES, Plaintiff, by and through the undersigned Counsel, and hereby bring this action against the Defendants as follows:~~

## ~~INTRODUCTORY STATEMENT~~

~~1.      This is a civil rights action brought pursuant to the State of New Jersey tort laws, the United States Constitution and 42 U.S.C. § 1983 seeking damages against Defendants for committing acts under color of law that deprived Plaintiff, Edwin Polynice, of his rights secured to him by the Constitution and laws of the United States of America.~~

~~2.      In particular on October 11, 2017, Defendants violated the rights of Edwin Polynice by failing to keep him in a safe and secure environment where he could be kept free from injury and harm, by failing to respect and abide by medical professionals, and by failing to adhere to adequately mandated medical regulations and custodial attention, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.~~

~~3. In addition, this action is brought by Plaintiff against Defendants under the Laws of New Jersey that relate to Prisoner rights to be kept in a safe and secure environment where he could be kept free from injury, harm, and death, by failing to provide him with adequate medical care and custodial attention, and by demonstrating deliberate indifference to Edwin Polynice's necessary medical accommodations.~~

## JURISDICTION AND VENUE

~~1.      Plaintiffs case arises under the Constitution and laws of the United States, specifically, the Eighth and Fourteenth Amendments to the United States Constitution.~~

~~2.      Plaintiff's suit is authorized by 42 U.S.C. § 1983 (allowing suit to correct constitutional violations) and 42 U.S.C. § 1988 (providing for attorney fees and litigation expense awards).~~

~~3.      This Court has jurisdiction over Plaintiffs federal constitutional claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3).~~

~~1.      This case also arises under the law of the State of New Jersey that deal with Prisoners' Rights to be kept in a safe and secure environment free from injury, harm and death, and to receive adequate medical care and custodial~~

2

~~attention.~~

~~5.      This Court has pendant jurisdiction over Plaintiff's state law claims under 28 U.S.C.~~

~~§1367.~~

1.)      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the
question arises under the laws and Constitution of the United States, namely whether
Defendants violated Plaintiff's rights under the U.S. Constitution and the Americans with
Disabilities Act.

2.)      This Court has jurisdiction over state law claims herein presented pursuant to 28 U.S.C. §
1367 because the claims are part of a case over which the court has federal question
jurisdiction.

3.)      Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2)
because all relevant events took place in New Jersey.

## PARTIES

~~10.     Plaintiff, Edwin Polynice, brings this action on behalf of himself and in his own right.~~

~~11.     Defendant, New Jersey Department of Corrections, located in the County of Essex, is a
county in the state of New Jersey and owns, operates, manages, directs and controls the New
Jersey Department of Corrections. The Northern State Prison division of the New Jersey
Department of Corrections is located at 168 Frontage Rd, Newark, NJ 07114 (referred at times
herein as the "Northern State Prison").~~

~~12.     Defendants, at all times material hereto, were the Administrators of the Northern State
Prison, located at 168 Frontage Rd, Newark, NJ 07114. To the extent the Court deems
appropriate, Administrators of the Northern State Prison for the New Jersey Department of
Corrections and Defendants that were active participants in the events leading to Plaintiff's
injuries, such as S.C.O. John Doe, should be held liable in their individual capacity.~~

~~13.     Defendant, Northern State Prison, is a law enforcement entity in the state of New Jersey
which operates, manages, directs and controls the Northern State Prison facility within the
County of Essex.~~

14. ~~Defendant, New Jersey Department of Corrections, is a law enforcement entity in the state of New Jersey which operates, manages, directs and controls the Northern State Prison facility within the County of Essex.~~

15. ~~Defendant, S.C.O. John Doe was at all times material hereto, employed by the Northern State Prison located at 168 Frontage Rd, Newark, NJ 07114. Defendant,S.C.O. John Doe is sued in his individual capacity.~~

16. ~~Defendant, Sergeant Gibson, was at all times material hereto, employed by the Northern State Prison located at 168 Frontage Rd, Newark, NJ 07114. Defendant, Sergeant Gibson is sued in his individual capacity.~~

17. ~~The Health Services Unit for the Department of Corrections for the State of New Jersey, with corporate offices located at 168 Frontage Rd, Newark, NJ 07114, was contractually engaged with the Northern State Prison and the New Jersey Department of Corrections to provide health care services for inmates at the Northern State Prison.~~

18. ~~At all times relevant hereto, Defendant, John Doe Personnel and/or Corrections Officers and/or Administrators, may contain fictitious names representing unnamed corrections officers and/or other individuals, employed with the Northern State Prison facility located at 168 Frontage Rd, Newark, NJ 07114, who were acting under the supervision of the New Jersey Department of Corrections, the Northern State Prison and Administrators of both agencies. These Defendants are sued in their individual capacities.~~

19. ~~All Defendants, for one or more entities, which were contracted to provide medical and/or psychiatric services, counseling, security and custodial care to inmates under the custody of the New Jersey Department of Corrections.~~

4.)   Plaintiff Edwin Polynice is a resident of New Jersey whose date of birth is November 15, 1978.  He was in the custody of the New Jersey Department of Corrections from June 2012 until August 2020.  His SBI number was 864138C.  He last resided at South Woods State Prison, 215 South Burlington Road, Bridgeton, NJ 08302..

5.)   Defendant New Jersey Department of Corrections is a New Jersey State agency headquartered at Whittlesey Road, Trenton, NJ 08625.

6.)   Newly added Defendant Rutgers University – University Correctional Health ("UCHC") care is a corporate entity headquartered at 7 College Avenue, New Brunswick, NJ 08901. UCHC is the medical contractor that provides medical services to inmates within the custody of the New Jersey Department of Corrections.

7.)   Newly added Defendant Latifa Fedai, APN is a nurse practitioner at Northern State Prison.

8.)   Defendant George Robinson is currently the Administrator of the Adult Diagnostic and Treatment Center, a prison facility operated by the New Jersey Department of Corrections.  At the times relevant to this complaint, he was the Administrator of Northern State Prison, P.O. Box, 2300, 168 Frontage Road, Newark, NJ 07114.  He is an employee of the New Jersey Department of Corrections.

9.)   Defendant Sergeant Christopher Gibbons, previously misplead as "Sergeant Gibson" is the correctional sergeant, who on September 30, 2017, on information and belief, is that name of the correctional sergeant who, on September 30, 2017, was responsible for overseeing the inmates living in Delta Unit 1-E at Northern State Prison.  Sergeant Gibbons is an employee of Defendant New Jersey Department of Corrections.

10.)   Newly added Defendant Ryan Molloy was a NJ DOC correctional officer employed at Northern State Prison on September 30, 2017.

11.)   Newly added Defendant Raymond Reyes was an NJ DOC correctional officer employed at Northern State Prison on September 30, 2017.

12.)   Newly added Defendants UCHC John Does 1-20 are employees of UCHC, including nurses, doctors, and supervisors.

13.)   Newly added Defendants DOC John Does 1-20 are employees and supervisors of the DOC.

### ~~FACTUAL ALLEGATIONS~~

~~20.   Plaintiff, Edwin Polynice, was incarcerated at the the Detention Unit of Northern State Prison on or about~~

~~September 30, 2017.~~

~~21.   At said date, S.C.O. John Doe instructed Plaintiff, Edwin Polynice, to move into cell 104, on the *top* bunk.~~

~~22.   Plaintiff, Ectwin Polynice, expressed to S.C.O. John Doe that due to mandated medical restrictions and persistent medical issues, he was only permitted to be placed on the bottom bunk. Mr. Polynice further advised that this mandatory medical accommodation was for the remainder of his incarceration.~~

~~23.   Following his explanation, Mr. Polynice was ordered to utilize the top bunk, and~~

S.C.O. John Doe reiterated that this order came from Sergeant Gibson.

24.  Given the gentlemen listed in ranking order, Plaintiff, Edwin Polynice was compelled to comply with said order.

25.  On or about, October 1, 2017, at approximately 12:35 p.m., while attempting to dismount from the top bunk, to take his daily shower, Plaintiff, Edwin Polynice, became extremely dizzy and fell.

26.  During this fall, Plaintiff, Edwin Polynice, attempted to step down on the stool, but slipped. He fell, striking his head on the toilet and his leg against the stool.

27.  Post-fall, Mr. Polynice sustained severe injuries leading to thirteen stitches and five staples.

28.  Mr. Polynice also suffered from a dislocated right shoulder, severe neck pain, and bruising on his legs.

29.  Plaintiff, Edwin Polynice, required an extended stay in the prison infirmary for ten days due to these injuries.

30.  Throughout his time in the infirmary, he experienced debilitating headaches with the pain extending throughout his entire head, chronic pain in his facial area, ongoing dizziness, and a bruised leg.

31.  Additionally, Plaintiff, Edwin Polynice, continues to experience neck pain and lower back from, stemming from this incident, requiring ongoing physical therapy to treat ms neck and his back.

32.  Upon information and belief, Defendants and representatives and/or employees of Defendant New Jersey Department of Corrections at all times material hereto, failed to properly evaluate Mr. Polynice's medical needs and restrictions, while simultaneously ignoring previously mandated medical advice.

33.  Furthermore, Mr. Polynice was ordered to be exposed to harmful and hazardous conditions. Therefore, they failed to do their duty to maintain a safe and suitable environment, keeping Mr. Polynice safe from injury and harm.

34.  In the events described above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Mr. Polynice of his right and privileges secured by the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

35.  The failures of Defendants to properly protect and carry out medical instructions for Mr.

~~Polynice's imminent risk for a head, neck, and back injuries demonstrated a deliberate~~

~~indifference to and a conscious disregard for medical needs and requirements and~~

~~the overall safety of Mr. Polynice.~~

~~36. In the events described above, Defendants acted contrary to law, and intentionally, willfully,~~

~~wantonly, and unreasonably deprived Mr. Polynice of his right and privileges secured~~

~~by the United States Constitution and 42 U.S.C. § 1983.~~

~~37. The FAILURES of Defendants to properly adhere to Mr. Polynice's~~

~~medically mandated restrictions, demonstrated a deliberate indifference to~~

~~and a conscious disregard for the medical requirements and the overall~~

~~safety of Mr. Polynice.~~


## FACTS

14.  Plaintiff is known to have both hypertension, diabetes, diabetic neuropathy in his feet as well as a history of a torn Achilles tendon.  These disabilities substantially limit his activities of daily living, to wit his ability to climb and jump.

15.  These are disabilities within the meaning of the New Jersey Law Against Discrimination, the Rehabilitation Act, and the Americans with Disabilities Act.

16.  Due to Plaintiff's disabilities, he was given a permanent bottom bunk restriction in 2013 when he arrived at South Woods State Prison.

17.  Plaintiff often experienced dizziness from fluctuations in blood sugar due to the diabetes.  The bottom bunk restriction served to protect him during dizzy spells.

18.  In January 2017, he was transferred to Northern State Prison, after having spent several months in New Jersey State Prison.

19.  Plaintiff requested the continuation of his standing bottom bunk order.

20.   This was denied without genuine cause by Latifa Fedai, APN on January 24, 2017.  This was supposedly based on Polynice "not meeting the requirements," however she never articulated the requirements to him, and future acts by UCHC employees would prove that this was a sadistic and deliberate lie.

21.   Plaintiff formally grieved the denial of the bottom bunk through the kiosk system at Northern State Prison, but his grievance was either denied or not responded to.

22.   Plaintiff was nevertheless able to secure a bottom bunk informally.

23.   On September 30, 2017, Plaintiff was living in Delta Unit 1-E at Northern State Prison assigned to a bottom bunk.

24.   For unknown reasons, on September 30, 2020, Plaintiff was told by a corrections officer, either Molloy or Reyes, to move out of his bottom bunk and move to cell 104 and sleep in a top bunk.

25.   Polynice told Molloy or Reyes that he needed to be on the bottom bunk due to his disabilities.

26.   When Molloy or Reyes protested that Polynice was no longer entitled to the accommodation, Polynice told him that the accommodation was for the remainder of his incarceration.

27.   Plaintiff's right to a safe place to sleep is clearly established law. N.J.A.C. 10A:31-3.6 states: "A qualified inmate with a disability shall be housed in a manner that provides for his or her safety, security and accessibility to facility programs or activities.  Rooms, sleeping units, or housing units shall be designed for use by qualified inmates with disabilities."

28.   Following his explanation, Polynice was ordered to utilize the top bunk, in clear violation of DOC regulation, state law, and federal law.

29.   Molloy or Reyes reiterated that this order had come from Sergeant Gibbons.

30.   Polynice was compelled to follow the order.

31.   On October 1, 2017, at approximately 12:35pm, while attempting to dismount the top bunk to take a daily shower, Plaintiff Edwin Polynice became extremely dizzy from a drop in his blood sugar and fell.

32.   During this fall, Plaintiff, Edwin Polynice attempted to land on a stool, but slipped.  He fell, striking his head

on the toilet and his leg against the stool.

33.   Post-fall, Mr. Polynice sustained severe injuries leading to thirteen stitches and five staples.

34.   Mr. Polynice also suffered a dislocated shoulder, severe neck pain, and bruising on his legs.

35.   Plaintiff, Edwin Polynice, required an extended stay in the prison infirmary for ten days due to these injuries.

36.   Throughout his time in the infirmary, he experienced debilitating headaches with the pain extending throughout his entire head, chronic pain in his facial area, ongoing dizziness, and a bruised leg.

37.   On October 20, 2017, Dr. Sandra Connolly, recognizing the obvious misdeed of Fela ordered Polynice back to a bottom bunk restriction.

38.   Plaintiff, Edwin Polynice continued to experience constant neck pain, headaches, and lower back pain while he remained incarcerated.

39.   Despite the ongoing pain, Plaintiff was never given any treatment or diagnostic other than Tylenol.

40.   Now released from prison, Plaintiff will be forced to spend money, in excess of $3500 to treat his injuries.

41.   Additionally, Plaintiff has suffered disfigurement, in the form of significant scarring from his fall.

42.   He has also permanently lost full mobility as a result of the fall.


**STATEMENT ON COMPLIANCE WITH NOTICE OF TORT CLAIM RULES**

43.   On or about December 19, 2017, Plaintiff, or his then-counsel, Jean Ross, filed a Notice of Tort Claim seeking $100,000 for the injuries sustained in the fall.

## FIRST CLAIM FOR RELIEF
## ~~FEDERAL CONSITUTIONAL VIOLATIONS BY ALL DEFENDANTS~~
## <u>42 U.SC. § 1983 – EIGHTH AMENDMENT – DELIBERATE DIFFERNECE TO INMATE SAFETY – SUPERVISORY LIABILITY AGAINST GEORGE ROBINSON, SGT. GIBBONS, OFFICER RYAN MOLLOY, OFFICER RAYMOND REYES, LATIFA FEDAI, DOC JOHN DOES 1-20, UCHC JOHN DOES 1-20.</u>

44.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

45.     ~~Defendant, Northern State Prison, by and through their Administrator George Robinson and other policymakers, developed policies, procedures and/or customs which caused the deprivation of Plaintiff, Edwin Polynice's constitutional rights.~~

46.     <u>Fedai knew that Plaintiff had health conditi9ons that rendered the top bunk dangerous. She nevertheless denied him the request without genuine reason, rendering the decision deliberately indifferent.</u>

47.     <u>George Robinson and DOC John Does 1-20, who were policymakers, developed policies, procedures and/or customs which caused the deprivation of Plaintiff, Edwin Polynice's constitutional rights.</u>

48.     Said policies were inherently deficient, or inappropriate as formulated, as to the adherence of mandated medical care provided to an inmate that presented with documented medical issues.

49.     Defendant <u>New Jersey Department of Corrections,</u> ~~Northern State Prison,~~ by and through Defendant Administrator George Robinson and <u>DOC John Does 1-20, who are</u> other policymakers, ~~negligently,~~ recklessly, and/or intentionally <u>and/or with deliberate indifference to inmate safety</u>:

   a.     failed to properly train and supervise Defendant Sergeant Gibson and Defendant S.C.O. John Doe with regard to adequately assessing, monitoring and providing necessary and reasonable accommodations for inmates with medical issues, including but not limited to inmates with documented medical restrictions and

      b.      failed to properly train and supervise Defendant Sergeant Gibson and Defendant S.C.O. John Doe, or other prison staff to maintain a safe and suitable environment, and to keep inmates safe from injury or serious harm.

      c.      maintained policies, procedures and/or customs that were deliberately indifferent to the constitutional rights of inmates to be adequately screened for medical issues, to provide necessary and reasonable accommodations for inmates with medical issues; and to be kept safe from injury or serious harm;

      d.      failed to enforce the contractual obligations of ~~the Medical Unit~~ UCHC to monitor and treat inmates with medical issues, including but not limited to inmates with documented medical restrictions.

      e.      with full knowledge, allowed institutional policies and procedures regarding intake, medical screening, custodial watch and medical treatment to be ignored and violated with reckless abandon; and

      f.      failed to provide adequate and needed health care for inmates at the Detention Unit of the Northern State Prison.

50.      The actions and/or failures to act by Defendant, ~~Northern State Prison~~ New Jersey Department of Corrections, Defendant Administrator George Robinson, Defendant Sergeant Gibson and Defendant S.C.O. John Doe, as illustrated above, amounted to a deliberate indifference of Mr. Polynice's constitutional rights and proximately caused his injuries.

51.      The violation of Mr. Polynice's rights under the United States Constitution was the proximate cause of damages to Plaintiff, thereby entitling Plaintiff to compensatory damages from Defendants, ~~Northern State Prison,~~ Administrator George Robinson, Sergeant Gibson, and S.C.O. John Doe in an amount exceeding $1,000,000.00.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

11

## SECOND CLAIM FOR RELIEF

~~LIABILITY OF DEFENDANTS NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON, ADMINISTRATORS GEORGE ROBINSON, SERGEANT GIBSON, AND S.C.O. JOHN DOE FOR FEDERAL CONSTITUTIONAL VIOLATIONS~~

## NEGLIGENCE AGAINST DEPARTMENT OF CORRECTIONS AND ALL DOC DEFENDANTS

~~44.    The allegations set forth in the proceeding paragraphs are incorporated by reference as if fully set forth herein.~~

~~45.    At all times relevant hereto, Defendants were acting under color of state law as employees or agents of the Northern State Prison and/or Health Services Unit of New Jersey, and/or if not employees or agents, by direction of and under the supervision and control of New Jersey Department of Corrections, the Detention Unit of Northern State Prison and/or Health Services Unit of New Jersey.~~

~~46.    The actions of Defendants as set forth above violated the late Mr. Polynice's rights under the Eighth and Fourteenth Amendments of the United States Constitution to be incarcerated in a safe and suitable environment, and to be safe from injury and harm while incarcerated at the Detention Unit of Northern State Prison.~~

~~47.    The violations of Mr. Polynice's rights under the United States Constitution was the severe and continuous injuries to Edwin Polynice, thereby entitling Plaintiff to compensatory damages from Defendants in their individual capacities.~~

~~48.    The actions of Defendants in their individual capacities were intentional, malicious, willful, wanton, and/or in reckless disregard of Plaintiff's federally protected rights, therefore entitling Plaintiff to an award of punitive damages.~~

~~49.    Plaintiff is entitled to recover damages against Defendants the individual capacity in an amount greater than $1,000,000.00.~~

~~50.    Plaintiff is entitled to recover reasonable attorney's fees and the costs and expenses of this action.~~

52.    If not reckless, intentional, or deliberately indifferent to inmate safety, the decision to place Plaintiff in the top bunk was negligent.

53.    Bur for the exercise of due care to listen to Plaintiff's truthful pleading that he was bottom-bunk restricted due to his health issues, Plaintiff would not have suffered permanent injuries.

54.    Had Defendants exercised due care, they would have placed Plaintiff in a bottom bunk, and he would not have fallen even if he had an attack of low blood sugar.

55.    The failure to exercise due care proximately caused Plaintiff's permanent injuries.

56.    The failure to exercise due care was the fault of Officer Molloy, Officer Reyes, Sergeant Gibson, John Does 1-20, and/or George Robinson.

57.    The Department of Corrections is liable on the theory of respondeat superior for the negligence of its employees.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

### THIRD CLAIM FOR RELIEF

### ~~SUPERVISORY LIABILITY OF DEFENDANTS ADMINISTRATOR GEORGE ROBINSON, AND SERGEANT GIBSON UNDER 42 U.S.C. § 1983~~

### NEW JEREY LAW AGAINST DISCRIMINATION – FAILURE TO ACCOMMODATE A DISABILITY AGAINST DOC DEFENDANTS

~~51.    The allegations set forth in the preceding paragraphs are incorporated by reference as is fully set forth herein.~~

~~52.    At all times relevant hereto, Defendant Administrator George Robinson, and Defendant Sergeant Gibson served as Administrators of the Northern State Prison, in Newark, New Jersey.~~

~~53.    Plaintiffs are informed, believe and therefore allege that on October 1, 2017, Defendant Administrator George Robinson, and Defendant Sergeant Gibson were aware of, should have been aware of, and/or had actual knowledge of the pattern and culture of unconstitutional behavior and indifference, including failure to properly s 54.As such, Defendant Administrator George Robinson, and Defendant Sergeant Gibson not only directed, encouraged, tolerated, acquiesced to this behavior, but were deliberately indifferent to the likelihood that their staff, employees and/or emreetions officers would fail~~

~~to properly screen inmates for medical issues, fail to adequately monitor inmates, fail to have inmates provided necessary and reasonable medical accommodations, fail to treat inmates medically and fail to protect inmates from injury or harm at the Northern State Prison.~~

~~55.     The deliberate indifference of Defendant Administrator George Robinson, and Defendant Sergeant Gibson as to the need for training and supervision of their staff, employees and/or detention officers was a proximate cause of the constitutional violations suffered by the Plaintiff, Edwin Polynice.~~

~~56.     The violation of Mr. Polynice's rights under the United States Constitution was a proximate cause of damages and harm to Plaintiff, thereby entitling Plaintiff to compensatory damages from Defendant Administrator George Robinson, and Defendant Sergeant Gibson in an amount exceeding $1,000,000.00.creen inmates for medical injuries, or other mental health problems, failure to adequately monitor and guard inmates, failure to have inmates properly treated medically, failure to have inmates provided necessary and reasonable medical accommodations, and failure to protect inmates from injury or harm whether self-inflicted or by other inmates, staff, employees and/or corrections officers at the Northern State Prison.~~

58.     <u>Plaintiff was a person with a disability, namely his diabetes and his Achilles tendon tear.</u>

59.     <u>The New Jersey Law Against Discrimination entitles Plaintiff to reasonable accommodations that would give him a safe place to sleep.</u>

60.     <u>Department of Corrections Defendants denied Plaintiff access to a bottom bunk.</u>

61.     <u>This denial caused Plaintiff permanent injuries.</u>

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## FOURTH CLAIM FOR RELIEF

### ~~VIOLATION OF CIVIL RIGHTS BY DEFENDANTS NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON, ADMINISTRATOR GEORGE ROBINSON, SERGEANT GIBSON, AND S.C.O. JOHN DOE~~

### AMERICANS WITH DISABILITIES ACT AGAINST DOC DEFENDANTS

~~57. The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.~~

~~58. The Defendants were acting under color of law when they failed to properly provide medical accommodations for Plaintiff, Edwin Polynice, for medical issues, failed to adequately monitor Mr. Polynice while incarcerated at Northern State Prison, and failed to protect Mr. Polynice from injury and harm.~~

~~59. The Defendants failed to adequately train or otherwise have and maintain or enforce effective policies regarding the screening and care of inmates with medical restrictions, the adequate monitoring of inmates, and the protections of inmates from injury or harm.~~

~~60. The Defendants, New Jersey Department of Corrections, Northern State Prison, Administrator George Robinson, Sergeant Gibson, and S.C.O. John Doe were deliberately indifferent to the likelihood that Northern State Prison's staff, employees and/or Detention Officers, would fails to properly screen inmates for medical issues, fail to adequately monitor inmates, fail to properly provide necessary medical accommodations, and fail to protect inmates from injury or harm at the Detention Unit of Northern State Prison.~~

62.)   Plaintiff was a qualified person with a disability, namely his diabetes and his Achilles tendon tear.

63.)   Once of the public programs, services, or activities of the prison is the provision of safe places to sleep.

64.)   Plaintiff's disabilities could have been reasonably accommodated by the provision of a bottom bunk.  This would have provided him with a safe place to sleep.

65.) Department of Corrections Defendants denied Plaintiff access to the bottom bunk.

66.) This denial caused Plaintiff permanent injuries.

## FIFTH CLAIM FOR RELIEF
~~NEGLIGENCE~~
~~DEFENDANTS NEW JERSEY DEPARTMENT OF CORRECTIONS,~~
~~NORTHERN STATE PRISON, ADMINISTRATORS GEORGE ROBINSON,~~
~~SERGEANT GIBSON, AND S.C.O. JOHN DOE~~

## REHABILITATION ACT

~~61.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.~~

~~62.     Defendants owed a duty of reasonable care to Plaintiff, Edwin Polynice, and to others at the Northern State Prison, to properly screen inmates for medical issues, to properly and adequately monitor inmates, to treat inmates medically when indicated, to provide medical accommodations when necessary, and to protect inmates from injury or harm at the Northern State Prison.~~

~~63.     The Defendants failed to use the requisite standard of care pursuant to sound policies and procedures and/or knowingly violated established policies and procedures with reckless abandon.~~

~~64.     The actions and/or failures to act by the Defendants amounted to a breach of said duty of care to Mr. Polynice.~~

~~65.     As a direct and proximate result of Defendants' negligence, Mr. Polynice was seriously injured while in the custody of the No1them State Prison on October 1, 2017.~~

~~66.     Plaintiff is entitled to an award of compensatory damages against the above-referenced Defendants in an amount which exceeds $1,000,000.00.~~

67.     Like the Americans with Disabilities Act, the Rehabilitation Act also requires prisons to provide inmates with disabilities reasonable accommodations so that they can access all the programs, services, and activities of the prison.

68.     The substantive standards for liability under the Rehabilitation Act are the same as under the Americans with Disabilities Act.

69.     The DOC Defendants are liable to Plaintiff under the Rehabilitation Act based upon the same facts recited in the Fourth Claim for Relief above.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## SIXTH CLAIM FOR RELIEF
## NEGLIGENT HIRING, TRAINING AND SUPERVISION AGAINST NEW JERSEY DEPARTMENT OF CORRECTIONS

70.   DOC John Does 1-10 and/or Sergeant Gibson had a duty to train SCO John Doe and/or Sergeant Gibson in the proper handling of prisoners with disabilities that might not be visible.

71.   DOC John Does 1-10 and/or Sergeant Gibson failed to train SCO John Doe and/or Sergeant Gibson in the proper handling of prisoners with disabilities that might not be visible.

72.   Bur for this failure to train, Plaintiff would not have sustain his permanent injuries.

73.   DOC John Does 1-10 and/or Sergeant Gibson had a duty to supervise the transfer of Plaintiff from his bottom bunk to cell 104.

74.   DOC John Does 1-10 and/or Sergeant Gibson failed to properly supervise the transfer of Plaintiff from his bottom bunk to cell 104.

75.   Had the Defendants properly supervised Plaintiff's cell transfer he would have been assigned to a bottom bunk or else left in his original cell.

76.   But for the negligent failure to supervise Plaintiff's transfer out of his original cell, Plaintiff would not have sustained his permanent injuries.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

MICHAEL POREDA, ESQ.
*Attorney for Plaintiff*

Date: July 10, 2021

17

## NOTICE OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that Michael Poreda, Esq. is hereby designated as Trial Counsel in the above-captioned matter.

_____

_____
                                    Michael Poreda, Esq.
_____ *Attorney for Plaintiff*

Date: July 10, 2021

## CERTIFICATION OF NO OTHER ACTION

Pursuant to Rule 4:5-1, it is hereby certified that to the best of my knowledge and belief, there are no other pending actions or proceedings involving the matter in controversy, none are contemplated, and I do not presently know the identity of any other party who should be joined.

_____

_____
                                    Michael Poreda, Esq.
_____ *Attorney for Plaintiff*

Date: July 10, 2021

# EXHIBIT B

2015 WL 5693805
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Nathan RILEY, Plaintiff,
v.
David GRAINEY, et al., Defendants.

NO. 3:12–CV–02470
|
Signed 09/24/2015

**Attorneys and Law Firms**

Nathan Riley, Waynesburg, PA, pro se.

Maria G. Macus, Chief Counsel's Office, Mechanicsburg, PA, John J. Hatzell, Jr., Philadelphia, PA, for Defendants.

### *ORDER*

A. Richard Caputo, United States District Judge

 **\*1  NOW**, this *24th* day of September, 2015, upon review of the Report and Recommendation of Magistrate Judge Mehalchick (Doc. 58) for plain error or manifest injustice, **IT IS HEREBY ORDERED** that:

(1) The Report and Recommendation (Doc. 58) is **ADOPTED in its entirety.**

(2) Defendants' Motion to Dismiss (Doc. 41) is **GRANTED.**

(3) Plaintiff's Motion for Leave to Obtain Discovery Material (Doc. 57) is **DENIED.**

(4) The Clerk of Court is directed to mark the case as **CLOSED.**

### *REPORT AND RECOMMENDATION*

KAROLINE MEHALCHICK, United States Magistrate Judge

This matter comes before the Court by the District Court's Order dated July 9, 2015, rejecting the Court's Report and Recommendation and directing the Court to reconsider Defendants' motion to dismiss in light of Plaintiffs subsequent filing of a brief in opposition (Doc. 55) to Defendants' motion to dismiss. Having reviewed the motion papers in accordance with the District Court's Order, it is recommended that Defendants' motion (Doc. 41), be granted. [1]

I. *FACTUAL BACKGROUND*
This is a *pro se* prisoner civil rights action, initiated upon the filing of the original complaint in this matter on December 11, 2012, to redress injuries allegedly sustained by Plaintiff Nathan Riley as a result of denying Riley a "Z–Code" housing restriction in violation of the First, Eighth, and Fourteenth Amendments, as well as the Americans with Disabilities Act ("ADA"). (Doc. 1).

On May 20, 2014, the Court dismissed Plaintiff's complaint, but permitted Riley to amend his complaint only with respect to his ADA claims against Defendants Palya, Balestrieri, Folino, and Varner in their official capacities. (Doc. 35). Riley alleges in his amended complaint that on December 16, 2010, he was released from administrative segregation at Greene State Correctional Institution into the general population and was placed in a double cell, despite his objections that he be housed in a single cell. He alleges that before being placed into administrative segregation, he was provided with a Z-code, single-cell housing designation. Specifically, he claims that he suffers from "pre-existing physical and psychological disability," caused by an unstable upbringing, which has resulted in altercations with cellmates due to his inability to "think and interact with people" and his "increasing agitation and paranoia." (Doc. 40, at 2). As such, he alleges that Defendants violated the ADA by refusing to reinstate his Z-code, single-cell housing restriction as an accommodation for his post-traumatic stress disorder and anti-social personality disorder.

On September 10, 2014, Defendants filed a motion to dismiss (Doc. 41), together with a brief in support of their motion (Doc. 42). On March 9, 2015, this Court issued an Order directing Riley to file a brief in opposition to Defendants' motion to dismiss by April 9, 2015. (Doc. 51). Riley did not file a brief in opposition; thus, the Court deemed Defendants' motion to dismiss as unopposed and entered a Report and Recommendation granting Defendants' motion to dismiss. (Doc. 52). Riley subsequently filed an objection to this Court's Report and Recommendation, whereby he submitted that he had timely delivered a brief in opposition to Defendants' motion to dismiss to prison officials to be placed in the mail for processing. (Doc. 53). On the basis of that representation, the District Court granted Riley an additional thirty (30) days to re-file his brief in opposition. (Doc. 54). A brief in opposition was filed on July 1, 2015. (Doc. 55). Having been fully briefed, this matter is now ripe for disposition.

## II. *LEGAL STANDARD*

**\*2** Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The United States Court of Appeals for the Third Circuit, discussing the evolving standards governing pleading practice in federal court, has stated in relevant part:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips [ v. County of Alleg hen y,* 515 F.3d 224 (3d Cir.2008) ]and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1955, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

> *Fowler v. UPMC Shadyside,*578 F.3d 203, 209–10 (3d Cir.2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). A court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555. In *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Additionally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in

Riley v. Grainey, Not Reported in Fed. Supp. (2015)

support of his claim which would entitle him to relief. *Haines v. Keener*, 404 U.S. 519, 520–21 (1972). In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

III. *DISCUSSION*[2]

**\*3** To establish a violation of Title II of the Americans with Disabilities Act, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participating in, or denied the benefit of, a public entity's services, programs, or activities; and that (3) such exclusion, denial of benefits, or discrimination was by reason of disability. *See* 42 U.S.C. § 12132; *Bowers v. National Collegiate A thletic Ass'n,* 475 F.3d 524, 550 (3d Cir.2007).

Here, Riley has arguably alleged that his post-traumatic stress disorder substantially limits his ability to engage in a major life activity; namely, to think and interact with others. *See Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 307 (3d Cir.1999) ("We accept that thinking is a major life activity."). However, Riley has failed to adequately plead that he was denied the benefit of a specific prison service, program, or activity as a result of Defendant's failure to accommodate him with a single cell. While Riley argues in his brief in opposition that a "Z code is a 'service,' 'program,' or 'activity' as contemplated by the ADA," and references the Z Program Code Policy, it nonetheless appears that his only criticism is that he was not given the medical accommodation he requested—a single cell. *See Iseley v. Beard,* 200 Fed. Appx. 137, 142 (3d Cir.2006) (finding that plaintiff had not claimed that he was excluded from any program on the basis of his disability but rather alleged "that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions.")(*citing Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996) (" [I]ncarceration, which requires the provision of a place to sleep, is not a 'program' or 'activity.' Sleeping in one's cell is not a 'program' or 'activity' ")). Indeed, Riley has merely challenged a prison's medical decision that he does not require a single cell, which does not implicate the ADA. *Thomas v. Pa. Dep't of Corr.,* 615 F.Supp.2d 411, 429 (W.D.Pa.2009) (holding that plaintiffs requests for a handicap cell that were denied based on a medical determination that they were not warranted did not support discriminatory treatment in violation of Title II of the ADA); *Redding v. Hanlon,* No. 06–4575 (DWF/RLE), 2008 WL 762078, at \*16 (D.Minn. March 19, 2008) (dismissing inmate's ADA claim where the plaintiff alleged that the defendants had denied him the single cell accommodation ordered by his doctor, not that he had been denied access to any service or program).

Nevertheless, even if Riley has sufficiently alleged denial of a service, program, or activity, in refusing to reinstate Riley's Z code housing status, Riley has failed to allege that he was prevented from participating in or benefitting from such a service, program, or activity *on the basis* of his disability. While Riley's amended complaint contains the assertion that he "is being discriminated against by [D]efendants Palya, Balestrieri, Folino and Varner, as a result of [his] disability," it does not contain facts which would support an inference that he was denied a single cell *because of* his disability. In fact, the request slip attached as an exhibit to Plaintiffs complaint actually belies the argument that he was denied a single cell due to his disability, as the exhibit notes that Riley received a Z code status based on his age and that the Z code status was removed in 1997, prior to his transfer to SCI–Greene. (Doc. 1, at 20).Consequently, "[a]n inmate's failure to allege facts showing that the exclusion or denial of benefits was 'by reason of his disability' warrants dismissal upon a defendant's Rule 12(b)(6) motion." *Desalis v. Pennsylvania Dep't of Corr.,* No. CIV.A. 12–611, 2013 WL 2458346, at \*2 (E.D. Pa. June 6, 2013). Accordingly, it is recommended that Riley's ADA claim against Defendants Palya, Balestrieri, Folino and Varner be dismissed for failure to state a claim.

IV. *RECOMMENDATION*

**\*4** Based on the foregoing, it is recommended that:

1. Defendants' motion to dismiss (Doc. 41) be **GRANTED** and the amended complaint (Doc. 40) be **DISMISSED** for failure to state a claim;

Riley v. Grainey, Not Reported in Fed. Supp. (2015)

2. It is further recommended that Plaintiff's motion for leave to obtain discovery material (Doc. 57), filed on July 21, 2015, be **DENIED AS MOOT;**

3. The Clerk be directed to **CLOSE** this case.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 5693805

## Footnotes

1      Following the District Court's rejection of the undersigned Magistrate Judge's Report and Recommendation, Plaintiff filed a motion for leave to obtain discovery material. (Doc. 57). However, as the recommendation to grant Defendants' motion to dismiss remains unchanged, it will be further recommended that Plaintiffs motion (Doc. 57) be denied as moot.

2      Defendants also seek dismissal of Riley's claims on the basis that Defendants Folino and Varner lack the requisite personal involvement to sustain a § 1983 action. However, this Court need not address this argument in order to resolve Defendants' motion to dismiss.

**End of Document**                                               © 2021 Thomson Reuters. No claim to original U.S. Government Works.