UNITED STATES DISTRICT COURT
FOR THE DISTICT OF NEW JERSEY
VICINAGE OF NEWARK

EDWIN POLYNICE,                          :

            Plaintiff,                          Civil Action

        v.                              :

                                           Civ. Dkt.#2:19-cv-16875

NEW   JERSEY   DEPARTENT   OF      :
CORRECTIONS, ET ALS.

                                      :
            Defendants.

                                      :

_____

BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ANDREW J. BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY
Attorney for Defendants
R.J. Hughes Justice Complex
PO Box 112
Trenton, New Jersey 08625
Attorney for Defendant

Chanell Branch
Deputy Attorney General
On the Brief

## **TABLE OF CONTENTS**

Pages

PRELIMINARY STATEMENT.............................................1

PROCEDURAL HISTORY................................................2

STATEMENT OF MATERIAL FACTS......................................3

STANDARD OF REVIEW...............................................3

LEGAL ARGUMENT

    **POINT I**

    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE
    THE SUPERVISOR DEFENDANT AND HIS SUBORDINATES WERE
    NOT DELIBERATELY INDIFFERENT ...............................5

    **POINT II**

    SUMMARY JUDGMENT SHOULD BE GRANTED TO THE
    SUPERVISORY DEFENDANT AS HE IS ENTITLED TO
    QUALIFIED IMMUNITY..........................................8

CONCLUSION......................................................10

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed. 2d 202
  (1986) ....................................................4

Ashcroft v. Al-Kidd,
  563 U.S. 731 (2001) ......................................9

Barkes v. First Correctional Medical Inc.,
  766 F.3d 307 (3d Cir. 2014) ..............................7

Brooks v. Kyler,
  204 F.3d 102 (3d Cir. 2000) ..............................3

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) ...................................3, 4

Chavarriaga v. N.J. Dep't of Corrs.,
  806 F.3d 210 (3d Cir. 2015) ..............................3

Marino v. Industrial Crating Co.,
  358 F.3d 241 (3d Cir. 2004) ..............................4

Saldana v. Kmart Corp.,
  260 F.3d 228 (3d Cir. 2001) ..............................5

Sample v. Diecks,
  885 F.2d 1099 (3d Cir. 1989) .....................5, 6, 7, 8

Santini v. Fuentes,
  795 F.3d 410 (3d Cir. 2015) ..............................4

Spruill v. Gillis,
  372 F.3d 218 (3d Cir. 2004) ..............................5

Taylor v. Barkes,
  577 U.S. 822 (2015) ...................................7, 9

**Statutes**

42 U.S.C. § 1983..........................................2, 9

ii

**Other Authorities**

<u>Fed.</u> <u>R.</u> <u>Civ.</u> <u>P.</u> 12(b)(6)........................................2

<u>Fed.</u> <u>R.</u> <u>Civ.</u> <u>P.</u> 56..............................................4

<u>Fed.</u> <u>R.</u> <u>Civ.</u> <u>P.</u> 56.1............................................3

<u>Fed.</u> <u>R.</u> <u>Civ.</u> <u>P.</u> 56(a)..........................................3

N.J.A.C. 10A:31-3.6.............................................6

**PRELIMINARY STATEMENT**

Plaintiff Edwin Polynice was an inmate incarcerated at Northern State Prison ("NSP") who claims that on or about October 1, 2017, he sustained a severe injury after being directed to use a top bunk despite medical restrictions necessitating that he have a bottom bunk. Plaintiff alleges a supervisor liability claim against Defendant, Administrator George Robinson in his individual capacity, premised on deficiencies in policymaking and failure to train and/or supervise his subordinates.

Plaintiff's claim fails as any top bunk assignment Plaintiff received only occurred after an APN nurse, a medical expert not employed by the DOC, revoked his bottom bunk restriction. The corrections officers at NSP are non-medical prison officials who follow the recommendations of the medical experts. When the medical experts restricted Plaintiff to the bottom bunk, he received a bottom bunk. As such, the correction officers followed the proper policies of following the medical recommendations of a medical expert. Further, Plaintiff failed to show that the non-medical prison officials had any knowledge or reason to believe that any medical expert working within the prison were mistreating or failing to appropriately recommend treatment to inmates.

Defendant now moves for summary judgment on Plaintiff's §

1

1983 supervisory liability claim. For the reasons set forth herein, the Court should grant summary judgment in favor of the Defendant and dismiss the remaining claim with prejudice.

<u>**PROCEDURAL HISTORY**</u>

On August 19, 2019, Plaintiff filed his initial complaint in the United States District Court, Newark Vicinage asserting civil rights claims pursuant to 42 U.S.C. § 1983 and negligence claims pursuant to the New Jersey Tort Claims Act ("NJTCA") against the NJDOC, Northern State Prison, Administrator George Robinson and Sergeant Gibson.[1] (ECF No. 1). Defendants then moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 9). On May 28, 2020, the Honorable Madeline Cox Arleo, U.S.D.J. in an Opinion and Order dismissed all claims in the complaint, except a § 1983 supervisory liability claim against Administrator George Robinson in his personal capacity premised on policymaking and failure to train or supervise. (ECF Nos. 14, 15).

Defendant Robinson filed an answer to the complaint on the remaining claim on June 23, 2020. (ECF No. 16). On May 26, 2021, Plaintiff filed a Motion to Amend the Complaint seeking to add additional defendants including UCHC and APN Latifa Fedai. (ECF No. 44). Oppositions to the Motion to Amend were filed. (ECF Nos

---

[1] Defendant Sergeant Gibson is not identified as ever being an employee if Northern State Prison. (Answer ¶55, ECF No. 16).

46, 54). On October 25, 2021, the Honorable Leda Dunn Wettre, U.S.M.J. in a letter Order denied Plaintiff's motion to Amend. The parties engaged in discovery, which closed on December 10, 2021. (ECF No. 61).

Now, Defendant Robinson respectfully asks the Court to enter summary judgment in their favor, and thereby dismiss Plaintiff's remaining claim with prejudice.

## STATEMENT OF MATERIAL FACTS

Pursuant to L. Civ. R. 56.1, Defendants incorporates herein the Statement of Undisputed Material Facts ("SUMF") filed alongside this Brief and in support of Defendants' Motion for Summary Judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); e.g., Chavarriaga v. N.J. Dep't of Corrs., 806 F.3d 210, 218 (3d Cir. 2015) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Brooks v. Kyler, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if

its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986)).

In a motion for summary judgment, a district court may not make credibility determinations or engage in weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify specific facts showing that there is a genuine issue for trial. Ibid. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986). A party opposing summary judgment must do more than just

rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**ARGUMENT**

**POINT I**

**DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE SUPERVISOR DEFENDANT AND HIS SURBORDINATES WERE NOT DELIBERATELY INDIFFERENT.**

The Court should grant summary judgment to the Defendant on Plaintiff's supervisor liability claim because the supervisor defendant and his subordinates are not medical experts and not deliberately indifferent when following the recommendations of a medical professional. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

In order to prevail on a supervisor claim premised on deficient policies and/or failure to supervise or train plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to the risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).

Defendant Robinson and his subordinates employed policy by following a medical professionals' recommendation regarding bunk restrictions within the NSP's housing units. See N.J.A.C. 10A:31-3.6. Plaintiff states that upon his incarceration within the Department of Corrections a medical professional restricted him to bottom bunk status. SUMF, # 11. Once the restriction went into the system, the correction officers who are non-medical staff followed the recommendations of the medical professionals. SUMF, #12. As a result, while incarcerated in South Woods State Prison ("SWSP") and Trenton State Prison, Plaintiff always slept on a bottom bunk because the medical professionals' recommendation was in the system. SUMF, #14, 15.

Plaintiff alleges that while incarcerated as NSP, Defendant Robinson and his subordinates did not employ this policy or procedure when an officer directed him to use a top bunk and he fell from that top bunk incurring injury. (Exhibit A, ¶21-23, 25-31). However, when Plaintiff transferred to NSP, an APN nurse, not employed by the DOC revoked his bottom bunk restriction. SUMF, #16, 17.

The first Sample factor weighs in favor of the defendant because the specific policy of following the recommendation of a medical professional did not create an unreasonable risk of inmates falling from there bunks. "If a prisoner is under the care of medical experts..., a non-medical prison official will generally

be justified in believing that the prisoner is in capable hands."
Barkes v. First Correctional Medical Inc., 766 F.3d 307, 327 (3d
Cir. 2014)(reversed on other grounds by Taylor v. Barkes, 135 S.
Ct. 2042,2043 (2015)). When the bottom bunk restriction was in
place, the non-medical prison officers followed those
restrictions. SUMF, #11-15. When the medical professional revoked
the bottom bunk restriction, the non-medical prison officers
followed those recommendations. SUMF, #16-19. Accordingly, the
Court should find that the first Sample factor weighs in favor of
the Defendant Supervisor.

The second Sample factor also weighs in favor of the
Defendants in this case.  Plaintiff's bottom buck revocation
occurred at NSP in January 2017. SUMF, #16. Plaintiff made
complaints to other health professionals prior to his fall in
October 2017 and the revocation of the bottom bunk restriction
remained. SUMF, #20. A Lieutenant informed Plaintiff "the officers
comply with whatever the nurse inputs." SUMF, #21. As such, there
was no indication from any officers including the supervisory
defendant that the policy of following the recommendations of a
medical professional created an unreasonable risk. Accordingly,
the Court should find that the supervisor defendant was not aware
that following medical staff's recommendations created an
unreasonable risk, which weighs in favor of the Defendant.

The third <u>Sample</u> factor weighs in favor of the Defendant because if Defendant is not aware of a risk than unable to be indifferent toward it. Defendant's subordinates followed the policy. When a medical professional restricted Plaintiff to bottom bunk status, the officers never assigned or directed Plaintiff to a top bunk. SUMF, #14, 15, 31.  The officers only directed Plaintiff to a top bunk when the medical professionals revoked his bottom bunk restriction for about a nine-month period. SUMF, #16, 30. Once medical reinstated Plaintiff's bottom bunk restriction on October 1, 2017, Plaintiff always received a bottom bunk until his release on November 4, 2020. SUMF, # 5, 29, 31. Therefore, the court should not find deliberate indifference by the supervisory defendant or his subordinates.

Finally, Plaintiff's injury did not result from the failure of implementing policy. The officers followed the recommendation of the medical professional who revoked Plaintiff's bottom bunk restriction on January 24, 2017 along with the medical professionals who continued the revocation of the bottom bunk restriction until October 1, 2017. SUMF, #16, 20, 29.

Based on the factors discussed above, the Court should enter summary judgment in favor of the Defendant.

**POINT II**

**SUMMARY JUDGMENT SHOULD BE GRANTED TO THE SUPERVISORY DEFENDANT AS HE IS ENTITLED TO QUALIFIED IMMUNITY.**

8

The court should grant summary judgment to Defendants because they are entitled to qualified immunity. Prototypically, the doctrine of qualified immunity arises in the context of direct violations of constitutional rights by government employees, but it also applies in situations where supervisor defendants are being sued for an allegedly deficient policy or deficient oversight. *See e.g.* Taylor v. Barkes, 577 U.S. 822, 827 (2015). Defendant Robinson as a Supervisory Defendant is entitled to qualified immunity here because there is no "controlling authority" or "robust consensus of cases of persuasive authority" on the books when the official acted that "placed the statutory or constitutional question beyond debate." Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2001).

Further, the Supervisory Defendant is entitled to qualified immunity for Plaintiffs' supervisory claims because Plaintiff cannot point to any clearly established law showing that the DOC's policy of following the medical provider's orders when making bunk assignment determinations was somehow constitutionally deficient. As such, Plaintiff has failed to adduce evidence showing that the Defendants' conduct constituted a violation under § 1983. However, even if the court concludes that the Defendant's conduct did violate such a right, there was no clearly established law at the time of the conduct.

9

As such, Supervisory Defendant Robinson is entitled to qualified immunity for Plaintiff's supervisory claims because there is not clearly established law showing the failing to have the type of policies pointed to violate the Constitution. The Court should enter summary judgment in favor of Supervisory Robinson.

## **CONCLUSION**

For all the foregoing reasons, it is respectfully requested that the Court grant the Defendant's Motion for Summary Judgment, and dismiss the remaining supervisor liability claim with prejudice.

Respectfully submitted,

ANDREW BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY

By:   s/Chanell Branch
        Chanell Branch
        Deputy Attorney General