ANDREW J. BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625-0112
*Attorney for Defendant George Robinson*

By:  Chanell Branch
     Deputy Attorney General
     (609) 376-3367
     Chanell.Branch@law.njoag.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

|  |  |
|---|---|
| EDWIN POLYNICE, | : <br> : Civil Dkt.#2:19-cv-16875-MCA-LDW <br> : |
| Plaintiff, | : |
| v. | : **CERTIFICATION OF COUNSEL WITH** <br> : **EXHIBITS** |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et al., | : |
| | : |
| Defendants. | |

I, Chanell Branch, of full age hereby certify:

1.   I am a Deputy Attorney General employed by the State of New Jersey, Department of Law and Public Safety, which provides legal representation to the State of New Jersey and its entities and employees.

2.    I am assigned to the State Police, Employment, and Corrections Section of the Division of Law, which provides legal representation to the Department of Corrections and its employees.

3.    I represent Defendant George Robinson in the above-captioned matter. As such, I am familiar with the facts set forth herein.

4.    Attached hereto as "Exhibit A" is a true and accurate copy of Plaintiff's Complaint.

5.    Attached hereto as "Exhibit B" is a true and accurate copy of excerpts of Plaintiff's deposition transcript.

6.    Attached hereto as "Exhibit C" is a true and accurate copy of Plaintiff's Answers to Defendant's First Interrogatories.

7.    Attached hereto as "Exhibit D" is a true and accurate copy of Defendant Answers to Plaintiff's Interrogatories.


I hereby certify that the foregoing statements are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.


                        ANDREW J. BRUCK
                        ACTING ATTORNEY GENERAL OF NEW JERSEY

                        By:/s/ Chanell Branch
                           Chanell Branch
                           Deputy Attorney General

DATED: January 25, 2022

# EXHIBIT A

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

EDWIN POLYNICE,                          :
                                         :
                                         :
    Plaintiff                            :
                                         :
                                         :   Civil Action No.:
v.                                       :
                                         :   CIVIL ACTION
NEW JERSEY DEPARTMENT OF                 :
CORRECTIONS, NORTHERN STATE              :   **COMPLAINT**
PRISON, ADMINSITRATOR GEORGE             :   **AND JURY DEMAND**
ROBINSON, SERGEANT GIBSON                :
(individually), and S.C.O. JOHN DOE      :
(individually), JOHN DOES 1-10 AND       :
ABC ENTITIES A-Z                         :
                                         :
    Defendant                            :
                                         :

---

**NOW COMES**, Plaintiff, by and through the undersigned Counsel, and hereby bring this action against the Defendants as follows:

### INTRODUCTORY STATEMENT

1. This is a civil rights action brought pursuant to the State of New Jersey tort laws, the United States Constitution and 42 U.S.C. § 1983 seeking damages against Defendants for committing acts under color of law that deprived Plaintiff, Edwin Polynice, of his rights secured to him by the Constitution and laws of the United States of America.

2. In particular on October 11, 2017, Defendants violated the rights of Edwin Polynice by failing to keep him in a safe and secure environment where he could be kept free from

1

injury and harm, by failing to respect and abide by medical professionals, and by failing to adhere to adequately mandated medical regulations and custodial attention, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

3.   In addition, this action is brought by Plaintiff against Defendants under the Laws of New Jersey that relate to Prisoner rights to be kept in a safe and secure environment where he could be kept free from injury, harm, and death, by failing to provide him with adequate medical care and custodial attention, and by demonstrating deliberate indifference to Edwin Polynice's necessary medical accommodations.

## JURISDICTION AND VENUE

4.   Plaintiff's case arises under the Constitution and laws of the United States, specifically, the Eighth and Fourteenth Amendments to the United States Constitution.

5.   Plaintiff's suit is authorized by 42 U.S.C. § 1983 (allowing suit to correct constitutional violations) and 42 U.S.C. § 1988 (providing for attorney fees and litigation expense-awards).

6.   This Court has jurisdiction over Plaintiff's federal constitutional claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3).

7.   This case also arises under the law of the State of New Jersey that deal with Prisoners' Rights to be kept in a safe and secure environment free from injury, harm and death, and to receive adequate medical care and custodial attention.

8.   This Court has pendant jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367.

2

9.      Venue is proper under 28 U.S.C. § 1391 in that the incident took place in the County

of Essex, State of New Jersey, and upon information and belief, the Defendants are

employed in or around the County of Essex, State of New Jersey.

## PARTIES

10.     Plaintiff, Edwin Polynice, brings this action on behalf of himself and in his own right.

11.     Defendant, New Jersey Department of Corrections, located in the County of Essex, is

a county in the state of New Jersey and owns, operates, manages, directs and controls

the New Jersey Department of Corrections.  The Northern State Prison division of the

New Jersey Department of Corrections is located at 168 Frontage Rd, Newark, NJ

07114 (referred at times herein as the "Northern State Prison").

12.     Defendants, at all times material hereto, were the Administrators of the Northern

State Prison, located at 168 Frontage Rd, Newark, NJ 07114.  To the extent the Court

deems appropriate, Administrators of the Northern State Prison for the New Jersey

Department of Corrections and Defendants that were active participants in the events

leading to Plaintiff's injuries, such as S.C.O. John Doe, should be held liable in their

individual capacity.

13.     Defendant, Northern State Prison, is a law enforcement entity in the state of New

Jersey which operates, manages, directs and controls the Northern State Prison

facility within the County of Essex.

3

14.    Defendant, New Jersey Department of Corrections, is a law enforcement entity in the state of New Jersey which operates, manages, directs and controls the Northern State Prison facility within the County of Essex.

15.    Defendant, S.C.O. John Doe was at all times material hereto, employed by the Northern State Prison located at 168 Frontage Rd, Newark, NJ 07114.  Defendant, S.C.O. John Doe is sued in his individual capacity.

16.    Defendant, Sergeant Gibson, was at all times material hereto, employed by the Northern State Prison located at 168 Frontage Rd, Newark, NJ 07114.  Defendant, Sergeant Gibson is sued in his individual capacity.

17.    The Health Services Unit for the Department of Corrections for the State of New Jersey, with corporate offices located at 168 Frontage Rd, Newark, NJ 07114, was contractually engaged with the Northern State Prison and the New Jersey Department of Corrections to provide health care services for inmates at the Northern State Prison.

18.    At all times relevant hereto, Defendant, John Doe Personnel and/or Corrections Officers and/or Administrators, may contain fictitious names representing unnamed corrections officers and/or other individuals, employed with the Northern State Prison facility located at 168 Frontage Rd, Newark, NJ 07114, who were acting under the supervision of the New Jersey Department of Corrections, the Northern State Prison and Administrators of both agencies. These Defendants are sued in their individual capacities.

4

19.   All Defendants, for one or more entities, which were contracted to provide medical

and/or psychiatric services, counseling, security and custodial care to inmates under

the custody of the New Jersey Department of Corrections.

## FACTUAL ALLEGATIONS

20.   Plaintiff, Edwin Polynice, was incarcerated at the Detention Unit of Northern State

Prison on or about September 30, 2017.

21.   At said date, S.C.O. John Doe instructed Plaintiff, Edwin Polynice, to move into cell

104, on the *top* bunk.

22.   Plaintiff, Edwin Polynice, expressed to S.C.O. John Doe that due to mandated

medical restrictions and persistent medical issues, he was only permitted to be placed

on the bottom bunk.  Mr. Polynice further advised that his mandatory medical

accommodation was for the remainder of his incarceration.

23.   Following his explanation, Mr. Polynice was ordered to utilize the top bunk, and

S.C.O. John Doe reiterated that this order came from Sergeant Gibson.

24.   Given the gentlemen listed in ranking order, Plaintiff, Edwin Polynice was compelled

to comply with said order.

25.   On or about, October 1, 2017, at approximately 12:35 p.m., while attempting to

dismount from the top bunk, to take his daily shower, Plaintiff, Edwin Polynice,

became extremely dizzy and fell.

26.   During this fall, Plaintiff, Edwin Polynice, attempted to step down on the stool, but

slipped.  He fell, striking his head on the toilet and his leg against the stool.

27.   Post-fall, Mr. Polynice sustained severe injuries leading to thirteen stitches and five staples.

28.   Mr. Polynice also suffered from a dislocated right shoulder, severe neck pain, and bruising on his legs.

29.   Plaintiff, Edwin Polynice, required an extended stay in the prison infirmary for ten days due to these injuries.

30.   Throughout his time in the infirmary, he experienced debilitating headaches with the pain extending throughout his entire head, chronic pain in his facial area, ongoing dizziness, and a bruised leg.

31.   Additionally, Plaintiff, Edwin Polynice, continues to experience neck pain and lower back from, stemming from this incident, requiring ongoing physical therapy to treat his neck and his back.

32.   Upon information and belief, Defendants and representatives and/or employees of Defendant New Jersey Department of Corrections at all times material hereto, failed to properly evaluate Mr. Polynice's medical needs and restrictions, while simultaneously ignoring previously mandated medical advice.

33.   Furthermore, Mr. Polynice was ordered to be exposed to harmful and hazardous conditions.  Therefore, they failed to do their duty to maintain a safe and suitable environment, keeping Mr. Polynice safe from injury and harm.

34.   In the events described above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Mr. Polynice of his right and privileges secured by the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

35.   The failures of Defendants to properly protect and carry out medical instructions for Mr. Polynice's imminent risk for a head, neck, and back injuries demonstrated a deliberate indifference to and a conscious disregard for medical needs and requirements and the overall safety of Mr. Polynice.

36.   In the events described above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Mr. Polynice of his right and privileges secured by the United States Constitution and 42 U.S.C. § 1983.

37.   The failures of Defendants to properly adhere to Mr. Polynice's medically mandated restrictions, demonstrated a deliberate indifference to and a conscious disregard for the medical requirements and the overall safety of Mr. Polynice.

**FIRST CLAIM FOR RELIEF**
**FEDERAL CONSTITUTIONAL VIOLATIONS BY**
**ALL DEFENDANTS**

38.   The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

39.   Defendant, Northern State Prison, by and through their Administrator George Robinson and other policymakers, developed policies, procedures and/or customs which caused the deprivation of Plaintiff, Edwin Polynice's constitutional rights.

40.   Said policies were inherently deficient, or inappropriate as formulated, as to the adherence of mandated medical care provided to an inmate that presented with documented medical issues.

41.   Defendant Northern State Prison, by and through Defendant Administrator George Robinson and other policymakers, negligently, recklessly, and/or intentionally:

a.  failed to properly train and supervise Defendant Sergeant Gibson and Defendant S.C.O. John Doe with regard to adequately assessing, monitoring and providing necessary and reasonable accommodations for inmates with medical issues, including but not limited to inmates with documented medical restrictions and;

b.  failed to properly train and supervise Defendant Sergeant Gibson and Defendant S.C.O. John Doe, or other prison staff to maintain a safe and suitable environment, and to keep inmates safe from injury or serious harm;

c.  maintained policies, procedures and/or customs that were deliberately indifferent to the constitutional rights of inmates to be adequately screened for medical issues, to provide necessary and reasonable accommodations for inmates with medical issues; and to be kept safe from injury or serious harm;

d.  failed to enforce the contractual obligations of the Health Services Unit for the Department of Corrections for the State of New Jersey, to monitor and treat inmates with medical issues, including but not limited to inmates with documented medical restrictions;

e.  with full knowledge, allowed institutional policies and procedures regarding intake, medical screening, custodial watch and medical treatment to be ignored and violated with reckless abandon; and

f.  failed to provide adequate and needed health care for inmates at the Detention Unit of the Northern State Prison.

42.  The actions and/or failures to act by Defendant, Northern State Prison, Defendant Administrator George Robinson, Defendant Sergeant Gibson and Defendant S.C.O.,

8

as illustrated above, amounted to a deliberate indifference of Mr. Polynice's constitutional rights and proximately caused his injuries.

43.     The violation of Mr. Polynice's rights under the United States Constitution was the proximate cause of damages to Plaintiff, thereby entitling Plaintiff to compensatory damages from Defendants, Northern State Prison and Defendant Administrator George Robinson, Defendant Sergeant Gibson and Defendant S.C.O., in an amount exceeding $1,000,000.00.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## SECOND CLAIM FOR RELIEF
## LIABILITY OF DEFENDANTS NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON, ADMINISTRATORS GEORGE ROBINSON, SERGEANT GIBSON, AND S.C.O. JOHN DOE FOR FEDERAL CONSTITUTIONAL VIOLATIONS

44.     The allegations set forth in the proceeding paragraphs are incorporated by reference as if fully set forth herein.

45.     At all times relevant hereto, Defendants were acting under color of state law as employees or agents of the Northern State Prison and/or Health Services Unit of New Jersey, and/or if not employees or agents, by direction of and under the supervision and control of New Jersey Department of Corrections, the Detention Unit of Northern State Prison and/or Health Services Unit of New Jersey.

46.     The actions of Defendants as set forth above violated the late Mr. Polynice's rights under the Eighth and Fourteenth Amendments of the United States Constitution to be incarcerated in a safe and suitable environment, and to be safe from injury and harm while incarcerated at the Detention Unit of Northern State Prison.

9

47.  The violations of Mr. Polynice's rights under the United States Constitution was the severe and continuous injuries to Edwin Polynice, thereby entitling Plaintiff to compensatory damages from Defendants in their individual capacities.

48.  The actions of Defendants in their individual capacities were intentional, malicious, willful, wanton, and/or in reckless disregard of Plaintiff's federally protected rights, therefore entitling Plaintiff to an award of punitive damages.

49.  Plaintiff is entitled to recover damages against Defendants the individual capacity in an amount greater than $1,000,000.00.

50.  Plaintiff is entitled to recover reasonable attorney's fees and the costs and expenses of this action.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

### THIRD CLAIM FOR RELIEF
### SUPERVISORY LIABILITY OF DEFENDANTS
### ADMINISTRATOR GEORGE ROBINSON, AND
### SERGEANT GIBSON UNDER 42 U.S.C. § 1983

51.  The allegations set forth in the preceding paragraphs are incorporated by reference as is fully set forth herein.

52.  At all times relevant hereto, Defendant Administrator George Robinson, and Defendant Sergeant Gibson served as Administrators of the Northern State Prison, in Newark, New Jersey.

53.  Plaintiffs are informed, believe and therefore allege that on October 1, 2017, Defendant Administrator George Robinson, and Defendant Sergeant Gibson were aware of, should have been aware of, and/or had actual knowledge of the pattern and culture of unconstitutional behavior and indifference, including failure to properly

10

screen inmates for medical injuries, or other mental health problems, failure to adequately monitor and guard inmates, failure to have inmates properly treated medically, failure to have inmates provided necessary and reasonable medical accommodations, and failure to protect inmates from injury or harm whether self-inflicted or by other inmates, staff, employees and/or corrections officers at the Northern State Prison.

54.   As such, Defendant Administrator George Robinson, and Defendant Sergeant Gibson not only directed, encouraged, tolerated, acquiesced to this behavior, but were deliberately indifferent to the likelihood that their staff, employees and/or corrections officers would fail to properly screen inmates for medical issues, fail to adequately monitor inmates, fail to have inmates provided necessary and reasonable medical accommodations, fail to treat inmates medically and fail to protect inmates from injury or harm at the Northern State Prison.

55.   The deliberate indifference of Defendant Administrator George Robinson, and Defendant Sergeant Gibson as to the need for training and supervision of their staff, employees and/or detention officers was a proximate cause of the constitutional violations suffered by the Plaintiff, Edwin Polynice.

56.   The violation of Mr. Polynice's rights under the United States Constitution was a proximate cause of damages and harm to Plaintiff, thereby entitling Plaintiff to compensatory damages from Defendant Administrator George Robinson, and Defendant Sergeant Gibson in an amount exceeding $1,000,000.00.

**WHEREFORE**, the Plaintiff demands judgment against Defendant Administrator George Robinson, and Defendant Sergeant Gibson for compensatory and punitive damages, counsel fees and all costs of suit.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS BY DEFENDANTS
### NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON,
### ADMINISTRATOR GEORGE ROBINSON, SERGEANT GIBSON,
### AND S.C.O. JOHN DOE

57.   The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

58.   The Defendants were acting under color of law when they failed to properly provide medical accommodations for Plaintiff, Edwin Polynice, for medical issues, failed to adequately monitor Mr. Polynice while incarcerated at the Northern State Prison, and failed to protect Mr. Polynice from injury and harm.

59.   The Defendants failed to adequately train or otherwise have and maintain or enforce effective policies regarding the screening and care of inmates with medical restrictions, the adequate monitoring of inmates, and the protection of inmates from injury or harm.

60.   The Defendants, New Jersey Department of Corrections, Northern State Prison, Administrator George Robinson, Sergeant Gibson and S.C.O. John Doe were deliberately indifferent to the likelihood that Northern State Prison's staff, employees and/or Detention Officers, would fail to properly screen inmates for medical issues, fail to adequately monitor inmates, fail to properly provide necessary medical accommodations, and fail to protect inmates from injury or harm at the Detention Unit of Northern State Prison.

**WHEREFORE**, Plaintiff brings this cause of action and demands judgment against Defendants for compensatory and punitive damages, counsel fees and all costs of suit.

### FIFTH CLAIM FOR RELIEF
### NEGLIGENCE
### DEFENDANTS NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON, ADMINISTRATORS GEORGE ROBINSON, SERGEANT GIBSON, AND S.C.O. JOHN DOE

61. The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

62. Defendants owed a duty of reasonable care to Plaintiff, Edwin Polynice, and to others at the Northern State Prison, to properly screen inmates for medical issues, to properly and adequately monitor inmates, to treat inmates medically when indicated, to provide medical accommodations when necessary, and to protect inmates from injury or harm at the Northern State Prison.

63. The Defendants failed to use the requisite standard of care pursuant to sound policies and procedures and/or knowingly violated established policies and procedures with reckless abandon.

64. The actions and/or failures to act by the Defendants amounted to a breach of said duty of care to Mr. Polynice.

65. As a direct and proximate result of Defendants' negligence, Mr. Polynice was seriously injured while in the custody of the Northern State Prison on October 1, 2017.

66. Plaintiff is entitled to an award of compensatory damages against the above-referenced Defendants in an amount which exceeds $1,000,000.00.

13

**WHEREFORE,** the Plaintiff demands judgment against the Defendants for damages, counsel fees and all costs of suit.

## JURY DEMAND

The Plaintiff hereby demands trial by jury.

OPTIMUM LAW GROUP, P.C.

Dated: August 16, 2019                BY: _____
                                                                Joseph D. Lento, Esquire
                                                                3000 Atrium Way, Suite 200
                                                                Mount Laurel, NJ 08054
                                                                (T) 856-652-2000
                                                                (F) 856-375-1010
                                                                (E) jdlento@optimumlawgroup.com


OPTIMUM LAW GROUP, P.C.


Dated: August 16, 2019                BY: /s/ Lisa J. Pietras_____
                                                                Lisa J. Pietras, Esquire
                                                                3000 Atrium Way, Suite 200
                                                                Mount Laurel, NJ 08054
                                                                (T) 856-652-2000
                                                                (F) 856-375-1010
                                                                (E) ljpietras@optimumlawgroup.com

14

# EXHIBIT B

Page 10

1   go full-time or part-time?

2         **A   I went full-time.  I went full-time.**

3         Q   Okay.  And when you came to America did you

4   have children already or you had children when you came

5   here?

6         **A   No.  No.  I was in high school and I met my**

7   **girlfriend in high school and --**

8         Q   Got you.  Okay.  So let's just go back

9   because maybe it was my -- so when you came here you

10  went to high school here or you finished high school in

11  Haiti?

12        **A   No, I went to 11th grade in here.  Eleventh**

13  **and 12th.**

14        Q   Okay.  All right.  And then that's where you

15  met your girlfriend?

16        **A   Uh-huh.**

17        Q   Okay.  All right.  Now, when you first got

18  incarcerated in 2012, after I'm assuming you went to

19  CRAF, where they did your assignment --

20        **A   Yes.**

21        Q   -- and then where did you go after that?

22        **A   I went to South Wood State Prison.**

23        Q   All right.  That was the first prison.  And

24  while you were at -- well, let's go back.  Before you

25  went into incarceration did you have any health issues

USDC, District of NJ
No. 19-16875

Polynice v. New Jersey Department of Corrections, et al.
Deposition of Edwin Polynice

Tuesday
December 7, 2021

Page 11

1    before?

2          A     Diabetes.

3          Q     When were you first diagnosed with diabetes,

4    if you know?

5          A     **2002 when my daughter was born.**

6          Q     Okay.  Do you have Type 1 or Type 2, if you

7    know?

8          A     **Type 1.**

9          Q     Okay.  All right.  Were there any other

10   diagnoses you had prior to going into prison?

11         A     **Yes.  My Achilles tendon I -- was broke.**

12         Q     Okay.  And how did you -- how did that

13   happen?  Is that related to the diabetes or --

14         A     **No.**

15         Q     Okay.

16         A     **That was working issue.  I was working at**

17   **Fridays, I fell on the chair in the office.  I hit my**

18   **foot on the safe and that was -- I broke my Achilles**

19   **tendon.**

20         Q     Got ya.  So at that time when you hurt

21   yourself, when was that, what year was that?  Do you

22   remember what age you were?

23         A     **2012.  I went to prison with the boot on my**

24   **feet.**

25         Q     Okay.

Page 14

1   Prison there was a Bayside transfer?

2          A    Yes, ma'am.  Between -- when I was in

3   Northern they transfer me to Bayside.

4          Q    Got ya.  Okay.

5          A    And then back to Northern again.

6          Q    And then you went to South Woods and that's

7   where you ended your stay in prison?

8          A    Yes.

9          Q    Okay.  All right.  So you were -- you stated

10  that you were diagnosed with diabetes prior to entering

11  into the correction -- the Department of Corrections?

12         A    Yes.

13         Q    All right.  And while you were in the

14  Department of Corrections were you able to go see a

15  doctor or to get medical attention?

16         A    Yes, I do, but -- yes, I do see a doctor but

17  there's a lot of mistake in there.  I have high blood

18  pressure and I never see a kidney doctor when my kidney

19  was going bad.

20         Q    Okay.

21         A    And my diabetes wasn't treated fairly

22  because sometimes I miss my medication, I don't get my

23  medication on time.

24         Q    Okay.  So we'll get into that, but that's

25  not a part of this complaint.  Your complaint here was

USDC, District of NJ
No. 19-16875

Polynice v. New Jersey Department of Corrections, et al.
Deposition of Edwin Polynice

Tuesday
December 7, 2021

Page 16

```
1        A     Yes.

2        Q     Okay.  So when you entered into Department

3   of Corrections, let's say CRAF as well as I think you

4   stated you started at South Woods State Prison, at that

5   point you were given a bottom bunk restriction at that

6   time?

7        A     Yes.  Yes.

8        Q     And how do you know you were given a bottom

9   bunk restriction?

10       A     Because I got the paperwork.

11       Q     Okay.

12       A     I got -- I got a paper that says bottom bunk

13  restriction until the end of incarceration.  For the

14  remainder of incarceration.  I have a copy of it until

15  now.

16       Q     Okay.  You have a copy of that?  I don't

17  think I ever got that copy.

18       A     I got it here.  If you want it I can show it

19  to you.

20       Q     Okay.  I'll send a letter to Mr. Poreda

21  about getting that -- a copy of that.  And you received

22  that -- when did you receive that?

23       A     In South Wood State Prison.

24       Q     You received it from whom?

25       A     From the nurse.
```

USDC, District of NJ
No. 19-16875
Polynice v. New Jersey Department of Corrections, et al.
Deposition of Edwin Polynice
Tuesday
December 7, 2021

Page 18

1   given a bottom bunk?

2         **A    Yes.  Until I get to Northern State.  They**

3   **refused me and I don't got no choice.**

4         Q    Okay.  We'll get there.  So I just want to

5   go back to when you have the -- when you have the

6   restriction.  And when you had the bottom bunk

7   restriction you always had a bottom bunk, is that

8   correct, in your South Woods State Prison facility?

9         **A    Yes.**

10        Q    And how did you get that?  Is that something

11  you showed them the paper or is that something that they

12  knew?

13        **A    The officers?**

14        Q    Yes.  The --

15        **A    They all knew because it's in the system.**

16        Q    Okay.  So it's in the system.  So when it's

17  in the system that's something they could look at to see

18  that you're bottom-bunk restricted?

19        **A    Yes.**

20        Q    All right.  And if you're bottom-bunk --

21        **A    They all restrict -- if you don't have one,**

22  **they kick you off of the bottom bunk.  They always check**

23  **your paperwork.**

24        Q    Okay.  So if they know you have -- if

25  they -- and this is the same thing even at Northern

USDC, District of NJ          Polynice v. New Jersey Department of Corrections, et al.          Tuesday
No. 19-16875                         Deposition of Edwin Polynice                    December 7, 2021

Page 19

1  State, if they know you have a restriction they have to

2  give you the bottom bunk?

3       **A    They're supposed to.  But sometimes they**

4  **don't.**

5       Q    Okay.  But for you, let's say with South

6  Woods State Prison, because of that restriction --

7       **A    I don't have a problem.**

8       Q     -- you had no problem?

9       **A    No problem.**

10      Q    Okay.  So then let's talk about Northern

11 State Prison.  Well, we'll stay with South Woods State

12 Prison.  So you're at South Woods State Prison for four

13 years?

14      **A    Yes.**

15      Q    Straight?  You didn't go anywhere new?

16      **A    No.**

17      Q    Okay.  Then you -- at some point in between

18 you had gone to Bayside but you don't remember what time

19 frame that is?

20      **A    2018, after I finished -- after I went to**

21 **detention 2017, after I'm done they transfer me to**

22 **Bayside when my detention was over.**

23      Q    Okay.  So let's go back.  Let's talk about

24 that.  So you were in South Woods State Prison for four

25 years and then you -- you said for your detention.  What

Page 24

1       Q   Okay.  And you're at Northern State Prison

2  to serve your ad seg, basically?

3      **A**   **No, no, no.  For my -- when I finished my ad**

4  **seg time in Trenton State Prison they send me to**

5  **Northern State to be close to my family.**

6       Q   Okay, I got ya.

7      **A**   **I ask in the kiosk to transfer to Northern**

8  **State.**

9       Q   Okay.  So let's just do this one more time,

10  make sure we're clear about it.  So you were in South

11  Woods State Prison for four years, you get into a fight

12  with your bunky.  They transferred you -- you do the

13  hearing, they uphold the charge; is that correct?  Am I

14  saying it right?

15      **A**   **Yeah.  Yes.**

16       Q   Okay.  You go to Trenton State Prison for

17  your ad seg?

18      **A**   **Yes.**

19       Q   And you're there for --

20      **A**   **Before I finished I asked for a transfer to**

21  **Northern State close to my family.**

22       Q   Okay.  Got ya.  So when you are -- from

23  Trenton to Northern State Prison you are then no longer

24  in ad seg, that's where you're going to be?

25      **A**   **No, no, no.**

Page 26

1       Q    Okay.  And the date is August 2, 2021?

2      **A    Yes.**

3       Q    Okay.  So since we are right now -- you're

4  at Northern State Prison.  So while you were in Trenton

5  State Prison do you know if your bottom bunk restriction

6  was still in place?

7      **A    It should be because for the remainder of**

8  **incarceration.  That's what the paper said, for the**

9  **remainder of my incarceration.  I didn't go away, I'm**

10  **still there so my bottom bunk should still exist for the**

11  **remainder of the incarceration, meaning the end of my**

12  **incarceration.**

13      Q    Okay.  Did you have any problems in Trenton

14  State Prison in regards to bottom bunk or top bunk

15  status?

16      **A    I was in bottom bunk.**

17      Q    Okay.  So there was no issues?

18      **A    No.**

19      Q    Okay.  Because at that time it was in the

20  system so the correction officers were supposed to keep

21  you in the bottom bunk; is that correct?

22      **A    Yeah.  The remainder of the incarceration.**

23  **Everywhere I go it should still be there.**

24      Q    Okay.  So there did come a point when your

25  bottom bunk restriction was removed; is that correct?

Page 28

1          Q     Okay.

2          **A      -- and they told me I need bottom bunk.**

3    **But when I get to Northern State they talk about I'm too**

4    **young.  The age doesn't matter.  I tell them my age**

5    **doesn't matter, but I'm sick.**

6          Q     Okay.  So let's just break this apart.  So

7    while you were at South Woods State Prison it was in the

8    system that you were bottom-bunk restricted and you

9    received the bottom bunk; is that correct, by the

10   officers?

11         **A     Yes.  I got paperwork to prove it.**

12         Q     Okay.  And then while you were in Trenton

13   State Prison for your ad seg for the .4 disciplinary

14   charge you also were bottom-bunk restricted; is that

15   correct?

16         **A     Yes.**

17         Q     All right.  And you received your bottom

18   bunk by the officers; is that correct?

19         **A     Yes.**

20         Q     Okay.  Now, while you were at Northern

21   State, because you asked for that transfer, you saw a

22   medical doctor on January 24, 2017; is that correct?

23         **A     And she revoke it.**

24         Q     And she revoked it; is that correct?

25         **A     But it was still in the system, yeah.**

Page 29

1     Q    But what was still in the system?

2     **A    The bottom bunk.  But she revoke it.**

3     Q    Okay.  So you have the paperwork, you're

4  saying that it was supposed to be bottom bunk, but you

5  have this nurse who revoked it; is that correct?

6     **A    Yes.  But I was arguing with it.**

7     Q    Okay.  But you were -- one more time?

8     **A    I said I wasn't accept it.  But I can't do**

9  **nothing.  Whatever they want, that's what I have to do.**

10     Q    Okay.  Did you ever make or file a grievance

11  with the Department of Corrections stating that you had

12  this restriction and the nurse revoked it?

13     **A    To the kiosk.  From the kiosk.**

14     Q    You did do that in the kiosk?  Do you

15  remember what time you did this in the kiosk?

16     **A    No, I don't remember what time.  I spoke to**

17  **a lady -- to the L-T, to the lieutenant.  I spoke to**

18  **everyone there.  They tell me whatever the nurse said,**

19  **that's what they going to go by.**

20     Q    Okay.  So you had told --

21     **A    I said the L-T said whatever the nurse said,**

22  **that's what he had to go by.**

23     Q    And by L-T you mean lieutenant?

24     **A    Yes.**

25     Q    Okay.  And lieutenant usually is a

Page 30

1  correction officer, a higher-rank correction officer?

2      A    Higher rank, yes.

3      Q    And he said whatever the nurse says is what

4  they have to go by?

5      A    Yes.

6      Q    Because you might have the paper but they're

7  going by what was in this -- in their system; is that

8  correct?

9      A    Yeah.  But when I get to ad seg the L-T

10  said, no, you bottom bunk.  He put me on bottom bunk on

11  Cell 112.

12      Q    Okay.  So when you say ad seg, ad seg though

13  was at Trenton State -- that's Trenton State Prison; is

14  that correct?

15      A    No.  In detention.

16      Q    Detention was in --

17      A    Detention was in Northern State.

18      Q    Okay.  So tell me the difference -- what's

19  the difference between detention and ad seg?

20      A    It's the same thing.  Detention you don't

21  get -- you don't get guilty yet.

22      Q    Okay.

23      A    But ad seg you're found guilty.

24      Q    So at Trenton State -- at Trenton State

25  Prison you were in detention?

Page 33

1      Q    We'll get there.  We're not there yet.  I'm
2  just trying to get a timeline --
3      A    Okay.
4      Q    -- so the record could be clear.
5      A    Okay.
6      Q    All right.  So we'll go back to January 24,
7  2017 when the nurse took away your restriction.  You
8  were at Northern State Prison?
9      A    Yes.
10     Q    But you were in general population?
11     A    Yes.
12     Q    Okay.  And during that time that you were in
13  the general population after she restricted -- she took
14  out your restriction where were you -- what -- at that
15  point, from like January to September 2017, were you
16  always on the bottom bunk?
17     A    No, I was not.
18     Q    Okay.  And that was because January 24, '17
19  she took away that restriction; is that correct?
20     A    Yes.  I tried to get it back but it wasn't
21  easy.
22     Q    Okay.  All right.  And you stated that the
23  lieutenant told you that the reason why you couldn't do
24  the bottom bunk is because if the doctor said no, they
25  couldn't necessarily override what the doctor said; is

USDC, District of NJ
No. 19-16875

Polynice v. New Jersey Department of Corrections, et al.
Deposition of Edwin Polynice

Tuesday
December 7, 2021

Page 34

1   that correct?

2          A    Yes.

3          Q    Okay.  Or the doctor or the nurse said or

4   any type of medical staff said; is that correct?

5          A    Yes.

6          Q    Okay.  So then you said September 22, 2017

7   you're in general population, still at Northern State

8   Prison?

9          A    Uh-huh.

10         Q    And you get into another fight with your

11  bunky?

12         A    My bunky, yes.

13         Q    Okay.  At that time they then put you in

14  detention due to that charge; is that correct?

15         A    Yes.

16         Q    All right.  While you're in detention you're

17  in what cell?

18         A    Cell 112, bottom bunk.

19         Q    Okay.  You're in Cell 112, bottom bunk.  Is

20  there anybody else in that cell with you or are you by

21  yourself?

22         A    Somebody was there for a moment and he left

23  next day.

24         Q    Okay.  And you say you were on the top bunk

25  in that cell?

USDC, District of NJ
No. 19-16875
Polynice v. New Jersey Department of Corrections, et al.
Deposition of Edwin Polynice
Tuesday
December 7, 2021

Page 36

1    there -- it's a direct order from Sergeant Gibbons, if I

2    don't go up there it's another charge for me refusing to

3    obey order.  So I don't have no other choice but to

4    comply to that.

5            Q    Okay.  Before we get into that.  So the

6    nurse on January 24, 2017 revokes your restriction and

7    you state that while you were at Northern State in the

8    general population you were -- you were put on top bunk

9    restriction there as well; is that correct?

10           A    Yeah.

11           Q    Okay.  And you stated that you had -- how

12   many times, I should say this, did you make any

13   complaints on the kiosk about your bottom bunk res --

14   top bunk -- bottom bunk --

15           A    Any time I go to the doctor, to the nurse I

16   tell them I need my bottom bunk back.  She tell me, I'm

17   going to do it, I'm going to do it, but never fix it.

18   So I complained.

19           Q    How many times did you complain, do you

20   remember?

21           A    I said any time I go there for them to

22   change the bottom bunk she told me, yes, I'm going to

23   change it in the system but never get it done.  So when

24   I get to my unit I complain in the kiosk.

25           Q    Do you know how many times?  Can you

Page 37

1  estimate how many times?  If not, it's fine, but I'm

2  just curious.

3       A    At least five or 10 times.

4       Q    Okay.  And this was --

5       A    I can pay my $5 to go see her about my

6  bottom bunk because my diabetes bother, I can't go in

7  the top bunk.  She told me, I'm going to change it for

8  you, I'm going to change for you, which never get done.

9       Q    Is this the same nurse that said it or this

10  was a different nurse?

11       A    The head nurse.

12       Q    Okay.  Do you remember her name?

13       A    No, not really.

14       Q    Okay.  All right.  So -- and this was in --

15  this had to be you said at least five times within 2017

16  because that's when -- that's when she restricted or she

17  removed --

18       A    Yeah, when she -- before that time.

19       Q    Okay.

20       A    Before I was in detention.

21       Q    Okay.  You made complaints?

22       A    Uh-huh.

23       Q    Okay.  All right.  So when you -- you stated

24  that when you went to detention in Northern State

25  Prison, at that point you were assigned to a bottom

USDC, District of NJ
No. 19-16875

Polynice v. New Jersey Department of Corrections, et al.
Deposition of Edwin Polynice

Tuesday
December 7, 2021

Page 41

1    when you were in Cell 112.  Although the paperwork says

2    you got top bunk, you're saying that you were in the

3    bottom bunk?

4         **A    I was in bottom bunk.**

5         Q    Okay.  But you -- you also stated that while

6    you were in the general population at Northern State

7    Prison you didn't always have a bottom bunk, you would

8    have top bunk sometimes as well; is that correct?

9         **A    Yes, I did.**

10        Q    Okay.

11        **A    From when I get there to -- until I get into**

12   **the fight.**

13        Q    Okay.  And that's because of the fact that

14   your restriction was taken at the beginning of the year?

15        **A    Yeah.**

16        Q    All right.  So then you get assigned to 104?

17        **A    104, top.  I tell them I cannot be on 104**

18   **because of my restriction.  And then that's when --**

19   **that's when I fall, from the top bunk.  That's when I**

20   **fell.**

21        Q    Okay.  You tell them that's your restriction

22   but you also -- you also admit that the nurse revoked

23   the restriction, correct?

24        **A    But I was in the bottom bunk.  Maybe they**

25   **revoke it, but not supposed to revoke it.  They saw it**

USDC, District of NJ
No. 19-16875

Polynice v. New Jersey Department of Corrections, et al.
Deposition of Edwin Polynice

Tuesday
December 7, 2021

Page 48

1          Q     But we can also can agree that during that

2    time your bottom bunk restriction had been revoked by

3    the nurse; is that correct?

4          A     It shouldn't be.  He told me he was going to

5    fix it.  My papers say no.  My papers say it's fine

6    until the remainder of my incarceration.  So there's no

7    revocation there.  My papers say for the remainder of my

8    incarceration.  I was arguing that the entire time.

9    It's right there on the paper, for the remainder of my

10   incarceration.  And I still got diabetes and I still

11   feel dizzy.  I said, can I -- there's no reason to go

12   there.

13         Q     Okay.  But we can agree that even in the

14   Rogs that you certified to you state that on January 24,

15   2017 a nurse revoked your bottom bunk restriction; is

16   that correct?

17         A     Yeah, because they got the power to do so.

18   I can do nothing to do about it.

19         Q     Okay.

20         A     They can do whatever they want.

21         Q     Okay.  So do you remember what happened

22   after your fall?

23         A     I went through -- through infirmary and I

24   got 13 stitches, staples in my back and all that.  I

25   remember all that.

USDC, District of NJ
No. 19-16875

Polynice v. New Jersey Department of Corrections, et al.
Deposition of Edwin Polynice

Tuesday
December 7, 2021

Page 50

1    Q    What surgeon?

2    **A    Like a high-rank officer.**

3    Q    One more time?

4    **A    Higher-rank officer before the L-T.**

5    Q    Okay.  So let's -- let's go back because I

6    think you're still moving a little bit forward than I'm

7    going.  So you felt dizzy and you -- you slipped?

8    **A    The thing is I was sleeping and the unit**

9    **officer called me to take my daily shower at 12 --**

10   Q    Before you go on, do you know the name of

11   the unit officer?

12   **A    The second shift officer, 12:35.**

13   Q    Okay.  But you don't know his name?

14   **A    No, I don't know the name.**

15   Q    Okay.  So he woke you up to take your

16   shower?

17   **A    Yeah.  While I tried to get up my sugar went**

18   **low because I'm diabetic.  So I'm trying to get down to**

19   **the stool, I'm -- my sugar went low, I fall.  My feet**

20   **stuck on the stool and my head go in the toilet, on the**

21   **metal, and my head bust open.  And I hit my -- my left**

22   **side of my neck.**

23   Q    And do you recall what happened then?  Do

24   you know if they called a Code 53?

25   **A    They called Code 53.**

USDC, District of NJ          Polynice v. New Jersey Department of Corrections, et al.          Tuesday
No. 19-16875                              Deposition of Edwin Polynice                    December 7, 2021

Page 53

1      Q     Okay.

2      A     I had 10 stitches in my head and five

3   staples.  It was really big.  It was deep.  So since

4   then I'm not the same.  I got headache.  And my headache

5   never go away till now till the present.  I still take

6   the Tylenol for the pain.  It never go away.  Right

7   through my middle of the head all the day.  I'm always

8   -- every night I take Tylenol.  I still have headache,

9   it never go away.  And my back, my shoulder, I still

10  have pain.  This, I still got pain on there.

11     Q     Okay.  So the pain that you still experience

12  is headaches and your shoulder?

13     A     And my neck, shoulder all the time.

14     Q     Okay.  So those are the pains that you

15  experience going -- since the accident?

16     A     Since the accident.  Never go -- my neck, my

17  head and my back a little bit.

18     Q     Okay.  So after that your restriction was

19  put back into -- into the system; is that correct?

20     A     Yes.

21     Q     Okay.  And since you've had -- and since

22  they put the restriction back, up until you were

23  released, you continued to have a bottom bunk?

24     A     Yes.

25     Q     So it was only during the time that the

Page 54

1    restriction was revoked that you had the issues of being

2    on the top bunk?

3          **A     Yes.  I have issues being on the top bunk.**

4    **When they revoke it, I have a problem with that because**

5    **I ain't supposed to be on the top bunk due to my**

6    **illness.**

7          Q     I understand.

8          **A     Not only that my Achilles tendon was broke,**

9    **I couldn't stand -- still I was limping one side.  And**

10   **the diabetes, my sugar went low easy, I felt dizzy, I**

11   **easy to fall because diabetes will drop you if your**

12   **sugar went low.**

13         Q     So I think we're on the same page.  When you

14   had the restriction or when the restriction was in the

15   system you never had an issue with -- they always put

16   you on the bottom bunk; is that correct?

17         **A     Yes.**

18         Q     And when the restriction was revoked, even

19   though you didn't agree with it, when it was revoked

20   that was the only issue -- time you had where they would

21   put you on the top bunk; is that correct?

22         **A     Yes.**

23         Q     Okay.  Now let's just go -- I think we are

24   clear with those -- with those events or those

25   statements.  And basically when you had told -- talked

USDC, District of NJ
No. 19-16875

Polynice v. New Jersey Department of Corrections, et al.
Deposition of Edwin Polynice

Tuesday
December 7, 2021

Page 56

1    issue, right?

2         A    Yes, only Northern State.

3         Q    Okay.  But while you were in -- how long did

4    you stay in Northern State?

5         A    Not too long.

6         Q    After the incident how long were you in

7    Northern State?

8         A    After the incident I was there from -- for

9    three months from the accident time and went back

10   Bayside and came back Northern State.

11        Q    Okay.  So after the restriction was put in

12   place though or after they -- they remedied the issue,

13   meaning now the medical staff said that you were

14   lower-bunk restricted, you always continued to be on the

15   low bunk even at Northern State Prison after that,

16   right?

17        A    When I came back.

18        Q    You had no issues?

19        A    No.  When I came back second time everything

20   was fixed.

21        Q    Because now in the system it has you as

22   lower-bunk restricted, that's correct?

23        A    Yes.  Yes.

24        Q    Okay.  So we want to go down to -- I think

25   we're almost done.  We'll go down to your damages.  So

USDC, District of NJ
No. 19-16875

Polynice v. New Jersey Department of Corrections, et al.
Deposition of Edwin Polynice

Tuesday
December 7, 2021

Page 57

1   what are you seeking?

2          A    I'm seeking my head.  I still have headache

3   every night.  My neck still hurt me.  My back still hurt

4   me.  All the same pain from that fall.  I wasn't like

5   that.  I can't even stay on my back for long because the

6   fall.  And my head, my neck.  I still have headache.

7   I'm taking Tylenol every night.  I got a bunch of

8   Tylenol at home because of headache from that fall.

9          Q    Okay.  So before we even get there, so when

10  did you get released?

11         A    On November 4, 2020.

12         Q    Okay.  And you're in New Jersey?

13         A    Yes, I am in New Jersey.

14         Q    Okay.  Are you working?

15         A    Because I'm forced to.  I'm not supposed to.

16  But I'm forced to by the State.  My parole officer tell

17  me I have to work when my doctor tell me I can't work.

18  There's a confusion right now.  I was collecting

19  Disability because I cannot work, but they stop my

20  Disability right now because they said I work too much.

21  And my parole officer tell me I have to work.  And the

22  State saying I'm not supposed to work because I'm

23  collecting Disability.  So it's -- I force myself to

24  because I have kidney disease.  I'm on dialysis.

25         Q    Okay.  So let's just -- so you work -- you

# EXHIBIT C

Michael Poreda, Esq. # 025492010
**WRONKO LOEWEN BENUCCI**
69 Grove Street
Somerville, NJ 08876
PH: (908) 704-9200
FAX: (908) 704-9291
poreda@poredalaw.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN POLYNICE, | |
| Plaintiff, | Civ. Dkt. No. 2:19-cv-16875-MCA-LDW |
| v. | **PLAINTIFF'S ANSWERS TO DEFENDANTS' FIRST INTERROGATORIES TO PLAINTIFF** |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et. al. Defendants. | |

## ANSWERS TO INTERROGATORIES

1. Identify in accordance with the instructions, each and every person who has knowledge or information relevant to this action, providing the full name and title of each such person and a description of the area and nature of his or her knowledge.

   **Answer**:

   **Edwin Polynice - regarding all aspects of the Complaint.**

   **Quadir Fowler, SBI 156261C – with regard to Plaintiff's being assigned to the top bunk in cell 104.**

   **Dr. Sandra Connolly – with regard to Plaintiff's entitlement to a bottom bunk.**

   **Dr. Mackinam Ganesh – with regard to the extent of Plaintiff's injuries.**

   **Physical Therapist Franklin Kumar – with regard to treatment needed to treat Plaintiff's injuries.**

   **Officers Raymond Reyes and Ryan Molloy – with regard to Plaintiff's bunk assignment in cell 104**


2. Identify each person you intend to call as a witness at trial, including any experts, and provide a summary of his or her anticipated testimony.

   **Answer**: **Edwin Polynice will testify that he was assigned a bottom bunk permanently in 2013 due to his uncontrollable high blood pressure, diabetes, diabetic neuropathy in his feet, as well as a torn Achilles tendon. These disabilities substantially limited his ability to climb and jump. He often experienced dizzy spells from fluctuations in blood sugar and from uncontrollable high blood pressure. On January 24, 2017, Latifa Fedai, APN revoked his bottom bunk restriction at Northern State Prison and didn't tell the Plaintiff why, except for a vague excuse that he didn't meet the standards. On September 30, 2020, Plaintiff was told by either Ofc. Molloy or Ofc. Reyes to move to cell 104 in Delta Unit, where he was assigned a top bunk. Although records may say that he was assigned the bottom bunk, when the Plaintiff arrived at the cell, Quadir Fowler was already assigned to the bottom. Moreover, when Plaintiff requested to be switched due his disability, the request was denied by the Officer (either Reyes or Molloy), with the officer citing that the command came from Sergeant Gibbons. On October 1, 2017 at approximately 12:35pm, while attempting to dismount from the top of the bunk to take a shower, Plaintiff Polynice became extremely dizzy and fell. During the fall, Polynice attempted to land on a stool, but**

he slipped.  He fell, striking his head on a the toilet and his leg against the stool.  A code 53 was called.  There was blood everywhere.  Post-fall, Polynice sustained severe injuries leading to thirteen stitches and five staples.  Mr. Polynice also suffered a dislocated shoulder, severe neck pain, and bruising to his legs.  Mr. Polynice required an extended stay in the infirmary. On October 2, 2017, Plaintiff told Dr. Connolly that he was supposed to have been assigned to the bottom bunk due to diabetes and Achilles tendon problems. She saw no active bottom bunk restriction in his chart.  She agreed that he should have been in the bottom bunk and told him she would renew his bottom bunk restriction.  Throughout his time in the infirmary, he experienced debilitating headaches, chronic facial pain, and ongoing dizziness.  Polynice continued to experience constant neck pain, headaches, and lower back pain while he remained incarcerated.  Despite ongoing pain, he was never given any diagnostic treatment other than Tylenol.  Now released from prison, Polynice has sought diagnosis and treatment of his injuries.  He has been seeing a physical therapist and is awaiting an MRI.

**Quadir Fowler, SBI 156261** – Fowler was Plaintiff's cellmate on October 1, 2017. Fowler was already assigned to cell 104 when Polynice was placed there, and Fowler was already using the bottom bunk.

**Officer Raymond Reyes** – will testify that he placed Plaintiff in cell 104 and did not re-assign Quadir Fowler to the top bunk.  Plaintiff asked him for permission to sleep on the bottom bunk.  Reyes denied the request, stating that the command had come from Sgt. Gibbons.  In the alternative, **Officer Ryan Molloy** will testify to the same thing.

**Franklin Kumar**, 576 Evergreen Place, East Orange, NJ 07108 is Plaintiff's physical therapist.

**Dr. Manickam Ganesh**, 24 Park Ave., West Orange, NJ 07052 is Plaintiff's Primary Care Physician.

.

3.      State whether Plaintiff has obtained a statement from any person not a party to this action in connection with the allegations set forth in Plaintiff's Complaint.  If so, state the following with respect to each statement:

        (a)      the name and  present address of the person who gave the statement

        (b)      the substance of the statement.

**Answer: No**

4.      Provide in specific detail the claim of securing a bottom bunk informally referred to in paragraph #23 of your complaint.

**Answer**: **Plaintiff was ordered to use a top bunk before as well.  Plaintiff retracts paragraph 23 of the Complaint.**

5.      Identify all policies and/or procedures you claim violate any of your rights in relation to your claims in this case.

**Answer**: **N.J.A.C. 10A:31-3.6 states "A qualified inmate with a disability shall be housed in a manner that provides for his or her safety, security, and accessibility to facility programs and activities.  Rooms sleeping units, or housing units shall be designed for use by qualified inmates with disabilities."**

6.      For each Defendant you contend violated your rights, do you contend that they knew or should have known their actions violated your rights?  If so, for each Defendant identify the actions you allege were violations and why they knew or should have known the actions were violations.

**Answer**: **Reyes, Molloy, and Gibbons knew that Plaintiff sought a reasonable accommodation for his documented disability.  Failing to take any action with regard to his request violated Plaintiff's rights.**

7.      Identify any policy alternatives you allege could accommodate your right without posing additional security concerns for the prison.

**Answer:  Assigning Plaintiff a bottom bunk whether formally or informally.**

8.      Set forth any administrative procedures or policies that you claim any Defendant violated, identifying the Defendant you claim did so.  Provide all basis for that belief.

**Answer: See # 5**

9.      Other than the present action, state whether you were a party to any other civil actions.  If so, please state the name of the civil action, where it was filed, the disposition of the action, and briefly describe the claims underlying that those lawsuits.

**Answer: No**

10.     Identify each individual who assisted in the preparation of the answers to these interrogatories and identify each specific interrogatory to which each such person contributed information.

**Answer: Michael Poreda**

11.     Set forth all communications (including letters and/or conversations) you have had and the substance of those conversations any other individual, including other inmates, family members, friends, or other parties regarding this case or the issues raised in this case.

**Answer: None**

12.     State whether you contend that any declaration against interest with regard to the issues in this lawsuit has been made by any person, and if so, set forth with particularity the substance of each such declaration against interest, the identity of the person making the declaration, the identity of any persons present when the declaration was made and the location and date of the declaration.  If the declaration against interest is in writing, kindly attach a copy to your answers to these interrogatories.

**ANSWER: Dr. Connolly told Plaintiff he should be on the bottom bunk on October 2, 2017.**

13.     Identify each and every file or document that relates to the allegations and/or issues in this case, whether or not the file or document is in your possession or available to you, stating the physical location of the file or document and the name of its custodian or custodians.

**ANSWER:**

**The following documents obtained from Defendants, and Bates-Stamped as follows:**

**E.Polynice.Special.Custody.Report 1-7**
**E.Polynice.Housing.Location.History 8**
**E.Polynice.10.1.17.EMRs. 9-13**
**E.Polynice.Face.Sheet 1401-1406**
**E.Polynice.Fowler.Housing.Location.History 1857-1869**
**E.Polynice.004Charge 1870-1913**

14. State whether you have obtained any statement from any person not a party to this action. If so, state with particularity:

    (a)     The name and address of the person or persons giving the statement and the date such statement was obtained;

    (b)     If in writing, attach a complete copy;

    (c)     If oral, the name and address of the person obtaining this statement and the substance of the statement.

**ANSWER:  Quadir Fowler, believed to be living at 315 Handy Street, New Brunswick, NJ 08901.  His statement has been produced by Defendants and is Bates Stamped as E.Polynice.Special.Custody.Report 6.**

15. Set forth in detail all elements or categories of any damages claimed in this action.

**ANSWER:**

**Lost wages: Due to the damage caused by the accident, Plaintiff is permanently disabled and cannot resume his job of chef, where he made $15/hr.**

**Medical expenses.  Plaintiff will continue to need treatment of his injuries for the rest of his life, with estimated costs at $1 million.**

**Pain and Suffering Damages:  Plaintiff has suffered and will suffer non-economic damages of $1 million.**

16. As to each element or category of damages identified in the answer to the preceding interrogatory, provide a complete and detailed computation of the amount of damages claimed. Identify or provide a copy of all documents or other evidentiary material upon which your computation is based, including material bearing on the nature and extent of injuries allegedly suffered.

**ANSWER: See # 15**

17. If you have ever been a party to a lawsuit, either civil or criminal, other than the present suit, state separately as to each lawsuit:

    (a)     The caption and docket number of the lawsuit;

    (b)     Your status in the lawsuit;

    (c)     A complete description of the nature of the lawsuit;

    (d)     The jurisdiction in which the lawsuit was filed;

    (e)     The date the lawsuit was filed;

    (f)     The date and place of the trial of the lawsuit;

    (g)     The outcome or disposition of the lawsuit, including the date and amount of any judgment or settlement.

**ANSWER: Plaintiff plead guilty to attempted murder in Essex County Court in 2011.**

18. If you have made a claim for workers' compensation benefits, any federal or state disability insurance, or any other disability insurance during the past ten years, set forth

        a.  the date of each such claim;

        b.  the docket number and district hearing office of any adjudicated claim;

        c.  the disposition of each such claim;

      d.   any and all payments and benefits received in connection with each such claim;

      e.   the names and addresses of any and all insurance providers and medical service providers from whom you received treatment or benefits in connection with each such claim.

**ANSWER:  Plaintiff applied for and received social security disability benefits.  He does not remember the date.  He began receiving the benefits in March 2021.**

19. Identify all medical service providers with whom you have treated after your release from incarceration, including:

      a.   the full name, title and address of each such service provider;

      b.   the dates of all such services;

      c.   the dates of all such services;

      d.   the complete cost of services received;

      e.   any insurance policies providing coverage for the services you received.

**NOTE:**  Please note that copies of a HIPAA release form are attached to these Interrogatories.  Please complete and return these forms with your discovery response to Interrogatory 13, as required by R. 4:17-4(f).

**ANSWER:**

**Dr. Manickam Ganesh, 24 Park Ave, West Orange, NJ 07052. Dates and costs of service and use of insurance are information that can be obtained with enclosed HIPPA release.**

**Franklin Kumar, Physical Therapist, 576 Evergreen Place, East Orange, NJ 07018.  Dates and costs of service and use of insurance are information that can be obtained with enclosed HIPPA release.**

20. Have you filed for and/or are you receiving any type of social security benefits, including but not limited to service, disability, accidental benefits?  If so,

      a.   When did you apply and for what type of benefits did you apply for?

     b.   What is the current status of your application for benefits?

     c.   What attorney, if any, is or has represented you in your claim for benefits;

     d.   If you are receiving any type of benefits, what specific benefits are you receiving and what date did you start receiving those benefits?

**ANSWER:  Getting social security disability benefits. No attorney was used.  Started getting them March 2021.**

_____

## CERTIFICATION

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

I certify that the copies of the documents annexed hereto are exact copies of the entire original document, that the existence of any other documents which have been requested by these interrogatories is unknown to me or unavailable to me, and if such become later known or available, I shall serve them promptly upon the propounding party.

I hereby certify that the copies of the reports annexed hereto rendered by proposed expert witnesses are exact copies of the entire report or reports rendered by them; that the existence of other reports of said experts, either written or oral, is unknown to me, and if such become later known or available, I shall serve them promptly on the propounding party.

_Edwin Polynice_
EDWIN POLYNICE

DATED: 08-02-2021

# EXHIBIT D

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Market Street
PO Box 112
Trenton, New Jersey 08625-0112
    Attorney for Defendant New Jersey Department of Corrections

By:  Chanell M. Branch
     Deputy Attorney General
     Attorney ID#:029342010
     Phone:(609)376-3376

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
VICINAGE OF NEWARK

| | | |
|---|---|---|
| _____ : | HON. MADELINE COX ARLEO, U.S.D.J. | |
| EDWIN POLYNICE,         : | HON. LEDA DUNN WETTRE, U.S.M.J. | |
|                  : | | |
|       Plaintiff,   : | Civil Action No. 19-16875 (MCA-LDW) | |
|                  : | | |
|   v.              : | NEW JERSEY DEPARTMENT OF | |
|                  : | CORRECTIONS' ANSWERS TO PLAINTIFF'S | |
| NEW JERSEY DEPARTMENT OF : | FIRST SET OF INTERROGATORIES | |
| CORRECTIONS, et al.   : | | |
|                  : | | |
|       Defendants.  : | | |
| _____: | | |

TO:  Michael Poreda, Esquire
     WRONKO LOEWEN BENUCCI
     69 Grove Street
     Somerville, New Jersey 08876

       PLEASE TAKE NOTICE that Defendants, New Jersey Department of Corrections and Administrator George Robinson, ("hereinafter, Answering Defendants"), by way of response to Plaintiff's First Set of Interrogatories, hereby submits the following answers and objections pursuant to Fed. R. Civ. P. 33:

## OBJECTIONS DEFINED

1. Defendant objects to each interrogatory that is undue burden in that it requires Defendants to provide information which is beyond the scope of the personal knowledge of the individuals answering these interrogatories and within the scope of personal knowledge of person(s) unknown to the individuals answering these interrogatories or person(s) over whom these Defendants have no control.  This objection shall be referred to hereafter as the **"absence of control"** objection.

2. Defendant objects to each interrogatory that would impose an excessive or undue burden or that is made with the intent to harass.  This objection shall be referred to hereafter as the **"undue burden"** objection.

3. Defendant objects to each interrogatory that is vague, ambiguous, overly broad, includes compound or multiple questions, or otherwise lacks sufficient definition to permit these Defendants to formulate a meaningful response.  This objection shall be referred to hereafter as the **"ambiguous"** objection.

4. Defendant objects to each interrogatory that seeks information prepared or developed in anticipation of litigation or subsequent to the filing of this lawsuit by or through the direction of legal counsel on the grounds that such material is protected from disclosure as attorney-work-product.  This objection shall be referred to hereafter as the **"work-product"** objection.

5. Defendant objects to each interrogatory that seeks information which is irrelevant to the issues in this matter and is not reasonably calculated to lead to the discovery of relevant admissible evidence.  This objection shall be referred to hereafter as the **"relevance"** objection.

6. Defendant objects to each interrogatory that seeks information that is protected from disclosure by the attorney/client privilege.  This objection shall be referred to hereafter as the **"privilege"** objection.

7. Defendant objects to each interrogatory that seeks disclosure of information that is confidential or that contains

proprietary information. This objection shall be referred to hereafter as the **"confidentiality"** objection.

8. Defendant objects to each interrogatory that is repetitive in nature, excessive, and harassing.  This objection shall be referred to hereafter as the **"repetitive"** objection.

9. Defendant objects to each interrogatory that lacks sufficient foundation to understand, uses terms that have not been defined, assumes facts not of record, uses terminology known only to Plaintiff, or is otherwise unintelligible in form. This objection shall be referred to hereafter as the **"form"** objection.

10.    Defendant objects to each interrogatory that requests information that is broader than the Plaintiff's allegations. Defendant objects to requests for "all documents" or "all witnesses" and the like to the extent that they purport to require information of which Defendant is unaware.  This objection shall be referred to hereafter as the **"overly broad"** objection.

11.    Defendant objects to each interrogatory which seeks information about events outside the relevant time frame identified in the complaint or outside the statutory time limits for bringing a complaint.  This objection shall be referred to hereafter as the **"time frame"** objection.

12.    Defendant objects to each interrogatory that requires a legal conclusion that Defendants are not qualified to make. This objection shall be referred to hereafter as the **"legal conclusion"** objection.

13.    Defendant objects to interrogatory that seeks information that is protected from disclosure by the executive privilege. This objection shall be referred to hereafter as the **"executive objection."**

14.    Defendant objects to each interrogatory that requires the Defendant to produce public documents without Plaintiff first exhausting administrative remedies to obtain same. This objection shall be referred to hereafter as the **"public document"** objection.

15.     Defendant objects to each interrogatory that seeks advisory, consultative, or deliberative communications that are part of the decision making process of a governmental agency, including documents protected under the provisions of Rule 1:38-3(e). This objection shall be referred to hereafter as the **"deliberative process"** objection.

16.     Defendant objects to each interrogatory that seeks information contained within the personnel records of the State's employees that seeks information that is confidential under the provisions of N.J.A.C. 4A:1-2.2(a) and Executive Orders 9 (Governor Hughes), 11 (Governor Byrne), and 26 (Governor McGreevey) regarding the disclosure of personnel records by government agencies or under the provisions of Rule 1:38-5(e). (Full texts of these Orders are available at http://www.state.nj.us/infobank/circular/eoindex.htm.) This objection shall be referred to hereafter as the **"confidential personnel records"** objection.

17.     Defendants object to each interrogatory that seeks information contained within the files of a State Equal Employment Opportunity Office ("EEO office" or "EEO/AA office") insofar as EEO complaints and files are confidential pursuant to N.J.A.C. 4A:7-3.1, which requires protection of the "privacy interests of those involved" in an EEO investigation, including without restriction any witness, and requires that "confidentiality . . . be maintained throughout the investigatory process," and Defendant cannot produce any such documents without a Consent Protective Order in place and/or cannot produce any such documents without a court order compelling production. This objection shall be referred to hereafter as the **"confidential EEO records"** objection.

18.     Defendants object to each interrogatory that seeks disclosure of information regarding an individual's medical condition, psychological condition, or disability and/or client/patient services that are confidential pursuant to state and/or federal law, including, but not limited to, N.J.S.A. 2A:84A-22.2 (physician-patient privilege); N.J.S.A. 45:14B-28 (psychologist-patient privilege); N.J.S.A. § 2A:84A-22.13 (victim-counselor privilege); N.J.S.A. 26:5C-7 (confidentiality of AIDS/HIV infection records); N.J.S.A. 30:4-24.3 (confidentiality of person receiving services in non-correctional institutions of the State); N.J.S.A. 30:4-3.19 (confidentiality of person reporting patient abuse at State institution); the Federal Health Insurance Portability and Accountability Act of 1996 (HIPAA) 45 CFR § 160 and 164

(confidentiality of medical records generally); 42 CFR § 2.13 (confidentiality of alcohol and drug abuse patient records); 34 CFR § 361.38 (confidentiality of vocational rehabilitation information); Americans with Disabilities Act 42 U.S.C. §12112(d)(3)(B) (confidentiality of medical information related to disability and employment). This objection shall be referred to hereafter as the **"confidential medical records"** objection.

19.    Defendants object to each interrogatory that seeks information that is shielded from disclosure by the official information or governmental privilege, including, but not limited to, records of confidential investigations by the government of the State through its authorized agents. This objection shall be known as the **"official information"** objection.

20.    Defendants object to each interrogatory that seeks Electronically Stored Information ("ESI") that is not reasonably accessible because of undue burden or cost and is therefore protected from disclosure under <u>Rule</u> 4:10-2(f)(2). This objection shall be known as the **"ESI"** objection.

Defendant reserves the right to supplement and/or amend any of its responses at any time throughout the course of the discovery period.

Defendant, further reserves the right to call any and/or all of the parties referenced in any of its documents produced as a fact and/or rebuttal witness at time of trial.

<u>ANSWERING DEFENDANT'S SPECIFIC ANSWERS AND OBJECTIONS</u>

1.   As you will know from a review of the original Complaint, Plaintiff has assigned liability to a correctional officer named in the Complaint as "S.C.O. John Doe." This is the correctional officer who ordered Plaintiff to move from his bottom bunk in Delta Unit 1-E on September 30, 2017 and placed him on a top bunk in a different cell, believed to be Cell 104.   Provide the name and current place of employment of the person identified in the Complaint as S.C.O. John Doe.  If no longer employed by the Department of Corrections, please provide his last known address.

>    **<u>RESPONSE:</u>** Answering Defendants state that Corrections Officers do not have the authority to change an inmate's bunk status without proper authority by medical orders. Further, on May 11/2017, until September 22, 2017, Plaintiff was housed at NSP-North-B3W-318T.  On September 22, 2017, Plaintiff was involved in a physical altercation with another inmate and was given a *.004 fighting disciplinary charge and placed on Pre-Hearing Detention status and transferred to NSP-South-D1E-112T.  Once Plaintiff completed his Pre-Hearing Detention status he was transferred to NSP-South-D1E-104B.  Plaintiff was designated bottom bunk status on September 30, 2017. See Bates-Labeled document:

>       E.Polynice.Housing.Location.History.0000008
>       E.Polynice.Progress.Notes.001407-001418

2.  Who was the highest authority who made (or ratified) the decision to transfer Plaintiff's cell assignment on September 30, 2017?

>    **<u>OBJECTION:</u>** Answering defendants object to this interrogatory under the deliberative process objection.

>    **<u>RESPONSE:</u>** Without waiving the objection, Answering Defendants state that the Corrections Officers assigned to D1E-104B on September 30, 2017, were SCPO Ryan C. Molloy, 1st Shift; SCPO Raymond L. Reyes, 2nd Shift who are both assigned to Northern State Prison.  The third Corrections Officer assigned to D-100 House on September 30, 3017, was SCPO Witold Kowal who retired on 12/29/17. Corrections Officers do not have the

authority to change an inmate's bunk status without proper
authority by medical orders.

3.   Why was Plaintiff's cell assignment changed on September 30,
2017?

   **OBJECTION**: Answering defendants object to this interrogatory
   under the deliberative process and confidentiality objection
   to the extent that it would require Answering Defendant to
   reveal any procedures or protocol, which would compromise the
   security of Northern State Prison.

   **RESPONSE:** Without waiving the objection, on May 11, 2017,
   until September 22, 2017, Plaintiff was housed at NSP-North-
   B3W-318T.  On September 22, 2017, Plaintiff was involved in
   a physical altercation with another inmate and was given a
   *.004 fighting disciplinary charge and placed on Pre-Hearing
   Detention status and transferred to NSP-South-D1E-112T.  Once
   Plaintiff completed his Pre-Hearing Detention status, he was
   transferred   to   NSP-South-D1E-104B.   See   Bates-Labeled
   documents:

      E.Polynice.Housing.Location.History.0000008
      E.Polynice.Progress.Notes.001407-001418

4.   What were the names and SBI numbers of any other prisoners
assigned to either the cell from which Plaintiff was removed on or
about September 30, 2017 or the new one (believed to be Cell 104)
to which he was assigned on that date?

   **OBJECTION:** Answering defendants object to this interrogatory
   under the confidentiality objection.

   **RESPONSE:** Without waiving the objection, Answering Defendants
   state that inmate Edwin Polynice, SBI#000864138C was assigned
   to NSP-South-D1E-104B on September 30, 2017, with inmate
   Quadir Fowler, SBI#000156261C, who was assigned to NSP-South-
   D1E-104T. See Bates-Labeled documents:

      E.Polynice.Housing.Location.History.0000008
      E.Polynice.Progress.Notes.001407-001418

        E.Polynice.Fowler.Housing.Location.History.001856
        E.Polynice.Fowler.Progress.Notes.001857-001869

5.   Why was Cell 104 chosen as the cell to which Plaintiff was transferred?

    **OBJECTION:** Answering defendants object to this interrogatory under relevance and deliberative process objection.

6.   List any cells at Northern State Prison where bottom bunks were available at the time Plaintiff was removed from his cell on or about September 30, 2017.

    **OBJECTION:** Answering defendants object to this interrogatory under relevance and deliberative process objection.

    **RESPONSE:** Without waiving the objection, Answering Defendants state that on September 30, 2017, Plaintiff was assigned the bottom bunk in NSP-South-D1E-104B and his bunkmate Quadir Fowler, SBI#000156261C was assigned to NSP-South-D1E-104T, which was the top bunk in cell 104. See Bates-Labeled documents:

        E.Polynice.Housing.Location.History.0000008
        E.Polynice.Progress.Notes.001407-001418
        E.Polynice.Fowler.Housing.Location.History.001856
        E.Polynice.Fowler.Progress.Notes.001857-001869

7.   What due diligence, if any, was performed by DOC employees on September 30, 2017 to vet Plaintiff's contention that he had a health condition that warranted restriction to a bottom bunk?  In this Interrogatory, "due diligence" means consultation with prison records, consultation with medical staff, or other acts of inquiry taken to vet Plaintiff's expressed concern that he needed a bottom bunk for his health and/or safety.

    **RESPONSE:** See Response to Interrogatory No. 6.

8.    It is Plaintiff's position that he made a reasonable request
for the accommodation of a disability when he asked for any cell
reassignment to permit him use of a bottom bunk. Will the
Department of Corrections present evidence to challenge
Plaintiff's evidence of this position?  If so, state the evidence
that will be presented in the Department of Corrections' defense.
If the evidence is documentary, provide those documents.  If the
evidence is to be testimony, summarize the testimony.

> **OBJECTION:** Answering Defendants object to this Interrogatory
> on the grounds that it attempts to shift the burden of proof
> onto the Defendants in the lawsuit.

> **RESPONSE:** Without waiving the objection, Answering Defendants
> state that on September 30, 2017, Plaintiff was assigned the
> bottom bunk in NSP-South-D1E-104B and his bunkmate Quadir
> Fowler, SBI#000156261C was assigned to NSP-South-D1E-104T
> which was the top bunk in cell 104.

9.    List by date, each grievance or sick call that Plaintiff made
for either A.) a bottom bunk assignment or B.) treatment of the
injuries from his October 1, 2017 fall.  For each sick call or
grievance, explain what response, if any, was given to the sick
call or grievance.

> **RESPONSE:** Answering Defendants refer the Plaintiff to the
> documents Bates labeled,
>        E.Polynice.Special.Custody.Report.000001-000007,
>        E.Polynice.EMRs1.000009-000013

10.   It being Plaintiff's contention that the provision of Tylenol
for the chronic pain following his fall constituted inappropriate
treatment of a chronic condition as an acute one, state what
evidence you will present to contradict Plaintiff's evidence of
same.

> **OBJECTION:** Answering Defendants object to this Interrogatory
> under form and absence of control objections. This
> interrogatory requires Answering Defendants to provide
> information, which is beyond the scope of the personal

knowledge of answering defendant and within the scope of personal knowledge of person(s) unknown to answering defendant or person(s) over whom Answering Defendants have no control.

11. What training, if any did the Department of Corrections give to S.C.O. John Doe and Sgt. Gibson regarding disabled prisoners' rights as required by the ADA, Rehabilitation Act, or N.J.A.C. 10A:31-3.6, which states: "A qualified inmate with a disability shall be housed in a manner that provides for his or her safety, security and accessibility to facility programs or activities. Rooms, sleeping units, or housing units shall be designed for use by qualified inmates with disabilities."

> **RESPONSE:** Answering Defendants state that they have no information, which is responsive to this Interrogatory. John Doe is not an identified individual and there is no Sgt. Gibson within the DOC system.

12. What "qualifications" did Latifa Fedai, APN find that Plaintiff failed to meet in her January 24, 2017 determination to deny Plaintiff a bottom bunk restriction.

> **RESPONSE:** Answering Defendants state that they have no information, which is responsive to this Interrogatory. Latifa Fedai, APN is not an employee of the DOC.

13. Was anyone other than Latifa Fedai, APN responsible for denying Plaintiff a bottom bunk? If so, state who and their place of employment. If no longer working at a Department of Corrections facility, provide the last known address.

> **OBJECTION:** Answering Defendants object to this Interrogatory under form and absence of control objections. This interrogatory requires Answering Defendant to provide information, which is beyond the scope of the personal knowledge of answering defendant and within the scope of personal knowledge of person(s) unknown to answering

defendant or person(s) over whom answering Defendants have no control.

> **RESPONSE:** Without waiving the objection, Answering Defendants state Latifa Fedai, APN is not employed by the Department of Corrections.

14. List each witness the Department of Corrections intends to present at trial and what their anticipated testimony will be.

> **OBJECTION:** Answering Defendants object to this Interrogatory on the grounds that it seeks information which is considered trial strategy and thus is protected by the Work Product Doctrine. Answering Defendants further state that a list of all witnesses will be disclosed as per the Court rules.

15. List each person who provided information to answer these Interrogatories.

> **RESPONSE:** Responses to Interrogatories were provided with the assistance of counsel. See the attached Certification, which speaks for itself.

CERTIFICATION

I certify that I am authorized to sign the foregoing Answers to Interrogatories for and on behalf of Defendant New Jersey Department of Corrections; that the matters stated in the foregoing Answers to Interrogatories are not within my personal knowledge, as no single official or employee of Defendant who has personal knowledge of all such matters; that the facts stated and the records referenced in the foregoing Responses have been assembled at my direction by employees of Defendant, that the matters set forth in the aforesaid Answer to Interrogatories are in accordance with the information available to Defendant and records maintained by Defendant and are true, insofar as it is possible to verify them.

I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
John C. Falvey, Esquire
Asst. Division Director

Dated: 4/27/21