**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDWIN POLYNICE,<br><br>        *Plaintiff*,<br><br>vs.<br><br>NEW JERSEY DEPARTMENT OF<br>CORRECTIONS, et al.,<br><br>        *Defendants*. | Docket No. 2:19-cv-16875-MCA-LDW<br><br><br>**Civil Action**<br><br>**CERTIFICATION OF MICHAEL<br>POREDA, ESQ.** |

I, Michael Poreda, being more than 18 years of age, do certify as follows:

1.)  I represent the Plaintiff in this case.

2.)  The exhibits hereto as listed below in chronological order.

3.)  Attached hereto as **Exhibit A** is the Tort Claim Notice dated May 28, 2020 that Plaintiff filed to preserve his right to sue in tort against Defendants.

4.)  Attached hereto as **Exhibit B** is the court's May 28, 2020 decision on the Department of Corrections's Rule 12(b)(6) motion, dismissing several causes of action without prejudice.

5.)  Attached hereto as **Exhibit C** is a letter I sent to the court on July 10, 2020.

6.)  Attached hereto as **Exhibit D** are Plaintiff's moving papers on a motion to amend the Complaint filed on August 23, 2020.

7.)      Attached hereto as **Exhibit E** are papers filed by Rutgers University in opposition to the motion to amend.

8.)      Attached hereto as **Exhibit F** is an update to the Court dated September 25, 2020.

9.)      Attached hereto as **Exhibit G** is an update to the Court dated September 28, 2020.

10.)     Attached hereto as **Exhibit H** is an update to the court dated October 19, 2020.

11.)     Attached hereto as **Exhibit I** is a December 23, 2020 update to the court requesting a new date to file a motion to amend.

12.)     Attached hereto as **Exhibit J** is the court's scheduling order of January 21, 2020, which sets no deadline to amend the Complaint notwithstanding my request to understand the court's expectation on the amount of time I was being given to re-file my motion to amend.

13.)     Attached hereto as **Exhibit K** is an April 28, 2021 update to the court notifying the court of my intent to file a motion to amend.

14.)     Attached hereto as **Exhibit L** is the final case management order, setting a deadline for amendments on June 1, 2021.

15.)     Attached hereto as **Exhibit M** are my motion papers for the motion to amend filed May 26, 2021.

16.)     Attached hereto as **Exhibit N** are the Rutgers Defendants' opposition papers to the May 26, 2021 motion to amend.

17.)     Attached hereto as **Exhibit O** are my reply papers to the Rutgers Defendants' opposition.

18.)     Attached hereto as **Exhibit P** is the Department of Corrections "motion to dismiss" three counts of the Amended Complaint, which the court docketed as opposition to the motion to dismiss.

19.)     Attached hereto as **Exhibit Q** are my opposition/reply papers to the Department of Corrections' "motion to dismiss."

20.)     Attached hereto as **Exhibit R** is the magistrate's October 25, 2021 opinion denying the motion to amend.

21.)     I make this motion Pursuant To Fed. R. Civ. Pro. 60 for total or partial relief from the court's Letter Opinion of October 25, 2021 (**Exhibit R**), denying in whole, Plaintiff's Motion to Amend the Complaint.

22.) By way of background, this case involves an accident that occurred at Northern State Prison that would not have happened but for the negligence, deliberate indifference, and failure to accommodate a disability by Defendants.

23.) The victim of the accident was a prisoner, Plaintiff Edwin Polynice.

24.) On the night of September 30, 2017, guards at Northern State Prison forced Polynice into a top bunk.

25.) Polynice had diabetes and uncontrolled high blood pressure that gave him bouts of dizziness.

26.) Polynice told his jailors that he needed to be in a bottom bunk because of the disability.

27.) This request was denied.

28.) The following morning, Polynice had a dizzy spell while trying to get out of bed, and he fell, cracking open his head of the toilet.

The injury put Plaintiff in the infirmary for ten days and left him with chronic headaches and back pain.

29.) The full extent of the injuries is still not known because A.) The Department of Corrections did not do its job of trying to diagnose the injuries and B.) The Plaintiff, though released from jail, is still waiting to get an MRI of his back.

30.) The case was initially filed by another lawyer on August 19, 2019 against the Department of Corrections, Administrator George Robinson, John Doe Defendants, and against the "Northern State Prison Medical Department," which, unbeknownst to the original attorney, is actually a separate entity, Rutgers University – University Correctional Health Care.

31.) The Attorney General filed a Motion to Dismiss on October 2, 2019.

32.) On March 6, 2020, I entered a substitution of attorney.

33.) On May 28, 2020, Judge Arelo issued an order granting the Attorney General's motion on all counts except the deliberate indifference of Administrator George Robinson. Dismissal was without prejudice on all other counts. (**Exhibit B**).

34.) Notably, Judge Arleo dismissed the negligence cause of action on a hyper-technicality – the failure to specifically state that a Notice of Tort Claim had been filed. One had indeed been filed. (**Exhibit A**).

35.)    I submitted a letter in July 2020 to the court notifying the court that I had not been receiving court notifications, despite entering a notice of appearance.  This was due to an error with the court's technology, beyond my control.  (**Exhibit C**).

36.)    Concurrently, Edwin Polynice became incommunicado, when he was placed for an extended period of time in "special custody."  I later learned that this was St. Francis Hospital, where he was being kept due to kidney failure.

37.)    When Polynice emerged in August 2020, we filed an additional Tort Claim Notice because of the kidney failure.  Polynice attributed the kidney failure to the prison forgetting to give him high blood pressure medication.

38.)    When Polynice was returned to South Woods State Prison and was able to contact me, which was around August 1, 2020, Polynice attributed the kidney failure to the prison's forgetting to refill his high blood pressure medication prescription.

39.)    Polynice's claims sounded similar to a series of complaints I had received from many prisoners that the Department of Corrections routinely has lapses of weeks wherein it fails to refill prescriptions for critical chronic care drugs for conditions like heart disease, high blood pressure, diabetes, and pain management.

40.)    I prepared an Amended Complaint, which still had many John Doe Defendants because there had been no discovery yet.

41.)    The proposed Amendment had a series of components: 1.) It plead compliance with the Tort Claim Notice provision of the Tort Claims Act so as to revive the dismissed negligence cause of action; 2.) It plead an explicit disability discrimination cause of action based on the same set of facts; 3.) It made factually specific allegations about the deliberate indifference of the prison guards who had put him in a top bunk, thus correcting technical failures of the original Complaint; 4.) It plead medical malpractice for the kidney failure against Rutgers university UCHC; 5.) It pleaded deliberate indifference against Medical Director Sherita Latimore-Collier for the kidney failure; 6.) It proposed a class action of all prisoners injured by the Department of Corrections' systematic practice of not letting critical prescriptions lapse.  (**Exhibit D**).

42.)    However, this was not to be the last amendment of the Complaint.  There were still John Doe Defendants that needed to be uncovered through paper discovery, including one I could not have anticipated without Polynice's medical records – Latifa Fedai, APN.

43.)    The magistrate's individual rules state the following, which show the magistrate's preference for working out cases without motions to amend, if possible:

> **Applications to amend or supplement pleadings:**  Counsel shall circulate any desired amendment and shall seek written consent of all

parties, as per Federal Rule of Civil Procedure 15(a)(2), before pursuing amendment by motion.  Any request for leave of the Court to file a motion to amend must contain a redlined version of the proposed amended pleading as an exhibit.  If a party seeks to file a motion to amend after the deadline set by a Scheduling Order, that party must show good cause why the amendment could not have been sought earlier.

44.)   I ultimately did not get consent from the other parties to amend the Complaint.

45.)   I filed the motion to amend the Complaint on August 23, 2020.  (**Exhibit D**).

46.)   The Rutgers Defendants opposed, arguing that the medical malpractice claims were premature because Rutgers was entitled to 6 months from the filing of the Tort Claims Notice before a claim could be filed.  I considered this a valid objection.  (**Exhibit E**).

47.)   By letter dated September 25, 2020, I asked the court for a one-cycle adjournment to see if the some of the new claims against Rutgers could be resolved out of court.  I further indicated that I intended to amend the Complaint against the Department of Corrections Defendants in any event.  The letter stated, in part:

> As I sat down to compose the reply to UCHC's opposition this afternoon, I perceived an opportunity to potentially resolve the dispute with UCHC out of court. I sent UCHC's attorney, Mr. Pyle, a proposal but have not yet heard back yet. If he accepts, I would ***not*** withdraw the Motion, but I would submit a revised proposed Amended Complaint, one that only pertains to the undisputed portions relevant to the Department of Corrections Defendants. (emphasis added). (**Exhibit F**).

48.)   I told the court by letter dated September 28, 2020 that I would not be filing a reply to Rutgers' opposition, but I asked that the motion continue against the Department of Corrections.  (**Exhibit G**).

49.)   On October 2, 2020, the court held a conference.

50.)   At the conference, I brought up the fact that future amendments would be needed because I didn't have any information necessary to name the DOC John Doe defendants.

51.)   The court asked that I consent to termination of the motion **without prejudice.**

52.)   I agreed to this, reasonably believing that the court would grant Plaintiff time to demand paper discovery from the Department of Corrections and that a new motion would be judged **on the merits**.

53.)     On October 19, 2020, I sent the court an update on the case.  (**Exhibit H**).  I asked for time to review medical records recently received from Rutgers before amending the Complaint.

54.)     On November 24, 2020, there was a court conference wherein the court asked that I circulate a new proposed amendment to see if I could get consent from the parties to amend.

55.)     On December 17, 2020, I circulated a proposed amendment to the Complaint.

56.)     The proposed amendment sought to add a new Rutgers Defendant, Latifa Fedai, a nurse who took away the Plaintiff's bottom bunk restriction without reason when he was transferred from South Woods State Prison to Northern State Prison.

57.)     The Defendants objected.

58.)     On December 23, 2020, I wrote the court a letter explaining this state of affairs and notified the court that I thought the Defendants' objections, while ultimately not meritorious, were legitimate enough to warrant a motion hearing. I asked for the court to schedule the filing of a motion at the January 20, 2020 status conference.  (**Exhibit I**).

59.)     A status conference was held on or about January 21, 2020.  At this conference, if not earlier, I informed the magistrate that Plaintiff needed paper discovery to commence between Plaintiff and the DOC so that John Doe Defendants could be identified and the Complaint appropriately amended.

60.)     The scheduling order produced on January 21, 2020 did not schedule the motion to amend.  (**Exhibit J**).

61.)     After January 21, 2020, Plaintiff and Department of Corrections began to conduct paper discovery on all aspects of the accident.

62.)     This pre-amendment discovery was permitted so that the Court would not have to be bothered with multiple amendments.  Had I amended in January 2021, there would have still been John Doe Defendants who would have been uncovered in paper discovery.

63.)     Pre-amendment discovery was *not* limited to the one active count in the Complaint as the magistrate states in the court's decision of October 25, 2021.  This was forward-looking discovery aimed at all possible causes of action related to the accident.

64.)     During the course of discovery, it was determined that the jailors who were deliberately indifferent to Polynice's health and safety were Officers Reyes and Molloy.  It was also discovered that the Defendant originally plead as "Sgt. Gibson" was actually called "Chrisopher Gibbons."

65.)   During the months of pre-amendment discovery, which the court sanctioned with the hopes that it would trim the court's ultimate workload, I determined by conferring with experts, after Rutgers refused to cooperate in reviewing the medical record with me, that the Plaintiff had pre-existing kidney issues that might have inevitably lead to failure of his kidneys notwithstanding a lapse in prescriptions.  I therefore determined that we would not sue UCHC for medical malpractice.

66.)   On April 28, 2021, Deputy Attorney General Chanell Branch drafted an update to the court notifying the court that discovery would need to be extended and that I still intended to file a motion to amend.  (**Exhibit H**).

67.)   On May 4, 2021, there was a case status conference, in which I informed the court I had the discovery to name all the John Doe defendants and could file the finalized motion to amend.

68.)   The court set a deadline for a motion to amend on June 1, 2021.  (**Exhibit J**)

69.)   I timely filed a motion to amend on May 26, 2021.  (**Exhibit M**).

70.)   The court did not return the motion to amend until five months later, on October 25, 2021.

71.)   The court allowed the Department of Corrections leave to file opposition to the motion months after the deadline.

72.)   I was shocked to see that the court not only denied the motion, but blamed me for withdrawing the motion and waiting a few months to refile, even though that delay was desired by the court for its own docket management interests.

73.)   This was incredibly unfair considering that the motion was NOT withdrawn.  It was terminated **without prejudice** by the court, and over my request to continue the amendment against the Department of Corrections.

74.)   In the decision denying the motion to amend, the court's only substantive reasons for denial are that the amendments are late and too "substantial" – supposedly by my own admission – and that the case was too old to permit amendments.

75.)   First, the "lateness" is completely false.  This is a 2019 case; it is not comparatively old, especially not for a prison case where the identity of the defendants could not have been known until the completion of paper discovery. Second, I intended to file this motion in August 2020, and this court *asked me* to hold off until I had a better handle on what was going on so that the court could potentially reduce its own workload.

76.)   Second, I did NOT say the amendments were extensive.  I said the ultimate amendments were NOT extensive.

I ask leave to dispense with the Local Rule 15.1 requirement to provide a redlined version of the proposed amendments as they are, linguistically speaking, very extensive, ***but substantively not extensive***.  In short, I do not think the redlined complaint would be worth very much and would be an extensive undertaking.  This is because the original Complaint was drafted by another law firm that didn't seem to understand New Jersey prison litigation.  Substantively, the changes are as follows:

a.  Latifa Fedai, a nurse practitioner, has been added as a defendant.  The proposed amendments regarding Fedai are based on recently discovered medical records in which she denies Plaintiff's request for a bottom bunk restriction.

b.  Discovery having revealed that the unknown officer who ordered Plaintiff onto the top bunk from which he fell was either Raymond Reyes or Ryan Molloy.

c.  The original complaint made allegations against the "Medical Department – Northern State Prison," which is the inappropriate name for Rutgers University – University Correctional Health Care, which is named in the proposed amendments.[1]

d.  The original Complaint improperly identified a responsible officer "Sergeant Gibson."  The correct name is Sergeant Christopher Gibbons. He has been named in the proposed amendments.[2]

77.)   Some of the proposed amendments against the Department of Corrections were not substantive amendments, but corrections to technical failures in the original pleadings.

78.)   A third problem with the magistrate's decision is that it made negative findings against Plaintiff even where the Defendant made no objections.  For example, the Defendants made no objection to the addition of defendants Molloy, Reyes, and Gibbons.  It made no objection to the re-pleading of the negligence cause of action.  Months after the deadline

---

[1] Although UCHC was named in the caption of the Amended Complaint, I should not have made this remark because there were actually no substantive allegations against UCHC.  The only allegation related to Rutgers was the deliberate indifference against its employee, Latifa Fedai.

[2] Here, I forget to mention that we also intend to replead negligence against the Department of Corrections, this time with a factual allegation that the Plaintiff complied with the Tort Claims Act by filing a Notice of Tort Claim.

to oppose, the DOC made a weak objection to the disability discrimination causes of action only, and Plaintiff replied to those.  Yet, without so much as holding oral argument or requesting further briefing, the court decided *sua sponte* that it was too late to add those defendants notwithstanding the fact that I could not have known about their existence until about a month before I filed the motion AND the court gave me until June 1, 2021 to name them.  The court gave me no opportunity to present to it the legitimate reasons for the "delay".

79.) A fourth problem was that the magistrate shirked the responsibility of making substantive calls about disputed issues – namely – on the viability of proposed disability discrimination cause of action against Defendants.

80.) This decision denying Plaintiff's motion to amend makes several critical misstatements and omission of fact that should be reviewed, and the outcome accordingly reversed. Some of those appear in this portion of the decision:

> Plaintiff attributes the delay in formally seeking to amend the complaint to the "lack of transparency about healthcare within the Department of Corrections" and "almost a year" of informal negotiations with UCHC regarding the "merits of the amendment." (Pl. Reply Br. at 10- 11, ECF No. 50). The Court understands that plaintiff devoted a significant amount of time to determining how to proceed against proposed defendant UCHC and whether to pursue claims related to plaintiff's alleged kidney failure in this action or in a separate case, as well as to attempting settlement negotiations to avoid motion practice. But this does not explain why plaintiff waited until fact discovery was complete or nearly complete to formally assert the bulk of the claims in the proposed Amended Complaint, which relate to plaintiff's fall from the top bunk and involve defendants beyond UCHC. Importantly, all of the claims that are the subject of the instant motion are substantially the same as the claims plaintiff sought leave to assert in the August 23, 2020 Motion to Amend and then seemingly abandoned by agreeing to terminate the motion and proceeding to complete discovery on a single § 1983 claim against defendant Robinson.

81.) First, I do **not** solely attribute the delay to the lack of transparency about healthcare within the Department of Corrections" and "almost a year of informal negotiations with UCU regarding the merits of the amendment." I made no excuse for the lateness of the amendment at all in the moving papers because there was no objection about the delay between the first and second motions.  But here, I would attribute the "delay" mostly to the court's critical role in stalling of the amendment by asking me, against my objection, to terminate my August 2020 motion to amend **without prejudice.** "Without prejudice" signaled to me that a new deadline to amend would be set by which I could move to amend.  The court set that deadline

on June 1, 2021, and the motion was filed before that.  In short, the motion was **timely filed**.

82.)   I did ask the court to allow me to file the negligence and disability discrimination claims ) against the Department of Corrections sooner, (see **Exhibits F & G**) and the court asked me not to when it asked for my consent to terminate the motions.

83.)   The termination **"without prejudice"** reasonably signaled to me that a new deadline to amend would be put into place and that I would be given a substantive hearing on the merits of the amendment at that time.

84.)   Second my "waiting until fact discovery was complete or nearly complete to formally assert the bulk of the claims in the proposed Amended Complaint, which relate to plaintiff's fall from the top bunk and involve defendants beyond UCHC" does make sense.  And it has to do with the "lack of transparency" of which I complained.  I did not know who the John Doe defendants were without discovery. I could not have know of the existence of Latifa Fedai without discovery.

85.)   Third, this opinion states that discovery only took place on the one remaining claim in the original complaint.  This is not true.  The court did not look at our interrogatories or document production.  Discovery substantively included all the causes of action in the proposed Amendment of May 2021, and there would be no need for additional discovery had the amendment been granted.

86.)   I also take issue with this particularly condescending passage from the decision:

> Plaintiff had an opportunity to reshape this action early on by filing an Amended Complaint alleging deliberate indifference to medical needs, negligence, failure to accommodate a disability, and negligent training and supervision more than a year ago, but he ultimately decided not to seek amendment at that time and has in no way accounted for the delay in seeking leave to reassert the exact claims he previously declined to pursue.

87.)   I most certainly did account for the delay.  It was because the court asked me not to file a motion to amend until I had a better handle on the justified cause of action, and I reasonably relied upon the termination without prejudice for that.  I asked the court for a schedule to amend on December 23, 2020 (**Exhibit I**), and the court set the date to amend on June 1, 2020 (**Exhibit L**).  I complied with the court's scheduling order and that's the most fundamental explanation for why the amendment came when it did.

88.)    In light of this, I can easily make the point that the court's denial of the amendment was an abuse of discretion, a manifest injustice and the court should use its inherent power to correct interlocutory orders to correct the error now rather than force the parties to go to appeal and re-opening of the case.

89.)    If the court had taken the time to look at the amendments and decided they were futile, I would have been contented, but this decision, which pays no attention to substance of the amendments and places the denial solely upon timing, despite the fact that Plaintiff fully complied with the court's scheduling order and its wishes to terminate the original motion constitutes. an abuse of discretion.

I certify that the foregoing statements by me are true.  I am aware that if any of the foregoing statements by me are false, I am subject to punishment.

_____

MICHAEL POREDA

Date:  February 6, 2022

# EXHIBIT

# A

<u>INTITIAL NOTICE OF CLAIM FOR DAMAGES AGAINST THE STATE OF NEW JERSEY</u>

**FORWARD TO:**     TORT AND CONTRACT UNIT, CLAIMS SEVICE SECTION
DEPARTMENT OF THE TREASURY, BUREAU OF RISK MGT.
CN 620
TRENTON, NEW JERSEY 08625
PHONE: (609) 292-4347

\* FORM <u>MUST</u> BE FILED WITHIN <u>90</u> DAYS OF THE ACCIDENT OR YOU MAY FORFEIT YOUR RIGHT

1. <u>Edwin Polynice</u>
NAME OF CLAIMANT

<u>November 15, 1978</u>
DATE OF BIRTH

<u>N/A</u>
DAYTIME PHONE#/CONTANCT

<u>168 Frontage Road - P.O. Box 2300</u>
STREET ADDRESS

<u>Newark</u>        <u>N.J.</u>        <u>07114</u>
CITY        STATE        ZIP CODE

<u>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</u>
SOCIAL SECURITY NUMBER

2. **IF IT IS REQUESTED THAT NOTICES BE SENT TO A PERSON OTHER THAN THE CLAIMANT,
SUCH AS YOUR ATTORNEY, PLEASE SEND NOTICE TO:**

<u>Jean Ross, Esq.</u>
NAME OF PERSON

<u>(609) 9246508</u>
TELEPHONE NUMBER

<u>32 Markham Road</u>
STREET ADDRESS

<u>Princeton,</u>        <u>N.J.</u>        <u>08540</u>
CITY        STATE        ZIP CODE

**RELATIONSHIP TO CLAIMANT:**  ☐ ATTORNEY    ☑ OTHER  <u>Consultant</u>

3. **CIRCUMSTANCES REGARDING THE OCCURRENCE OR ACCIDENT:**

<u>October 1, 2017   Approx 12:35am</u>
DATE AND TIME

<u>Unit DIE/112  Northern State Prison</u>
LOCATION

<u>Newark,  New Jersey</u>
CITY        STATE

4. **DESCRIBE THE ACCIDENT OR OCCURRENCE:**

<u>On September 31, 2017, I/m Polynice, 864138C was assigned to the</u>
<u>detention unit of Northern State Prison (DIE), when he was instructed</u>
<u>by the unit officer, S.C.O. John Doe, (name to be provided upon discovery), to</u>
<u>move into cell 104, Top bunk. Polynice explained that due to</u>
<u>medical issues he could not be assigned to a top bunk. He</u>
<u>explained that he had a restriction mandating bottom bunk</u>

**ACCIDENT OR OCCURENCE CONTINUED:**

only (see attached), Following this explanation, Polynice was informed that the directive was given by Sgt. Gibson. And he was thereafter given an order to move. Polynice complied.

On October 1, 2017, at approximately 12:35 pm, Polynice was called to take his daily shower. While stepping down on the stool, Polynice became light-headed, fell, striking his leg against the stool and his head on the toilet. As a result, he suffered a deep laceration to his forehead requiring 13 stiches and 5 staples. He also suffered a dislocated right shoulder. Polynice remained in the prison's infirmary for 10 days where he experienced pain throughout his head and facial area, bruised his leg, head-ache and dizziness.

It is noted that Polynice was given a bottom bunk only restriction for surgery he had to his leg as a result or complication of diabetes.

5. **STATE THE NAME AND ADDRESS OF ALL WITNESSES TO ABOVE OCCURRENCE:**

Polynice will Rely on medical Records to support his assertions. He however Reserves the Right to present witnesses upon discovery of the identities of inmates assigned

6. **STATE THE NAMES AND ADDRESSES OF EACH STATE AGENCY AND EACH STATE EMPLOYEE WHOM YOU CLAIM CAUSED YOUR DAMAGES OR INJURIES.**

N.J. Department of Corrections, P.O. Box 863 Trenton, N.J. 08625
S.C.O. John Doe (Name to be provided)(Regular Unit officer)(address noted above)
Sgt. Gibson (Supervisor in charge on day in question)(address noted above)

7. **STATE THE NAME AND ADDRESS OF ALL OTHER PERSONS, COMPANIES, OR GOVERNMENTAL AGENCIES WHICH YOU CLAIM ARE RESPONSIBLE FOR YOUR INJURIES OR DAMAGES.**

N/A (All parties named above.

8. **BRIEFLY DESCRIBE THE INJURY, DAMAGES AND LOSSES INCURRED BY YOU.**

Severe laceration to the forehead/facial area requieing 13 stiches and 5 staples; dislocated Right shoulder; bruises + Abrasions and headaches as a result of head trauma.

9. **GIVE THE AMOUNT THAT YOU CLAIM IN DAMAGES:** $ 100,000.00

**GIVE THE BASIS FOR CALCULATION OF THE ABOVE DAMAGES:**

Aside from the injuries sustained and the act of negligence
Others To be provided by counsel in future submissions.

I certify that the foregoing statements made by me are true. I am aware that if any statement made herein is willfully false or fraudulent, i am subject to punishment as provided by law.

Date: 12/19/2017          Edwin Polynice
                          _____
                          CLAIMANT OR PERSON FILING ON BEHALF OF CLAIMANT

# EXHIBIT

# B

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EDWIN POLYNICE,** | **Civil Action No. 19-16875 (MCA)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| **NEW JERSEY DEPARTMENT OF CORRECTIONS,** | |
| **Defendants.** | |

This matter has been opened to the Court by Defendants New Jersey Department of Corrections ("NJDOC"), Northern State Prison, and Administrator George Robinson's (collectively "State Defendants") motion to dismiss Plaintiff Edwin O. Polynice's ("Polynice" or "Plaintiff") Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). For the reasons explained in this Memorandum Opinion, the motion is granted in part and denied in part.

### I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

The Court recounts only the facts relevant to the instant motion to dismiss. According to the Complaint, Polynice was incarcerated in the Detention Unit of Northern State Prison on September 30, 2017. *See* Complaint ¶ 20. On or about that date, S.C.O John Doe instructed Plaintiff to move to the top bunk of cell 104. *Id.* at ¶ 21. Polynice told S.C.O. John Doe that he could not be on the top bunk due to "mandated medical restrictions and persistent medical issues" and could only be assigned to the bottom bunk. *Id.* at ¶ 22. Plaintiff further "advised that his mandatory medical accommodation was for the remainder of his incarceration." *Id.* S.C.O. John Doe nevertheless ordered Plaintiff to utilize the top bulk and told him that this order

came from Sergeant Gibson. *Id.* at ¶ 23.  Plaintiff complied because the assignment was ordered

by Sergeant Gibson.[1]  *Id.* at ¶ 24.

On October 1, 2017, when dismounting the top bunk to take his daily shower, Plaintiff

"became extremely dizzy and fell."  *Id.* at ¶ 25.  He attempted to step on a stool but slipped and

fell "striking his head on the toilet and his leg against the stool."  *Id.* at ¶ 26.  Plaintiff sustained

severe injuries including thirteen stitches, five staples, a dislocated shoulder, severe neck pain,

and bruising on his legs.  *Id.* at ¶¶ 27-28.  The Complaint alleges that the failure of Defendants

"to properly protect and carry out medical instructions for [Plaintiff]", which created the

"imminent risk for a head, neck, and back injuries" evinced "deliberate indifference to and a

conscious disregard for medical needs and . . . overall safety of [Plaintiff]."  *Id.* at ¶ 35; *see id.* at

¶ 37.

In addition to S.C.O. John Doe and Sergeant Gibson, Plaintiff has sued the NJDOC,

Northern State Prison, and Administrator George Robinson.  In the First Count for relief, which

asserts claims pursuant to 42 U.S.C. § 1983 against all Defendants, Plaintiff asserts that NJDOC

and Northern State Prison, through their Administrator George Robinson and other

policymakers, "developed policies, procedures and/or customs which caused the deprivation of

[Plaintiff's] constitutional rights, and these policies were "inherently deficient, or inappropriate

as formulated, as to the adherence of mandated medical care provided to an inmate that presented

with documented medical issues."  *Id.* at ¶¶ 39-40.  Plaintiff further alleges that the NJDOC and

Northern State Prison, through Administrator George Robinson, negligently, recklessly, or

intentionally:

> a.  failed to properly train and supervise Defendant Sergeant
>     Gibson and Defendant S.C.O. John Doe with regard to

---

[1] Sergeant Gibson has not entered an appearance in this matter.

<blockquote>
adequately assessing, monitoring and providing necessary and
reasonable accommodations for inmates with medical issues,
including but not limited to inmates with documented medical
restrictions and;

b.  failed to properly train and supervise Defendant Sergeant
Gibson and Defendant S.C.O. John Doe, or other prison staff to
maintain a safe and suitable environment, and to keep inmates
safe from injury or serious harm;

c.  maintained policies, procedures and/or customs that were
deliberately indifferent to the constitutional rights of inmates to
be adequately screened for medical issues, to provide necessary
and reasonable accommodations for inmates with medical
issues; and to be kept safe from injury or serious harm;

d.  failed to enforce the contractual obligations of the Health
Services Unit for the Department of Corrections for the State of
New Jersey, to monitor and treat inmates with medical issues,
including but not limited to inmates with documented medical
restrictions;

e.  with full knowledge, allowed institutional policies and
procedures regarding intake, medical screening, custodial
watch and medical treatment to be ignored and violated with
reckless abandon; and

f.  failed to provide adequate and needed healthcare for inmates at
the Detention Unit of the Northern State Prison.
</blockquote>

*Id.* at ¶ 41.  In Count Three, which asserts a claim for supervisory liability under 42 U.S.C. §

1983, Plaintiff further asserts that Administrator George Robinson and Sergeant Gibson

<blockquote>
were aware of, should have been aware of, and/or had actual
knowledge of the pattern and culture of unconstitutional behavior
and indifference, including failure to properly screen inmates for
medical injuries, or other mental health problems, failure to
adequately monitor and guard inmates, failure to have inmates
properly treated medically, failure to have inmates provided
necessary and reasonable medical accommodations, and failure to
protect inmates from injury or harm whether self-inflicted or by
other inmates, staff, employees and/or corrections officers at the
Northern State Prison.
</blockquote>

*Id.* at ¶ 53.  Plaintiff also asserts in Count Three that Administrator George Robinson and

Sergeant Gibson "not only directed, encouraged, tolerated, acquiesced to this behavior, but were

deliberately indifferent to the likelihood that their staff, employees and/or corrections officers

would fail to properly screen inmates for medical issues, fail to adequately monitor inmates, fail

(3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create what amounts to a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The State Defendants also assert they are entitled to sovereign immunity under the Eleventh Amendment. This motion "may properly be considered a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)" because "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996).

## III.    DISCUSSION

### a.    Official Capacity Claims for Damages

Plaintiff has sued the State Defendants for civil rights violations under 42 U.S.C. § 1983. As a general matter, a plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was

committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

The State Defendants argue that the claims against the NJDOC, Northern State Prison, and the damages claims against Administrator George Robinson in his official capacity are subject to dismissal because they are barred by the Eleventh Amendment and because the NJDOC, Northern State Prison, and Robinson in his official capacity are not "persons" subject to suit under 42 U.S.C. § 1983.[2]  *See* ECF No. 9, State's Brief at 6-8.  Plaintiff concedes this point, *see* Plaintiff's Opposition at 5-6, and the Court will grant the motion to dismiss and dismiss <u>with prejudice</u> the § 1983 claims against the NJDOC, Northern State Prison, and the official capacity claims for damages against Administrator George Robinson.

### a. § 1983 Claims Against Administrator George Robinson

Defendants next argue that the § 1983 claims against Administrator George Robinson in his personal capacity are based on the impermissible theory of *respondeat superior*.  At issue is whether Plaintiff has pleaded sufficient facts to suggest that Administrator George Robinson was personally involved in these alleged wrong and may be held liable as a supervisor.

---

[2] The Eleventh Amendment incorporates a general principle of sovereign immunity which bars citizens from bringing suits for damages against any state in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–101 (1984).  In general, Eleventh Amendment immunity extends to state agencies and state officials in their official capacities, and, in doubtful cases, the Court analyzes several factors to determine whether an entity is an agency of the State, i.e., whether the State is the real party in interest. *See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659-60 (3d Cir. 1989).  In addition, neither a State itself nor a department of a State is considered a "person" for the purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989); s*ee also Jones v. Minner*, 752 F. App'x 112, 113 (3d Cir. 2019); *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 854 (3d Cir. 2014).  Similarly, as a claim against a state official in his or her official capacity is essentially a claim against the state, § 1983 claims are not permitted against state officials in their official capacities, except to the extent that such claims seek prospective injunctive relief. *Will*, 491 U.S. at 71, & n.10 (1989).

It is well established that to be held liable under § 1983, a supervisor must be personally involved in the alleged wrongs, and liability may not be premised solely on *respondeat superior*. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  There are two basic ways that a supervisor may be held liable under § 1983 for the conduct of subordinates – through direct participation or through policymaking.  With respect to direct participation, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004).  A supervisor-defendant may be also liable for unconstitutional acts undertaken by subordinates if the supervisor-defendant "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (alteration in original).

In *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015), the Third Circuit reaffirmed its holding in *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989), which set forth a four-part test for supervisor claims premised on deficient policies and/or failure to supervise and train.  In *Sample*, the Third Circuit recognized that "'supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Id.*  As explained in *Barkes*, "Sample involved an Eighth Amendment claim against a supervisor for implementing deficient policies and being deliberately indifferent to the risk that the policies would result in the deprivation of a

constitutional right." *Id.*; *see also Beers–Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir.2001)

(discussing *Sample* ).  Under *Sample*,

> The plaintiff must identify a supervisory policy or practice that the
> supervisor failed to employ, and then prove that: (1) the policy or
> procedures in effect at the time of the alleged injury created an
> unreasonable risk of a constitutional violation; (2) the defendant-
> official was aware that the policy created an unreasonable risk; (3)
> the defendant was indifferent to that risk; and (4) the constitutional
> injury was caused by the failure to implement the supervisory
> practice or procedure.

*Id.* (citing *Sample*, 885 F.2d at 1118); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3d Cir.

2001).  "Failure to" claims – failure to train, failure to discipline, or, failure to supervise – are

generally considered a subcategory of policy or practice liability.  *See id.*  As the Third Circuit

explained, "[t]he essence of the type of claim [it] approved in *Sample* is that a state official, by

virtue of his or her own deliberate indifference to known deficiencies in a government policy or

procedure, has allowed to develop an environment in which there is an unreasonable risk that a

constitutional injury will occur, and that such an injury does occur."  *Barkes*, 766 F.3d at 319–

20.

     Here, the State Defendants assert that "the Complaint fails to set forth any factual

allegations regarding personal involvement or even actual knowledge on the part of

[A]dministrator George Robinson"  State's Brief at 12.  The State Defendants further assert that

"the only individual Polynice informs about his alleged medical issue is S.C.O. John Doe.

Furthermore, Polynice does not allege that [A]dministrator George Robinson was present during

the conversation with S.C.O John Doe nor does he allege that any information was given to

anyone in the jail regarding his alleged accommodation."  *Id.*   The State Defendants provide no

other analysis of Plaintiff's allegations against this Defendant.

The Complaint alleges that Plaintiff has medical restrictions that require him to have a bottom bunk and he told S.C.O. John Doe about his medical restrictions. Nevertheless S.C.O. John Doe assigned him to a top bunk on the order of Sergeant Gibson. Plaintiff subsequently fell and was seriously injured. *See* Complaint at ¶¶ 20-28. The Complaint asserts that Administrator George Robinson failed to train and supervise Sergeant Gibson and S.C.O John Doe and created deficient policies in numerous areas, including the failure to properly screen inmates for medical injuries, failure to adequately monitor and guard inmates, failure to have inmates properly treated for medical issues, failure to have inmates provided necessary and reasonable medical accommodations, and the failure to protect inmates from injury or harm whether self-inflicted or by other inmates. *See* Complaint at ¶¶ 39-41. Plaintiff also alleges that Administrator George Robinson knew that there was pattern of unconstitutional behavior by subordinates and also knew about the need for additional training and supervision of subordinates. *See id.* ¶¶ 53-55.

The State Defendants do not address the sufficiency of these allegations and instead focus on the fact that Administrator George Robinson did not personally order Plaintiff to take the top bunk, did not personally speak to Plaintiff about his need for medical accommodations, and was not present at the time Plaintiff spoke to S.C.O. John Doe. As explained above, this type of direct participation is only <u>one way</u> that a supervisor-defendant may be liable under § 1983.[3] A

---

[3]"Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in ... the subordinate's conduct." *Bennett v. Washington*, No. CIV.A. 11-176, 2015 WL 731227, at *11 (E.D. Pa. Feb. 19, 2015) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), abrogated on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 76–78 (2007)). Although the Complaint asserts that Administrator George Robinson "directed, encouraged, tolerated, acquiesced to" certain behavior, there are insufficient factual allegations to suggest that this Defendant had knowledge that S.C.O John Doe assigned Plaintiff to the top bunk in spite of Plaintiff's medical restrictions and thus approved or acquiesced in his subordinate's alleged misconduct.

supervisor-defendant may also be liable under § 1983 where he or she fails to supervise or train his or her subordinates and/or has created deficient policies, knew that the deficiencies in training, supervision, or policymaking were likely to result in a constitutional violation, and such violation(s) did occur.  At this early stage, and in the absence of specific arguments by the State Defendants, the Court finds that the supervisory liability claims against Administrator George Robinson premised on deficient policymaking and/or failure to train/supervise are sufficient to survive a motion to dismiss.  As such, the Court will deny without prejudice the motion to dismiss as to Administrator George Robinson as to the supervisor liability claims premised on policymaking and failure to train and/or supervise.

### b.  Exhaustion of Administrative Remedies

The Court will also deny without prejudice the motion to dismiss for failure to exhaust administrative remedies.  The Prisoner Litigation Reform Act of 1995 ("PLRA") provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *Ball v. Famiglio*, 726 F.3d 448, 456 (3d Cir. 2013), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015).  The exhaustion requirement is mandatory and, thus, bars an inmate from commencing such an action without first properly exhausting available administrative remedies.  *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 85, 93–94 (2006).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Coulston v. Glunt*, 665 F. App'x 128, 132 (3d Cir. 2016).

Nevertheless, failure to exhaust administrative remedies is an affirmative defense, which the defendant bears the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). Inmates are not required to plead or demonstrate exhaustion in their complaints. *Id.* For this reason, the Court will deny without prejudice the motion to dismiss for failure to plead exhaustion of administrative remedies. At the appropriate time, State Defendants are free to file a motion for summary judgment on exhaustion of administrative remedies.

### c. The Notice Requirement of the NJTCA

Finally, the Court will dismiss without prejudice the state law negligence claims for failure to comply with the notice requirements of the NJTCA.[4] Pursuant to N.J.S.A. 59:8–8., a person bringing a tort claim against a public official must give notice to the entity within ninety days of the injury. A claimant is "forever barred from recovering against a public entity or public employee" if the claimant fails to file the notice of claim with the public entity within 90 days of accrual of the claim and fails to obtain permission of a judge to file a late notice within one year; or if two years have elapsed since accrual of the claim. *See* N.J.S.A. 59:-8-8(a).

Here, Plaintiff's alleged injuries occurred on October 1, 2017. The Complaint does not contain allegations that Plaintiff complied with the notice requirements of the NJTCA, and the time in which Plaintiff was required to present his notice under the NJTCA has expired. Federal courts to have considered the question have found the failure to file a notice of claim under N.J.S.A. 59:-8-8 to be grounds for dismissal at the motion to dismiss stage. *See e.g. Niblack v.*

---

[4] State Defendants also argue that Plaintiff's § 1983 claims must be dismissed because negligent conduct is insufficient to sustain a constitutional violation. The Court does not read Plaintiff's Complaint to assert § 1983 claims based on negligence. Instead, the Court reads the Complaint to assert § 1983 claims and separate state law claims for negligence and need not reach this argument.

*SCO Malbreen*, No. 15-5298, 2016 WL 1628881, at *3 (D.N.J. Apr. 25, 2016) (dismissing TCA

claims for failure to allege the plaintiff met the notice of claim requirements); *Van Valen v.*

*Lanigan*, No. 18-11441, 2020 WL 859330, at *5 (D.N.J. Feb. 21, 2020) (same).  Other courts

have construed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to comply with the

notice of claim provision as a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P.

12(b)(1), because the State has conditioned its waiver of sovereign immunity on compliance with

TCA procedures. *See e.g.*, *Baldeo v. City of Paterson*, No. 18-5359, 2019 WL 277600, at *5 n.6

(D.N.J. Jan. 18, 2019).

      In either case, Plaintiff appears to acknowledge in his brief that he has not complied with

the notice of claim requirement but vaguely references the doctrine of substantial compliance

and appears to assert that the State Defendants had sufficient notice of Plaintiff's injuries.

Although more than two years has elapsed since Plaintiff's injuries occurred and his claims

accrued, Plaintiff also asserts that "this lawsuit was filed less than two years after the incident in

question occurred, and as a result, this Court should allow a late notice, related back to the filing

of this action."  *See* Plaintiff's Brief at 10.  There is nothing to suggest that Plaintiff has

substantially complied with the notice requirement.  In *Lebron v. Sanchez*, 407 N.J. Super. 204

(App. Div. 2009), for instance, the court applied the equitable doctrine of substantial compliance

to prevent barring legitimate claims due to a technical defect in the notice of tort claim filed by

plaintiff.  *Id.* at 215–21.  Plaintiff does not assert that he filed the NJTCA notice, albeit with a

technical defect.  At this time, the Court will grant the motion to dismiss the state law

negligence claims for failure to comply with the notice of tort provision of the NJTCA.

Nevertheless, because it is not clear if Plaintiff may be able to comply with the notice of tort

requirement at this late date, the Court will dismiss the state law negligence claims without prejudice.

**IV.**    **CONCLUSION**

For the reasons explained in this Memorandum Opinion, the Court will grant the motion to dismiss in part and deny it in part. The Court grants the motion to dismiss the § 1983 claims as to the NJDOC, Northern State Prison, and the damages claims against Administrator George Robinson in his official capacity. The Court also grants the motion to dismiss the state law negligence claims for failure to comply with the notice provision of the NJTCA. The Court denies the motion to dismiss the § 1983 claims against Administrator George Robinson in his personal supervisory capacity and also denies the motion to dismiss for failure to exhaust administrative remedies under the PLRA. An appropriate Order follows.

Dated:  May 28, 2020                                      _/s Madeline Cox Arleo_____
                                                          **Hon. Madeline Cox Arleo**
                                                          **UNITED STATES DISTRICT JUDGE**

to have inmates provided necessary and reasonable medical accommodations, fail to treat inmates medically and fail to protect inmates from injury or harm at the Northern State Prison[,]" and that this conduct was a proximate cause of Plaintiff's injuries.  *See id.* at ¶¶ 54-55; *see also* ¶¶ 59-60 (Count Four).

In Count Five, Plaintiff also asserts state law claims for negligence under the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. § 59:1–1 et seq, based on the same facts.

Plaintiff commenced this action by filing a Complaint through counsel on August 19, 2019.  *See* ECF No. 1.  On or about September 19, 2019, the State Defendants sought an extension of time within which to Answer Plaintiff's Complaint.  *See* ECF No. 6.  The Court granted the request on September 23, 2019.  *See* ECF No. 7.  This motion to dismiss followed on October 2, 2020.  Petitioner's counsel filed his response in opposition on November 5, 2020. ECF No. 12.  The State Defendants did not file a Reply.

## II.    <u>STANDARDS OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  Fed. R .Civ. P. 12(b)(6).  On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. CIV. 11–4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  All reasonable inferences must be made in the plaintiff's favor.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314

# EXHIBIT

# C



# WLB
## WRONKO  LOEWEN  BENUCCI
—— *Attorneys at Law* ——

JAMES R. WRONKO
JAMES V. LOEWEN
MARCO M. BENUCCI

KEVIN P. HEWITT, JR.•
MICHAEL POREDA ♦

 • Member of MI Bar
 ♦ Member of NY Bar

OF COUNSEL
GILBERT G. MILLER

website: www.newjerseylawyer.org
main email: WLB@newjerseylawyer.org

69 GROVE STREET
SOMERVILLE, NJ 08876
TEL: (908) 704-9200
FAX: (908) 704-9291

1130 U.S 202, SUITE A/7
RARITAN, NJ 08869
TEL: (908) 393-6445
FAX: (908 393-6447

**Please reply to Somerville**

July 10, 2020

**VIA ECF**
The Honorable Madeleine Cox Arleo
United States District Court for the District of New Jersey
50 Walnut Street
Newark, NJ 09102

**Re: Edwin Polynice v. New Jersey Department of Corrections**
Docket No. 2:19-cv-16875-MCA-LDW

Dear Judge Arleo:

    Since filing my substitution of attorney in March, I have received no notifications about action on the docket.  I found out that an opinion on the Defendants' motion to dismiss had been renedered serendipitously, when I saw it cited in another judge's opinion in another case I am working on.

    After contacting ECF's helpdesk for about a week, I got a written confirmation today that the issue had been resovled.  My purpose in sending this letter to make sure that the notifications are actually working.

        Sincerely,

Michael Poreda

# EXHIBIT

# D

**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EDWIN POLYNICE, *individually and on behalf of a class of similarly situated individuals,* | Docket No. 2:19-cv-16875-MCA-LDW |
| *Plaintiff,* | <u>Civil Action</u> |
| vs. | **NOTICE OF MOTION TO AMEND COMPLAINT** |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et al., | |
| *Defendants.* | |

To:
Chanell Branch
Deputy Attorney General
New Jersey Office of the Attorney General – Division of Law
State Police, Employment, & Corrections Section
Richard J. Hughes Justice Complex

25 Market Street, PO Box 112
Trenton, NJ 08625
Tel: (609) 376-3376
Email: Chanell.Branch@law.njoag.gov

To:
Rutgers University – University Correctional Health Care
Office of the Secretary
7 College Avenue
New Brunswick, NJ 08901

**PLEASE TAKE NOTICE** that Plaintiff Edward Polynice, individually and on behalf of a putative class, will move before the United States District Court for the District of New Jersey on September 21, 2020 for an order granting Plaintiff leave to Amend the Complaint.

_____
    Michael Poreda, Esq.
    *Attorney for Plaintiff*

Date: August 23, 2020

**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN POLYNICE, *individually and on behalf of a class of similarly situated individuals,* | Docket No. 2:19-CV-16875-MCA-LDW |
| *Plaintiff,* | <u>Civil Action</u> |
| vs. | **CERTIFICATION IN SUPPORT OF MOTION TO AMEND PLAINTIFF'S COMPLAINT** |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et al., | |
| *Defendants.* | |

I, Michael Poreda, of full age, do certify as follows:

1.) I represent Plaintiff in this case.

2.) Plaintiff's Complaint was initially filed by the Optimum Law Firm on August 19, 2019, naming the Department of Corrections and several of its employees as defendants.

3.)    The claim involved an accident in which Plaintiff fell out of a top prison bunk and sustained permanent injuries.

4.)    At the time of the fall, Plaintiff was bottom bunk restricted due to diabetes and a torn Achilles tendon.

5.)    On October 2, 2019, counsel for Defendants filed a Motion to Dismiss for failure to state a claim.

6.)    On March 6, 2020, I submitted a Substitution of Attorney.

7.)    On May 28, 2020, the court issued an order dismissing some of Plaintiff's claims without prejudice.

8.)    In particular, the negligence claims were dismissed for failure to plead compliance with the notice provisions of the Tort Claims Act.

9.)    After receiving the court's opinion (which was delayed several months by a technical issue with PACER), I proceeded to attempt contact with Plaintiff.

10.)    I learned that Plaintiff had been placed in "temporary housing" which a prison employee identified as St. Francis Medical Center.

11.)    On or about August 14, 2020, I received a phone call from Plaintiff, who had returned to South Woods State Prison after a long stay in the hospital.

12.)    Plaintiff informed me that his kidneys had failed.

13.)    He ran out of blood pressure medications, and the prison's health care provider did not refill the prescription, leading to his blood pressure spiking out of control.

14.)    The out-of-control blood pressure destroyed his kidneys.

15.)    Plaintiff now needs a kidney transplant.

16.)    Plaintiff's complaint is not unique.

17.)    I have several other prison clients who have complained of exactly the same problem with gaps in between refills of prescriptions for medications.

18.)    I have been informed that one prisoner, Michael Henderson, killed himself when he experienced a gap in psychiatric medications.

19.)     I spoke with a UCHC doctor, Sandra Connolly about this problem several months ago, and she admitted that it was unacceptable.

20.)     The Amended Complaint fixes the technical failings of the original Complaint. In particular, it states with particularity, the details about the timely filing of the required Tort Claim Notice against the Department of Corrections and its employees.

21.)     The Amended Complaint adds causes of action based on failure to accommodate a disability. These legal theories involve exactly the same set of facts as were originally plead.

22.)     The Amended Complaint also adds causes of action against University Correctional Health Care and includes a putative class.

23.)     Plaintiff has just been released from prison, his sentence having come to an end.

24.)     No discovery has been demanded or exchanged in this case yet.

I swear that the foregoing statements by me are true. I understand that if any of the foregoing statements are knowingly false, I am subject to punishment.

_____
    Michael Poreda, Esq.
    *Attorney for Plaintiff*

Date: August 23, 2020

**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN POLYNICE, *individually and on behalf of a class of similarly situated individuals,*<br><br>          *Plaintiff*,<br><br>vs.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, ADMINISTRATOR GEORGE ROBINSON, SERGEANT GIBSON, S.C.O. JOHN DOE, RUTGERS UNIVERSITY – UNIVERSRITY CORRECTIONAL HEALTH CARE ("UCHC"), SHERITA-LATIMORE-COLLIER, M.D., UCHC JOHN DOES 1-20, DOC JOHN DOES 1-10,<br><br>          *Defendants*. | Docket No. 2:19-CV-16875-MCA-LDW<br><br><br>Civil Action<br><br>**AMENDED COMPLAINT** |

Edwin Polynice, by way of this Amended Complaint hereby brings the following action against the Defendants as follows:

## JURISDICTION AND VENUE

1.) This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the question arises under the laws and Constitution of the United States.

2.) This Court has jurisdiction over state law claims herein presented pursuant to 28 U.S.C. § 1367 because the claims are part of a case over which the court has federal question jurisdiction.

3.) Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because all relevant events took place in New Jersey.

## PARTIES

4.) Plaintiff Edwin Polynice is a resident of New Jersey whose date of birth is November 15, 1978. He was in the custody of the New Jersey Department of Corrections from June 2012 until August 2020. His SBI number was 864138C. He last resided at South Woods State Prison, 215 South Burlington Road, Bridgeton, NJ 08302. Due to the recent award of eight months of public health emergency credits, Polynice was just released from prison. He plans to reside upon release at 60 North Arlington Avenue, Apt. 104, East Orange, NJ 07017.

5.) Defendant New Jersey Department of Corrections is a New Jersey State agency headquartered at Whittlesey Road, Trenton, NJ 08625.

6.) Newly added Defendant Rutgers University – University Correctional Health ("UCHC") care is a corporate entity headquartered at 7 College Avenue, New Brunswick, NJ 08901. UCHC is the medical contractor that provides medical services to inmates within the custody of the New Jersey Department of Corrections.

7.) Newly added Defendant Sherita Latimore-Collier, M.D. is the Medical Director of South Woods State Prison. She is an employee of UCHC.

8.) Defendant George Robinson is currently the Administrator of the Adult Diagnostic and Treatment Center, a prison facility operated by the New Jersey Department of Corrections. At the times relevant to this complaint, he was the Administrator of

Northern State Prison, P.O. Box, 2300, 168 Frontage Road, Newark, NJ 07114. He is an employee of the New Jersey Department of Corrections.

9.)  Defendant Sergeant Gibson, on information and belief, is that name of the correctional sergeant who, on September 30, 2017, was responsible for overseeing the inmates living in Delta Unit 1-E at Northern State Prison. Sergeant Gibson is an employee of Defendant New Jersey Department of Corrections.

10.)  Defendant S.C.O. John Doe was an NJ DOC correctional officer employed at Northern State Prison on September 30, 2017.

11.)  Newly added Defendants UCHC John Does 1-20 are employees of UCHC, including nurses, doctors, and supervisors.

12.)  Newly added Defendants DOC John Does 1-20 are employees and supervisors of the DOC.

## FACTS

13.)  Plaintiff is known to have hypertension, diabetes, and history of renal insufficiency.

14.)  These are disabilities within the meaning of the New Jersey Law Against Discrimination, the Rehabilitation Act, and the Americans with Disabilities Act.

15.)  Plaintiff must take insulin for his diabetes.

16.)  Plaintiff must take blood pressure medication to control his high blood pressure.

17.)  Hypertension and diabetes are two conditions which can exacerbate renal insufficiency and lead to renal failure.

18.)  Due to the diabetes, as well as a tear to his Achilles tendon, Plaintiff was bottom bunk restricted.

19.)  The bottom bunk restriction was a reasonable accommodation for Plaintiff's disabilities.

20.)  On September 30, 2017, Plaintiff was living in Delta Unit 1-E at Northern State Prison, assigned to a bottom bunk.

21.)  For unknown reasons, on September 30, 2020, Plaintiff was told by S.C.O. John Doe to move out of his bottom bunk and move to cell 104 and sleep in a top bunk.

22.) Polynice told S.C.O. John Doe that he needed to be on the bottom bunk due to his disabilities.

23.) When S.C.O. John Doe protested that Polynice was no longer entitled to the accommodation, Polynice told him that the accommodation was for the remainder of his incarceration.

24.) Plaintiff's right to a safe place to sleep is clearly established law. N.J.A.C. 10A:31-3.6 states: "A qualified inmate with a disability shall be housed in a manner that provides for his or her safety, security and accessibility to facility programs or activities. Rooms, sleeping units, or housing units shall be designed for use by qualified inmates with disabilities."

25.) Following his explanation, Polynice was ordered to utilize the top bunk, in clear violation of DOC regulation, state law, and federal law.

26.) S.C.O. John Doe reiterated that this order had come from Sergeant Gibson.

27.) Polynice was compelled to follow the order.

28.) On October 1, 2017, at approximately 12:35pm, while attempting to dismount the top bunk to take a daily shower, Plaintiff Edwin Polynice became extremely dizzy from a drop in his blood sugar and fell.

29.) During this fall, Plaintiff, Edwin Polynice attempted to land on a stool, but slipped. He fell, striking his head on the toilet and his leg against the stool.

30.) Post-fall, Mr. Polynice sustained severe injuries leading to thirteen stitches and five staples.

31.) Mr. Polynice also suffered a dislocated shoulder, severe neck pain, and bruising on his legs.

32.) Plaintiff, Edwin Polynice, required an extended stay in the prison infirmary for ten days due to these injuries.

33.) Throughout his time in the infirmary, he experienced debilitating headaches with the pain extending throughout his entire head, chronic pain in his facial area, ongoing dizziness, and a bruised leg.

34.)      Additionally, Plaintiff, Edwin Polynice, continues to experience neck pain, headaches, and lower back pain.

35.)      Despite the ongoing pain, Plaintiff was never given any treatment or diagnostic other than Tylenol.

36.)      At some point after his accident, Plaintiff was transferred to South Woods State Prison.

37.)      On or about July 4, 2020, Plaintiff was living at South Woods State Prison.

38.)      On or about July 4, 2020, Plaintiff ran out of his prescriptions of the blood pressure medications coreg and clonidine.

39.)      Even before this, he alerted his medication nurse to the fact that he needed his prescriptions refilled.

40.)      The prescriptions were never refilled.

41.)      Plaintiff's blood pressure spiked out of control in the absence of his medications.

42.)      Plaintiff previously had a history of renal insufficiency and diabetes.

43.)      Diabetes and high blood pressure both placed Plaintiff at increased risk for kidney insufficiency and kidney failure.

44.)      As a result of Plaintiff's uncontrolled blood pressure, Plaintiff became extremely ill.

45.)      On or about July 27, 2020, Plaintiff was taken to St. Francis Medical Center due to the illness.

46.)      Here, he was diagnosed with kidney failure.

47.)      Plaintiff was placed on dialysis and hospitalized for several weeks.

48.)      As a result of the kidney failure, Plaintiff will incur the expenses of dialysis until he can obtain a kidney transplant.

49.)      Plaintiff will have to incur the expense of a kidney transplant.

50.) Once he obtains the kidney transplant, he will need additional medical care and oversight of the transplant and a shortened life span due to the transplant.

51.) Plaintiff will incur future medical expenses as a result of the kidney transplant.

52.) UCHC is aware and has been aware for some time of a fault in its prescription refill system that allows inmates on life-sustaining chronic care drugs to experience gaps of days or weeks between prescription refills in which inmates are left without access to the medications.

53.) Sherita Lattimore-Collier and UCHC John Does 1-20 have been aware for some time of a fault in UCHC's prescription refill system that allows inmates on life-sustaining chronic care drugs to experience gaps of days or weeks between prescription refills.

54.) Inmates have died due to this fault.

55.) Despite knowledge of this problem, UCHC, Lattimore-Collier, and John Does 1-20 have done nothing to remedy it.

56.) Upon information and belief, representatives and/or employees of Defendant New Jersey Department of Corrections and UCHC at all times material hereto, failed to properly evaluate Mr. Polynice's medical needs and restrictions, while simultaneously ignoring previously-mandated medical advice.

57.) Furthermore, Mr. Polynice was exposed to harmful and hazardous conditions. Therefore, Defendants failed to do their duty to maintain a safe and suitable environment, keeping Mr. Polynice safe from injury and harm.

58.) In the events described above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Mr. Polynice of his right and privileges secured by the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

59.) The failures of Defendants to properly protect and carry out medical instructions for Mr. Polynice's imminent risk for a head, neck, and back injuries, as well as injuries extending from his chronic conditions, demonstrated a deliberate indifference to and a conscious disregard for medical needs and requirements and the overall safety of Mr. Polynice.

60.) In the events described above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Mr. Polynice of his right and privileges secured by the United States Constitution and 42 U.S.C. § 1983.

61.) The failures of Defendants to properly adhere to Mr. Polynice's medically mandated restrictions, demonstrated a deliberate indifference to and a conscious disregard for the medical requirements and the overall safety of Mr. Polynice.

62.) In the events described above Defendants failed to provide Plaintiff with reasonable accommodations for a disability, resulting in permanent injuries.

63.) As a result of this neglectful, reckless, and/or intentional conduct, Plaintiff has lost the use of his back, neck, and kidneys.


## STATEMENT ON COMPLIANCE WITH NOTICE OF TORT CLAIM RULES

64.) On or about December 19, 2017, Plaintiff, or his then-counsel, Jean Ross, filed a Notice of Tort Claim seeking $100,000 for the injuries sustained in the fall.

65.) Plaintiff filed a notice of tort claim on Rutgers University for its negligence on August 18, 2020.

## CLASS ALLEGATIONS

66.) The gap in Plaintiff's chronic care medication is not an isolated incident.

67.) Every day, in every prison run by the New Jersey Department of Corrections, inmates are left with empty bottles of prescription medications for serious chronic problems such as heart disease, diabetes, high blood pressure, pain management, and psychiatric disorders.

68.) Inmates wait days and weeks while UCHC refills prescriptions that it knows inmates are in peril without.

69.) These gaps in prescription refills have been recognized as unacceptable by UCHC employees.

70.) Yet UCHC does nothing to remedy this life-endangering problem.

71.) Plaintiff's kidney failure is not an isolated event.

72.) Other inmates have suffered injury and death as a result of UCHC's callous disregard of this problem.

73.) On information and belief, the callous disregard is actually a calculated effort to cut costs.

**FIRST CLAIM FOR RELIEF**
**42 U.SC. § 1983 – EIGHTH AMENDMENT – DELIBERATE DIFFERNECE TO INMATE SAFETY –AGAINST GEORGE ROBINSON, SGT. GIBSON, S.C.O. JOHN DOE, and DOC JOHN DOES 1-20**

74.) The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

75.) Defendant New Jersey Department of Corrections, by and through their Administrator George Robinson and DOC John Does 1-20, who are other policymakers, developed policies, procedures and/or customs which caused the deprivation of Plaintiff, Edwin Polynice's constitutional rights.

76.) Said policies were inherently deficient, or inappropriate as formulated, as to the adherence of mandated medical care provided to an inmate that presented with documented medical issues.

77.) Defendant New Jersey Department of Corrections, by and through Defendant Administrator George Robinson and DOC John Does 1-20, who are other policymakers, recklessly, and/or intentionally and/or with deliberate indifference to inmate safety:

a. failed to properly train and supervise Defendant Sergeant Gibson and Defendant S.C.O. John Doe with regard to adequately assessing, monitoring and providing necessary and reasonable accommodations for inmates with medical issues, including but not limited to inmates with documented medical restrictions and

b. failed to properly train and supervise Defendant Sergeant Gibson and Defendant S.C.O. John Doe, or other prison staff to maintain a safe and suitable environment, and to keep inmates safe from injury or serious harm.

c. maintained policies, procedures and/or customs that were deliberately indifferent to the constitutional rights of inmates to be adequately screened for medical issues, to provide necessary and reasonable accommodations for inmates with medical issues; and to be kept safe from injury or serious harm;

d.    failed to enforce the contractual obligations of UCHC to monitor and treat inmates with medical issues, including but not limited to inmates with documented medical restrictions.

e.    with full knowledge, allowed institutional policies and procedures regarding intake, medical screening, custodial watch and medical treatment to be ignored and violated with reckless abandon; and

f.    failed to provide adequate and needed health care for inmates at the Detention Unit of the Northern State Prison.

78.)    The actions and/or failures to act by Defendant, New Jersey Department of Corrections, Defendant Administrator George Robinson, Defendant Sergeant Gibson and Defendant S.C.O. John Doe, as illustrated above, amounted to a deliberate indifference of Mr. Polynice's constitutional rights and proximately caused his injuries.

79.)    The violation of Mr. Polynice's rights under the United States Constitution was the proximate cause of damages to Plaintiff, thereby entitling Plaintiff to compensatory damages from Defendants, Administrator George Robinson, Sergeant Gibson, and S.C.O. John Doe in an amount exceeding $1,000,000.00.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## <u>SECOND CLAIM FOR RELIEF</u>
## NEGLIGENCE AGAINST ALL DOC DEFENDANTS

80.)    If not reckless, intentional, or deliberately indifferent to inmate safety, the decision to place Plaintiff in the top bunk was negligent.

81.)    But for the exercise of due care to listen to Plaintiff's truthful pleading that he was bottom-bunk restricted due to his health issues, Plaintiff would not have suffered permanent injuries.

82.)    Had Defendants exercised due care, they would have placed Plaintiff in a bottom bunk, and he would not have fallen even if he had an attack of low blood sugar.

83.)    The failure to exercise due care proximately resulted in Plaintiff's permanent injuries.

84.) The failure to exercise due care was the fault of S.C.O. John Doe, Sergeant Gibson, John Does 1-20, and/or George Robinson.

85.) The Department of Corrections is liable on the theory of respondeat superior for the negligence of its employees.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## THIRD CLAIM FOR RELIEF
## NEW JERSEY LAW AGAINST DISCRIMINATION – FAILURE TO ACCOMMODATE A DISABILITY AGAINST DOC DEFENDANTS

86.) Plaintiff was a person with a disability, namely his diabetes and his Achilles tendon tear.

87.) The New Jersey Law Against Discrimination entitles Plaintiff to reasonable accommodations that would give him a safe place to sleep.

88.) Department of Corrections Defendants denied Plaintiff access to a bottom bunk.

89.) This denial caused Plaintiff permanent injuries.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## FOURTH CLAIM FOR RELIEF
## AMERICANS WITH DISABILITIES ACT
## AGAINST DOC DEFENDANTS

90.) Plaintiff was a qualified person with a disability, namely his diabetes and his Achilles tendon tear.

91.) One of the public programs, services, or activities of the prison is the provision of safe places to sleep.

92.) Plaintiff's disabilities could have been reasonably accommodated by the provision of a bottom bunk. This would have provided him with a safe place to sleep.

93.) Department of Corrections Defendants denied Plaintiff access to a bottom bunk.

94.) This denial caused Plaintiff permanent injuries.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

<u>**FIFTH CLAIM FOR RELIEF**</u>
**REHABILITATION ACT**

95.) Like the Americans with Disabilities Act, the Rehabilitation Act also requires prisons to provide inmates with disabilities reasonable accommodations so that they can access all the programs, services, and activities of the prison.

96.) The substantive standards for liability under the Rehabilitation Act are the same as under the Americans with Disabilities Act.

97.) The DOC Defendants are liable to Plaintiff under the Rehabilitation Act based upon the same facts recited in the Fourth Claim for Relief above.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

<u>**SIXTH CLAIM FOR RELIEF**</u>
**NEGLIGENT TRAINING AND SUPERVISION AGAINST NEW JERSEY DEPARTMENT OF CORRECTIONS**

98.) DOC John Does 1-20 and/or Sergeant Gibson had a duty to train SCO John Doe and/or Sergeant Gibson in the proper handling of prisoners with disabilities, especially disabilities that might not be visible.

99.) DOC John Does 1-20 and/or Sergeant Gibson failed to train SCO John Doe and/or Sergeant Gibson in the proper handling of prisoners with disabilities, especially disabilities that might not be visible.

100.) Bur for this failure to train, Plaintiff would not have sustained his permanent injuries.

101.) DOC John Does 1-20 and/or Sergeant Gibson had a duty to supervise the transfer of Plaintiff from his bottom bunk to cell 104.

102.) DOC John Does 1-20 and/or Sergeant Gibson failed to properly supervise the transfer of Plaintiff from his bottom bunk to cell 104.

103.) Had the Defendants properly supervised Plaintiff's cell transfer he would have been assigned to a bottom bunk or else left in his original cell.

104.) But for the negligent failure to supervise Plaintiff's transfer out of his original cell, Plaintiff would not have sustained his permanent injuries.

105.) The Department of Corrections is liable *respondeat superior* for the negligent training and supervision of its staff.

## SEVENTH CLAIM FOR RELIEF
## NEGLIGENCE OF UNIVERSITY CORRECTIONAL HEALTH CARE

106.) Rutgers University – University Correctional Health Care and its employees had a duty to make sure that KOP (keep on person) prescriptions for chronic care inmates are promptly refilled such that inmates do not experience gaps in access to life-sustaining medications.

107.) UCHC and its employees were negligent and failed to make sure that Plaintiff did not suffer a gap in his coreg and clonidine.

108.) As a proximate result of UCHC's negligence, Plaintiff suffered kidney failure.

109.) UCHC has also been negligent with regard to all inmates who have suffered similar lapses in refill of life-sustaining prescription medications.

110.) UCHC's negligence has caused injury and death to inmates in all prisons run by the New Jersey Department of Corrections, and continues to place all class members' lives in jeopardy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

**WHEREFORE**, the class whom Plaintiff represents demands injunctive relief, along with counsel fees and costs of suit.

## EIGHTH CLAIM FOR RELIEF
## 42 U.S.C. § 1983 AGAINST SHERITA LATTIMORE-COLLIER, UCHC JOHN DOES 1-20, AND UCHC FOR DELIBERATE INDIFFERENCE IN VIOLATION OF THE EIGHTH AMENDMENT

111.)   Gaps in prescription refill is chronic problem that plagues all of the prisons run by the New Jersey Department of Corrections.

112.)   UCHC employees, including South Woods State Prison's Medical Director, Sherita Lattimore-Collier, and UCHC John Does 1-20, are well aware of the gaps occurring in prescription medication refills.

113.)   Lattimore-Collier and UCHC John Does 1-20 refuse to do anything about the gaps in the refill of prescription medications out of callous disregard and deliberate indifference.

114.)   In fact, Lattimore-Collier and UCHC John Does 1-20 do nothing because they are motivated by the practice's cost saving effects.

115.)   The gaps in prescription refills is a policy, practice, or custom of UCHC.

116.)   As such, UCHC is directly liable for the damages to Plaintiff and other class members.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

**WHEREFORE**, the class whom Plaintiff represents demands injunctive relief, along with counsel fees and costs of suit.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

_____
MICHAEL POREDA, ESQ.
*Attorney for Plaintiff*

Date: August 23, 2020

### NOTICE OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that Michael Poreda, Esq. is hereby designated as Trial Counsel in the above-captioned matter.

_____
   Michael Poreda, Esq.
   *Attorney for Plaintiff*

Date: August 23, 2020

### CERTIFICATION OF NO OTHER ACTION

Pursuant to Rule 4:5-1, it is hereby certified that to the best of my knowledge and belief, there are no other pending actions or proceedings involving the matter in controversy, none are contemplated, and I do not presently know the identity of any other party who should be joined.

_____
   Michael Poreda, Esq.
   *Attorney for Plaintiff*

Date: August 23, 2020

**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDWIN POLYNICE, *individually and on behalf of others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, ~~NORTHERN STATE PRISON,~~ ADMINISTRATOR GEORGE ROBINSON, SERGEANT GIBSON ,S.C.O. JOHN DOE, <u>RUTGERS UNIVERSITY – UNIVERSRITY CORRECTIONAL HEALTH CARE ("UCHC"), SHERITA-LATIMORE-COLLIER, M.D., UCHC JOHN DOES 1-20, DOC JOHN DOES 1-10,</u> ~~JOHN DOES 1-10 AND ABC ENTITIES A-Z,~~<br><br>*Defendants*. | Docket No. No. 2:19-cv-16875-MCA-LDW<br><br><br><u>Civil Action</u><br><br><br>**LOCAL RULE 15.1 AMENDED COMPLAINT** |

Edwin Polynice, by way of this Amended Complaint hereby brings the following action against the Defendants as follows:

~~NOW COMES, Plaintiff, by and through the undersigned Counsel, and hereby b☐ng this action against the Defendants as follows:~~

**INTRODUCTORY STATEMENT**

~~1.     This is a civil rights action brought pursuant to the State of New Jersey tort laws, the United States Constitution and 42 U.S.C. § 1983 seeking damages against Defendants for committing acts under color of law that deprived Plaintiff, Edwin Polynice, of his rights secured to him by the Constitution and laws of the United States of America.~~

~~2.     In particular on October 11, 2017, Defendants violated the rights of Edwin Polynice by failing to keep him in a safe and secure environment where he could be kept free from injury and harm, by failing to respect and abide by medical professionals, and by failing to adhere to adequately mandated medical regulations and custodial attention, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.~~

~~3. In addition, this action is brought by Plaintiff against Defendants under the Laws of New Jersey that relate to Prisoner rights to be kept in a safe and secure environment where he could be kept free from injury, harm, and death, by failing to provide him with adequate medical care and custodial attention, and by demonstrating deliberate indifference to Edwin Polynice's necessary medical accommodations.~~

**JURISDICTION AND VENUE**

1.)     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the question arises under the laws and Constitution of the United States, namely whether Defendants violated Plaintiff's rights under the U.S. Constitution and the Americans with Disabilities Act.

2.)     This Court has jurisdiction over state law claims herein presented pursuant to 28 U.S.C. § 1367 because the claims are part of a case over which the court has federal question jurisdiction.

3.)     Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because all relevant events took place in New Jersey.

## **PARTIES**

10.     Plaintiff, Edwin Polynice, brings this action on behalf of himself and in his own right.

11.     Defendant, New Jersey Department of Corrections, located in the County of Essex, is a county in the state of New Jersey and owns, operates, manages, directs and controls the New Jersey Department of Corrections. The Northern State Prison division of the New Jersey Department of Corrections is located at 168 Frontage Rd, Newark, NJ 07114 (referred at times herein as the "Northern State Prison").

12.     Defendants, at all times material hereto, were the Administrators of the Northern State Prison, located at 168 Frontage Rd, Newark, NJ 07114. To the extent the Court deems appropriate, Administrators of the Northern State Prison for the New Jersey Department of Corrections and Defendants that were active participants in the events leading to Plaintiff's injuries, such as S.C.O. John Doe, should be held liable in their individual capacity.

13.     Defendant, Northern State Prison, is a law enforcement entity in the state of New Jersey which operates, manages, directs and controls the Northern State Prison facility within the County of Essex.

14.     Defendant, New Jersey Department of Corrections, is a law enforcement entity in the state of New Jersey which operates, manages, directs and controls the Northern State Prison facility within the County of Essex.

15.     Defendant, S.C.O. John Doe was at all times material hereto, employed by the Northern State Prison located at 168 Frontage Rd, Newark, NJ 07114. Defendant, S.C.O. John Doe is sued in his individual capacity.

16.     Defendant, Sergeant Gibson, was at all times material hereto, employed by the Northern State Prison located at 168 Frontage Rd, Newark, NJ 07114. Defendant, Sergeant Gibson is sued in his individual capacity.

17.     The Health Services Unit for the Department of Corrections for the State of New Jersey, with corporate offices located at 168 Frontage Rd, Newark, NJ 07114, was contractually engaged with the Northern State Prison and the New Jersey Department of Corrections to provide health care services for inmates at the Northern State Prison.

18.     At all times relevant hereto, Defendant, John Doe Personnel and/or Corrections Officers and/or Administrators, may contain fictitious names representing unnamed corrections officers and/or other individuals, employed with the Northern State Prison facility located at 168 Frontage Rd, Newark, NJ 07114, who were acting under the supervision of the New Jersey

3

~~Department of Corrections, the Northern State Prison and Administrators of both agencies. These Defendants are sued in their individual capacities.~~

~~19. All Defendants, for one or more entities, which were contracted to provide medical and/or psychiatric services, counseling, security and custodial care to inmates under the custody of the New Jersey Department of Corrections.~~

4.)   Plaintiff Edwin Polynice is a resident of New Jersey whose date of birth is November 15, 1978.  He has been in the custody of the New Jersey Department of Corrections since June 2012.  His SBI number is 864138C.  He is currently residing at South Woods State Prison, 215 South Burlington Road, Bridgeton, NJ 08302.  Due to the recent award of eight months of public health emergency credits, Polynice is about to be released from prison.  He plans to reside upon release at 60 North Arlington Avenue, Apt. 104, East Orange, NJ 07017.

5.)   Defendant New Jersey Department of Corrections is a New Jersey State Agency headquartered at Whittlesey Road, Trenton, NJ 08625.

6.)   Newly added Defendant Rutgers University – University Correctional Health ("UCHC") care is a corporate entity headquartered at 7 College Avenue, New Brunswick, NJ 08901.  UCHC is the medical contractor that provides medical services to inmates within the custody of the New Jersey Department of Corrections.

7.)   Newly added Defendant Sherita Latimore-Collier, M.D. is the Medical Director of South Woods State Prison.  She is an employee of UCHC.

8.)   Defendant George Robinson is currently the Administrator of the Adult Diagnostic and Treatment Center, a prison facility operated by the New Jersey Department of Corrections.  At the times relevant to this complaint, he was the Administrator of Northern State Prison, P.O. Box, 2300, 168 Frontage Road, Newark, NJ 07114.  He is an employee of the New Jersey Department of Corrections.

9.)   Defendant Sergeant Gibson, on information and belief, is that name of the correctional sergeant who, on September 30, 2017, was responsible for overseeing the inmates living in Delta Unit 1-E at Northern State Prison.  Sergeant Gibson is an employee of Defendant New Jersey Department of Corrections.

10.)   Defendant S.C.O. John Doe was an NJ DOC correctional officer employed at Northern State Prison on September 30, 2017.

11.) Newly added Defendants UCHC John Does 1-20 are employees of UCHC, including nurses, doctors, and supervisors.

12.) Newly added Defendants DOC John Does 1-20 are employees and supervisors of the DOC.

## FACTS

13.) Plaintiff is known to have both hypertension, diabetes, and history of renal insufficiency.

14.) These are disabilities within the meaning of the New Jersey Law Against Discrimination and the Americans with Disabilities Act.

15.) Plaintiff must take insulin for his diabetes.

16.) Plaintiff must take blood pressure medication to control his high blood pressure.

17.) Hypertension and diabetes are two conditions which can exacerbate renal insufficiency and lead to renal failure.

18.) Due to the diabetes, as well as a tear to his Achilles tendon, Plaintiff was bottom bunk restricted.

19.) The bottom bunk restriction was a reasonable accommodation for Plaintiff's disabilities.

20.) On September 30, 2017, Plaintiff was living in the Delta Unit 1-E at Northern State Prison, assigned to a bottom bunk. ~~Polynice was incarcerated at the Detention Unit of Northern State Prison on or about September 30, 2017.~~

21.) For unknown reasons, on September 30, 2020, Plaintiff was told by S.C.O. John Doe to move out of his bottom bunk and move to cell 104 and sleep in a top bunk. ~~At said date, S.C.O. John Doe instructed Plaintiff to move into cell 104 top bunk.~~

22.) Polynice told S.C.O. John Doe that he needed to be on the bottom bunk due to his disabilities.

23.) When S.C.O. protested that the accommodation, Polynice told him that the accommodation was for the remainder of his incarceration.

5

24.)     Following his explanation, Polynice was ordered to utilize the top bunk, and S.C.O. John
        Doe reiterated that this order had come from Sergeant Gibson.

25.)     Polynice was compelled to follow the order.

26.)     On October 1, 2017, at approximately 12:35pm, while attempting to dismount the top
        bunk to take a daily shower, Plaintiff Edwin Polynice became extremely dizzy from a
        drop in his blood sugar and fell.

27.)     During this fall, Plaintiff, Edwin Polynice attempted to land on a stool, but slipped.  He
        fell, striking his head on the toilet and his leg against the stool.

28.)     Post-fall, Mr. Polynice sustained severe injuries leading to thirteen stitches and five
        staples.

29.)     Mr. Polynice also suffered a dislocated shoulder, severe neck pain, and bruising on his
        legs.

30.)     Plaintiff, Edwin Polynice, required an extended stay in the prison infirmary for ten days
        due to these injuries.

31.)     Throughout his time in the infirmary, he experienced debilitating headaches with the pain
        extending throughout his entire head, chronic pain in his facial area, ongoing dizziness,
        and a bruised leg.

32.)     Additionally, Plaintiff, Edwin Polynice, continues to experience neck pain, headaches,
        and lower back pain.

33.)     Despite the ongoing pain, Plaintiff was never given any treatment or diagnostic other than
        Tylenol.

34.)     On or about July 4, 2020, Plaintiff ran out of his prescriptions of the blood pressure
        medications coreg and clonidine.

35.)     Even before this, he alerted his medication nurse to the fact that he needed his
        prescriptions filled.

36.)     The prescriptions were never refilled.

37.)     Plaintiff's blood pressure spiked out of control in the absence of his medications.

6

38.) Plaintiff previously had a history of renal insufficiency and diabetes.

39.) Diabetes and high blood pressure both placed Plaintiff at increased risk for kidney insufficiency and kidney failure.

40.) As a result of Plaintiff's uncontrolled blood pressure, Plaintiff became extremely ill.

41.) On or about July 27, 2020, Plaintiff was taken to St. Francis Medical Center due to the illness.

42.) Here, he was diagnosed with kidney failure.

43.) Plaintiff was placed on dialysis and hospitalized for several weeks.

44.) As a result of the kidney failure, Plaintiff will incur the expenses of dialysis until he can obtain a kidney transplant.

45.) Plaintiff will have to incur the expense of a kidney transplant.

46.) Once he obtains the kidney transplant, he will need additional medical care and oversight of the transplant and a shortened life span due to the transplant.

47.) Plaintiff will incur future medical expenses as a result of the kidney transplant.

48.) UCHC is aware and has been aware for some time of a fault in its prescription system that allows Plaintiff's on life-sustaining chronic care drugs to experience gaps of days or weeks between prescriptions.

49.) Rutgers John Does 1-20 have been aware for some time of a fault in its prescription system that allows Plaintiff's on life-sustaining chronic care drugs to experience gaps of days or weeks between prescriptions.

50.) Inmates have died due to this fault.

51.) Despite knowledge of this problem, UCHC and John Does 1-20 have done nothing to remedy it.

52.) Upon information and belief, representatives and/or employees of Defendant New Jersey Department of Corrections and UCHC at all times material hereto, failed to properly

evaluate Mr. Polynice's medical needs and restrictions, while simultaneously ignoring previously mandated medical advice.

53.)    Furthermore, Mr. Polynice was ordered to be exposed to harmful and hazardous conditions. Therefore, they failed to do their duty to maintain a safe and suitable environment, keeping Mr. Polynice safe from injury and harm.

54.)    In the events described above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Mr. Polynice of his right and privileges secured by the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

55.)    The failures of Defendants to properly protect and carry out medical instructions for Mr. Polynice's imminent risk for a head, neck, and back injuries demonstrated a deliberate indifference to and a conscious disregard for medical needs and requirements and the overall safety of Mr. Polynice.

56.)    In the events described above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Mr. Polynice of his right and privileges secured by the United States Constitution and 42 U.S.C. § 1983.

57.)    The failures of Defendants to properly adhere to Mr. Polynice's medically mandated restrictions, demonstrated a deliberate indifference to and a conscious disregard for the medical requirements and the overall safety of Mr. Polynice.

58.)    <u>In the events described above Defendants failed to provide Plaintiff with reasonable accommodations for a disability, resulting in permanent injuries.</u>

59.)    <u>As a result of this neglectful, reckless, and/or intentional conduct, Plaintiff has lost the use of his kidneys.</u>

## **STATEMENT ON COMPLIANCE WITH NOTICE OF TORT CLAIM RULES**

60.)    <u>On or about December 19, 2017, Plaintiff, or his then-counsel, Jean Ross, filed a Notice of Tort Claim seeking $100,000 for the injuries sustained in the fall.</u>

61.)    <u>Plaintiff filed a notice of tort claim on Rutgers University for its negligence on August 18, 2020.</u>

## CLASS ALLEGATIONS

62.) The gap in Plaintiff's chronic care medication is not an isolated incident.

63.) Every day, in every prison run by the New Jersey Department of Corrections, inmates are left with empty bottles of prescription medications for serious chronic problems such as heart disease, diabetes, high blood pressure, pain management, and psychiatric drugs.

64.) Inmates wait days and weeks while UCHC fills prescriptions that it knows need to be continually refilled.

65.) These gaps in prescriptions have been recognized as unacceptable by UCHC employees.

66.) Yet UCHC does nothing to remedy this life-endangering problem.

67.) Plaintiff's kidney failure is not an isolated event.

68.) Other inmates have suffered injury and death as a result of UCHC's callous disregard of this problem.

69.) On information and belief, the callous disregard is actually a calculated effort to cut costs.

## FIRST CLAIM FOR RELIEF
## 42 U.SC. § 1983 – EIGHTH AMENDMENT – DELIBERATE DIFFERNECE TO INMATE SAFETY – SUPERVISORY LIABILITY AGAINST GEORGE ROBINSON, SGT. GIBSON, S.C.O. JOHN DOE, and DOC JOHN DOES 1-20

### ~~FEDERAL CONSITUTIONAL VIOLATIONS BY ALL DEFENDANTS~~

70.) The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

71.) Defendant, ~~Northern State Prison~~, New Jersey Department of Corrections, by and through their Administrator George Robinson and DOC John Does 1-20, who are other policymakers, developed policies, procedures and/or customs which caused the deprivation of Plaintiff, Edwin Polynice's constitutional rights.

72.)    Said policies were inherently deficient, or inappropriate as formulated, as to the adherence of mandated medical care provided to an inmate that presented with documented medical issues.

73.)    Defendant <u>New Jersey Department of Corrections,</u> ~~Northern State Prison~~, by and through Defendant Administrator George Robinson and <u>DOC John Does 1-20, who are</u> other policymakers, ~~negligently,~~ recklessly, and/or intentionally <u>and/or with deliberate indifference to inmate safety</u>:

      f.      failed to properly train and supervise Defendant Sergeant Gibson and Defendant S.C.O. John Doe with regard to adequately assessing, monitoring and providing necessary and reasonable accommodations for inmates with medical issues, including but not limited to inmates with documented medical restrictions and

      b.      failed to properly train and supervise Defendant Sergeant Gibson and Defendant S.C.O. John Doe, or other prison staff to maintain a safe and suitable environment, and to keep inmates safe from injury or serious harm.

      c.      maintained policies, procedures and/or customs that were deliberately indifferent to the constitutional rights of inmates to be adequately screened for medical issues, to provide necessary and reasonable accommodations for inmates with medical issues; and to be kept safe from injury or serious harm;

      d.      failed to enforce the contractual obligations of ~~the Medical Unit~~ <u>UCHC</u> to monitor and treat inmates with medical issues, including but not limited to inmates with documented medical restrictions.

      e.      with full knowledge, allowed institutional policies and procedures regarding intake, medical screening, custodial watch and medical treatment to be ignored and violated with reckless abandon; and

      f.      failed to provide adequate and needed health care for inmates at the Detention Unit of the Northern State Prison.

74.)    The actions and/or failures to act by Defendant, ~~Northern State Prison~~ <u>New Jersey Department of Corrections</u>, Defendant Administrator George Robinson, Defendant Sergeant Gibson and Defendant S.C.O. John Doe, as illustrated above, amounted to a

deliberate indifference of Mr. Polynice's constitutional rights and proximately caused his injuries.

75.)    The violation of Mr. Polynice's rights under the United States Constitution was the proximate cause of damages to Plaintiff, thereby entitling Plaintiff to compensatory damages from Defendants, ~~Northern State Prison,~~ Administrator George Robinson, Sergeant Gibson, and S.C.O. John Doe in an amount exceeding $1,000,000.00.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

### SECOND CLAIM FOR RELIEF

~~**LIABILITY OF DEFENDANTS NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON, ADMINISTRATORS GEORGE ROBINSON, SERGEANT GIBSON, AND S.C.O. JOHN DOE FOR FEDERAL CONSTITUTIONAL VIOLATIONS**~~

~~**NEGLIGENCE AGAINST DEPARTMENT OF CORRECTIONS AND ALL DOC DEFENDANTS**~~

~~**44.    The allegations set forth in the proceeding paragraphs are incorporated by reference as if fully set forth herein.**~~

~~**45.    At all times relevant hereto, Defendants were acting under color of state law as employees or agents of the Northern State Prison and/or Health Services Unit of New Jersey, and/or if not employees or agents, by direction of and under the supervision and control of New Jersey Department of Corrections, the Detention Unit of Northern State Prison and/or Health Services Unit of New Jersey.**~~

~~**46.    The actions of Defendants as set forth above violated the late Mr. Polynice's rights under the Eighth and Fourteenth Amendments of the United States Constitution to be incarcerated in a safe and suitable environment, and to be safe from injury and harm while incarcerated at the Detention Unit of Northern State Prison.**~~

~~**47.    The violations of Mr. Polynice's rights under the United States Constitution was the severe and continuous injuries to Edwin Polynice, thereby entitling Plaintiff to compensatory damages from Defendants in their individual capacities.**~~

~~**48.    The actions of Defendants in their individual capacities were intentional, malicious, willful, wanton, and/or in reckless disregard of Plaintiff's federally protected rights, therefore entitling Plaintiff to an award of punitive damages.**~~

11

49.   Plaintiff is entitled to recover damages against Defendants the individual capacity in an amount greater than $1,000,000.00.

50.   Plaintiff is entitled to recover reasonable attorney's fees and the costs and expenses of this action.

76.)   If not reckless, intentional, or deliberately indifferent to inmate safety, the decision to place Plaintiff in the top bunk was negligent.

77.)   Bur for the exercise of due care to listen to Plaintiff's truthful pleading that he was bottom-bunk restricted due to his health issues, Plaintiff would not have suffered permanent injuries.

78.)   The failure to exercise due care proximately resulted in Plaintiff's permanent injuries.

79.)   The failure to exercise due care was the fault of S.C.O. John Doe, Sergeant Gibson, John Does 1-20, and/or George Robinson.

80.)   The Department of Corrections is liable on the theory of respondeat superior for the negligence of its employees.


**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.


### THIRD CLAIM FOR RELIEF

### SUPERVISORY LIABILITY OF DEFENDANTS ADMINISTRATOR GEORGE ROBINSON, AND SERGEANT GIBSON UNDER 42 U.S.C. § 1983

### NEW JEREY LAW AGAINST DISCRIMINATION – FAILURE TO ACCOMMODATE A DISABILITY

51.   The allegations set forth in the preceding paragraphs are incorporated by reference as is fully set forth herein.

52.   At all times relevant hereto, Defendant Administrator George Robinson, and Defendant Sergeant Gibson served as Administrators of the Northern State Prison, in Newark, New Jersey.

53. Plaintiffs are informed, believe and therefore allege that on October 1, 2017, Defendant Administrator George Robinson, and Defendant Sergeant Gibson were aware of, should have been aware of, and/or had actual knowledge of the pattern and culture of unconstitutional behavior and indifference, including failure to properly s 54.As such, Defendant Administrator George Robinson, and Defendant Sergeant Gibson not only directed, encouraged, tolerated, acquiesced to this behavior, but were deliberately indifferent to the likelihood that their staff, employees and/or corrections officers would fail to properly screen inmates for medical issues, fail to adequately monitor inmates, fail to have inmates provided necessary and reasonable medical accommodations, fail to treat inmates medically and fail to protect inmates from injury or harm at the Northern State Prison.

55. The deliberate indifference of Defendant Administrator George Robinson, and Defendant Sergeant Gibson as to the need for training and supervision of their staff, employees and/or detention officers was a proximate cause of the constitutional violations suffered by the Plaintiff, Edwin Polynice.

56. The violation of Mr. Polynice's rights under the United States Constitution was a proximate cause of damages and hann to Plaintiff, thereby entitling Plaintiff to compensatory damages from Defendant Administrator George Robinson, and Defendant Sergeant Gibson in an amount exceeding $1,000,000.00.creen inmates for medical injuries, or other mental health problems, failure to adequately monitor and guard inmates, failure to have inmates properly treated medically, failure to have inmates provided necessary and reasonable medical accommodations, and failure to protect inmates from injury or harm whether self-inflicted or by other inmates, staff, employees and/or corrections officers at the Northern State Prison.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS BY DEFENDANTS
### NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON, ADMINISTRATOR GEORGE ROBINSON, SERGEANT GIBSON, AND S.C.O. JOHN DOE

### NEW JERSEY LAW AGAINST DISCRIMINATION – FAILURE TO ACCOMMODATE A DISABILITY AGAINST DOC DEFENDANTS

57. The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

~~58.      The Defendants were acting under color of law when they failed to properly provide medical accommodations for Plaintiff, Edwin Polynice, for medical issues, failed to adequately monitor Mr. Polynice while incarcerated at the Northern State Prison, and failed to protect Mr. Polynice from injury and harm.~~

~~59.      The Defendants failed to adequately train or otherwise have and maintain or enforce effective policies regarding the screening and care of inmates with medical restrictions, the adequate monitoring of inmates, and the protection of inmates from injury or harm.~~

~~60.      The Defendants, New Jersey Department of Coll'ections, Northern State Prison, Administrator George Robinson, Sergeant Gibson and S.C.O. John Doe were deliberately indifferent to the likelihood that Northern State Prison's staff, employees and/or Detention Officers, would fail to properly screen inmates for medical issues, fail to adequately monitor inmates, fail to properly provide necessary medical accommodations, and fail to protect inmates from injury or harm at the Detention Unit of Northern State Ptison.~~

81.)    Plaintiff was a person with a disability, namely his diabetes and his Achilles tendon tear.

82.)    The New Jersey Law Against Discrimination entitles Plaintiff to reasonable accommodations that would give him a safe place to sleep.

83.)    Department of Corrections Defendants denied Plaintiff access to a bottom bunk.

84.)    This denial caused Plaintiff permanent injuries.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

**FIFTH CLAIM FOR RELIEF**
~~**NEGLIGENCE**~~
~~**DEFENDANTS NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON, ADMINISTRATORS GEORGE ROBINSON, SERGEANT GIBSON, AND S.C.O. JOHN DOE**~~

**REHABILITATION ACT**

~~61.      The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.~~

~~62.      Defendants owed a duty of reasonable care to Plaintiff, Edwin Polynice, and to others at the Northern State Prison, to properly screen inmates for medical issues, to~~

~~properly and adequately monitor inmates, to treat inmates medically when indicated, to provide medical accommodations when necessary, and to protect inmates from injury or harm at the Northern State Prison.~~
~~63.     The Defendants failed to use the requisite standard of care pursuant to sound policies and procedures and/or knowingly violated established policies and procedures with reckless abandon.~~
~~64.     The actions and/or failures to act by the Defendants amounted to a breach of said duty of care to Mr. Polynice.~~
~~65.     As a direct and proximate result of Defendants' negligence, Mr. Polynice was seriously injured while in the custody of the Nolthem State Prison on October 1, 2017.~~
~~66.     Plaintiff is entitled to an award of compensatory damages against the above-referenced Defendants in an amount which exceeds $1,000,000.00.~~

85.)     Like the Americans with Disabilities Act, the Rehabilitation Act also requires prisons to provide inmates with disabilities reasonable accommodations so that they can access all the programs, services, and activities of the prison.

86.)     The substantive standards for liability under the Rehabilitation Act are the same as under the Americans with Disabilities Act.

87.)     The DOC Defendants are liable to Plaintiff under the Rehabilitation Act based upon the same facts recited in the Fourth Claim for Relief above.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## SIXTH CLAIM FOR RELIEF
## NEGLIGENT HIRING, TRAINING AND SUPERVISION AGAINST NEW JERSEY DEPARTMENT OF CORRECTIONS

88.)     DOC John Does 1-10 and/or Sergeant Gibson had a duty to train SCO John Doe and/or Sergeant Gibson in the proper handling of prisoners with disabilities that might not be visible.

89.)     DOC John Does 1-10 and/or Sergeant Gibson failed to train SCO John Doe and/or Sergeant Gibson in the proper handling of prisoners with disabilities that might not be visible.

90.)     Bur for this failure to train, Plaintiff would not have sustain his permanent injuries.

91.)   DOC John Does 1-10 and/or Sergeant Gibson had a duty to supervise the transfer of Plaintiff from his bottom bunk to cell 104.

92.)   DOC John Does 1-10 and/or Sergeant Gibson failed to properly supervise the transfer of Plaintiff from his bottom bunk to cell 104.

93.)   Had the Defendants properly supervised Plaintiff's cell transfer he would have been assigned to a bottom bunk or else left in his original cell.

94.)   But for the negligent failure to supervise Plaintiff's transfer out of his original cell, Plaintiff would not have sustained his permanent injuries.

**SEVENTH CLAIM FOR RELIEF**
**NEGLIGENCE OF UNIVERSITY CORRECTIONAL HEALTH CARE**

95.)   Rutgers University – University Correctional Health Care and its employees had a duty to make sure that KOP prescriptions for chronic care inmates are promptly refilled such that inmates do not experience gaps in access to life-sustaining medications.

96.)   UCHC and its employees were negligent and failed to make sure that Plaintiff did not suffer gap in his coreg and clonidine.

97.)   As a proximate result of UCHC's negligence, Plaintiff suffered kidney failure.

98.)   UCHC has also been negligent with regard to all inmates who have suffered similar lapses in provision of life-sustaining prescription medications.

99.)   UCHC's negligence has caused injuries and death to inmates in all prisons run by the New Jersey Department of Corrections.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

**WHEREFORE**, the class whom Plaintiff represents demands injunctive relief, along with counsel fees and costs of suit.

## EIGHTH CLAIM FOR RELIEF
## 42 U.S.C. § 1983 AGAINST SHERITA LATTIMORE-COLLIER, UCHC JOHN DOES 1-20, AND UCHC FOR DELIBERATE INDIFFERENCE IN VIOLATION OF THE EIGHTH AMENDMENT

100.) Gaps in medication is chronic problem that plagues all of the prisons run by the New Jersey Department of Corrections.

101.) UCHC employees, including South Woods State Prison's Medical Director, Sherita Lattimore-Collier, and UCHC John Does 1-20, are well aware of the gaps occurring in prescription medications.

102.) Lattimore-Collier and UCHC John Does 1-20 refuse to do anything about the gaps occurring the refill of prescription medications out of callous disregard and deliberate indifference.

103.) In fact, Lattimore-Collier and UCHC John Does 1-20 do nothing because they are motivated by the practice's cost saving effects.

104.) The gaps in prescription refills is a policy, practice, or custom of UCHC.

105.) As such, UCHC is directly liable for the damages to Plaintiff and other class members.


**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

**WHEREFORE**, the class whom Plaintiff represents demands injunctive relief, along with counsel fees and costs of suit.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.


_____
MICHAEL POREDA, ESQ.
*Attorney for Plaintiff*

Date: August 23, 2020

17

## NOTICE OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that Michael Poreda, Esq. is hereby designated as Trial Counsel in the above-captioned matter.

_____

_____

Michael Poreda, Esq.

_____

*Attorney for Plaintiff*

Date: August 23, 2020

## CERTIFICATION OF NO OTHER ACTION

Pursuant to Rule 4:5-1, it is hereby certified that to the best of my knowledge and belief, there are no other pending actions or proceedings involving the matter in controversy, none are contemplated, and I do not presently know the identity of any other party who should be joined.

_____

_____

Michael Poreda, Esq.

_____

*Attorney for Plaintiff*

Date: August 23, 2020

# EXHIBIT

# E

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

EDWIN POLYNICE, INDIVIDUALLY
AND ON BEHALF OF A CLASS OF
SIMILARLY SITUATED
INDIVIDUALS,

Plaintiff,

vs.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, ET AL.,

Defendants

Civil Action No.: 2:19-CV-16875-
MCA-LDW

Document electronically filed

---

## BRIEF IN OPPOSITION TO PLAINTIF'S MOTION TO FILE AN AMENDED COMPLAINT TO ASSERT CLAIMS AGAINST UCHC AND ITS EMPLOYEES

---

MacNeill, O'Neill & Riveles, LLC
Thomas J. Pyle, Jr. (018411995)
240 Cedar Knolls Road, Suite 104
Cedar Knolls, NJ 07927
973-409-6600
Attorneys For Defendant, University
Correctional Health Care
Our File No. 9028.05267

Thomas J. Pyle, Jr., Esq.
    On the Brief

Gary L. Riveles, Esq.
    Of Counsel

## INTRODUCTORY STATEMENT

Plaintiff seeks to file an Amended Complaint to assert a medical malpractice action against UCHC and certain of its employees. For the reasons set forth herein, Plaintiff's Motion should be denied. UCHC is a public entity of the State of New Jersey. As such, the provisions of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 *et seq.* ("TCA") apply to this claim. Pursuant to the TCA, Plaintiff is required to wait a minimum of six months after filing or serving a Notice of Claim before filing a lawsuit. N.J.S.A. 59:8-8. In the instant case, Plaintiff filed a Notice of Claim as to UCHC on August 19, 2020. Therefore, Plaintiff cannot, by law, commence a lawsuit against UCHC for these claims for at least six months after August 19, 2020. Since six months have not yet expired after the serving of the Notice of Claim, Plaintiff's Motion as to UCHC and its employees should be denied. Moreover, Plaintiff seeks punitive damages from UCHC in the proposed Amended Complaint. Pursuant to N.J.S.A. 59:9-2(c), punitive damages are not recoverable against a public entity. In addition, to the extent Plaintiff is asserting a class action in this matter relating to UCHC employees failing to provide medication to inmates, Plaintiff does not meet the requirements of Fed. R. Civ. Proc. 23 for a class action.

Finally, Plaintiff's claims initially brought against the DOC Defendants in the original Complaint filed in August 2019 are separate and distinct from the facts that Plaintiff is alleging against the UCHC Defendants. The claims against the

DOC Defendants arise out of a claim that Plaintiff fell out of his prison bunk in October 2017 and was injured. The medical malpractice claims against the UCHC Defendants that Plaintiff seeks to assert in the Amended Complaint arise out of allegations that in July 2020 Plaintiff was not provided his blood pressure medication and as a result suffered kidney damage. Clearly, these claims do not arise out of the same transaction or occurrence. As such, Plaintiff should not be permitted to add UCHC or its employees as a Defendant and this would violate the Permissive Joinder Rule set forth in Fed. R. Civ. Proc. 20. Moreover, the claims against the DOC defendants arising out of the fall out of the prison bunk, and the purported claims against the UCHC Defendants, should be litigated in separate lawsuits as there is no commonality of facts.

Therefore, as set forth herein, Plaintiff's Motion should be denied.

## STATEMENT OF FACTS

The UCHC Defendants shall rely upon the fact set forth in the Certification of Thomas J. Pyle, Jr., Esq., submitted contemporaneously herewith as if fully set forth herein.

## LEGAL ARGUMENT

### POINT I

**PLAINTIFF'S MOTION MUST BE DENIED AS PLAINTIFF HAS NOT WAITED THE STATUTORILY MANDATED SIX MONTHS REQUIRED BY THE NEW JERSEY TORT CLAIMS ACT BEFORE FILING A COMPLAINT AS TO THE UCHC DEFENDANTS AFTER SERVING A NOTICE OF CLAIM**

3

N.J.S.A. 59:8-8 provides:

Time for presentation of claims. A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the 90th day after accrual of the cause of action. **After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law.** The claimant shall be forever barred from recovering against a public entity or public employee if:

**a.** The claimant failed to  the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in N.J.S.59:8-9; or

**b.** Two years have elapsed since the accrual of the claim; or

**c.** The claimant or the claimant's authorized representative entered into a settlement agreement with respect to the claim. (emphasis added).

Plaintiff's Motion seeks leave from the court to file an Amended Complaint to assert claims as to UCHC for alleged medical negligence occurred in or around July 2020.  On August 18, 2020, Plaintiff served a Notice of Claim on Rutgers with respect to the claims relating to the allegations of medical negligence against UCHC.  UCHC it is part of Rutgers, the State University. As such, it is entitled to the protections of the New Jersey Tort Claims Act.  Pursuant to N.J.S.A. 59:8-8, Plaintiff is statutorily required to wait at least six months from the date they filed/served the Notice of Claim, August 19, 2020, before filing any Complaint as

4

to UCHC or its employees named in the Notice of Claim. For the foregoing reason, Plaintiff's Motion to permit Plaintiff to assert claims arising out of the allegations set forth in the Notice of Claim and proposed Amended Complaint as to UCHC and its employees must be denied.

## POINT II

### THE NEW JERSEY TORT CLAIMS ACT BARS RECOVERY OF PUNITIVE DAMAGES FROM A PUBLIC ENTITY

N.J.S.A. 59:9-2 (c) specifically provides: "No punitive or exemplary damages shall be awarded against a public entity." See Scott-Neal v. State Dep't of Corrections, 366 N.J. Super. 570, 577 (App. Div. 2004); Marion v. Borough of Manasquan, 231 N.J. Super. 320, 323 (App. Div. 1989); Wildoner v. Borough of Ramsey, 316 N.J. Super. 487, 507-508 (App. Div. 1998), rev'd on other grnds 162 N.J. 375 (2000).

In the instant case, Plaintiff's proposed Amended Complaint in the Seventh and Eighth Claims for Relief seeks to assert a claim for punitive damages as to UCHC. Since punitive damages against a public entity are barred, Plaintiff cannot recover punitive damages as to UCHC.

## POINT III

### PLAINTIFF'S MOTION SHOULD BE DENIED AS PLAINTIF SEEKS TO ADD THE UCHC DEFENDANTS IN VIOLATION OF FED R. CIV. PRO 20

5

Fed. R. Civ. Proc. 20(a)(2) states:

Defendants. Persons . . . may be joined in one action as defendants if:

(A) Any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) Any question of law or fact common to all defendants will arise in the action.

In analyzing the first prong of Rule 20 joinder—whether the claims in the federal action arise out of the same transaction— federal courts in New Jersey generally apply a case-by-case approach. Lopez v. City of Irvington, No. 05-5323, 2008 U.S. Dist. LEXIS 14941, 2008 WL 565775 at *2 (D.N.J. 28 Feb 2008). "Transaction" is a word of fluid meaning and may signify one or many occurrences, depending not so much on the temporal immediacy of each occurrence to each other but on their logical relationship. Lopez, 2008 U.S. Dist. LEXIS 14941, 2008 WL 565776 at *2 [citing Boyer v. Johnson Matthew Inc., No. 02-8382, 2004 U.S. Dist. LEXIS 9802, 2004 WL 835082, *2 (E.D. Pa. April 16, 2004)].

In analyzing the second prong of Rule 20 joinder--whether "any [common] question of law or fact ... will arise in the action," courts have looked to the commonality requirement under Rule 23(a) for an analogy. See Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir.1974); Barnes v. American Tobacco Co., 161 F.3d 127, 141 (3d Cir.1998). "Joinder may be permissible if there is but

6

one question of law or fact common to the parties.'" Morris v. Paul Revere Ins.
Grp., 986 F. Supp. 872, 885 (D.N.J.1997) (citing Mesa Computer Utilities, Inc. v.
Western Union Computer Utilities, Inc., 67 F.R.D. 634, 636 (D. Del.1975)).

In the instant case, Plaintiff's claims against the DOC Defendants that are
the subject of the original Complaint filed on August 19, 2019 arise out of a
completely different set of facts, or transaction, then the claims Plaintiff seeks to
assert against the UCHC Defendants in the proposed Amended Complaint. The
basis for Plaintiff's claims against the DOC in the original Complaint arise out of
Plaintiff falling out of his prison bunk on or about October 1, 2017 and injuring his
head, shoulder, neck and legs. Pyle Certif., Exhibit B. There is no allegation of
medical negligence in connection with those claims.

The medical malpractice claims that Plaintiff seeks to assert against the
UCHC Defendants in the Amended Complaint allegedly arise out of a failure to
provide medication to Plaintiff in July 2020, which is alleged to have caused
damage to Plaintiff's kidneys. Pyle Certif., Exhibit B. Clearly, the medical
malpractice claims do not arise out of the same "transaction, occurrence, or series
of transactions or occurrences" that is required for Permissive Joinder under Fed.
R. Civ. Proc. 20(a)(2). Not only did the events take place at different times, and
involve different claims of negligence, but they even occurred at different
facilities. The fall from the prison bunk in 2017 occurred in Northern State Prison

while the allegations of medical malpractice occurred in 2020 at South Woods State Prison. See Pyle Certif., Exhibit B.

## POINT IV

### PLAINTIFF'S PURPORTED REQUEST TO FILE A CLASS ACTION SUIT SHOULD BE DENIED AS PLAINTIFF FAILS TO MEET THE REQUIREMENTS FOR CLASS CERTIFICATION

To obtain certification, Plaintiffs must demonstrate that the proposed class satisfies all four prerequisites of Fed. R. Civ. Proc. 23(a), as well as one of the three sets of criteria set out in Rule 23(b). See, e.g., Georgine v. Amchem Prods., Inc., 83 F.3d 610, 624 (3d Cir. 1996); Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994). Class certification cannot be presumed and must only be entered after a "rigorous analysis" that the requirements of Rule 23 are met. Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). As part of this rigorous analysis, the Court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 307 (3d Cir. 2008). In making these inquiries, "the Court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits - including disputes touching on elements of the cause of action." Id. Any "[f]actual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." Id. at 320. "In other words, to certify a class the

8

district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." Id.

### A. **Fed R. Civ. Proc. 23(a) Requirements**

Fed. R. Civ. Proc. 23(a) requires Plaintiffs to show that:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); Amchem, 521 U.S. at 613. These prerequisites are commonly known as numerosity, commonality, typicality, and adequacy. Baby Neal, 43 F.3d at 55. They are "meant to assure both that class action treatment is necessary and efficient and that it is fair to absentees under the particular circumstances." Id.

### 1. Numerosity

"Satisfaction of the first prerequisite, numerosity, does not require evidence of the exact number or identification of the members of the proposed class, but rather that the proposed class is so 'numerous that joinder of all members is impracticable.'" In re Linerboard Antitrust Litig., 203 F.R.D. 197, 205 (E.D. Pa. 2001) (citing Fed. R. Civ. P. 23(a)(1)). Although "[n]o minimum number of plaintiffs is required . . . generally if the named plaintiff demonstrates that the

potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001). Numerosity is not, however, determined solely by the size of the class; the geographic location of class members is also considered in determining whether joinder would be impracticable. See, e.g., Marsden v. Select Med. Corp., 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Plaintiff has provided no specific number as to the proposed class, except for 2 individuals mentioned in this motion. That does not meet the numerosity requirement. Moreover, joinder of all members of the proposed class would be practicable as they all purport to be incarcerated in the New Jersey State Prison system.

## 2. Commonality

Fed. R. Civ. Pro 23(a)'s second prerequisite, commonality, requires Plaintiffs to demonstrate that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This test is "satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Stewart, 275 F.3d at 227.

In this case, Plaintiff's claims as to the UCHC Defendants are separate and distinct from other purported members of the putative class. Each member of the putative class will, by necessity, have to allege that there was medical negligence

10

in failing to provide medication to them that caused them some sort of harm. Unlike a class action lawsuit against a drug manufacturing company, where the allegation is of the same negligent act or conduct, with respect to the proposed members of the putative class, to wit, incarcerated individuals in the New Jersey State Prison system, the facts of each case will be different as to type of medication, purpose of medication, and impact of any alleged failure to provide medication on each member (which will no doubt vary from individual to individual). Therefore, Plaintiff could not satisfy the requirement of commonality.

### 3. Typicality

The third prerequisite, typicality, requires that "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The typicality inquiry "evaluates the sufficiency of the named plaintiff." Hassine v. Jeffes, 846 F.2d 169, 177 n.4 (3d Cir. 1988). It is intended to assess "whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Baby Neal, 43 F.3d at 57. It does so by "requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees." Id. Named plaintiffs' claims are generally found to be typical if they "arise from the same alleged wrongful conduct" and are based upon the "same general legal theories" of those of the class. In re Warfarin Sodium Antitrust Litig.,

11

391 F.3d 516, 532 (3d Cir. 2004); see also Newton v. Merrill Lynch, 259 F.3d 154

183-84 n.28 (3d Cir. 2001)("[c]ases challenging the same unlawful conduct which

affects both the named plaintiffs and the putative class usually satisfy the typicality

requirement").  This is the case even where there are factual differences among

plaintiffs. Baby Neal, 43 F.3d at 58.

There is no information presented in the instant Motion as to how the alleged

failure to provide medication by the UCHC Defendants is the same as to each

proposed member of the putative class.  Moreover, since this is a medical

malpractice action, the facts would be different for each member of the putative

class as discussed *supra*.  Therefore, Plaintiff cannot satisfy the Typicality

requirement.

## 4. Adequacy

Under Rule 23(a)'s fourth prerequisite, both the class representatives and

their attorneys must "fairly and adequately protect the interests of the class." Rule

23(a)(4). Adequacy is, therefore, a two-part inquiry "designed to ensure that

absentees' interests are fully pursued." Warfarin, 391 F.3d at 532. First, "the

court  must determine whether the representatives' interests conflict with those of

the class." Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 185 (3d Cir. 2001).

Second, the Court must assess the qualifications of class counsel to determine

"whether the class attorney is capable of representing the class." Id. at 185.

12

In the instant case, the interest of the absentee members, given the factual difference in each and every medical malpractice claim that each member would assert, it would be nearly impossible for the class representatives to ensure the interests of the absentee members are fully pursued. Further, each seeks to recover for a different type of injury suffered by each individual member. Second, Plaintiff's counsel has presented no evidence that he is qualified to represent the putative class.

For the foregoing reasons, Plaintiff cannot satisfy the requirements of Rule 23(a).

## B. Rule 23(b) Requirements

If the requirements of Fed. R. Civ. Proc. 23(a) are satisfied, Plaintiff must next demonstrate that the proposed class is maintainable under one of the three subsections of Fed. R. Civ. Proc. 23(b). In the instant case, Plaintiff must show that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and that (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Proc. 23(b)(3). These twin requirements are known as predominance and superiority.

## 1. Predominance

Predominance demands that "[i]ssues common to the class [] predominate over individual issues." <u>In re Prudential Ins. Co. Am. Sales Practice Litig.</u>, 148 F.3d 283, 313-14 (3d Cir. 1998). This inquiry "measures whether the class is sufficiently cohesive to warrant certification." <u>Newton,</u> 259 F.3d at 187. It is a standard "far more demanding" than the commonality requirement of Fed. R. Civ. Proc. 23(a), because it requires more than a single common claim. <u>Hydrogen Peroxide, 552 F.3d at 311</u> (quoting <u>Amchem, 521 U.S. at 623</u>). Instead, "[p]redominance requires that common issues be both numerically and qualitatively substantial in relation to issues peculiar to individual class members." <u>In re Mercedes-Benz Antitrust Litig.,</u> 213 F.R.D. 180, 186 (D.N.J. 2003). While "[i]ndividual issues do[] not necessarily defeat certification," they must "have less overall significance than the issues common to the class." <u>K-Dur, 2008 U.S. Dist. LEXIS 118396, 2008 WL 2699390, at *11</u>.

"Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." <u>Hydrogen Peroxide,</u> 552 F.3d at 311 (internal quotations and citations omitted); <u>see also Sandwich Chef, Inc. v. Reliance Nat'l Indem. Ins. Co.,</u> 319 F.3d 205, 218 (5th Cir. 2003) (Rule 23(b)(3) requires the court to "consider how a trial on the merits

14

would be conducted if a class were certified"). This inquiry requires an examination of the elements of a plaintiff's claim "through the prism of Rule 23." Hydrogen Peroxide, 552 F.3d at 311. That is, the court must consider the substantive elements of a plaintiff's claims and the type of proof that plaintiff plans to proffer to establish those elements in order to determine whether common issues predominate. In doing so, "[t]he relevant question is not whether each element can be proved, but whether such proof will require evidence individual to class members." McDonough v. Toys R Us, Inc., No. 06-0242, 638 F. Supp. 2d 461, 2009 US Dist. LEXIS 60684, at *58-59 (E.D. Pa. July 15, 2009) (citing Hydrogen Peroxide, 552 F.3d at 311-12). To be certified as a class under Fed. R. Civ. Pro. 23(b)(3), Plaintiffs must show that common or generalized proof will predominate at trial with respect to each of these essential elements. Linerboard, 203 F.R.D. at 214; see also Meijer, 246 F.R.D. at 307 (predominance satisfied "when there exists generalized evidence which proves or disproves an element [of plaintiff's claim] on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position").

In the instant case, each member of the putative class will have to establish their own individual facts of negligence, causation and damages to prove any claim for medical negligence against the UCHC Defendants. Therefore, individual issues as to each class member's medical treatment and injuries will predominate

15

in this case. Accordingly, Plaintiff cannot establish the Predominance requirement for a class action.

## **CONCLUSION**

For the foregoing reasons, Defendant University Correctional Health Care and its employees named, but not yet served, respectfully request that Plaintiff's Motion to File the Amended Complaint as to claims against the UCHC Defendants be denied.

Respectfully submitted,

**MACNEILL, O'NEILL & RIVELES, LLC**
Attorneys for Defendant, University Correctional Health Care

Dated: September 21, 2020     By:   /s/ *Thomas J. Pyle, Jr.*
Thomas J. Pyle, Jr.
240 Cedar Knolls Road, Suite 104,
Cedar Knolls, NJ 07927
Tel. 973-409-6600
Fax 862-260-9313
tjp@morlawnj.com

# EXHIBIT

# F



**WLB**
**WRONKO LOEWEN BENUCCI**
——*Attorneys at Law*——

JAMES R. WRONKO
JAMES V. LOEWEN
MARCO M. BENUCCI

KEVIN P. HEWITT, JR.•
MICHAEL POREDA ♦

• Member of MI Bar
♦ Member of NY Bar

OF COUNSEL
GILBERT G. MILLER

website: www.newjerseylawyer.org
main email: WLB@newjerseylawyer.org

69 GROVE STREET
SOMERVILLE, NJ 08876
TEL: (908) 704-9200
FAX: (908) 704-9291

1130 U.S 202, SUITE A/7
RARITAN, NJ 08869
TEL: (908) 393-6445
FAX: (908 393-6447

**Please reply to Somerville**

September 25, 2020

The Honorable Leda Wettre
United States District Court for the District of New Jersey
50 Walnut Street
Newark, NJ 07102

**RE :POLYNICE v. NEW JERSEY DEP'T OF CORRECTIONS**
Docket No. 2:19-CV-16875-MCA-LDW

Dear Judge Wettre:

I represent Plaintiff in this matter. Pending before the court is Plaintiff's Motion to Amend the Complaint. The proposed amendments pertain both to the original Department of Corrections Defendants as well as to a new proposed Defendant, UCHC, the medical contractor of the New Jersey Department of Corrections.

The Department of Corrections Defendants did not oppose the motion, however, UCHC did.

As I sat down to compose the reply to UCHC's opposition this afternoon, I perceived an opportunity to potentially resolve the dispute with UCHC out of court. I sent UCHC's attorney, Mr. Pyle, a proposal but have not yet heard back yet. If he accepts, I would not withdraw the Motion, but I would submit a revised proposed Amended Complaint, one that only pertains to the undisputed portions relevant to the Department of Corrections Defendants.

I am therefore requesting a one-cycle adjournment of the motion. Thank you for your consideration in this matter.

Respectfully Submitted,

MICHAEL POREDA

# EXHIBIT
# G



# WLB
## WRONKO LOEWEN BENUCCI
——*Attorneys at Law*——

JAMES R. WRONKO
JAMES V. LOEWEN
MARCO M. BENUCCI

KEVIN P. HEWITT, JR.●
MICHAEL POREDA ♦

● Member of MI Bar
♦ Member of NY Bar

OF COUNSEL
GILBERT G. MILLER

website: www.newjerseylawyer.org
main email: WLB@newjerseylawyer.org

69 GROVE STREET
SOMERVILLE, NJ 08876
TEL: (908) 704-9200
FAX: (908) 704-9291

1130 U.S 202, SUITE A/7
RARITAN, NJ 08869
TEL: (908) 393-6445
FAX: (908 393-6447

**Please reply to Somerville**

September 28, 2020

The Honorable Leda Wettre
United States District Court for the District of New Jersey
50 Walnut Street
Newark, NJ 07102

**RE :POLYNICE v. NEW JERSEY DEP'T OF CORRECTIONS**
Docket No. 2:19-cv-16875-MCA-LDW

Dear Judge Wettre:

     I was able to speak with counsel for Rutgers – UCHC regarding Plaintiff's motion to amend the Complaint. While Plaintiff will not be submitting a reply to Rutgers – UCHC's opposition, Plaintiff notes that the Department of Corrections did not submit any opposition, and the motion should proceed with regards to amendments particular to the Department of Corrections.

Respectfully Submitted,

MICHAEL POREDA

# EXHIBIT

# H



# WLB
## WRONKO LOEWEN BENUCCI
*— Attorneys at Law —*

JAMES R. WRONKO
JAMES V. LOEWEN
MARCO M. BENUCCI

KEVIN P. HEWITT, JR.•
MICHAEL POREDA ♦

  • Member of MI Bar
  ♦ Member of NY Bar

OF COUNSEL
GILBERT G. MILLER

website: www.newjerseylawyer.org
main email: WLB@newjerseylawyer.org

69 GROVE STREET
SOMERVILLE, NJ 08876
TEL: (908) 704-9200
FAX: (908) 704-9291

1130 U.S 202, SUITE A/7
RARITAN, NJ 08869
TEL: (908) 393-6445
FAX: (908) 393-6447

**Please reply to Somerville**

October 19, 2020

**VIA ECF**
The Honorable Leda D. Wettre
U.S. District Court for the District of New Jersey
50 Walnut Street
Newark, NJ 07114

**Re: Edwin Polynice v. New Jersey Department of Corrections**
Docket No. 2:19-cv-16875-MCA-LDW

Dear Judge Wettre:

I represent Plaintiff in this case. I am writing to update you on a development in the case since our case management conference on October 2, 2020.

In the Original Complaint, Polynice named the "Medical Department" of Northern State Prison as a Defendant. This was improper, as the Defendant should have been the DOC's medical contractor, University Correctional Health Care.

I recently received subpoenaed medical records from the DOC from about the time of the relevant accident through the present. In reviewing these, I noted a dispute between Polynice and UCHC staff which may exculpate UCHC from liability. In order for me to determine whether Polynice's contention in the dispute has merit, I need to review his medical records from 2012-2017, which I had not subpoenaed, because I did not anticipate that they would be relevant.

I have issued a new subpoena to the DOC for the older medical records. I would like a

chance to review these before amending the complaint, as I may decide not to add UCHC to the case.

        Thank you for your patience in this matter.  A copy of the subpoena is attached.


        Sincerely,


        Michael Poreda


Encl.

# HIPAA Privacy Authorization Form

**Authorization for Use or Disclosure of Protected Health Information

(Required by the Health Insurance Portability and Accountability Act, 45 C.F.R. Parts 160 and 164)**

**1. Authorization**

I authorize ~~New Jersey Department of Corrections/~~ _University Correctionic Health Care_ (healthcare provider) to use and disclose the protected health information described below to _Michael Preda, Esq._ (individual seeking the information). _6 P Grove St. Somerville, NJ 08876_ _preda@predalaw.com_

**2. Effective Period**

This authorization for release of information covers the period of healthcare from:

a. ☐ _____ to _____ .

**OR**

b. ☒ all past, present, and future periods.

**3. Extent of Authorization**

a. ☒ I authorize the release of my complete health record (including records relating to mental healthcare, communicable diseases, HIV or AIDS, and treatment of alcohol or drug abuse).

**OR**

b. ☐ I authorize the release of my complete health record with the exception of the following information:

☐ Mental health records

☐ Communicable diseases (including HIV and AIDS)

☐ Alcohol/drug abuse treatment

☐ Other (please specify): _____

4. This medical information may be used by the person I authorize to receive this information for medical treatment or consultation, billing or claims payment, or other purposes as I may direct.

5. This authorization shall be in force and effect until ___12/31/23___ (date or event), at which time this authorization expires.

6. I understand that I have the right to revoke this authorization, in writing, at any time. I understand that a revocation is not effective to the extent that any person or entity has already acted in reliance on my authorization or if my authorization was obtained as a condition of obtaining insurance coverage and the insurer has a legal right to contest a claim.

7. I understand that my treatment, payment, enrollment, or eligibility for benefits will not be conditioned on whether I sign this authorization.

8. I understand that information used or disclosed pursuant to this authorization may be disclosed by the recipient and may no longer be protected by federal or state law.

_Edwin Polynice_

Signature of patient or personal representative

_EDWIN POLYNICE_

Printed name of patient or personal representative and his or her relationship to patient

Date _03 - 10 - 2020_

Date of Birth: 11 - 15 - 1978

SS# 140 - 04 - 8220

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

| | | |
|---|---|---|
| _____ | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
_____
New Jersey Department of Corrections and/or University Correctional Health Care
*(Name of person to whom this subpoena is directed)*

❐ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

|  *CLERK OF COURT*  | OR | |
|---|---|---|
| _____ | | *M Poreda* |
| *Signature of Clerk or Deputy Clerk* | | _____ |
| | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____, who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT

# I



# WLB
## WRONKO LOEWEN BENUCCI
— *Attorneys at Law* —

JAMES R. WRONKO
JAMES V. LOEWEN
MARCO M. BENUCCI

KEVIN P. HEWITT, JR.•
MICHAEL POREDA ♦

• Member of MI Bar
♦ Member of NY Bar

OF COUNSEL
GILBERT G. MILLER

website: www.newjerseylawyer.org
main email: WLB@newjerseylawyer.org

69 GROVE STREET
SOMERVILLE, NJ 08876
TEL: (908) 704-9200
FAX: (908) 704-9291

1130 U.S 202, SUITE A/7
RARITAN, NJ 08869
TEL: (908) 393-6445
FAX: (908 393-6447

**Please reply to Somerville**

December 23, 2020

The Honorable Leda Wettre
United States District Court for the District of New Jersey
50 Walnut Street
Newark, NJ 07102

## RE :POLYNICE v. NEW JERSEY DEP'T OF CORRECTIONS
Docket No. 2:19-CV-16875-MCA-LDW

Dear Judge Wettre:

Pursuant to your most recent order, Plaintiff circulated a proposed Amended Complaint, and Defendants submitted objection by December 17, 2020.

The primary objection is to the negligence claims against Rutgers University and its employees due to perceived deficiencies with the Notice of Tort Claim.[1]  While I do not believe that these are ultimately meritorious objections, I do concede that Rutgers would have a legitimate interest in having its objections heard via motion, if the differences cannot be researched and agreed upon sooner.

However, I would like time to review the objections with my client.  Whether he wishes to engage in motion practice over the objections about the sufficiency of his Tort Claim Notice as it applies to Rutgers will be dependent upon the through diagnosis of his injuries.  As you may recall, Polynice was in chronic pain in prison for years following his accident, and Polynice was subjected to an ongoing failure by Rutgers to diagnose or treat the underlying cause of the

---

[1] There was also a Statute of Limitations objection that I didn't think was terribly serious since the claims against Rutgers relate back to the original, timely filing where Rutgers was improperly plead as "Northern State Prison Medical Department."  Rutgers also objected to the claim for punitive damages, which I concede is legitimate.

chronic pain.[2]  Fortunately Mr. Polynice was released early due to the pandemic and is now seeking diagnosis and treatment.  During my last conversation with Mr. Polynice, he informed me that he was scheduled for an MRI on January 4, 2020.

I therefore think it is probably in everyone's interest to schedule a proposed motion, if any is needed, at the conference scheduled for January 20, 2020.

Respectfully Submitted,

MICHAEL POREDA

---

[2] Polynice was given Tylenol for the pain, which would be sufficient medical treatment if these were isolated complaints of acute pain, but using Tylenol long-term to treat chronic pain of an unknown source is not generally accepted in the medical community.

# EXHIBIT

# J

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

EDWIN POLYNICE,

              Plaintiff,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, *et al.*,

              Defendants.

Civil Action No.

19-16875 (MCA) (LDW)

**AMENDED SCHEDULING ORDER**

**THIS MATTER** having come before the Court by way of a January 20, 2021 telephone conference before the undersigned, and for good cause shown,

**IT IS, on this 21st day of January 2021, ORDERED** that the Pretrial Scheduling Order entered August 13, 2020 (ECF No. 20) is hereby amended as follows:

1.  Fact discovery is extended through **June 15, 2021**.  No fact discovery shall be issued or engaged in beyond that date, except upon application and for good cause shown.

2.  The parties shall appear for a telephonic status conference before the undersigned on **May 3, 2021 at 3:30 p.m.**  The parties shall submit concise status letters to the Court no later than three business days in advance of the conference.  Plaintiff's counsel shall initiate the call to (973) 645-3574 once representatives for all parties are on the line.

                                 *s/ Leda Dunn Wettre*
                                 Hon. Leda Dunn Wettre
                                 United States Magistrate Judge

# EXHIBIT
# K



PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

*State of New Jersey* OFFICE
OF THE ATTORNEY GENERAL DEPARTMENT
OF LAW AND PUBLIC SAFETY DIVISION OF
LAW
25 MARKET STREET
PO Box 112
TRENTON, NJ 08625-0112

GURBIR S. GREWAL
*Attorney General*

MICHELLE L. MILLER
*Acting Director*

April 28, 2021

Hon. Leda Dunn Wettre, U.S.M.J.
Martin Luther King Building
 & U.S. Courthouse
50 Walnut Street, Room 4015
Newark, NJ 07102

       Re: Polynice v. New Jersey Department of Corrections, et. al
       Civ. Dkt. # 2:19-16875-MCA-LDW

Dear Judge Wettre,

    The undersigned counsel represents the Department of
Corrections and Administrator George Robinson (hereinafter
"Represented Defendants") in the above captioned matter.

     Plaintiff's counsel and I conferred and decided to submit
a joint status update. Plaintiff served Represented Defendants
with discovery requests on February 8, 2021. Represented
Defendants served Plaintiff with discovery requests on March
28, 2021. Defendants sent responses to Plaintiff on April 28,
2021 and Plaintiff has an additional 30 days to respond to
Defendant's discovery demands.

    Plaintiff, upon review of Represented Defendants
discovery responses, may decide to amend the complaint. The
current DED is June 15, 2021 and may require an extension for
depositions.

            Respectfully submitted,

            GURBIR S. Grewal
            ATTORNEY GENERAL OF NEW JERSEY

By:    s/*Chanell Branch*

          Chanell Branch, Deputy Attorney General



HUGHES JUSTICE COMPLEX • TELEPHONE: (609) 633-8687 • FAX: (609) 777-3607
*New Jersey Is An Equal Opportunity Employer • Printed on Recycled Paper and Recyclable*

# EXHIBIT

# L

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EDWIN POLYNICE, | Civil Action No. |
| Plaintiff, | 19-16875 (MCA) (LDW) |
| v. | |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, *et al.*, | **AMENDED SCHEDULING ORDER** |
| Defendants. | |

**THIS MATTER** having come before the Court by way of a May 3, 2021 telephone conference before the undersigned, and for good cause shown,

**IT IS, on this 3rd day of May 2021, ORDERED** that the Pretrial Scheduling Order entered August 13, 2020 (ECF No. 20), as subsequently amended, is hereby further amended as follows:

1. Fact discovery is extended **<u>FOR A FINAL TIME</u>** through **July 30, 2021**. No fact discovery shall be issued or engaged in beyond that date, subject to revision if leave to amend is granted and additional discovery becomes necessary.

2. Any request for leave to file a motion to add new parties or amend pleadings, whether by amended or third-party complaint, must be filed not later than **June 1, 2021**.

3. All affirmative expert reports shall be delivered by **September 3, 2021**. Any such report shall comport with the form and content requirements of Fed. R. Civ. P. 26(a)(2)(B).

4. All responding expert reports shall be delivered by **October 4, 2021**. Any such report shall comport with the form and content requirements referenced above.

5. Expert discovery, including the depositions of any expert witnesses, shall be completed on or before **November 3, 2021**.

6. The parties shall appear for a telephonic status conference before the undersigned on **July 8, 2021 at 2:00 p.m.** The parties shall submit concise status letters to the Court no later than one week in advance of the conference. Plaintiff's counsel shall initiate the call to (973) 645-3574 once representatives for all parties are on the line.

7. The parties shall appear for a settlement conference before the undersigned on **September 8, 2021 at 9:30 a.m.** in Courtroom 3C of the Martin Luther King Jr. Federal Building and U.S. Courthouse, if circumstances allow (otherwise by Zoom or telephone). Clients with full and immediate settlement authority must attend in person. Confidential settlement letters, which shall not exceed ten (10) pages absent leave from the Court, shall be sent to **LDW_orders@njd.uscourts.gov** at least three business days prior to the conference. Voluminous exhibits to settlement letters (exceeding 20 pages) will not be reviewed by the Court unless submitted in hard copy that is received by Chambers no later than three business days in advance of the settlement conference.

> _s/ Leda Dunn Wettre_
> Hon. Leda Dunn Wettre
> United States Magistrate Judge

# EXHIBIT

# M

**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN POLYNICE, | Docket No. 2:19-cv-16875-MCA-LDW |
| *Plaintiff*, | <u>Civil Action</u> |
| vs. | **AMENDED COMPLAINT** |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, ADMINISTRATOR GEORGE ROBINSON, SERGEANT CHRISTOPHER GIBBONS, OFFICER RYAN MOLLOY, OFFICER RAYMOND REYES, RUTGERS UNIVERSITY – UNIVERSRITY CORRECTIONAL HEALTH CARE ("UCHC"), LATIFA FEDAI, APN, UCHC JOHN DOES 1-20, DOC JOHN DOES 1-10, | |
| *Defendants*. | |

**PLEASE TAKE NOTICE** that Plaintiff will move before this Honorable Court on June 21, 2021, or as soon as the court may hear the motion, for an order permitting Plaintiff leave to amend the Complaint.

_____

MICHAEL POREDA

Date: May 26, 2021

**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN POLYNICE, | Docket No. 2:19-cv-16875-MCA-LDW |
| *Plaintiff*, | <u>Civil Action</u> |
| vs. | **CERTIFICATION OF COUNSEL** |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, ADMINISTRATOR GEORGE ROBINSON, SERGEANT CHRISTOPHER GIBBONS, OFFICER RYAN MOLLOY, OFFICER RAYMOND REYES, RUTGERS UNIVERSITY – UNIVERSRITY CORRECTIONAL HEALTH CARE ("UCHC"), LATIFA FEDAI, APN, UCHC JOHN DOES 1-20, DOC JOHN DOES 1-10, | |
| *Defendants*. | |

I, Michael Poreda, being more than 18 years of age, do certify as follows:

1.)    I represent the Plaintiff in this case.

2.)    This case involves an accident that occurred at Northern State Prison due to the wrongful acts of Defendants.

3.)    On October 1, 2017, the Plaintiff fell out of his top bunk at Northern State Prison, resulting in injuries that are chronic but which were never diagnosed or treated by prison medical officials.

4.)    The Plaintiff should have been assigned to a bottom bunk at the time of his fall and at all times during his incarceration.

5.)    As the court knows, Plaintiff first sought to amend this Complaint after being released from prison in August 2020.

6.)    In that proposed amendment, Plaintiff sought to add significant factual allegations regarding acts by University Correctional Health Care that caused Plaintiff's kidneys to fail.

7.)    After negotiation with University Correctional Health Care, Plaintiff agreed to wait and file a separate action regarding the kidney failure.

8.)    The parties also agreed to wait to amend because whether or not University Correctional Health Care ("UCHC") could be held liable at all depended in part upon the nature of Plaintiff's injuries, which had never been diagnosed by UCHC while he was incarcerated.

9.)    The court issued an order that Plaintiff move to amend the Complaint by June 1, 2021.

10.)    As there are no MRI results yet, Plaintiff will have to name UCHC as a defendant and preserve the allegations against it.

11.)    I ask leave to dispense with the Local Rule 15.1 requirement to provide a redlined version of the proposed amendments as they are, linguistically speaking, very extensive, but substantively not extensive.  In short, I do not think the redlined complaint would be worth very much and would be an extensive undertaking.

12.)    This is because the original Complaint was drafted by another law firm that didn't seem to understand New Jersey prison litigation.

13.)    Substantively, the changes are as follows:

    a. Latifa Fedai, a nurse practitioner, has been added as a defendant. The proposed amendments regarding Fedai are based on recently discovered medical records in which she denies Plaintiff's request for a bottom bunk restriction.

    b. Discovery having revealed that the unknown officer who ordered Plaintiff onto the top bunk from which he fell was either Raymond Reyes or Ryan Molloy.

    c. The original complaint made allegations against the "Medical Department – Northern State Prison," which is the inappropriate name for Rutgers University – University Correctional Health Care, which is named in the proposed amendments.

    d. The original Complaint improperly identified a responsible officer "Sergeant Gibson." The correct name is Sergeant Christopher Gibbons. He has been named in the proposed amendments.

14.) These amendments all relate back to the original filing of the Complaint and are therefore not in violation of the statute of limitations.

_____

MICHAEL POREDA

Date: May 26, 2021

**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDWIN POLYNICE,<br><br>                                    *Plaintiff*,<br><br>vs.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, ADMINISTRATOR GEORGE ROBINSON, SERGEANT CHRISTOPHER GIBBONS, OFFICER RYAN MOLLOY, OFFICER RAYMOND REYES, RUTGERS UNIVERSITY – UNIVERSRITY CORRECTIONAL HEALTH CARE ("UCHC"), LATIFA FEDAI, APN, UCHC JOHN DOES 1-20, DOC JOHN DOES 1-10,<br><br>                                    *Defendants*. | Docket No. 2:19-CV-16875-MCA-LDW<br><br><br><u>**Civil Action**</u><br><br>**AMENDED COMPLAINT** |

Edwin Polynice, by way of this Amended Complaint hereby brings the following action against the Defendants as follows:

## JURISDICTION AND VENUE

1.) This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the question arises under the laws and Constitution of the United States.

2.) This Court has jurisdiction over state law claims herein presented pursuant to 28 U.S.C. § 1367 because the claims are part of a case over which the court has federal question jurisdiction.

3.) Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because all relevant events took place in New Jersey.

## PARTIES

4.) Plaintiff Edwin Polynice is a resident of New Jersey whose date of birth is November 15, 1978.  He was in the custody of the New Jersey Department of Corrections from June 2012 until August 2020.  His SBI number was 864138C.  He last resided at South Woods State Prison, 215 South Burlington Road, Bridgeton, NJ 08302.

5.) Defendant New Jersey Department of Corrections is a New Jersey State agency headquartered at Whittlesey Road, Trenton, NJ 08625.

6.) Newly added Defendant Rutgers University – University Correctional Health ("UCHC") care is a corporate entity headquartered at 7 College Avenue, New Brunswick, NJ 08901. UCHC is the medical contractor that provides medical services to inmates within the custody of the New Jersey Department of Corrections.

7.) Newly added Defendant Latifa Fedai, APN is a nurse practitioner at Northern State Prison.

8.) Defendant George Robinson is currently the Administrator of the Adult Diagnostic and Treatment Center, a prison facility operated by the New Jersey Department of Corrections.  At the times relevant to this complaint, he was the Administrator of Northern State Prison, P.O. Box, 2300, 168 Frontage Road, Newark, NJ 07114.  He is an employee of the New Jersey Department of Corrections.

9.)     Defendant Sergeant Christopher Gibbons, previously misplead as "Sergeant Gibson" is the correctional sergeant who, on September 30, 2017, was responsible for overseeing the inmates living in Delta Unit 1-E at Northern State Prison.  Sergeant Gibbons is an employee of Defendant New Jersey Department of Corrections.

10.)    Newly added Defendant Ryan Molloy was an NJ DOC correctional officer employed at Northern State Prison on September 30, 2017.

11.)    Newly added Defendant Raymond Reyes was an NJ DOC correctional officer employed at Northern State Prison of September 30, 2017.

12.)    Newly added Defendants UCHC John Does 1-20 are employees of UCHC, including nurses, doctors, and supervisors.

13.)    Newly added Defendants DOC John Does 1-20 are employees and supervisors of the DOC.

## **FACTS**

14.)    Plaintiff is known to have diabetes, diabetic neuropathy in his feet as well as a history of a torn Achilles tendon.  These disabilities substantially limit his activities of daily living, to wit, his ability to climb and jump.

15.)    These are disabilities are therefore within the meaning of the New Jersey Law Against Discrimination, the Rehabilitation Act, and the Americans with Disabilities Act.

16.)    Due to Plaintiff's disabilities, he was given a permanent bottom bunk restriction in 2013, when he arrived at South Woods State Prison.

17.)    Plaintiff often experienced dizziness from fluctuations in blood sugar due to the diabetes.  The bottom bunk restriction served to protect him during dizzy spells.

18.)    In January 2017, he was transferred to Northern State Prison, after having spent several months in New Jersey State Prison.

19.)    Plaintiff requested the continuation of his standing bottom bunk order.

20.)    This was denied without genuine cause by Latifa Fedai, APN on January 24, 2017.  This was supposedly based on Polynice "not meeting the requirements," however she never articulated the requirements to him, and future acts by UCHC employees would prove that this was a sadistic and deliberate lie.

21.) Plaintiff formally grieved the denial of the bottom bunk through the kiosk system at Northern State Prison, but his grievance was either denied or not responded to.

22.) Plaintiff was nevertheless able to secure a bottom bunk informally.

23.) On September 30, 2017, Plaintiff was living in Delta Unit 1-E at Northern State Prison, assigned to a bottom bunk.

24.) For unknown reasons, on September 30, 2020, Plaintiff was told by a corrections officer, either Molloy or Reyes, to move out of his bottom bunk and move to cell 104 and sleep in a top bunk.

25.) Polynice told Molloy or Reyes that he needed to be on the bottom bunk due to his disabilities.

26.) When Molloy or Reyes protested that Polynice was no longer entitled to the accommodation, Polynice told him that the accommodation was for the remainder of his incarceration.

27.) Plaintiff's right to a safe place to sleep is clearly established law. N.J.A.C. 10A:31-3.6 states: "A qualified inmate with a disability shall be housed in a manner that provides for his or her safety, security and accessibility to facility programs or activities. Rooms, sleeping units, or housing units shall be designed for use by qualified inmates with disabilities."

28.) Following his explanation, Polynice was ordered to utilize the top bunk, in clear violation of DOC regulation, state law, and federal law.

29.) Molloy or Reyes reiterated that this order had come from Sergeant Gibbons.

30.) Polynice was compelled to follow the order.

31.) On October 1, 2017, at approximately 12:35pm, while attempting to dismount the top bunk to take a daily shower, Plaintiff Edwin Polynice became extremely dizzy from a drop in his blood sugar and fell.

32.) During this fall, Plaintiff, Edwin Polynice attempted to land on a stool, but slipped. He fell, striking his head on the toilet and his leg against the stool.

33.) Post-fall, Mr. Polynice sustained severe injuries leading to thirteen stitches and five staples.

34.) Mr. Polynice also suffered a dislocated shoulder, severe neck pain, and bruising on his legs.

35.) Plaintiff, Edwin Polynice, required an extended stay in the prison infirmary for ten days due to these injuries.

36.) Throughout his time in the infirmary, he experienced debilitating headaches with the pain extending throughout his entire head, chronic pain in his facial area, ongoing dizziness, and a bruised leg.

37.) On October 20, 2017, Dr. Sandra Connolly, recognizing the obvious misdeed of Fedai, ordered Polynice back to a bottom bunk restriction.

38.) Plaintiff, Edwin Polynice continued to experience constant neck pain, headaches, and lower back pain while he remained incarcerated.

39.) Despite the ongoing pain, Plaintiff was never given any treatment or diagnostic other than Tylenol.

40.) Now released from prison, Plaintiff will be forced to spend money, in excess of $3,500, to treat his injuries.

41.) Additionally, Plaintiff has suffered disfigurement, in the form of significant scarring from his fall.

42.) He has also permanently lost full mobility as a result of the fall.

## STATEMENT ON COMPLIANCE WITH NOTICE OF TORT CLAIM RULES

43.) On or about December 19, 2017, Plaintiff, or his then-counsel, Jean Ross, filed a Notice of Tort Claim seeking $100,000 for the injuries sustained in the fall.

## FIRST CLAIM FOR RELIEF
### 42 U.SC. § 1983 – EIGHTH AMENDMENT – DELIBERATE DIFFERNECE TO INMATE SAFETY –AGAINST GEORGE ROBINSON, SGT. GIBBONS, OFFICER RYAN MOLLOY, OFFICER RAYMOND REYES, LATIFA FEDAI, DOC JOHN DOES 1-20, and UCHC JOHN DOES 1-20.

44.)  The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

45.)  When Latifa Fedai refused to give Plaintiff the bottom bunk that he requested, it was without genuine basis.

46.)  Fedai knew that the Plaintiff had health conditions that rendered the top bunk dangerous. She nevertheless denied him the request without genuine reason, rendering the decision deliberatively indifferent.

47.)  George Robinson and DOC John Does 1-20, who are other policymakers, developed policies, procedures and/or customs which caused the deprivation of Plaintiff, Edwin Polynice's constitutional rights.

48.)  Said policies were inherently deficient, or inappropriate as formulated, as to the adherence of mandated medical care provided to an inmate that presented with documented medical issues.

49.)  Defendant New Jersey Department of Corrections, by and through Defendant Administrator George Robinson and DOC John Does 1-20, who are other policymakers, recklessly, and/or intentionally and/or with deliberate indifference to inmate safety:

a.      failed to properly train and supervise Defendant Sergeant Gibson and Defendants Molloy and Reyes with regard to adequately assessing, monitoring and providing necessary and reasonable accommodations for inmates with medical issues, including but not limited to inmates with documented medical restrictions and

b.      failed to properly train and supervise Defendant Sergeant Gibson and Officers Molloy and Reyes, or other prison staff to maintain a safe and suitable environment, and to keep inmates safe from injury or serious harm.

c.      maintained policies, procedures and/or customs that were deliberately indifferent to the constitutional rights of inmates to be adequately screened for medical issues, to

provide necessary and reasonable accommodations for inmates with medical issues; and to be kept safe from injury or serious harm;

d.      failed to enforce the contractual obligations of UCHC to monitor and treat inmates with medical issues, including but not limited to inmates with documented medical restrictions.

e.      with full knowledge, allowed institutional policies and procedures regarding intake, medical screening, custodial watch and medical treatment to be ignored and violated with reckless abandon; and

f.      failed to provide adequate and needed health care for inmates at the Detention Unit of the Northern State Prison.

50.)    The actions and/or failures to act by Defendant, New Jersey Department of Corrections, Defendant Administrator George Robinson, Defendant Sergeant Gibson and Defendants Molloy and Reyes, as illustrated above, amounted to a deliberate indifference of Mr. Polynice's constitutional rights and proximately caused his injuries.

51.)    The violation of Mr. Polynice's rights under the United States Constitution was the proximate cause of damages to Plaintiff, thereby entitling Plaintiff to compensatory damages from Defendants, Administrator George Robinson, Sergeant Gibson, and Officers Molloy and Reyes in an amount exceeding $1,000,000.00.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## <u>SECOND CLAIM FOR RELIEF</u>
## <u>NEGLIGENCE AGAINST ALL DOC DEFENDANTS</u>

52.)    If not reckless, intentional, or deliberately indifferent to inmate safety, the decision to place Plaintiff in the top bunk was negligent.

53.)    But for the exercise of due care to listen to Plaintiff's truthful pleading that he was bottom-bunk restricted due to his health issues, Plaintiff would not have suffered permanent injuries.

54.)    Had Defendants exercised due care, they would have placed Plaintiff in a bottom bunk, and he would not have fallen even if he had an attack of low blood sugar.

55.)    The failure to exercise due care proximately resulted in Plaintiff's permanent injuries.

56.)    The failure to exercise due care was the fault of Officer Molloy, Officer Reyes, Sergeant Gibson, John Does 1-20, and/or George Robinson.

57.)    The Department of Corrections is liable on the theory of respondeat superior for the negligence of its employees.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## THIRD CLAIM FOR RELIEF
## NEW JERSEY LAW AGAINST DISCRIMINATION – FAILURE TO ACCOMMODATE A DISABILITY AGAINST DOC DEFENDANTS

58.)    Plaintiff was a person with a disability, namely his diabetes and his Achilles tendon tear.

59.)    The New Jersey Law Against Discrimination entitles Plaintiff to reasonable accommodations that would give him a safe place to sleep.

60.)    Department of Corrections Defendants denied Plaintiff access to a bottom bunk.

61.)    This denial caused Plaintiff permanent injuries.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## FOURTH CLAIM FOR RELIEF
## AMERICANS WITH DISABILITIES ACT
## AGAINST DOC DEFENDANTS

62.)    Plaintiff was a qualified person with a disability, namely his diabetes and his Achilles tendon tear.

63.)    One of the public programs, services, or activities of the prison is the provision of safe places to sleep.

64.)     Plaintiff's disabilities could have been reasonably accommodated by the provision of a bottom bunk.  This would have provided him with a safe place to sleep.

65.)     Department of Corrections Defendants denied Plaintiff access to a bottom bunk.

66.)     This denial caused Plaintiff permanent injuries.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## FIFTH CLAIM FOR RELIEF
### REHABILITATION ACT

67.)     Like the Americans with Disabilities Act, the Rehabilitation Act also requires prisons to provide inmates with disabilities reasonable accommodations so that they can access all the programs, services, and activities of the prison.

68.)     The substantive standards for liability under the Rehabilitation Act are the same as under the Americans with Disabilities Act.

69.)     The DOC Defendants are liable to Plaintiff under the Rehabilitation Act based upon the same facts recited in the Fourth Claim for Relief above.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## SIXTH CLAIM FOR RELIEF
### NEGLIGENT TRAINING AND SUPERVISION AGAINST NEW JERSEY DEPARTMENT OF CORRECTIONS

70.)     DOC John Does 1-20 and/or Sergeant Gibson had a duty to train Molloy, Reyes, and/or Sergeant Gibson in the proper handling of prisoners with disabilities, especially disabilities that might not be visible.

71.)     DOC John Does 1-20 and/or Sergeant Gibson failed to train Molloy, Reyes, and/or Sergeant Gibson in the proper handling of prisoners with disabilities, especially disabilities that might not be visible.

72.)     Bur for this failure to train, Plaintiff would not have sustained his permanent injuries.

73.)     DOC John Does 1-20 and/or Sergeant Gibson had a duty to supervise the transfer of Plaintiff from his bottom bunk to cell 104.

74.)     DOC John Does 1-20 and/or Sergeant Gibson failed to properly supervise the transfer of Plaintiff from his bottom bunk to cell 104.

75.)     Had the Defendants properly supervised Plaintiff's cell transfer he would have been assigned to a bottom bunk or else left in his original cell.

76.)     But for the negligent failure to supervise Plaintiff's transfer out of his original cell, Plaintiff would not have sustained his permanent injuries.

77.)     The Department of Corrections is liable *respondeat superior* for the negligent training and supervision of its staff.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

_____
MICHAEL POREDA, ESQ.
*Attorney for Plaintiff*

Date: May 26, 2021

## NOTICE OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that Michael Poreda, Esq. is hereby designated as Trial Counsel in the above-captioned matter.

_____
   Michael Poreda, Esq.
   *Attorney for Plaintiff*

Date: May 26, 2021

## **CERTIFICATION OF NO OTHER ACTION**

Pursuant to Rule 4:5-1, it is hereby certified that to the best of my knowledge and belief, there are no other pending actions or proceedings involving the matter in controversy, none are contemplated, and I do not presently know the identity of any other party who should be joined.

_____
   Michael Poreda, Esq.
   *Attorney for Plaintiff*

Date: May 26, 2021

# EXHIBIT

# N

**MacNeill, O'Neill & Riveles, LLC**
Thomas J. Pyle, Jr. (018411995)
240 Cedar Knolls Road, Suite 104
Cedar Knolls, NJ 07927
973-409-6600
Attorneys For Rutgers university-University Correctional Health Care
Our File No. 9028.05267

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN POLYNICE, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED INDIVIDUALS,<br><br>Plaintiff,<br><br>vs.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, ET AL.,<br><br>Defendants. | DOCKET NO. 2:19-CV-16875-MCA-LDW<br><br>CIVIL ACTION<br><br>Electronically Filed |

## BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT

Of Counsel and on the Brief: Thomas J. Pyle, Jr.

## **PRELIMINARY STATEMENT**

Plaintiff Edwin Polynice has filed a Motion to Amend a Complaint that was originally filed on August 19, 2019 as to the New Jersey Department of Corrections, Northern State Prison, Administrator George Robinson, and Sergeant Gibson relating to injuries he sustained from an alleged fall Plaintiff had from a top bunk at Northern State Prison on or about October 1, 2017. Plaintiff now seeks to name Rutgers University, University Correctional Health Care, and Latifa Fedai, APN as Defendants in this matter almost 4 years after the cause of action arose, and almost 2 years after the initial Complaint was filed. For numerous reasons, Amendment of the Complaint should be denied as untimely and futile.

Initially, it is noted that the alleged medical negligence in the proposed Amended Complaint occurred on or about October 2017 (or as early as January 2017). Therefore, any claims would be barred by the applicable Statute of Limitations, <u>N.J.S.A</u>. 2A:14-2. Secondly, Plaintiff's failure to comply with provisions of the New Jersey Tort Claims Act, <u>N.J.S.A</u>. 59:1-1 et seq. would result in the claims against the UCHC and the medical defendants being dismissed. Specifically, Plaintiff has failed to comply with the Tort Claims Act's Notice of Claim provision, <u>N.J.S.A.</u> 59:8-8, which requires that Notice be provided within 90 days of accrual of the cause of action. In this case, Plaintiff never served a Notice of Claim relating to any allegation agaisnt Rutgers, UCHC or Ms. Fadei that is set forth in the proposed Amended Complaint. My review of the December 19, 2017 Notice of Claim reveals that no allegations of medical malpractice were ever made, and no medical care personnel or entities are identified therein. Specifically, neither Rutgers, nor UCHC, nor Latifa Fedai, APN are mentioned or even alluded to in the December 19, 2017 Notice of Claim. Moreover, the December 19, 2017 Notice of Claim was never served on the purported medical defendants identified in the current proposed Amended Complaint. Therefore, Plaintiff has never complied with New Jersey Tort Claims Act of

providing the purported new Defendants with Notice of any claim against them. Thirdly, Plaintiff failed to seek leave to file a late Notice Claim as required under N.J.S.A. 59:8-9. The time to do so has expired. Fourth, Plaintiff is barred from recovery against Rutgers, UCHC and Ms. Fadei as more than 2 years have elapsed since the accrual of the cause of action as per N.J.S.A. 59:8-8(b). Thus, for these reasons, Plaintiff's claims against UCHC and/or it's' employees are futile as they would be dismissed for failure to comply with the New Jersey Tort Claims Act and the relevant Statute of Limitations.

In addition, the proposed Amended Complaint seeks punitive damages from UCHC and Ms. Fadei in connection with this case. Pursuant to N.J.S.A. 59:9-2(c), punitive damages are not recoverable against a public entity. Since UCHC is a public entity, punitive damages are not recoverable against my client.

## STATEMENT OF FACTS

Rutgers University-University Correctional Health Care ("proposed defendants") shall rely upon the facts set forth in the Certification of Thomas J. Pyle, Jr., Esq. submitted contemporaneously herewith.

## POINT I

**PLAINTIFF'S MOTION TO AMEND IS FUTILE AS THE STATUTE OF LIMITATIONS HAS EXPIRED AND PLAINTIFF HAS FAILED TO COMPLY WITH THE NEW JERSEY TORT CLAIMS ACT, N.J.S.A. 59:8-1 ET SEQ.**

Plaintiff has clearly failed to provide any Notice of Claim as to the proposed defendants within the 90 days from the accrual of the cause of action as required by the Tort Claims Act. The New Jersey Tort Claims Act, N.J.S.A. 59:1-1, et seq. (hereinafter also "the Act" and "the Tort Claims Act"), defines the manner in which individuals must proceed when seeking to recover damages

from a public entity or public employee. In relevant part, the Tort Claims Act describes the parameters delineating the timeframe within which an individual must assert a claim against a public entity or employee. Under the Act, a claimant's cause of action accrues on the date upon which the Tort or accident occurs or when facts authorize one party to maintain an action against another. See Torres v. Jersey City Medical Center, 140 N.J. Super 323, 326 (Law Div. 1976); Fuller v. Rutgers, The State University, 154 N.J. Super 420, 423 (App Div. 1977), certif. den. 75 N.J. 610 (1978); Lutz v. Spencer, 126 N.J Super 288, 297 (Law Div. 1974). The notice provisions of the Act do not affect accrual.

In relevant part, N.J.S.A. 59:8-8 provides (with emphasis added):

A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action. After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity or public employee if:

a. He failed to file his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 59:8-9;

or

b. Two years have elapsed since the accrual of the claim;

or

c. The claimant or his authorized representative entered into a settlement agreement with respect to the claim.

A claimant's filing of a Notice of Claim does not mark the time at which the claim accrues and does not extend the running of the statute of limitation. Anaya v. Township of Vernon, 130 N.J. Super, 409 (App. Div.), certif. den., 71 N.J. 494 (1976). No action shall be brought against a public entity or a public employee under the Act unless the claim upon which it is based has been presented in accordance with the procedures set forth in N.J.S.A. 59:8-3. **The**

**Act clearly includes a ninety-day time limit from accrual of a claim for filing of a Notice of Claim**.

Generally, under the New Jersey Tort Claims Act, immunity for public entities is the rule and liability is the exception.  McDade v. Siazon, 208, N.J. 463 (2011).  Indeed, the New Jersey Supreme Court has consistently confirmed that "immunity from tort liability is the general rule and liability is the exception" is the foundation principle underpinning the Tort Claims Act. D.D. v. Univ. of Med. & Dentistry of New Jersey, 2013 N.J. 130, 134 (2013) (internal citations omitted). The Court has unequivocally stated that the "area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done." McDade v. Siazon, supra at 474 (internal citations omitted). For all of these reasons, failure by a plaintiff to serve a Notice of Claim within ninety days of accrual ordinary results in that plaintiff being "forever barred" from bringing a particular action against a public entity. Id. (citing N.J.S.A. 59:8-8).

"The TCA is strictly construed to permit lawsuits only when it is specifically delineated. Id.; N.J.S.A. 59:1-1, et. seq.  Unless permission is granted to file a late Notice of Claim pursuant to N.J.S.A. 59:8-9, the claimant shall forever be barred from recovering against the public entity or public employee if ... he failed to file his claim with the public entity within 90 days of accrual of his claim . . ." N.J.S.A. 59:8-8.  The mere filing of a Complaint does not constitute substantial compliance with Title 59 notice requirements.  Guzman v. City of Perth Amboy, 214 N.J. Super, 167, 172 (App. Div. 1986).

The purpose of this ninety-day time limit is to compel a claimant to expose his intentions and information early in the process to permit the public entity and public employee to undertake an investigation where witnesses are available and facts are fresh.  Lutz v. Township of

Gloucester, 153 N.J. Super, 461, 466 (App. Div. 1977); White v. Violent Crimes Compensation Board, 76 N.J. 368 (1978); S.E.W. Friel Company v. New Jersey Turnpike Authority, 73 NJ 107, 118 (1977).

In the instant matter, Plaintiff concedes that his cause of action accrued on October 1, 2017. Plaintiff commenced this action on August 19, 2019 with the filing of a Summons and Complaint. At no point in time prior to that did Plaintiff serve a Notice of Claim as to the proposed Defendants. Proposed Defendant Latifa Fedai, APN, was an employee of UCHC, a division of Rutgers, the State University of New Jersey. As such, Defendant, she was at all relevant times a public employee of a public entity within the meaning of the Act. N.J.S.A. 18A:65-101. Consequently, the claims brought by Plaintiff against Ms. Fedai are subject to the notice requirement of the Tort Claims Act.

Plaintiff clearly knew that there was an injury to his leg, and counsel originally served a Notice of Claim dated December 19, 2017. However, as discussed *infra*, the December 19, 2017 Notice of Claim did not identify Rutgers, University Correctional Health Care, or Ms. Fedai in that document. Morever, Plaintiff still has not served a Notice of Claim as to Rutgers, University Correctional Health Care, or Ms. Fedai in relationship to the claims asserted in the proposed Amended Complaint.

Pursuant to the Tort Claims Act, the proposed defendants are entitled to a Notice of Claim. Plaintiff's failure to provide one is a fatal flaw to his claims. Not only has Plaintiff failed to provide a Notice of Claim within 90 days of the accrual of the cause of action, but has failed to provide any Notice of Claim in this matter as to these proposed defendants. As such, Plaintiff's Motion should be denied as his claims will be barred by the New Jersey Tort Claims Act due to his failure to provide a Notice of Claim.

## POINT II

**PLAINTIFF'S NOTICE OF CLAIM IS NOT IN COMPLIANCE WITH THE NOTICE REQUIREMENTS OF CHAPTER 8 UNDER TITLE 59 OF THE NEW JERSEY TORT CLAIMS ACT AND DOES NOT SUBSTANTIALLY COMPLY WITH THE REQUIREMENTS OF SAME**

N.J.S.A. 59:8-3 provides that:

> "No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this chapter."

N.J.S.A. 59:8-4(e) further provides that:

> Any claim presented by the claimant must include "the name or names of the public entity, employee or employees causing the injury, damage or loss, if known."

It is well settled that any action brought against a public entity or public employee must satisfy the notice requirements of N.J.S.A. 59:8-3; Feinberg v. State, 137 N.J. 126, 134 (1994); see also comments to N.J.S.A. 59:8-3. The Tort Claims Act requires that notice be given to both the public entity and public employee. The Supreme Court in Lowe explained that a 1994 amendment to the Tort Claims Act:

> "Made the notice requirements under N.J.S.A. 59:8-3 applicable to both public entities and public employees under the TCA (tort claims act). A public employee is entitled to notice of claim within ninety days of the accrual of a cause of action."

Lowe, supra. at 611. Pursuant to the 1994 amendment, N.J.S.A. 59:3-1(c) now provides:

> "A public employee is not liable for any injury where a public entity is immune from liability for that injury."

In addition, as noted above:

> "Notice is required to be given to public entities even where the action lies against a public employee."

See comments to N.J.S.A. 59:8-3 at 170. The public policy goals underlying this requirement include: 1) to allow the public entity at least six months for administrative review with an

opportunity to settle meritorious claims prior to bringing the suit; 2) to provide public entity with prompt notification of claim to adequately investigate facts and prepare a defense; 3) to afford public entity a chance to correct conditions or practices which gave rise to claim; and 4) to inform state in advance as to indebtedness for liability it may be expected to meet. Beauchamp v. Amedio, 164 N.J. 111, 751 A.2d. 1047 (2000).

In the instant case, Plaintiff has not complied with the notice requirements of the Tort Claims Act. Specifically, N.J.S.A. 59:8-4(e) requires that the claim list the name or names of the public entity and any public employees responsible for the alleged injury. Plaintiff's December 19, 2017 Notice of Claim "New Jersey Department of Corrections, SCO John Doe and Sgt. Gibson." There is no mention of any medical provider or other entity. Moreover, the Notice of Claim provided in this case does not allege any medical malpractice or negligence. Nowhere in the Notice of Claim is there any mention whatsoever of Latifa Fedai, APN. This is the only Notice of Claim served in connection with this action. In addition, the proposed defendants have not received any notification, as required by the Tort Claims Act, that a claim has been filed against them. Thus, Plaintiff failed to comply with the notice requirements pursuant to the Tort Claims Act. As such, his claims against Rutgers University-University Correctional Health Care and Latifa Fedai, APN are barred. Moreover, what Plaintiff alleges in the December 19, 2017 Notice of Claim is a slip and fall case/premises liability action against the DOC and Northern State Prison. The claim as to Latifa Fadei, APN as alleged in the proposed Amended Complaint is a completely different claim and cause of action than what was described in the December 19, 2017 Notice of Claim.

## POINT III

**PLAINTIFF SHOULD NOT BE PERMITTED LEAVE TO FILE A LATE NOTICE OF CLAIM BECAUSE PLAINTIFF CANNOT DEMONSTRATE "EXTRAORDINARY CIRCUMSTANCES" AND MORE THAN ONE YEAR HAS PASSED SINCE THE ACCRUAL OF THE CLAIM.**

N.J.S.A. 59:8-8 provides that:

> "A claim relating to a cause of action for death or for injury or damage to person or the property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action."

N.J.S.A. 59:8-9 provides:

> "A claimant who fails to provide notice within the ninety day time frame may be permitted to file notice, in the discretion of the trial judge, **within one year after the accrual** of the claim provided that the claimant show "extraordinary circumstances" for his failure to file notice of claim within the period of time prescribed by section 59:8-8."

The "extraordinary circumstances" requirement was explained by the court in Blank v. City of Elizabeth:

> "The tort claims act, N.J.S.A. 59-1 to 59:12-3, requires a notice of the claim to be presented to the public entity within ninety days following the accrual of the cause of action except as otherwise provided in section 59:8-9. N.J.S.A. 59:8-8. As originally adopted as part of the Tort Claims Act, N.J.S.A. 59:8-9 accorded the court the discretion to permit a late Notice of Claim after the ninety day period but within a year following accrual on the showing of "sufficient reasons" for the failure of timely filing provided that the public entity would not be "substantially prejudiced" thereby. As tort claims juris prudence developed, the "sufficient reasons" threshold came to be liberally construed and the special reasons standard was implied. N.J.S.A. 59:8-9 was, however, amended by L. 1994, C49 to raise the sufficient reason threshold. The amendment no longer only requires a showing merely of sufficient reasons but rather "sufficient reasons constituting extraordinary circumstances." And the evident legislative purpose of this amendment was the abrogation of the liberal judicial construction of "sufficient reasons" standing alone.

318 N.J. Super. 106, 107-108 (1999). That change "suggested that the amendment may have signaled the end to a rule of liberality." Lowe v. Zarghami, 158 N.J. 606, 626 (1999)(quoting

Zois v. New Jersey Sport and Exposition, 286 N.J. Super. 670, 675 (App. Div. 1996)). See also N.J.S.A. 59A-9.

In O'Neill v. City of Newark, 304 N.J. Super, 543 (1997), the Appellate Division held that the Trial Court did not abuse its discretion in finding that plaintiff failed to show extraordinary circumstances warranting permission to file a late notice of claim.  In O'Neill, a police officer sustained injuries in a city owned building when stairs collapsed and a gun discharged into his leg. The officer did not show extraordinary circumstances when he failed to demonstrate that his mental condition prevented him from contacting an attorney, and pre-occupation with getting treatment for injured leg did not justify not filing a notice of claim within the normal day time period following the accident. O'Neill supra at 543.

The court in O'Neill added:

"It is not significant that plaintiff may have been unaware of the notice requirements. Ignorance of the law, without more, does not constitute sufficient reasons for delay. We find no hint of legislative intent that the time to give notice should be extended until the party discovers a public entity is involved."

Id. at 552-553. See also Wood v. County of Burlington, 302 N.J. Super. 371, 695 A.2d. 377 (App. Div. 1997) (reversing trial court's decision to grant plaintiff's leave to file a late notice of claim, because plaintiff's ignorance of the law does not constitute "extraordinary circumstances").

In the instant case, Plaintiff's proposed Amended Complaint alleges that Latifa Fadei, APN was negligence in her capacity as a medical professional in or about January 2017.  Based on that assertion, as well as any and all medical records available to Plaintiff, Plaintiff either knew or should have known of a potential cause of action against Ms. Fedai within the statutory time frame as her name is clearly contained in Plaintiff's medical records.  Further, the exercise of due diligence would have revealed any potential claim against the proposed defendants prior to now. Failure to exercise due diligence does not constitute "extraordinary circumstances".

Plaintiff argues that he did not discover Ms. Fedai's name until recently, but offers no documentation to support this assertion nor any explanation why it took so long to do so. Moreover, the argument that the original Complaint was "drafted by another law firm that didn't seem to understand New Jersey prison litigation" is, again, unsupported by any facts or evidence and fails to explain why current counsel has never served a Notice of Claim on the proposed defendants. Therein lies the undue prejudice on the proposed defendants.

Finally, and more importantly, even if the Court does find "extraordinary circumstances" warranting leave for Plaintiff to file a late notice of claim against Defendant, more than one year has passed since the accrual of the claim in 2017. As a result, Plaintiff is barred from asserting this action as to Rutgers University-University Correctional Health Care and Latifa Fedai, APN pursuant to the New Jersey Tort Claims Act.

### POINT IV

**PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH THE STATUTE OF LIMITATIONS**

Pursuant to N.J.S.A. 2A: 14-2, "every action at law for an injury to the person caused by their wrongful act, neglect or default of any person within this state shall be commenced within **two years next after the cause of any such action shall have accrued**." Absent an applicable exception, the statute of limitations in medical malpractice and analogous professional negligence cases accrues from the date of the negligent act or omission. See, Martinez v. Cooper Hospital - University Medical Center, 163 N.J. 45 (2000); Baird v. American Medical Optics, 155 N.J. 54, 68 (1998); and Caravaggio v. D'Agostini, 166 N.J. 237, 244 (2001) (providing that N.J.S.A. 2A:14-2 embodies the Statute of Limitations in Medical Malpractice Actions).

Whether the Statute of Limitations operates to bar a cause of action is a question of law appropriately decided by the Court. See, Baird, 155 N.J. at 54 (citing Bernandi vs. Strully, 35 N.J. 434, 439 (1961)). The failure to timely file warrants dismissal. Vastano v. Algeier, 178 N.J. 230, 242 (2003). This result is consistent with the Court's interest in avoiding litigation of stale

claims, penalizing delay and providing repose. <u>Galligan v. Westfield Centre Service</u>, 82 <u>N.J.</u> 188, 191- 93 (1980) (Statutes of Limitation "spare courts from litigating stale claims, penalize delay, and provide repose.").  Notwithstanding, the chief consideration underlying a statute of repose is fairness to the defendant. <u>See</u> <u>Cyktor v. Aspen Manor Condominium Ass'n.</u>, 359 N.J. Super. 459, 470 (App. Div. 2003) (<u>citing</u> <u>Rosenberg v. Town of North Bergen</u>, 61 N.J. 190, 201 (1972)).

In the instant case, Plaintiffs' cause of action accrued on October 1, 2017.  Plaintiff filed a Complaint in August 2019 and did not name the proposed Defendants.  They knew, or through the exercise of reasonable diligence, should have known of any potential cause of action as to Rutgers University, University Correctional Health Care or Latifa Fedai, APN at that point in time.  In fact, Plaintiff's counsel's Certification concedes the cause of action accrued on October 1, 2017.  Plaintiff's argument that they did not have the relevant medical records for over 3 years since the incident, and over 2 years since the original Complaint was filed, underscores that lack of diligence with which this case has been prosecuted.

In addition, the statute of limitations for § 1983 claims is two years. <u>See Wilson v. Garcia</u>, 471 U.S. 261, 276, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985); <u>Dique v. New Jersey State Police</u>, 603 F.3d 181, 185 (3d Cir. 2010) ("[S]tate law provides the statute of limitations applicable to a <u>section 1983</u> claim."); <u>N.J.S.A.</u> 2A:14-2.  Therefore, Plaintiff's claim for deliberate indifference is also barred.


**POINT V**

**PLAINTIFF CANNOT SATISFY REQUIREMENTS UNDER RELATION BACK DOCTRINE OF FED. R. COV. PROC. 15**

Plaintiff cannot benefit from any relation back pursuant to Federal Rule of Civil Procedure 15 as the defendants sought to be added were never put on notice of the claim, and the original

Complaint does not contain any allegations as to the "Medical Department-Northern State Prison" as Plaintiff contends in this Motion.  If so, Plaintiff never pursued any such claims by providing a Notice of Claim or serving a copy the Summons and Complaint for almost 2 years from the filing of the Complaint.  Moreover, Plaintiff lacked due diligence in prosecuting this claim he seeks to add by failing to obtain relevant information in a timely fashion.  All of this creates an undue prejudice on the defendants he now seeks to add in defending this matter.

Pursuant to Federal Rule of Civil Procedure 15, a party may amend its pleading once as a matter of course within 21 days of serving it or 21 days after the service of a responsive pleading or motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1).  In all other circumstances, a party may amend its pleading only with the opposing party's written consent or with leave of court. Fed. R. Civ. P. 15(a)(2). Rule 15 embodies a liberal approach to amendment and specifies that "leave shall be freely given when justice so requires." Dole v. Arco Chemical Co., 921 F.2d 484, 486-87 (3d Cir. 1990); Fed. R. Civ. P. 15(a)(1)(2). "An applicant seeking leave to amend a pleading has the burden of showing that justice requires the amendment." Katzenmoyer v. City of Reading, 158 F. Supp. 2d 491, 497 (E.D. Pa. 2001); see Garvin v. City of Phila., 354 F.3d 215, 222 (3d Cir. 2003) (explaining that a plaintiff must show that the elements of Rule 15(c) are met in order to change the party or the naming of the party against whom claims are asserted).

"The policy favoring liberal amendment of pleadings is not, however, unbounded." Dole, 921 F.2d at 487. Factors which may weigh against amendment include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,  undue prejudice to the opposing party by

virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

Amendment is futile when the claim sought to be added would be barred by the statute of limitations. See Garvin, 354 F.3d at 219.

Rule 15(c) provides:

(c) Relation Back of Amendments.

(1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Under Rule 15, "the decision whether to allow a plaintiff to amend the complaint [under Rule 15(a) is separate from, and based upon a different standard than, the decision whether the new claim relates back to the original complaint [under Rule 15(c)]." Eaglin v. Castle Acquisition, Inc., No. 2011-48, 2012 U.S. Dist. LEXIS 148590, at *4 (D.V.I. Oct. 16, 2012) (quoting Caban-Wheeler v. Elsea, 71 F.3d 837, 840 (11th Cir. 1996)); see

also Arthur v. Maersk Inc., 434 F.3d 196, 202-203 (3d Cir. 2006) (explaining that "[l]eave to amend under subsection (a) and relation back under subsection (c) [of Rule 15], while obviously related, are conceptually distinct" and comparing the standards of Rule 15(a) and Rule 15(c)). Therefore, even if Plaintiff's amended pleading meets the requirements of Rule 15(c) and would relate back to the date of the original pleading, leave to amend under Rule 15(a) may be denied if the Court determines that amendment would be "unjust" and leave should not be granted. See Arthur, 434 F.3d at 203; Wine v. EMSA Ltd. P'ship, 167 F.R.D. 34, 39 (E.D. Pa. 1996) (holding that proposed amendment related back under Rule 15(c) but denying leave to amend under Rule 15(a) because the interests of justice did not warrant allowing amendment).

Under Rule 15(a), "prejudice to the non-moving party is the touchstone for the denial of an amendment." Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978). Absent substantial or undue prejudice, denial "must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993). "Delay alone is not sufficient to justify denial of leave to amend." Arthur, 434 F.3d at 204 (citing Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984)). However, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court . . . ." Adams, 739 F.2d at 868. "The question of undue delay requires that [the Court] focus on the movant's reasons for not amending sooner." Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001). "When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied." Arthur, 434 F.3d at 204; see Cureton v. NCAA, 252 F.3d at 273.

Rule 15(c) enumerates three distinct prerequisites for an amendment to relate back to the original complaint: (1) the claims in the amended complaint must arise out of the same occurrences set forth in the original complaint, (2) the party to be brought in by amendment must have received notice of the action within 120 days of its institution, and (3) the party to be brought in by amendment must have known, or should have known, that the action would have been brought against the party but for a mistake concerning its identity." *Arthur,* 434 F.3d at 203 (citing Fed. R. Civ. P. 15(c)).

The second prerequisite for an amendment to relate back to the original complaint mandates that "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment . . . received such notice of the action that it will not be prejudiced in defending on the merits." Fed. R. Civ. P. 15(c)(1)(C)(i). This prerequisite "has two requirements, notice and the absence of prejudice, each of which must be satisfied." Urrutia, 91 F.3d at 458.

Notice, for purposes of Rule 15(c)(1)(C)(i) may be actual or constructive. *Singletary,* 266 F.3d at 195-6. Rule 15(c)(1)(C) "cognizes two means of imputing the notice received by the original defendants to the party sought to be added: (i) the existence of a shared attorney between the original and [*13] proposed new defendant [the 'shared attorney method']; and (ii) an identity of interest between these two parties [the 'identity of interest method']." *Id.* at 189. The notice received "must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action." *Id.* at 195.

Plaintiff does not claim that—nor does he make any showing that—the proposed Defendants received actual notice. Therefore, the second prerequisite of Rule 15 can only be met if one of the two methods of imputing notice applies here. "The 'shared attorney' method of

imputing Rule 15(c)(3) notice is based on the notion that, when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." Singletary, 266 F.3d at 196. The relevant inquiry under this method of imputed notice is whether "notice of the institution of this action can be imputed to [the proposed defendants] within the relevant 120 period . . . by virtue of representation [the proposed defendants] shared with a defendant originally named in the lawsuit." Id.

In addition to notice, Rule 15(c) requires that a newly added party will not be prejudiced in defending on the merits. Fed. R. Civ. P. 15(c)(1)(C)(i); Urrutia, 91 F.3d at 458. "[T]he 'prejudice' to which the Rule refers is that suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale." Garvin, 354 F.3d at 222 n.6 (quoting Nelson v. Cnty. of Allegheny, 60 F.3d 1010, 1014-15 (3d Cir. 1995). Plaintiff has not claimed nor advanced any argument that the proposed Defendants will suffer no prejudice in defending on the merits if the Plaintiff is again permitted to amend his Complaint. The statute of limitations "serves the salutary purpose of preventing stale claims and requiring timely notice to defendants before distance from the event eviscerates accurate recall." Colbert v. City of Phila., 931 F. Supp. 389, 393 (E.D. Pa. 1996). Plaintiff seeks to add claims against the proposed Defendants based on the execution of a search warrant—often a commonplace event in the life of police officers—almost three years ago. Absent a showing of actual, informal or constructive notice, or any reason provided by Plaintiff explaining why prejudice will not occur, a Court cannot conclude that the proposed Defendants would not be prejudiced by permitting Plaintiff

to amend his Complaint.  See Anderson v. City of Phila., 65 Fed. Appx. 800, 803 (3d Cir. 2003) (citing Singletary, 266 F.3d at 194 n.3.)

In the instant case, Plaintiff cannot establish that the proposed defendants he seeks to add, namely Rutgers University-University Correctional Health Care or Latifa Fedai, APN, had notice of the claims as required by Rule 15(c), nor can Plaintiff establish a lack of prejudice to the proposed Defendants.  In addition, Plaintiff has failed to comply with the statute of limitations to assert claims as to the proposed defendants as the cause of action accrued no later than October 1, 2017.  Therefore, since he cannot satisfy the requirements of relation back under Rule 15, Plaintiff's Motion should be denied.

In addition, Plaintiff cannot satisfy the requirement that the proposed defendants knew, or should have known, but for a misidentification, the claim would have been made against them as required by Rule 15(c)(1)(C)(ii).  Plaintiff did not provide any Notice of Claim to the proposed defendants.  The Notice of Claim dated December 19, 2017, does not mention anything about Rutgers, University Correctional Health Care or Ms. Fedai.  Moreover, there is no evidence that that Notice of Claim was ever served on these purported defendants.  In addition, the initial Complaint dated August 19, 2019 does not assert any claims against any medical defendants as suggested in paragraph 13(c) of Plaintiff's counsel's Certification in support of this Motion. Each and every allegation in the original Complaint is directed at the New Jersey Department of Corrections defendants.   The proposed defendants were never served with the original Complaint.  Also, there is no evidence that the proposed defendants were even aware of the filing of the original Complaint.

Based upon the foregoing, Plaintiff cannot satisfy the requirements of Rule 15 to allow this Amended Complaint to relate back to the original Complaint.  Therefore, Plaintiff's Motion

to amend as to Rutgers University, University Correctional Health Care, and Latifa Fedai, APN should be denied.

## **CONCLUSION**

Plaintiff's Motion to Amend the Complaint to add Rutgers University and/or University Correctional Health Care and Latifa Fedai, APN as defendants is futile as any such claims are barred by the Statue of Limitations and the TCA notice provision.  As discussed, *supra,* since the cause of action accrued on October 1, 2017, a Notice of Claim was required to be provided within 90 days of that date, or a Motion to File a late Notice of Claim could have been filed within a year.  Neither was done.  Therefore, based upon Plaintiffs' failure to comply with either the 2-year statute of limitations or the notice provisions of the TCA, Plaintiffs' claims as to Rutgers, University Correctional Health Care, and Latifa Fedai, APN are barred.  As such, Plaintiff's Motion to Amend should be dismissed for the reasons set forth herein.

MACNEILL, O'NEILL & RIVELES, LLC
Attorneys for Rutgers University/University
Correctional Health Care


Dated: June 7, 2021                    By:*/s/ Thomas J. Pyle, Jr.*
                                            Thomas J. Pyle, Jr.

## MacNeill, O'Neill & Riveles, LLC

Thomas J. Pyle, Jr. (018411995)
240 Cedar Knolls Road, Suite 104
Cedar Knolls, NJ 07927
973-409-6600
Attorneys For Defendant, Rutgers University-University Correctional Health Care
Our File No. 9028.05267

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EDWIN POLYNICE, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED INDIVIDUALS,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**NEW JERSEY DEPARTMENT OF CORRECTIONS, ET AL.,**<br><br>**Defendants.** | **DOCKET NO.: 2:19-cv-16875-MCA-LDW**<br><br>**CIVIL ACTION**<br><br>Electronically Filed<br><br>**CERTIFICATION OF THOMAS J. PYLE, JR., ESQ. IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE AN AMENDED COMPLAINT** |

Thomas J. Pyle, Jr., hereby certifies as follows:

1.     I am an attorney at law of the State of New Jersey and am partner in the law firm of MacNeill, O'Neill & Riveles, LLC, attorneys for Rutgers University-University Correctional Health Care. As such, I am fully familiar with the facts as hereinafter set forth.

2.     I make this Certification in Opposition to Plaintiff's Motion to File an Amended Complaint.

3.     Plaintiff filed a Complaint alleging negligence on behalf of the New Jersey Department of Corrections and its employees on August 19, 2019. A true and accurate copy of the Complaint is annexed hereto as Exhibit A.

4.     The Complaint alleges that Plaintiff fell from a top bunk October 1, 2017 while incarcerated at Northern State Prison, thereby injuring himself. See Exhibit A.

5.      Plaintiff's Complaint does not contain any allegations against Rutgers University, University Correctional Health Care or Latifa Fedai, APN.  See Exhibit A.

6.      The claims in the Complaint are all directed toward NJ Department of Corrections personnel.  See Exhibit A.

7.      Prior to filing the Complaint on August 19, 2019, Plaintiff served a Notice of Claim on the New Jersey Department of Corrections dated December 19, 2017.  A true and accurate copy of the Notice of Claim dated December 19, 2017 is annexed hereto as Exhibit B.

8.      Plaintiff's December 19, 2017 Notice of Claim does not mention Rutgers University, University Correctional Health Care or Latifa Fedai, APN.  See Exhibit B.

9.      Plaintiff's December 19, 2017 Notice of Claim was never served on Rutgers University, University Correctional Health Care or Latifa Fedai, APN.

10.     Plaintiff's Complaint was never served on Rutgers University, University Correctional Health Care or Latifa Fedai, APN.

11.     Plaintiff has never served a Notice of Claim on Rutgers University, University Correctional Health Care or Latifa Fedai, APN relating to Plaintiff's claim that he fell out of an upper bunk and injured himself on October 1, 2017.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


                                        By:    /s/ Thomas J. Pyle, Jr.
                                               THOMAS J. PYLE, JR.

Dated:  June 7, 2021

# EXHIBIT A

# THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EDWIN POLYNICE,

      Plaintiff

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, NORTHERN STATE
PRISON, ADMINSITRATOR GEORGE
ROBINSON, SERGEANT GIBSON
(individually), and S.C.O. JOHN DOE
(individually), JOHN DOES 1-10 AND
ABC ENTITIES A-Z

      Defendant

Civil Action No.:

CIVIL ACTION

**COMPLAINT
AND JURY DEMAND**

 

**NOW COMES**, Plaintiff, by and through the undersigned Counsel, and hereby bring this action against the Defendants as follows:

## INTRODUCTORY STATEMENT

1. This is a civil rights action brought pursuant to the State of New Jersey tort laws, the United States Constitution and 42 U.S.C. § 1983 seeking damages against Defendants for committing acts under color of law that deprived Plaintiff, Edwin Polynice, of his rights secured to him by the Constitution and laws of the United States of America.

2. In particular on October 11, 2017, Defendants violated the rights of Edwin Polynice by failing to keep him in a safe and secure environment where he could be kept free from

1

injury and harm, by failing to respect and abide by medical professionals, and by failing to adhere to adequately mandated medical regulations and custodial attention, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

3.      In addition, this action is brought by Plaintiff against Defendants under the Laws of New Jersey that relate to Prisoner rights to be kept  in a safe and secure environment where he could be kept free from injury, harm, and death, by failing to provide him with adequate medical care and custodial attention, and by demonstrating deliberate indifference to Edwin Polynice's necessary medical accommodations.

## JURISDICTION AND VENUE

4.      Plaintiff's case arises under the Constitution and laws of the United States, specifically, the Eighth and Fourteenth Amendments to the United States Constitution.

5.      Plaintiff's suit is authorized by 42 U.S.C. § 1983 (allowing suit to correct constitutional violations) and 42 U.S.C. § 1988 (providing for attorney fees and litigation expense-awards).

6.      This Court has jurisdiction over Plaintiff's federal constitutional claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3).

7.      This case also arises under the law of the State of New Jersey that deal with Prisoners' Rights to be kept in a safe and secure environment free from injury, harm and death, and to receive adequate medical care and custodial attention.

8.      This Court has pendant jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367.

9.     Venue is proper under 28 U.S.C. § 1391 in that the incident took place in the County

of Essex, State of New Jersey, and upon information and belief, the Defendants are

employed in or around the County of Essex, State of New Jersey.


# PARTIES

10.     Plaintiff, Edwin Polynice, brings this action on behalf of himself and in his own right.

11.     Defendant, New Jersey Department of Corrections, located in the County of Essex, is

a county in the state of New Jersey and owns, operates, manages, directs and controls

the New Jersey Department of Corrections.  The Northern State Prison division of the

New Jersey Department of Corrections is located at 168 Frontage Rd, Newark, NJ

07114 (referred at times herein as the "Northern State Prison").

12.     Defendants, at all times material hereto, were the Administrators of the Northern

State Prison, located at 168 Frontage Rd, Newark, NJ 07114.  To the extent the Court

deems appropriate, Administrators of the Northern State Prison for the New Jersey

Department of Corrections and Defendants that were active participants in the events

leading to Plaintiff's injuries, such as S.C.O. John Doe, should be held liable in their

individual capacity.

13.     Defendant, Northern State Prison, is a law enforcement entity in the state of New

Jersey which operates, manages, directs and controls the Northern State Prison

facility within the County of Essex.

3

14. Defendant, New Jersey Department of Corrections, is a law enforcement entity in the state of New Jersey which operates, manages, directs and controls the Northern State Prison facility within the County of Essex.

15. Defendant, S.C.O. John Doe was at all times material hereto, employed by the Northern State Prison located at 168 Frontage Rd, Newark, NJ 07114. Defendant, S.C.O. John Doe is sued in his individual capacity.

16. Defendant, Sergeant Gibson, was at all times material hereto, employed by the Northern State Prison located at 168 Frontage Rd, Newark, NJ 07114. Defendant, Sergeant Gibson is sued in his individual capacity.

17. The Health Services Unit for the Department of Corrections for the State of New Jersey, with corporate offices located at 168 Frontage Rd, Newark, NJ 07114, was contractually engaged with the Northern State Prison and the New Jersey Department of Corrections to provide health care services for inmates at the Northern State Prison.

18. At all times relevant hereto, Defendant, John Doe Personnel and/or Corrections Officers and/or Administrators, may contain fictitious names representing unnamed corrections officers and/or other individuals, employed with the Northern State Prison facility located at 168 Frontage Rd, Newark, NJ 07114, who were acting under the supervision of the New Jersey Department of Corrections, the Northern State Prison and Administrators of both agencies. These Defendants are sued in their individual capacities.

19. All Defendants, for one or more entities, which were contracted to provide medical and/or psychiatric services, counseling, security and custodial care to inmates under the custody of the New Jersey Department of Corrections.

## FACTUAL ALLEGATIONS

20. Plaintiff, Edwin Polynice, was incarcerated at the Detention Unit of Northern State Prison on or about September 30, 2017.

21. At said date, S.C.O. John Doe instructed Plaintiff, Edwin Polynice, to move into cell 104, on the *top* bunk.

22. Plaintiff, Edwin Polynice, expressed to S.C.O. John Doe that due to mandated medical restrictions and persistent medical issues, he was only permitted to be placed on the bottom bunk. Mr. Polynice further advised that his mandatory medical accommodation was for the remainder of his incarceration.

23. Following his explanation, Mr. Polynice was ordered to utilize the top bunk, and S.C.O. John Doe reiterated that this order came from Sergeant Gibson.

24. Given the gentlemen listed in ranking order, Plaintiff, Edwin Polynice was compelled to comply with said order.

25. On or about, October 1, 2017, at approximately 12:35 p.m., while attempting to dismount from the top bunk, to take his daily shower, Plaintiff, Edwin Polynice, became extremely dizzy and fell.

26. During this fall, Plaintiff, Edwin Polynice, attempted to step down on the stool, but slipped. He fell, striking his head on the toilet and his leg against the stool.

5

27.     Post-fall, Mr. Polynice sustained severe injuries leading to thirteen stitches and five staples.

28.     Mr. Polynice also suffered from a dislocated right shoulder, severe neck pain, and bruising on his legs.

29.     Plaintiff, Edwin Polynice, required an extended stay in the prison infirmary for ten days due to these injuries.

30.     Throughout his time in the infirmary, he experienced debilitating headaches with the pain extending throughout his entire head, chronic pain in his facial area, ongoing dizziness, and a bruised leg.

31.     Additionally, Plaintiff, Edwin Polynice, continues to experience neck pain and lower back from, stemming from this incident, requiring ongoing physical therapy to treat his neck and his back.

32.     Upon information and belief, Defendants and representatives and/or employees of Defendant New Jersey Department of Corrections at all times material hereto, failed to properly evaluate Mr. Polynice's medical needs and restrictions, while simultaneously ignoring previously mandated medical advice.

33.     Furthermore, Mr. Polynice was ordered to be exposed to harmful and hazardous conditions.  Therefore, they failed to do their duty to maintain a safe and suitable environment, keeping Mr. Polynice safe from injury and harm.

34.     In the events described above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Mr. Polynice of his right and privileges secured by the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

35. The failures of Defendants to properly protect and carry out medical instructions for Mr. Polynice's imminent risk for a head, neck, and back injuries demonstrated a deliberate indifference to and a conscious disregard for medical needs and requirements and the overall safety of Mr. Polynice.

36. In the events described above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Mr. Polynice of his right and privileges secured by the United States Constitution and 42 U.S.C. § 1983.

37. The failures of Defendants to properly adhere to Mr. Polynice's medically mandated restrictions, demonstrated a deliberate indifference to and a conscious disregard for the medical requirements and the overall safety of Mr. Polynice.

**FIRST CLAIM FOR RELIEF**
**FEDERAL CONSTITUTIONAL VIOLATIONS BY**
**ALL DEFENDANTS**

38. The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

39. Defendant, Northern State Prison, by and through their Administrator George Robinson and other policymakers, developed policies, procedures and/or customs which caused the deprivation of Plaintiff, Edwin Polynice's constitutional rights.

40. Said policies were inherently deficient, or inappropriate as formulated, as to the adherence of mandated medical care provided to an inmate that presented with documented medical issues.

41. Defendant Northern State Prison, by and through Defendant Administrator George Robinson and other policymakers, negligently, recklessly, and/or intentionally:

    a.   failed to properly train and supervise Defendant Sergeant Gibson and Defendant

        S.C.O. John Doe with regard to adequately assessing, monitoring and providing

        necessary and reasonable accommodations for inmates with medical issues,

        including but not limited to inmates with documented medical restrictions and;

    b.   failed to properly train and supervise Defendant Sergeant Gibson and Defendant

        S.C.O. John Doe, or other prison staff to maintain a safe and suitable

        environment, and to keep inmates safe from injury or serious harm;

    c.   maintained policies, procedures and/or customs that were deliberately indifferent

        to the constitutional rights of inmates to be adequately screened for medical

        issues, to provide necessary and reasonable accommodations for inmates with

        medical issues; and to be kept safe from injury or serious harm;

    d.   failed to enforce the contractual obligations of the Health Services Unit for the

        Department of Corrections for the State of New Jersey, to monitor and treat

        inmates with medical issues, including but not limited to inmates with

        documented medical restrictions;

    e.   with full knowledge, allowed institutional policies and procedures regarding

        intake, medical screening, custodial watch and medical treatment to be ignored

        and violated with reckless abandon; and

    f.   failed to provide adequate and needed health care for inmates at the Detention

        Unit of the Northern State Prison.

42.    The actions and/or failures to act by Defendant, Northern State Prison, Defendant

        Administrator George Robinson, Defendant Sergeant Gibson and Defendant S.C.O.,

as illustrated above, amounted to a deliberate indifference of Mr. Polynice's constitutional rights and proximately caused his injuries.

43. The violation of Mr. Polynice's rights under the United States Constitution was the proximate cause of damages to Plaintiff, thereby entitling Plaintiff to compensatory damages from Defendants, Northern State Prison and Defendant Administrator George Robinson, Defendant Sergeant Gibson and Defendant S.C.O., in an amount exceeding $1,000,000.00.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## SECOND CLAIM FOR RELIEF
## LIABILITY OF DEFENDANTS NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON, ADMINISTRATORS GEORGE ROBINSON, SERGEANT GIBSON, AND S.C.O. JOHN DOE FOR FEDERAL CONSTITUTIONAL VIOLATIONS

44. The allegations set forth in the proceeding paragraphs are incorporated by reference as if fully set forth herein.

45. At all times relevant hereto, Defendants were acting under color of state law as employees or agents of the Northern State Prison and/or Health Services Unit of New Jersey, and/or if not employees or agents, by direction of and under the supervision and control of New Jersey Department of Corrections, the Detention Unit of Northern State Prison and/or Health Services Unit of New Jersey.

46. The actions of Defendants as set forth above violated the late Mr. Polynice's rights under the Eighth and Fourteenth Amendments of the United States Constitution to be incarcerated in a safe and suitable environment, and to be safe from injury and harm while incarcerated at the Detention Unit of Northern State Prison.

9

47.   The violations of Mr. Polynice's rights under the United States Constitution was the severe and continuous injuries to Edwin Polynice, thereby entitling Plaintiff to compensatory damages from Defendants in their individual capacities.

48.   The actions of Defendants in their individual capacities were intentional, malicious, willful, wanton, and/or in reckless disregard of Plaintiff's federally protected rights, therefore entitling Plaintiff to an award of punitive damages.

49.   Plaintiff is entitled to recover damages against Defendants the individual capacity in an amount greater than $1,000,000.00.

50.   Plaintiff is entitled to recover reasonable attorney's fees and the costs and expenses of this action.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

### THIRD CLAIM FOR RELIEF
### SUPERVISORY LIABILITY OF DEFENDANTS
### ADMINISTRATOR GEORGE ROBINSON, AND
### SERGEANT GIBSON UNDER 42 U.S.C. § 1983

51.   The allegations set forth in the preceding paragraphs are incorporated by reference as is fully set forth herein.

52.   At all times relevant hereto, Defendant Administrator George Robinson, and Defendant Sergeant Gibson served as Administrators of the Northern State Prison, in Newark, New Jersey.

53.   Plaintiffs are informed, believe and therefore allege that on October 1, 2017, Defendant Administrator George Robinson, and Defendant Sergeant Gibson were aware of, should have been aware of, and/or had actual knowledge of the pattern and culture of unconstitutional behavior and indifference, including failure to properly

screen inmates for medical injuries, or other mental health problems, failure to adequately monitor and guard inmates, failure to have inmates properly treated medically, failure to have inmates provided necessary and reasonable medical accommodations, and failure to protect inmates from injury or harm whether self-inflicted or by other inmates, staff, employees and/or corrections officers at the Northern State Prison.

54. As such, Defendant Administrator George Robinson, and Defendant Sergeant Gibson not only directed, encouraged, tolerated, acquiesced to this behavior, but were deliberately indifferent to the likelihood that their staff, employees and/or corrections officers would fail to properly screen inmates for medical issues, fail to adequately monitor inmates, fail to have inmates provided necessary and reasonable medical accommodations, fail to treat inmates medically and fail to protect inmates from injury or harm at the Northern State Prison.

55. The deliberate indifference of Defendant Administrator George Robinson, and Defendant Sergeant Gibson as to the need for training and supervision of their staff, employees and/or detention officers was a proximate cause of the constitutional violations suffered by the Plaintiff, Edwin Polynice.

56. The violation of Mr. Polynice's rights under the United States Constitution was a proximate cause of damages and harm to Plaintiff, thereby entitling Plaintiff to compensatory damages from Defendant Administrator George Robinson, and Defendant Sergeant Gibson in an amount exceeding $1,000,000.00.

**WHEREFORE**, the Plaintiff demands judgment against Defendant Administrator George Robinson, and Defendant Sergeant Gibson for compensatory and punitive damages, counsel fees and all costs of suit.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS BY DEFENDANTS
### NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON,
### ADMINISTRATOR GEORGE ROBINSON, SERGEANT GIBSON,
### AND S.C.O. JOHN DOE

57.   The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

58.   The Defendants were acting under color of law when they failed to properly provide medical accommodations for Plaintiff, Edwin Polynice, for medical issues, failed to adequately monitor Mr. Polynice while incarcerated at the Northern State Prison, and failed to protect Mr. Polynice from injury and harm.

59.   The Defendants failed to adequately train or otherwise have and maintain or enforce effective policies regarding the screening and care of inmates with medical restrictions, the adequate monitoring of inmates, and the protection of inmates from injury or harm.

60.   The Defendants, New Jersey Department of Corrections, Northern State Prison, Administrator George Robinson, Sergeant Gibson and S.C.O. John Doe were deliberately indifferent to the likelihood that Northern State Prison's staff, employees and/or Detention Officers, would fail to properly screen inmates for medical issues, fail to adequately monitor inmates, fail to properly provide necessary medical accommodations, and fail to protect inmates from injury or harm at the Detention Unit of Northern State Prison.

12

**WHEREFORE**, Plaintiff brings this cause of action and demands judgment against Defendants for compensatory and punitive damages, counsel fees and all costs of suit.

### FIFTH CLAIM FOR RELIEF
### NEGLIGENCE
### DEFENDANTS NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON, ADMINISTRATORS GEORGE ROBINSON, SERGEANT GIBSON, AND S.C.O. JOHN DOE

61. The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

62. Defendants owed a duty of reasonable care to Plaintiff, Edwin Polynice, and to others at the Northern State Prison, to properly screen inmates for medical issues, to properly and adequately monitor inmates, to treat inmates medically when indicated, to provide medical accommodations when necessary, and to protect inmates from injury or harm at the Northern State Prison.

63. The Defendants failed to use the requisite standard of care pursuant to sound policies and procedures and/or knowingly violated established policies and procedures with reckless abandon.

64. The actions and/or failures to act by the Defendants amounted to a breach of said duty of care to Mr. Polynice.

65. As a direct and proximate result of Defendants' negligence, Mr. Polynice was seriously injured while in the custody of the Northern State Prison on October 1, 2017.

66. Plaintiff is entitled to an award of compensatory damages against the above-referenced Defendants in an amount which exceeds $1,000,000.00.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants for damages, counsel fees and all costs of suit.

### JURY DEMAND

The Plaintiff hereby demands trial by jury.

OPTIMUM LAW GROUP, P.C.

Dated: August 16, 2019          BY: _____
                                Joseph D. Lento, Esquire
                                3000 Atrium Way, Suite 200
                                Mount Laurel, NJ 08054
                                (T) 856-652-2000
                                (F) 856-375-1010
                                (E) jdlento@optimumlawgroup.com


OPTIMUM LAW GROUP, P.C.


Dated: August 16, 2019          BY: /s/ Lisa J. Pietras_____
                                Lisa J. Pietras, Esquire
                                3000 Atrium Way, Suite 200
                                Mount Laurel, NJ 08054
                                (T) 856-652-2000
                                (F) 856-375-1010
                                (E) ljpietras@optimumlawgroup.com

14

# EXHIBIT B

INTITIAL NOTICE OF CLAIM FOR DAMAGES AGAINST THE STATE OF NEW JERSEY

**FORWARD TO:** TORT AND CONTRACT UNIT, CLAIMS SEVICE SECTION
DEPARTMENT OF THE TREASURY, BUREAU OF RISK MGT.
CN 620
TRENTON, NEW JERSEY 08625
PHONE: (609) 292-4347

\* FORM <u>MUST</u> BE FILED WITHIN <u>90</u> DAYS OF THE ACCIDENT OR YOU MAY FORFEIT YOUR RIGHT

1. <u>Edwin Polynice</u>
   NAME OF CLAIMANT

   <u>168 Frontage Road – P.O. Box 2300</u>
   STREET ADDRESS

   <u>November 15, 1978</u>
   DATE OF BIRTH

   <u>Newark</u>        <u>N.J.</u>        <u>07114</u>
   CITY            STATE        ZIP CODE

   <u>N/A</u>
   DAYTIME PHONE#/CONTANCT

   SOCIAL SECURITY NUMBER

2. IF IT IS REQUESTED THAT NOTICES BE SENT TO A PERSON OTHER THAN THE CLAIMANT,
   SUCH AS YOUR ATTORNEY, PLEASE SEND NOTICE TO:

   <u>Jean Ross, Esq.</u>
   NAME OF PERSON

   <u>32 Markham Road</u>
   ST. EET ADDRESS

   <u>(609) 9246508</u>
   TELEPHONE NUMBER

   <u>Princeton,</u>     <u>N.J.</u>     <u>08540</u>
   CITY            STATE        ZIP CODE

   RELATIONSHIP TO CLAIMANT: ☐ ATTORNEY  ☑ OTHER <u>Consultant</u>

3. CIRCUMSTANCES REGARDING THE OCCURRENCE OR ACCIDENT:

   <u>October 1, 2017</u>  Approx 12:35pm
   DATE AND TIME

   <u>Unit DIE/112  Northern State Prison</u>
   LOCATION

   <u>Newark,  New Jersey</u>
   CITY            STATE

4. DESCRIBE THE ACCIDENT OR OCCURRENCE:

   <u>On September 31, 2017, I/m Polynice, 864138C was assigned to the</u>
   <u>detention unit of Northern State Prison (DIE) when he was instructed</u>
   <u>by the unit officer, S.C.O. John Doe, (name to be provided upon discovery) to</u>
   <u>move into cell 104, Top bunk. Polynice explained that do to</u>
   <u>medical issues he could not be assigned to a top bunk. He</u>
   <u>explained that he had a restriction mandating bottom bunk</u>

**ACCIDENT OR OCCURENCE CONTINUED:**

Only (see attached). Following this explanation, Polynice was informed that the directive was given by Sgt. Gibson. And he was thereafter given an order to move. Polynice complied.

On October 1, 2017, at approximately 12:35 pm, Polynice was called to take his daily shower. While stepping down on the stool, Polynice became light-headed, fell, striking his leg against the stool and his head on the toilet. As a result, he suffered a deep laceration to his forehead requiring 13 stiches and 5 staples. He also suffered a dislocated right shoulder. Polynice remained in the prison's infirmary for 10 days where he experienced pain throughout his head and facial area, bruised his leg, head-ache and dizziness.

It is noted that Polynice was given a bottom bunk only restriction for surgery he had to his leg as a result or complication of diabetes.

5. STATE THE NAME AND ADDRESS OF ALL WITNESSES TO ABOVE OCCURRENCE:

Polynice will Rely on medical Records to support his assertions. He however reserves the Right to present witnesses upon discovery of the identities of inmates assigned

6. STATE THE NAMES AND ADDRESSES OF EACH STATE AGENCY AND EACH STATE EMPLOYEE WHOM YOU CLAIM CAUSED YOUR DAMAGES OR INJURIES.

N.J. Department of Corrections, P.O. Box 863 Trenton, N.J. 08625
S.C.O. John Doe (Name to be provided)(Regular unit officer)(address noted above)
Sgt. Gibson (Supervisor in charge on day in question)(Address noted above)

7. STATE THE NAME AND ADDRESS OF ALL OTHER PERSONS, COMPANIES, OR GOVERNMENTAL AGENCIES WHICH YOU CLAIM ARE RESPONSIBLE FOR YOUR INJURIES OR DAMAGES.

N/A (All parties named above.

8. BRIEFLY DESCRIBE THE INJURY, DAMAGES AND LOSSES INCURRED BY YOU.

Severe laceration to the forehead/facial area Requiring 13 stiches and 5 staples; dislocated Right shoulder; bruises + abrasions and headaches as a Result of head trauma.

9. GIVE THE AMOUNT THAT YOU CLAIM IN DAMAGES: $ 100,000.00

GIVE THE BASIS FOR CALCULATION OF THE ABOVE DAMAGES:

Aside from the injuries sustained and the act of negligence Others To be provided by counsel in future submissions.

I certify that the foregoing statements made by me are true. I am aware that if any statement made herein is willfully false or fraudulent, i am subject to punishment as provided by law.

Date: 12/19/2017        Edwin Polynice
CLAIMANT OR PERSON FILING ON BEHALF OF CLAIMANT

# EXHIBIT

# O

**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN POLYNICE,<br><br>*Plaintiff*,<br><br>vs.<br><br>NEW JERSEY DEPARTMENT OF<br>CORRECTIONS, et al.,<br>*Defendants*. | Docket No. 2:19-CV-16875-MCA-LDW<br><br>**Civil Action** |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND

**By:**

**Michael Poreda, Esq.**
*Attorney for Plaintiff*

## OUTLINE

**PRELIMINARY STATEMENT**

**PROCEDURAL HISTORY**

**LEGAL ARGUMENT**

I.    **THE AMENDMENTS DO RELATE BACK**

    a.  **The Amendment Relates Back Under Rule 15(c)(1)(A)**

        i.  *Rutgers – Fictitious Party Practice*

        ii.  *Fedai – Discovery Rule*

    b.  **The Amendment Also Relates Back under Rule 15(c)(1)(C)**

    c.  **There is no basis for denying the Amendment under Rule 15(a).**

II.   **THERE IS NO REQUIREMENT THAT PLAINTIFF FILE MULTIPLE TORT CLAIM NOTICES FOR THE SAME ACCIDENT.**

III.  **IN THE ALTERNATIVE, THE PROPOSED AMENDED COMPLAINTS CIRCULATED IN AUGUST 2020 AND DECEMBER 2020 SHOULD CONSTITUTE SUBSTANTIAL COMPLIANCE.**

IV.   **IN THE ALTERNATIVE, THE PLAINTIFF HAS SHOWN EXTRAORDINARY CIRCUMSTANCES WARRANTING LEAVE TO FILE A MOTION TO FOR A LATE TORT CLAIM NOTICE.**

V.    **THE TORT CLAIM NOTICE PROVISION HAS NO RELEVANCE TO THE DELIBERATE INDIFFERENCE CLAIM AGAINST FEDAI OR THE DISABILITY DISCRIMINATION CLAIMS AGAINS THE DEPARTMENT OF CORRECTIONS.**

**CONCLUSION**

**PRELIMINARY STATEMENT**

Plaintiff's motion to amend the Complaint should be granted in its entirety.  Defendants' arguments regarding the Tort Claims Act are faulty for two reasons.  First, there is no requirement that a claimant file two tort claim notices for the same accident.  Second, Rutgers and Fedai can be deemed employees of the State of New Jersey under principles of agency law, and the Tort Claims Act does not require the claimant to name State "employees" on a Tort Claim Notice.

As for the statute of limitations defense, this also fails.  Because Rutgers is easily identifiable via the description in the original Complaint, the statute of limitations is permanently tolled under New Jersey fictitious party practice law.  As for Fedai, the claim against her did not start to accrue until the Plaintiff discovered that she had revoked his bottom bunk pass, which was a recent event.

Plaintiffs proposed amendments regarding the Department of Corrections' failure to accommodate the Plaintiff's disability is unopposed.

**PROCEDURAL HISTORY**

This action seeks compensation for an accident and subsequent failure to diagnose and treat an injury.  That injury occurred on October 1, 2017.  The injury occurred at Northern State Prison, a property owned by the New Jersey Department of Corrections.  A Tort Claim Notice regarding the accident was filed within 90 days of the event.  This appears in the Opposition Certification.

The original Complaint was filed near the end of the statute of limitations period for the accident.  It was filed on August 19, 2019 by Joseph Lento and Lisa Pietras of the Optimum Law Group.  (See **Exhibit A**, ECF No. 1).  The original Complaint alleged two factual theories of

liability. First, it alleged that the Plaintiff was forced to utilize a top bunk in spite of his bottom bunk restriction, proximately causing his accident. (**Exhibit A**, Complaint at ¶ 21-24). Second, the Complaint alleged that the subsequent medical care was inadequate. (**Exhibit A**, Complaint at ¶ 32).

The drafters of the Complaint were aware that there might be an unknown medical contractor responsible for the inadequate medical care. They named, under the "Parties" of the Complaint, a fictitious party, "Health Services Unit for the Department of Corrections for the State of New Jersey with corporate offices located at 168 Frontage Rd, Newark, NJ 07114." (**Exhibit A**, Complaint at ¶ 17). The drafters apparently did not anticipate that the entity would be Rutgers – which has the unique and unusual position of being both the medical staffing agency for Department of Corrections prisons and its own agency of the State of New Jersey.

No discovery took place for over a year because the served Defendants filed a motion to dismiss on October 2, 2019. [ECF No. 9]. With the motion still pending, I filed a substitution of attorney on March 6, 2020. On or about March 16, 2020, I served the Department of Corrections with a subpoena for Polynice's medical record from September 17, 2017 (about a week before the accident), through the present. (**Exhibit B**). On May 28, 2020, the court issued an order substantially denying Defendants' motion to dismiss. [ECF No. 14]. Due to a technical issue with PACER, I was not notified of the decision and found its existence on or about July 3, 2021, when I became worried as to why I had not received any news on the case. I went to PACER and saw that a decision had been issued and that Defendants had answered. I worked with PACER to get the problem rectified. (**Exhibit E,** ECF. No. 18).

I then attempted to get in contact with Mr. Polynice and discovered that he had disappeared into "temporary housing" within the Department of Corrections. When he finally

emerged in mid-August, I learned that he had been at St. Francis Hospital for many weeks due to kidney failure caused by the negligence and deliberate indifference of Defendants. [ECF No. 18]. Specifically, his kidneys failed when he experienced a month-long gap in access to his prescription blood pressure medication, a problem that is endemic at the New Jersey Department of Corrections.

On August 23, 2021, Plaintiff filed a motion to amend the Complaint. [ECF No. 22; **Exhibit C**]. This proposed Amendment sought to 1.) add a claim for disability discrimination against the Department of Corrections based on the failure to allow Plaintiff to use a bottom bunk; 2.) re-name the fictitiously pled "Health Services Unit for the Department of Corrections" as "Rutgers University – University Correctional Health Care." 3.) bring claims against Rutgers for causing Plaintiff's kidney failure, and on behalf of a class of inmates who had experienced gaps in their prescription medications.

A copy of the motion to amend was served on Rutgers, (*see* **Exhibit D**) which had its attorney, Tom Pyle enter an appearance on September 14, 2020. [ECF No. 24]. Pyle asked the court to carry the motion one cycle. [ECF No. 25].

In late August 2021, Edwin Polynice was released from prison. In reviewing the medical records with him, it became clear that I needed to see all of Polynice's medical history in prison, not just from September 2017 onwards. This was because someone gave him a new pass to use the bottom bunk, suggesting that someone had revoked it at an earlier point in time.

On October 20, 2020, a phone conference was held regarding the pending motion. At that conference, it was decided to terminate the motion to amend due to: 1.) a persuasive argument from Rutgers that the claim for kidney failure should be a separate action; 2.) due to the fact that the viability of Plaintiff's claim against Rutgers for failure to diagnose and treat the

injury from the fall was dependent upon the diagnosis of the injury. At this conference, counsel for the Department of Corrections agreed to deliver a copy of the first part of Polynice's medical records.

The records arrived on or about November 24, 2021. Upon reviewing them, we learned that Polynice's bottom bunk restriction had actually been revoked by Latifa Fedai before he suffered his injury, which could account for the DOC's decision to place him on the top bunk. Plaintiff was not aware that his bottom bunk restriction had been revoked by Fedai, or anyone. He was under the belief that he still had the bottom bunk restriction.

At the case management conference held on November 24, 2021, the court ordered Plaintiff to circulate a proposed amendment to the other parties. I did so, and I informed the court that Rutgers objected on December 23, 2020. [ECF No. 37]. The proposed Amendment explained Latifa Fedai's liability. Via the same letter, I informed the court that Plaintiff might ultimately decide not to pursue a claim against Rutgers, depending on the outcome of his MRI. I proposed discussing the date of a motion to amend at the case management conference to be held on January 20, 2021. That conference was not ultimately held until May 3, 2021, at which time, Polynice still did not have MRI results. Therefore, it became incumbent upon Plaintiff to seek the amendment against Rutgers in order to preserve his rights against them.

It has now been almost six months since Defendants' learned about Fedai's possible negligence in revoking Plaintiff's bottom bunk restriction.

# **LEGAL ARGUMENT**

## I.    **THE AMENDMENTS DO RELATE BACK.**

Defendant properly points out that there are two questions in deciding whether to permit the amendment.  First, there is the question of whether the proposed amendments "relate back" under Rule 15(c).  The amendments relate back in two possible ways.  Second, there is the question of whether to permit the amendment at all under Rule 15(a).  It should be permitted.

### a.    **The Amendment Relates Back Under Rule 15(c)(1)(A).**

Rule 15(c) has three prongs.  Each prong is a possible way that a proposed amendment may relate back.  Two of the prongs apply here.  Defendants suggest on page 16 of their opposition that a plaintiff must meet all three prongs in order to relate back.  This is false.  Rule 15 (c) uses the conjunction, "or" to connect the three prongs not "and," as the Defendants use in their interpretation of the Rule on Page 16 of their brief.  To be clear, Rule 15(c) says that:

(c) RELATION BACK OF AMENDMENTS.

   (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

   (A) the law that provides the applicable statute of limitations allows relation back;

   (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; **or**

   (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

      (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

      (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Prong B admittedly doesn't apply because this only relates to causes of action and not the addition of new parties. However, Plaintiff's amendments relate back under Prongs A and C.

With regards to Prong A, the statute of limitations has not run as to Rutgers or Fedai, but for two different reasons. The statute of limitations does not bar suit against Rutgers due to New Jersey's fictitious party practice rules, and it does not bar suit against Fedai due to the discovery rule.

### i. *Rutgers – Fictitious Party Practice*

The statute of limitations has not barred the case as to Rutgers because of New Jersey's fictitious party practice rule, Rule 4:26–4. Rule 15(c)(1) was amended to make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law which will, generally, be state law. § 10:28.Pleadings and service—Amended and supplemental pleadings, 20 N.J. Prac., Skills And Methods § 10:28 (3d ed.). Where, as here, federal jurisdiction is based on a federal question, the reference may be to the law of the state governing relations between the parties. *Id.* (citing *Board of Regents of University of State of N.Y. v. Tomanio*, 446 U.S. 478 (1980)).

N.J. Ct. R. 4:26-4 provides that where a "defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name." Where "a defendant is sued in a fictitious name because of the plaintiff's inability to ascertain his identity despite diligent efforts, the complaint may be amended after the statute of limitations has run to substitute the defendant's true name and effect service on him, particularly where the defendant can show neither prejudice resulting from nor reliance upon the lapse of time." Comment to N.J.Ct.R. 4:26–4 (S. Pressler ed. 1992) (citing <u>Farrell v. Votator Div. of Chemetron Corp.</u>, 62 N.J. 111, 299 A.2d 394 (1973), and <u>Stegmeier v. St. Elizabeth Hosp.</u>, 239 N.J. Super. 475, 484–

86 (App. Div. 1990)). "Thus, New Jersey law does provide a mechanism by which the name of a party not known to a plaintiff at the time of instituting a suit may be substituted for a fictitious name after the running of the statute provided that the description of the fictitious defendant was sufficient to identify it." Bryan v. Associated Container Transp. (A.C.T.), 837 F. Supp. 633, 643 (D.N.J. 1993). "It is evident that . . . an injured party who does not know the specific identity of the alleged wrongdoer is protected . . . by New Jersey's allowance of fictitious party practice under Rule 4:26–4. Thus, a party who knows that he or she has been injured and knows that the injury is the fault of another, but who does not know the identity of the party potentially at fault, can avoid the harsh result the statute of limitations otherwise would impose by naming fictitious "John Doe" defendants." Amland Properties Corp. v. Aluminum Co. of Am., 808 F. Supp. 1187, 1192 (D.N.J. 1992).

In this case, Plaintiff could not reasonably have known that Rutgers was the actual provider of medical services within the Department of Corrections. Rutgers intentionally does not make it readily known that it provides prisoners medical services. As your honor surely knows, prison medical systems operate on a backwards economic model where money is made by withholding services rather than by providing them. Thus inadequate care is rampant, and it serves the interests of Rutgers to keep its identity and the identity of its providers secret from prisoners. It can then try to rely upon technicalities like the statute of limitations to avoid liability for a system of "care" that is designed to fail.

The drafters of the original Complaint made the identity of Rutgers clearly discernable from their description. They noted that they were suing the corporate entity that managed the health services unit at Northern State Prison, which is, once the Department of Corrections's

corporate shell game is uncovered, unambiguously, Rutgers University – University Correctional Health Care.

### ii. Fedai – Discovery Rule

As for Latifa Fedai, the statute of limitations has not passed because the statute of limitations period did not begin to accrue until the Plaintiff become aware of what Fedai had done to him.  Under the "discovery rule," a cause of action does not accrue . . . until a plaintiff is aware that he or she is injured *and* that the injury is due to the fault or neglect of an identifiable defendant against whom the action can be brought."  Amland Properties Corp. v. Aluminum Co. of Am., 808 F. Supp. 1187, 1191 (D.N.J. 1992).

Under the discovery rule, a cause of action does not "accrue," for the purpose of the statute of limitations "until the plaintiff 'learns, or reasonably should learn, the existence of that *state of facts* which may equate in law with a cause of action."  Vispisiano v. Ashland Chemical Co., 107 N.J. 416, 426 (1987) (quoting Burd v. New Jersey Telephone Co., 76 N.J. 284, 291 (1978)); see also Apgar v. Lederle Laboratories, 123 N.J. 450, 455 (1991).  "The discovery rule allows the plaintiff to amend his complaint after the limitations period has run, even if the defendant did not have notice of the action within the statutory time limit."  Love v. Rancocas Hosp., 270 F. Supp. 2d 576, 582 (D.N.J. 2003) (citing See Viviano v. CBS, Inc., 101 N.J. 538, 548, 503 A.2d 296 (1986)).

In this case, Plaintiff was unaware that Fedai might be responsible for his fall.  He thought he had a bottom bunk restriction and that correctional officers refused to allow him to use it.  After reviewing the medical record that was diligently obtained before the commencement of formal discovery, it was discovered that when Plaintiff was moved from New Jersey State Prison to Northern State Prison, that Latifa Fedai decided he didn't qualify for a

bottom bunk restriction.  (**Exhibit G**).  Thus, pursuant to the discovery rule, the statute of limitations against Fedai only began to run at the time Plaintiff obtained and reviewed his medical record, which was in late 2020.

### b.  The Amendment Also Relates Back under Rule 15(c)(1)(C)

An amendment to add a party can relate back notwithstanding the statute of limitations under Rule 15(c)(1)(C).  There are three essential requirements for this kind of relation back: (1) that the allegations arise out of the same occurrence complained of in the original complaint; (2) within a period permitted for the serving of the complaint (which is an extendable 90 days), the newly added Defendant has enough notice such that it isn't prejudiced; and (3) but for the Plaintiff's mistaken identity of the Defendant, the Defendant would have known of its liability.

Regarding the first requirement, there's no question that Rutgers's failure to diagnose and treat was alleged in the original Complaint.  Therefore, the Plaintiff meets the first requirement.

Regarding the third requirement, anyone reading the original Complaint who knew that Rutgers staffed the medical unit at Department of Corrections prisons would know that the Plaintiff meant to plead a cause of action for failure to diagnose and treat against Rutgers.

Regarding the second requirement, the language of Rule 15(c)(1)(C) says that an amendment changing the name of the party must be made "within the period provided by Rule 4(m) for serving the summons and complaint."  While this period is 90 days[1] by default, it is extendable.  See F.R.C.P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But

---

[1] The time period was previously 120 days, but Rule 15 was amended in 2015 to permit an extendable 90 day period.  Brandon J. Held, Robert C. Graham, Jr., Fidelity Law and the 2015 Amendments to the Federal Rules of Civil Procedure, 22 Fidelity L.J. 223 (2016).

if the plaintiffs show good cause for the failure, the court must extend the time for service for an appropriate period.").  The choice of whether or not to extend the time depends upon the post-filing conduct of the Plaintiff.  Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 554, 130 S. Ct. 2485, 2497, 177 L. Ed. 2d 48 (2010).  In this case, Plaintiff's post-filing conduct has been scrupulously diligent.  The seemingly long delay has nothing to do with Plaintiff's conduct.  The majority of the delay has to do with Defendants immediately filing a motion to dismiss in October 2019, which wasn't returned until the end of May 2020.  The motion to dismiss essentially froze the progress of the case for seven months.  Due to the court's technical problems with PACER, I wasn't notified until July about the decision, and the following month, I served Rutgers with extensive amendments to the case, which have been the source of negotiation for almost a year.  This sequence of events demonstrates good cause for an extension of the 90 period.

### c.  There is no basis for denying the Amendment under Rule 15(a).

To cite the Defendants' recitation of the law (Opposition Brief at 15):

> Under Rule 15(a), "prejudice to the non-moving party is the touchstone for denial of an amendment." Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978).  Absent substantial or undue prejudice, denial "must be based on bad faith or dilatory motives, undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of the amendment." Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993).  "Delay alone is not sufficient to justify denial of leave to amend." Arthur, 434 F.3d at 204 (citing Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984)).

Here, Plaintiff's delay was not at all undue.  The delay is due to the lack of transparency about healthcare within the Department of Corrections.  Plaintiff attempted to amend the Complaint within a few weeks of learning that it had survived a motion to dismiss, and the months that have elapsed occurred amid constant communication between all the parties about

the merits of the amendment. The addition of Fedai was proposed within a month of the discovery of her liability. Moreover, Defendants have not articulated any prejudice suffered as a result of the delays.

## II.     THERE IS NO REQUIREMENT THAT PLAINTIFF FILE MULTIPLE TORT CLAIM NOTICES FOR THE SAME ACCIDENT.

It is uncontested that Plaintiff did file a Tort Claim Notice. There is no requirement in the law that Plaintiff has to file multiple Tort Claim Notices for one accident. This would be especially absurd to entertain where, as here, the Department of Corrections, which is one arm of the state, and Rutgers University, which is a second arm of the state, merged in a way such that Rutgers was the agent and employee of the Department of Corrections.

As for Ms. Fedai or Rutgers not being mentioned in the first tort claim notice, this is irrelevant because they were both agents of the Department of Corrections. N.J.S.A. 59:8–10(c) provides that "[s]ervice of the notice required by this chapter upon the public entity shall constitute constructive service upon **any employee** of that entity." Under basic agency principles, Fedai and Rutgers University – University Correctional Health Care are employees or agents of the Department of Corrections.

Basic agency principles dictate that a master must accept liability for the torts of its agents. Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1435 (3d Cir. 1994). "An agent is a person who represents another in contractual negotiations or transactions akin thereto. A servant is a person who is employed to perform personal services for another in his affairs, and who, in respect to his physical movements in the performance of the service, is subject to the other's control or right of control. Persons who render service but retain control over the manner of doing it are not servants." Id.

In a prison, every act of the individual medical providers are physically controlled by the Department of Corrections. As for Rutgers, even University Correctional Health Care's website admits that it operates "under the supervision" of the Department of Corrections and that it has no function other than to be the medical agent for the Department of Corrections and two other related agencies. [2]

If Rutgers had held itself out as a separate entity, then the original filer of the Complaint would have named Rutgers. Rutgers hides itself so well among the Department of Corrections that medical records don't even say "Rutgers" on them; only the name of the prison appears. **See Exhibit F and G.**

### III.    IN THE ALTERNATIVE, THE PROPOSED AMENDED COMPLAINTS CIRCULATED IN AUGUST 2020 AND DECEMBER 2020 SHOULD CONSTITUTE SUBSTANTIAL COMPLIANCE.

To the extent that the Original Tort Claim was inadequate as to Rutgers or Fedai, I placed Rutgers on notice of the claims against it by submitting a proposed amendment to Rutgers on August 23, 2021. [See Exhibit C and ECF. No. 22]. As for Fedai, a proposed amendment naming her liability was circulated in December 2020. To the extent this is late notice, Plaintiff asks the court permission to file a motion to have that count as a late notice of claim.

Plaintiff acknowledges that "a claimant may not bring an action against a public entity under the TCA unless he complies with its notice requirements." Salah v. Gilson, No. A-3617-11T2, 2013 WL 1688379, at *6–8 (N.J. Super. Ct. App. Div. Apr. 19, 2013) (citing N.J.S.A. 59:8–3, 59:8–4 and 59:8–8). But the notice requirement is not ironclad. It is subject to a substantial

---

[2] "Established in 2005 through inter-State agency agreements, University Correctional Health Care (UCHC) and its staff of mental health professionals provide mental health and sex offender specific treatment services to the inmates, residents and parolees under the supervision of the New Jersey Department of Corrections (NJDOC), the Juvenile Justice Commission (JJC) and the New Jersey State Parole Board (SPB)." https://ubhc.rutgers.edu/clinical/uchc/overview.xml

compliance doctrine.  Substantial compliance "means that the notice has been given in a way, which though technically defective, substantially satisfies the purposes for which notices of claims are required."  Lebron v. Sanchez, 407 N.J. Super. 204, 216 (App. Div. 2009).  The purpose of the notice to the public entity defendant is: (1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense[;] (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) to inform the [public entity] in advance as to the indebtedness or liability that it may be expected to meet.  Beauchamp v. Amedio, 164 N.J. 111, 121-22 (2000).  The TCA provides that "[n]o action shall be brought against a public entity or public employee ... unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. 59:8–3. The claim must be filed not later than the ninetieth day after the accrual of the cause of action, N.J.S.A. 59:8–8, and it must contain the following information: (1) the name and address of the claimant and the address(es) to which notice should be sent; (2) the date, location, and circumstances of the occurrence or transaction which gave rise to the claim; (3) a description of the injury or damages claimed; (4) the name(s) of the public entity or employee involved; and (5) the amount claimed. N.J.S.A. 59:8–4.  The doctrine of substantial compliance serves "the purpose of alleviating the hardship and unjust consequences which attend technical defeats of otherwise valid claims." Anske v. Borough of Palisades Park, 139 N.J. Super. 342, 347 (App.Div.1976).

The Original Tort Claim explained everything that was needed for Rutgers to investigate the accident and the subsequent treatment of Mr. Polynice.  Within 90 days of the accident,

Defendants knew what happened to Mr. Polynice thanks to the filing of the Tort Claim Notice. In the Tort Claim Notice, he alleged to have been assigned a bottom bunk, and that the bottom bunk restriction was ignored by the correctional officers. Now the truth seems that Mr. Polynice's right to the bottom bunk had been taken away by Fedai, but that is a fact Defendants could have discerned sooner than Polynice, as Defendants were the ones in control of Polynice's medical records. Defendants also knew about Polynice's injuries, including ongoing "headaches as a result of head trauma." (See Tort Claim Notice). If the Defendants had any real interest in investigating and remediating the problem, they could have interviewed Mr. Polynice and learned that the condition was not being treated appropriately as the months rolled on past the accident. If the Defendants had any real interest in Plaintiff's health, which his complaint about ongoing headaches should have triggered, Rutgers staff would have been sent to look at Plaintiff and evaluate liability.

To the extent that the information in the original Tort Claim Notice was not sufficient, a more detailed set of allegation about Mr. Polynice's accident and subsequent mistreatment was mailed to Rutgers on August 23, 2021. **Exhibits C and D**. Rutgers promptly turned the case over to an attorney. Rutgers has had six months to remediate the situation, and has rejected an offer by Mr. Polynice to settle both this case and the case involving his kidney failure. Therefore, all the purposes of the Tort Claims Act have been served, and substantial compliance should be deemed as having been met. Any protestation that Rutgers didn't have adequate pre-suit notice is laughably insincere.

## IV. IN THE ALTERNATIVE, THE PLAINTIFF HAS SHOWN EXTRAORDINARY CIRCUMSTANCES WARRANTING LEAVE TO FILE A MOTION TO FOR A LATE TORT CLAIM NOTICE.

The Tort Claims Act permits the late filing of Tort Claims Notices with leave of court. N.J.S.A. 59:8-9 states: "A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by Section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim."

In this case, the extraordinary circumstances include Plaintiff's actually filing a timely tort claim notice, the sharing of the two proposed amended Complaints with Rutgers within 90 days of accrual of the claims against them, as well as Rutgers obfuscating itself under the cloak of the Department of Corrections.  *See* § 27:16. New Jersey Tort Claims Act—Claims procedure, 35A N.J. Prac., Local Government Law § 27:16 (4th ed.) (citing Dunn v. Borough of Mountainside, 301 N.J. Super. 262, 693 A.2d 1248 (App. Div. 1997)) (noting that "when the conduct of a public agency has led to inability of a plaintiff to provide adequate notice, notwithstanding plaintiff's due diligence, the Supreme Court has permitted an amended filing beyond the jurisdictional time limits.").

**V.     THE TORT CLAIM NOTICE PROVISION HAS NO RELEVANCE TO THE DELIBERATE INDIFFERENCE CLAIM AGAINST FEDAI OR THE DISABILITY DISCRIMINATION CLAIMS AGAINS THE DEPARTMENT OF CORRECTIONS.**

One of the proposed amendments is a claim against Fedai for deliberate indifference to a serious medical need, a Section 1983 claim. The Tort Claim Notice requirement has no bearing on this claim. Additionally, the disability discrimination claims against the Department of Corrections in the proposed amendments are not subject to the Tort Claims Act.


**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's Motion to Amend should be granted in its entirety.


Respectfully Submitted,


MICHAEL POREDA

EXHIBIT
P

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| EDWIN POLYNICE, | : Civil Action No.19-16875-MCA-LDW |
| | : |
| Plaintiff, | : |
| v. | : |
| NJ DEPARTMENT OF CORRECTIONS, et al., | : |
| | : |
| Defendants. | : |

---

**BRIEF IN SUPPORT OF DEFENDANT's MOTION TO DISMISS THREE COUNTS IN PLAINTIFF'S COMPLAINT WITH PREJUDICE FOR FAILURE TO STATE A CLAIM PURSUANT TO <u>FED. R. CIV. P.</u> 12(b)(6)**

---

ANDREW J. BRUCK, ACTING
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625-0112
*Attorney for Defendant State of New Jersey Judiciary*

Chanell Branch
Deputy Attorney General
  On the Brief

## INTRODUCTION

Plaintiff seeks leave to file an amended complaint to add additional defendants and to assert violations of the New Jersey Law Against Discrimination, ("LAD") the Americans with Disabilities, ("ADA") and Rehabilitation Act ("RA"). For the reasons outlined below, Plaintiff's motion to amend requesting leave to add claims three, four, and five should be denied.

Plaintiff alleges that the DOC denied him a safe place to sleep by failing to provide him with a bottom bunk, which led to his injuries. While incarceration requires the provision for a place to sleep, it is not a program, service or activity as defined under the ADA, RA, or LAD. Because sleeping in one's cell is not a program, service, or activity, Plaintiff cannot prove claims three, four, and five. As such, Plaintiff's request to amend the complaint to add claims three, four, and five, should be denied.

## STATEMENT OF FACTS[1]

Plaintiff alleges that he was incarcerated at the Detention Unit of Northern State Prison (hereinafter "NSP") on or about September 30, 2017. See Exhibit A, Amended Complaint ¶ 24. On that date a corrections officer instructed him to utilize the top bunk

---

[1] The information in this section is drawn from Polynice's Complaint. While the Court must treat the allegations therein as true for purposes of the Defendant's Rule 12(b)(6) motion, Defendants submits that any reference made to these allegations should not be construed as admissions of fact or as a waiver of any counterclaim or defense.

of cell 104. *Id*. Although plaintiff informed the officer that he could not be on the top bunk due to his disabilities, plaintiff was told this order came from Sergeant Gibbons. *Id*. at ¶ 25; 29. Given the ranking of Sergeant Gibbons, Plaintiff alleges he felt compelled to follow the order to sleep on the top bulk. *Id*. at ¶ 30.

On October 1, 2017, at or about 12:35 p.m. when dismounting the top bunk to take his daily shower he "became extremely dizzy and fell." *Id*. at ¶ 31. While falling, he attempted to step on a stool but slipped and fell "striking his head on the toilet and his leg against the stool." *Id*. at ¶ 32. Due to the fall, Plaintiff allegedly sustained severe injuries including thirteen stitches, five staples, a dislocated shoulder, severe neck pain, and bruising on his legs. *Id*. at ¶¶ 33-34.

Plaintiff's request to amend his Complaint to add claims three, four, and five should be denied for failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

There are two working principles underlying the motion to dismiss standard, pursuant to Fed. R. Civ. P. 12(b)(6). First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Instead, legal conclusions

"must be supported by factual allegations" in order to be "entitled to the assumption of truth." *Id.* at 679.

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.; see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, *supra*, 556 U.S. at 678 (citing *Twombly*, *supra*, 550 U.S. at 556). This standard is not a probability requirement, but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, *supra*, 556 U.S. at 678.

In other words, a complaint that pleads facts "merely consistent with a defendant's liability" raises the possibility that the defendant is liable for the alleged misconduct, but "stops short of the line" of plausibility required for entitlement to relief. *Id.* When the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is

entitled to relief." *Id.* (citing Fed. R. Civ. P. 8(a)(2)) (quotations omitted).

## POINT I

**PLAINTIFF CANNOT PROVE A VIOLATION OF THE ADA, RA, AND LAD, AS A SAFE PLACE TO SLEEP IS NOT A PROGRAM, SERVICE, OR ACTIVITY AND THUS CLAIMS THREE, FOUR, AND FIVE SHOULD BE DISMISSED.**

Title II of the ADA provides that qualified disabled persons shall not "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 43 U.S.C.A. § 12132. To prove a violation of Title II of the ADA, plaintiff must show: "1) he is a qualified individual with a disability"; 2) he was either excluded from participation in, or denied the benefits of, … defendant's services, programs, or activities, or was otherwise discriminated against by defendant; and 3) such exclusion, denial of benefits, or discrimination was by reason of his disability. Id.

Title II of the ADA is an expansion of the Rehabilitation Act, which prohibits discrimination against people with disabilities in programs that receive federal financial assistance. Precedent developed under the Rehabilitation Act has

been applicable to Title II of the ADA. Similarly, precedent developed under the ADA has been applicable to Rehabilitation Act decisions. "The standards applied in state-law LAD cases are the same as those established in federal ADA cases." Chisolm v. McManimon, 97 F.Supp.2d 615, 621-22 (D.N.J. 2000), rev'd on other grounds, 275 F.3d 315 (3d Cir. 2001).

Here, Plaintiff alleges a safe place to sleep is a program, service, or activity that Defendants violated by assigning Plaintiff to the bottom bunk. While incarceration requires prisoners be provided with a place to sleep, "the provision of a place to sleep, is not a 'program' or 'activity.' Sleeping in one's cell is not a "program" or "activity." Riley v. Grainey, No. 3:12-cv-02470, 2015 WL 5693805 (M.D. PA September 24, 2015) (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996).

In Riley, the prisoner filed suit against several correctional staff, alleging violation of the ADA based on a refusal to reinstate his single cell housing restriction as an accommodation for his disability. Id. The court dismissed the complaint, finding plaintiff failed to adequately plead a denial of a specific prison service, program, or activity. Id. As is the case here, plaintiff failed to plead a denial of a specific prison service, program, or activity as the provision of a safe place to sleep is not a program service or activity.

Lastly, if Plaintiff is making ADA, RA, and LAD claims against individual defendants they should also be dismissed as they are not public entities subject to suit under the ADA or RA. See 42 U.S.C. § 12132.

## CONCLUSION

For all of the reasons set forth above, Defendants requests the court dismiss claims, three, four and five of the amended complaint.

Respectfully submitted,

ANDREW J. BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY

By: s/Chanell Branch
    Chanell Branch
    Deputy Attorney General

Date: August 26, 2021

ANDREW J. BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112
*Attorney for Defendants New Jersey Department of Corrections,*
*Northern State Prison, Administrator George Robinson*

By: Chanell Branch
     Deputy Attorney General
     (609) 376-3376
     Chanell.Branch@law.njoag.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

|  |  |
|---|---|
| EDWIN POLYNICE, | :    Civil Action No.19-16875-MCA-LDW |
|  | : |
|      Plaintiff, | : |
|        v. | : |
|  | :  **CERTIFICATION OF COUNSEL** |
| NJ DEPARTMENT OF CORRECTIONS, et al., | : |
|  | : |
|      Defendants. |  |

I, Chanell Branch, of full age hereby certify:

1.   I am a Deputy Attorney General employed by the State of New Jersey, Department of Law and Public Safety, which provides legal representation to the State of New Jersey and its entities and employees.

2.    I am assigned to the State Police, Employment, and Corrections Section of the Division of Law, which provides legal representation to the Department of Corrections and its employees.

3.    I represent Defendants in the above-captioned matter. As such, I am familiar with the facts set forth herein.

4.    I make this Certification in support of Defendants' Motion to Dismiss Claims Thee, Four and Five of Plaintiff's Motion to Amend the Complaint in this matter.

5.    Plaintiff, Edwin Polynice, was an inmate incarcerated at Northern State Prison. On or about May 26, 2021, Plaintiff filed a motion for a Second Amended complaint to correct and/or add defendants and claims to the original Complaint filed with the United States District Court, Vicinage of Newark on August 19, 2019. Plaintiff's Motion for a Seconded Amended Complaint is attached as **Exhibit A.**

6.    Per Order, I received a redlined version of the amended complaint from Plaintiff's counsel on July 10, 2021.

7.    Defendants now seek to dismiss claims three, four, and five of Plaintiff's Motion for a Second Amended Complaint for failure to state a claim upon which relief can be granted, as explained by the reasoning set forth in Defendants' supporting brief.

8.    In the supporting brief, Defendant references an unpublished opinion attached as **Exhibit B.**

I hereby certify that the foregoing statements are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

ANDREW J BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY

By: /s/ Chanell Branch
    Chanell Branch
    Deputy Attorney General

DATED: August 26, 2021

# EXHIBIT A



# WLB
## WRONKO LOEWEN BENUCCI
### —— *Attorneys at Law* ——

JAMES R. WRONKO
JAMES V. LOEWEN
MARCO M. BENUCCI

KEVIN P. HEWITT, JR.•
MICHAEL POREDA ♦

• Member of MI Bar
♦ Member of NY Bar

OF COUNSEL
GILBERT G. MILLER

website: www.newjerseylawyer.org
main email: WLB@newjerseylawyer.org

69 GROVE STREET
SOMERVILLE, NJ 08876
TEL: (908) 704-9200
FAX: (908) 704-9291

1130 U.S 202, SUITE A/7
RARITAN, NJ 08869
TEL: (908) 393-6445
FAX: (908 393-6447

**Please reply to Somerville**

July 10, 2021

**VIA ECF**
The Honorable Leda D. Wettre
U.S. District Court for the District of New Jersey
50 Walnut Street
Newark, NJ 07114

**Re: Edwin Polynice v. New Jersey Department of Corrections**
Docket No. 2:19-cv-16875-MCA-LDW

Dear Judge Wettre:

Enclosed is a Local Rule 15.1 Redlined Complaint being filed in conjunction with the pending motion to amend the Complaint.

Sincerely,

Michael Poreda

Encl.

**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EDWIN POLYNICE,<br><br>*Plaintiff*,<br><br>vs.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, ~~NORTHERN STATE PRISON~~, ADMINISTRATOR GEORGE ROBINSON, ~~SERGEANT GIBSON, S.C.O. JOHN DOE~~ SERGEANT CHRISTOPHER GIBBONS, OFFICER RYAN MOLLOY, OFFICER RAYMOND REYES, RUTGERS , UNIVERSITY – UNIVERSITY CORRECTIONAL HEALTH CARE ("UCHC"), LATIFA FEDAI, APN, UCHC JOHN DOES 1-20, DOC JOHN DOES 1-10, ,<br><br>*Defendants*. | Docket No. No. 2:19-cv-16875-MCA-LDW<br><br><u>Civil Action</u><br><br>**LOCAL RULE 15.1 AMENDED COMPLAINT** |

Edwin Polynice, by way of this Amended Complaint hereby brings the following action against the Defendants as follows:

~~NOW COMES, Plaintiff, by and through the undersigned Counsel, and hereby bring this action against the Defendants as follows:~~

## INTRODUCTORY STATEMENT

~~1.      This is a civil rights action brought pursuant to the State of New Jersey tort laws, the United States Constitution and 42 U.S.C. § 1983 seeking damages against Defendants for committing acts under color of law that deprived Plaintiff, Edwin Polynice, of his rights secured to him by the Constitution and laws of the United States of America.~~

~~2.      In particular on October 11, 2017, Defendants violated the rights of Edwin Polynice by failing to keep him in a safe and secure environment where he could be kept free from injury and harm, by failing to respect and abide by medical professionals, and by failing to adhere to adequately mandated medical regulations and custodial attention, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.~~

~~3. In addition, this action is brought by Plaintiff against Defendants under the Laws of New Jersey that relate to Prisoner rights to be kept in a safe and secure environment where he could be kept free from injury, harm, and death, by failing to provide him with adequate medical care and custodial attention, and by demonstrating deliberate indifference to Edwin Polynice's necessary medical accommodations.~~

## JURISDICTION AND VENUE

~~1.      Plaintiffs case arises under the Constitution and laws of the United States, specifically, the Eighth and Fourteenth Amendments to the United States Constitution.~~

~~2.      Plaintiff's suit is authorized by 42 U.S.C. § 1983 (allowing suit to correct constitutional violations) and 42 U.S.C. § 1988 (providing for attorney fees and litigation expense awards).~~

~~3.      This Court has jurisdiction over Plaintiffs federal constitutional claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3).~~

~~1.      This case also arises under the law of the State of New Jersey that deal with Prisoners' Rights to be kept in a safe and secure environment free from injury, harm and death, and to receive adequate medical care and custodial~~

2

~~attention.~~

~~5.       This Court has pendant jurisdiction over Plaintiffs state law claims under 28 U.S.C.~~

~~§1367.~~

1.)      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the question arises under the laws and Constitution of the United States, namely whether Defendants violated Plaintiff's rights under the U.S. Constitution and the Americans with Disabilities Act.

2.)      This Court has jurisdiction over state law claims herein presented pursuant to 28 U.S.C. § 1367 because the claims are part of a case over which the court has federal question jurisdiction.

3.)      Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because all relevant events took place in New Jersey.

## PARTIES

~~10.      Plaintiff, Edwin Polynice, brings this action on behalf of himself and in his own right.~~

~~11.      Defendant, New Jersey Department of Corrections, located in the County of Essex, is a county in the state of New Jersey and owns, operates, manages, directs and controls the New Jersey Department of Corrections. The Northern State Prison division of the New Jersey Department of Corrections is located at 168 Frontage Rd, Newark, NJ 07114 (referred at times herein as the "Northern State Prison").~~

~~12.      Defendants, at all times material hereto, were the Administrators of the Northern State Prison, located at 168 Frontage Rd, Newark, NJ 07114. To the extent the Court deems appropriate, Administrators of the Northern State Prison for the New Jersey Department of Corrections and Defendants that were active participants in the events leading to Plaintiff's injuries, such as S.C.O. John Doe, should be held liable in their individual capacity.~~

~~13.      Defendant, Northern State Prison, is a law enforcement entity in the state of New Jersey which operates, manages, directs and controls the Northern State Prison facility within the County of Essex.~~

14. ~~Defendant, New Jersey Department of Corrections, is a law enforcement entity in the state of New Jersey which operates, manages, directs and controls the Northern State Prison facility within the County of Essex.~~

15. ~~Defendant, S.C.O. John Doe was at all times material hereto, employed by the Northern State Prison located at 168 Frontage Rd, Newark, NJ 07114. Defendant, S.C.O. John Doe is sued in his individual capacity.~~

16. ~~Defendant, Sergeant Gibson, was at all times material hereto, employed by the Northern State Prison located at 168 Frontage Rd, Newark, NJ 07114. Defendant, Sergeant Gibson is sued in his individual capacity.~~

17. ~~The Health Services Unit for the Department of Corrections for the State of New Jersey, with corporate offices located at 168 Frontage Rd, Newark, NJ 07114, was contractually engaged with the Northern State Prison and the New Jersey Department of Corrections to provide health care services for inmates at the Northern State Prison.~~

18. ~~At all times relevant hereto, Defendant, John Doe Personnel and/or Corrections Officers and/or Administrators, may contain fictitious names representing unnamed corrections officers and/or other individuals, employed with the Northern State Prison facility located at 168 Frontage Rd, Newark, NJ 07114, who were acting under the supervision of the New Jersey Department of Corrections, the Northern State Prison and Administrators of both agencies. These Defendants are sued in their individual capacities.~~

19. ~~All Defendants, for one or more entities, which were contracted to provide medical and/or psychiatric services, counseling, security and custodial care to inmates under the custody of the New Jersey Department of Corrections.~~

4.)  <u>Plaintiff Edwin Polynice is a resident of New Jersey whose date of birth is November 15, 1978.  He was in the custody of the New Jersey Department of Corrections from June 2012 until August 2020.  His SBI number was 864138C.  He last resided at South Woods State Prison, 215 South Burlington Road, Bridgeton, NJ 08302..</u>

5.)  <u>Defendant New Jersey Department of Corrections is a New Jersey State agency headquartered at Whittlesey Road, Trenton, NJ 08625.</u>

6.)  <u>Newly added Defendant Rutgers University – University Correctional Health ("UCHC") care is a corporate entity headquartered at 7 College Avenue, New Brunswick, NJ 08901. UCHC is the medical contractor that provides medical services to inmates within the custody of the New Jersey Department of Corrections.</u>

7.)   Newly added Defendant Latifa Fedai, APN is a nurse practitioner at Northern State Prison.

8.)   Defendant George Robinson is currently the Administrator of the Adult Diagnostic and Treatment Center, a prison facility operated by the New Jersey Department of Corrections.  At the times relevant to this complaint, he was the Administrator of Northern State Prison, P.O. Box, 2300, 168 Frontage Road, Newark, NJ 07114.  He is an employee of the New Jersey Department of Corrections.

9.)   Defendant Sergeant Christopher Gibbons, previously misplead as "Sergeant Gibson" is the correctional sergeant, who on September 30, 2017, on information and belief, is that name of the correctional sergeant who, on September 30, 2017, was responsible for overseeing the inmates living in Delta Unit 1-E at Northern State Prison.  Sergeant Gibbons is an employee of Defendant New Jersey Department of Corrections.

10.)  Newly added Defendant Ryan Molloy was a NJ DOC correctional officer employed at Northern State Prison on September 30, 2017.

11.)  Newly added Defendant Raymond Reyes was an NJ DOC correctional officer employed at Northern State Prison on September 30, 2017.

12.)  Newly added Defendants UCHC John Does 1-20 are employees of UCHC, including nurses, doctors, and supervisors.

13.)  Newly added Defendants DOC John Does 1-20 are employees and supervisors of the DOC.

## ~~FACTUAL ALLEGATIONS~~

~~20.  Plaintiff, Edwin Polynice, was incarcerated at the Detention Unit of Northern State Prison on or about September 30, 2017.~~

~~21.  At said date, S.C.O. John Doe instructed Plaintiff, Edwin Polynice, to move into cell 104, on the *top* bunk.~~

~~22.  Plaintiff, Edwin Polynice, expressed to S.C.O. John Doe that due to mandated medical restrictions and persistent medical issues, he was only permitted to be placed on the bottom bunk. Mr. Polynice further advised that this mandatory medical accommodation was for the remainder of his incarceration.~~

~~23.  Following his explanation, Mr. Polynice was ordered to utilize the top bunk, and~~

5

S.C.O. John Doe reiterated that this order came from Sergeant Gibson.

24. Given the gentlemen listed in ranking order, Plaintiff, Edwin Polynice was compelled to comply with said order.

25. On or about, October 1, 2017, at approximately 12:35 p.m., while attempting to dismount from the top bunk, to take his daily shower, Plaintiff, Edwin Polynice, became extremely dizzy and fell.

26. During this fall, Plaintiff, Edwin Polynice, attempted to step down on the stool, but slipped. He fell, striking his head on the toilet and his leg against the stool.

27. Post-fall, Mr. Polynice sustained severe injuries leading to thirteen stitches and five staples.

28. Mr. Polynice also suffered from a dislocated right shoulder, severe neck pain, and bruising on his legs.

29. Plaintiff, Edwin Polynice, required an extended stay in the prison infirmary for ten days due to these injuries.

30. Throughout his time in the infirmary, he experienced debilitating headaches with the pain extending throughout his entire head, chronic pain in his facial area, ongoing dizziness, and a bruised leg.

31. Additionally, Plaintiff, Edwin Polynice, continues to experience neck pain and lower back from, stemming from this incident, requiring ongoing physical therapy to treat ms neck and his back.

32. Upon information and belief, Defendants and representatives and/or employees of Defendant New Jersey Department of Corrections at all times material hereto, failed to properly evaluate Mr. Polynice's medical needs and restrictions, while simultaneously ignoring previously mandated medical advice.

33. Furthermore, Mr. Polynice was ordered to be exposed to harmful and hazardous conditions. Therefore, they failed to do their duty to maintain a safe and suitable environment, keeping Mr. Polynice safe from injury and harm.

34. In the events described above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Mr. Polynice of his right and privileges secured by the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

35. The failures of Defendants to properly protect and carry out medical instructions for Mr.

Polynice's imminent risk for a head, neck, and back injuries demonstrated a deliberate

indifference to and a conscious disregard for medical needs and requirements and

the overall safety of Mr. Polynice.

36.  In the events described above, Defendants acted contrary to law, and intentionally, willfully,

wantonly, and unreasonably deprived Mr. Polynice of his right and privileges secured

by the United States Constitution and 42 U.S.C. § 1983.

37.  The FAILURES of Defendants to properly adhere to Mr. Polynice's

medically mandated restrictions, demonstrated a deliberate  indifference to

and a conscious disregard for the medical requirements and the overall

safety of Mr. Polynice.


## FACTS

14.  Plaintiff is known to have both hypertension, diabetes, diabetic neuropathy in his feet as well as a history of a torn Achilles tendon.  These disabilities substantially limit his activities of daily living, to wit his ability to climb and jump.

15.  These are disabilities within the meaning of the New Jersey Law Against Discrimination, the Rehabilitation Act, and the Americans with Disabilities Act.

16.  Due to Plaintiff's disabilities, he was given a permanent bottom bunk restriction in 2013 when he arrived at South Woods State Prison.

17.  Plaintiff often experienced dizziness from fluctuations in blood sugar due to the  diabetes.  The bottom bunk restriction served to protect him during dizzy spells.

18.  In January 2017, he was transferred to Northern State Prison, after having spent several months in New Jersey State Prison.

19.  Plaintiff requested the continuation of his standing bottom bunk order.

20.    This was denied without genuine cause by Latifa Fedai, APN on January 24, 2017. This was supposedly based on Polynice "not meeting the requirements," however she never articulated the requirements to him, and future acts by UCH C employees would prove that this was a sadistic and deliberate lie.

21.    Plaintiff formally grieved the denial of the bottom bunk through the kiosk system Northern State Prison, but his grievance was either denied or not responded to.

22.    Plaintiff was nevertheless able to secure a bottom bunk informally.

23.    On September 30, 2017, Plaintiff was living in Delta Unit 1-E at Northern State Prison assigned to a bottom bunk.

24.    For unknown reasons, on September 30, 2020, Plaintiff was told by a corrections officer, either Molloy or Reyes, to move out of his bottom bunk and move to cell 104 and sleep in a top bunk.

25.    Polynice told Molloy or Reyes that he needed to be on the bottom bunk due to his disabilities.

26.    When Molloy or Reyes protested that Polynice was no longer entitled to the accommodation, Polynice told him that the accommodation was for the remainder of his incarceration.

27.    Plaintiff's right to a safe place to sleep is clearly established law. N.J.A.C. 10A:31-3.6 states: "A qualified inmate with a disability shall be housed in a manner that provides his or her safety, security and accessibility to facility programs or activities. Rooms, sleeping units, or housing units shall be designed for use by qualified inmates with disabilities."

28.    Following his explanation, Polynice was ordered to utilize the top bunk, in clear violation of DOC regulation, state law, and federal law.

29.    Molloy or Reyes reiterated that this order had come from Sergeant Gibbons.

30.    Polynice was compelled to follow the order.

31.    On October 1, 2017, at approximately 12:35pm, while attempting to dismount the top bunk to take a daily shower, Plaintiff Edwin Polynice became extremely dizzy from a drop in his blood sugar and fell.

32.    During this fall, Plaintiff, Edwin Polynice attempted to land on a stool, but slipped. He fell, striking his head

on the toilet and his leg against the stool.

33.    Post-fall, Mr. Polynice sustained severe injuries leading to thirteen stitches and five staples.

34.    Mr. Polynice also suffered a dislocated shoulder, severe neck pain, and bruising on his legs.

35.    Plaintiff, Edwin Polynice, required an extended stay in the prison infirmary for ten days due to these injuries.

36.    Throughout his time in the infirmary, he experienced debilitating headaches with the pain extending throughout his entire head, chronic pain in his facial area, ongoing dizziness, and a bruised leg.

37.    On October 20, 2017, Dr. Sandra Connolly, recognizing the obvious misdeed of Fair ordered Polynice back to a bottom bunk restriction.

38.    Plaintiff, Edwin Polynice continued to experience constant neck pain, headaches, and lower back pain while he remained incarcerated.

39.    Despite the ongoing pain, Plaintiff was never given any treatment or diagnostic other than Tylenol.

40.    Now released from prison, Plaintiff will be forced to spend money, in excess of $3500 to treat his injuries.

41.    Additionally, Plaintiff has suffered disfigurement, in the form of significant scarring from his fall.

42.    He has also permanently lost full mobility as a result of the fall.


**STATEMENT ON COMPLIANCE WITH NOTICE OF TORT CLAIM RULES**

43.    On or about December 19, 2017, Plaintiff, or his then-counsel, Jean Ross, filed a Notice of Tort Claim seeking $100,000 for the injuries sustained in the fall.

## FIRST CLAIM FOR RELIEF
## ~~FEDERAL CONSTITUTIONAL VIOLATIONS BY ALL DEFENDANTS~~
## 42 U.S.C. § 1983 – EIGHTH AMENDMENT – DELIBERATE DIFFERNECE TO INMATE SAFETY – SUPERVISORY LIABILITY AGAINST GEORGE ROBINSON, SGT. GIBBONS, OFFICER RYAN MOLLOY, OFFICER RAYMOND REYES, LATIFA FEDAI, DOC JOHN DOES 1-20, UCHC JOHN DOES 1-20.

44.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

45.     ~~Defendant, Northern State Prison, by and through their Administrator George Robinson and other policymakers, developed policies, procedures and/or customs which caused the deprivation of Plaintiff, Edwin Polynice's constitutional rights.~~

46.     Fedai knew that Plaintiff had health conditi9ons that rendered the top bunk dangerous. She nevertheless denied him the request without genuine reason, rendering the decision deliberately indifferent.

47.     George Robinson and DOC John Does 1-20, who were policymakers, developed policies, procedures and/or customs which caused the deprivation of Plaintiff, Edwin Polynice's constitutional rights.

48.     Said policies were inherently deficient, or inappropriate as formulated, as to the adherence of mandated medical care provided to an inmate that presented with documented medical issues.

49.     Defendant New Jersey Department of Corrections, ~~Northern State Prison,~~ by and through Defendant Administrator George Robinson and DOC John Does 1-20, who are other policymakers, ~~negligently,~~ recklessly, and/or intentionally and/or with deliberate indifference to inmate safety:

        a.      failed to properly train and supervise Defendant Sergeant Gibson and Defendant S.C.O. John Doe with regard to adequately assessing, monitoring and providing necessary and reasonable accommodations for inmates with medical issues, including but not limited to inmates with documented medical restrictions and

     b.     failed to properly train and supervise Defendant Sergeant Gibson and Defendant S.C.O. John Doe, or other prison staff to maintain a safe and suitable environment, and to keep inmates safe from injury or serious harm.

     c.     maintained policies, procedures and/or customs that were deliberately indifferent to the constitutional rights of inmates to be adequately screened for medical issues, to provide necessary and reasonable accommodations for inmates with medical issues; and to be kept safe from injury or serious harm;

     d.     failed to enforce the contractual obligations of ~~the Medical Unit~~ <u>UCHC</u> to monitor and treat inmates with medical issues, including but not limited to inmates with documented medical restrictions.

     e.     with full knowledge, allowed institutional policies and procedures regarding intake, medical screening, custodial watch and medical treatment to be ignored and violated with reckless abandon; and

     f.     failed to provide adequate and needed health care for inmates at the Detention Unit of the Northern State Prison.

50.     The actions and/or failures to act by Defendant, ~~Northern State Prison~~ <u>New Jersey Department of Corrections</u>, Defendant Administrator George Robinson, Defendant Sergeant Gibson and Defendant S.C.O. John Doe, as illustrated above, amounted to a deliberate indifference of Mr. Polynice's constitutional rights and proximately caused his injuries.

51.     The violation of Mr. Polynice's rights under the United States Constitution was the proximate cause of damages to Plaintiff, thereby entitling Plaintiff to compensatory damages from Defendants, ~~Northern State Prison,~~ Administrator George Robinson, Sergeant Gibson, and S.C.O. John Doe in an amount exceeding $1,000,000.00.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## SECOND CLAIM FOR RELIEF

~~LIABILITY OF DEFENDANTS NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON, ADMINISTRATORS GEORGE ROBINSON, SERGEANT GIBSON, AND S.C.O. JOHN DOE FOR FEDERAL CONSTITUTIONAL VIOLATIONS~~

## NEGLIGENCE AGAINST DEPARTMENT OF CORRECTIONS AND ALL DOC DEFENDANTS

~~44.     The allegations set forth in the proceeding paragraphs are incorporated by reference as if fully set forth herein.~~

~~45.     At all times relevant hereto, Defendants were acting under color of state law as employees or agents of the Northern State Prison and/or Health Services Unit of New Jersey, and/or if not employees or agents, by direction of and under the supervision and control of New Jersey Department of Corrections, the Detention Unit of Northern State Prison and/or Health Services Unit of New Jersey.~~

~~46.     The actions of Defendants as set forth above violated the late Mr. Polynice's rights under the Eighth and Fourteenth Amendments of the United States Constitution to be incarcerated in a safe and suitable environment, and to be safe from injury and harm while incarcerated at the Detention Unit of Northern State Prison.~~

~~47.     The violations of Mr. Polynice's rights under the United States Constitution was the severe and continuous injuries to Edwin Polynice, thereby entitling Plaintiff to compensatory damages from Defendants in their individual capacities.~~

~~48.     The actions of Defendants in their individual capacities were intentional, malicious, willful, wanton, and/or in reckless disregard of Plaintiff's federally protected rights, therefore entitling Plaintiff to an award of punitive damages.~~

~~49.     Plaintiff is entitled to recover damages against Defendants the individual capacity in an amount greater than $1,000,000.00.~~

~~50.     Plaintiff is entitled to recover reasonable attorney's fees and the costs and expenses of this action.~~

52.     If not reckless, intentional, or deliberately indifferent to inmate safety, the decision to place Plaintiff in the top bunk was negligent.

53.     Bur for the exercise of due care to listen to Plaintiff's truthful pleading that he was bottom-bunk restricted due to his health issues, Plaintiff would not have suffered permanent injuries.

54.     Had Defendants exercised due care, they would have placed Plaintiff in a bottom bunk, and he would not have fallen even if he had an attack of low blood sugar.

55.     The failure to exercise due care proximately caused Plaintiff's permanent injuries.

56.     The failure to exercise due care was the fault of Officer Molloy, Officer Reyes, Sergeant Gibson, John Does 1-20, and/or George Robinson.

57.     The Department of Corrections is liable on the theory of respondeat superior for the negligence of its employees.


**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.


### THIRD CLAIM FOR RELIEF

~~**SUPERVISORY LIABILITY OF DEFENDANTS ADMINISTRATOR GEORGE ROBINSON, AND SERGEANT GIBSON UNDER 42 U.S.C. § 1983**~~

### NEW JEREY LAW AGAINST DISCRIMINATION – FAILURE TO ACCOMMODATE A DISABILITY AGAINST DOC DEFENDANTS

~~51.     The allegations set forth in the preceding paragraphs are incorporated by reference as is fully set forth herein.~~

~~52.     At all times relevant hereto, Defendant Administrator George Robinson, and Defendant Sergeant Gibson served as Administrators of the Northern State Prison, in Newark, New Jersey.~~

~~53.     Plaintiffs are informed, believe and therefore allege that on October 1, 2017, Defendant Administrator George Robinson, and Defendant Sergeant Gibson were aware of, should have been aware of, and/or had actual knowledge of the pattern and culture of unconstitutional behavior and indifference, including failure to properly s 54.As such, Defendant Administrator George Robinson, and Defendant Sergeant Gibson not only directed, encouraged, tolerated, acquiesced to this behavior, but were deliberately indifferent to the likelihood that their staff, employees and/or cmrections officers would fail~~

13

~~to properly screen inmates for medical issues, fail to adequately monitor inmates, fail to have inmates provided necessary and reasonable medical accommodations, fail to treat inmates medically and fail to protect inmates from injury or harm at the Northern State Prison.~~

~~55.    The deliberate indifference of Defendant Administrator George Robinson, and Defendant Sergeant Gibson as to the need for training and supervision of their staff, employees and/or detention officers was a proximate cause of the constitutional violations suffered by the Plaintiff, Edwin Polynice.~~

~~56.    The violation of Mr. Polynice's rights under the United States Constitution was a proximate cause of damages and harm to Plaintiff, thereby entitling Plaintiff to compensatory damages from Defendant Administrator George Robinson, and Defendant Sergeant Gibson in an amount exceeding $1,000,000.00.creen inmates for medical injuries, or other mental health problems, failure to adequately monitor and guard inmates, failure to have inmates properly treated medically, failure to have inmates provided necessary and reasonable medical accommodations, and failure to protect inmates from injury or harm whether self-inflicted or by other inmates, staff, employees and/or corrections officers at the Northern State Prison.~~

58.    Plaintiff was a person with a disability, namely his diabetes and his Achilles tendon tear.

59.    The New Jersey Law Against Discrimination entitles Plaintiff to reasonable accommodations that would give him a safe place to sleep.

60.    Department of Corrections Defendants denied Plaintiff access to a bottom bunk.

61.    This denial caused Plaintiff permanent injuries.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## FOURTH CLAIM FOR RELIEF

### ~~VIOLATION OF CIVIL RIGHTS BY DEFENDANTS NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON, ADMINISTRATOR GEORGE ROBINSON, SERGEANT GIBSON, AND S.C.O. JOHN DOE~~

### AMERICANS WITH DISABILITIES ACT AGAINST DOC DEFENDANTS

~~57. The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.~~

~~58. The Defendants were acting under color of law when they failed to properly provide medical accommodations for Plaintiff, Edwin Polynice, for medical issues, failed to adequately monitor Mr. Polynice while incarcerated at Northern State Prison, and failed to protect Mr. Polynice from injury and harm.~~

~~59. The Defendants failed to adequately train or otherwise have and maintain or enforce effective policies regarding the screening and care of inmates with medical restrictions, the adequate monitoring of inmates, and the protections of inmates from injury or harm.~~

~~60. The Defendants, New Jersey Department of Corrections, Northern State Prison, Administrator George Robinson, Sergeant Gibson, and S.C.O. John Doe were deliberately indifferent to the likelihood that Northern State Prison's staff, employees and/or Detention Officers, would fails to properly screen inmates for medical issues, fail to adequately monitor inmates, fail to properly provide necessary medical accommodations, and fail to protect inmates from injury or harm at the Detention Unit of Northern State Prison.~~

62.) Plaintiff was a qualified person with a disability, namely his diabetes and his Achilles tendon tear.

63.) Once of the public programs, services, or activities of the prison is the provision of safe places to sleep.

64.) Plaintiff's disabilities could have been reasonably accommodated by the provision of a bottom bunk. This would have provided him with a safe place to sleep.

65.) Department of Corrections Defendants denied Plaintiff access to the bottom bunk.

66.) This denial caused Plaintiff permanent injuries.

## FIFTH CLAIM FOR RELIEF
## ~~NEGLIGENCE~~
## ~~DEFENDANTS NEW JERSEY DEPARTMENT OF CORRECTIONS,~~
## ~~NORTHERN STATE PRISON, ADMINISTRATORS GEORGE ROBINSON,~~
## ~~SERGEANT GIBSON, AND S.C.O. JOHN DOE~~

## REHABILITATION ACT

~~61.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.~~

~~62.     Defendants owed a duty of reasonable care to Plaintiff, Edwin Polynice, and to others at the Northern State Prison, to properly screen inmates for medical issues, to properly and adequately monitor inmates, to treat inmates medically when indicated, to provide medical accommodations when necessary, and to protect inmates from injury or harm at the Northern State Prison.~~

~~63.     The Defendants failed to use the requisite standard of care pursuant to sound policies and procedures and/or knowingly violated established policies and procedures with reckless abandon.~~

~~64.     The actions and/or failures to act by the Defendants amounted to a breach of said duty of care to Mr. Polynice.~~

~~65.     As a direct and proximate result of Defendants' negligence, Mr. Polynice was seriously injured while in the custody of the Nolthem State Prison on October 1, 2017.~~

~~66.     Plaintiff is entitled to an award of compensatory damages against the above-referenced Defendants in an amount which exceeds $1,000,000.00.~~

67.   <u>Like the Americans with Disabilities Act, the Rehabilitation Act also requires prisons to provide inmates with disabilities reasonable accommodations so that they can access all the programs, services, and activities of the prison.</u>

68.   <u>The substantive standards for liability under the Rehabilitation Act are the same as under the Americans with Disabilities Act.</u>

69.   <u>The DOC Defendants are liable to Plaintiff under the Rehabilitation Act based upon the same facts recited in the Fourth Claim for Relief above.</u>

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

**SIXTH CLAIM FOR RELIEF**
**NEGLIGENT HIRING, TRAINING AND SUPERVISION AGAINST NEW JERSEY**
**DEPARTMENT OF CORRECTIONS**

70.     DOC John Does 1-10 and/or Sergeant Gibson had a duty to train SCO John Doe and/or Sergeant Gibson in the proper handling of prisoners with disabilities that might not be visible.

71.     DOC John Does 1-10 and/or Sergeant Gibson failed to train SCO John Doe and/or Sergeant Gibson in the proper handling of prisoners with disabilities that might not be visible.

72.     Bur for this failure to train, Plaintiff would not have sustain his permanent injuries.

73.     DOC John Does 1-10 and/or Sergeant Gibson had a duty to supervise the transfer of Plaintiff from his bottom bunk to cell 104.

74.     DOC John Does 1-10 and/or Sergeant Gibson failed to properly supervise the transfer of Plaintiff from his bottom bunk to cell 104.

75.     Had the Defendants properly supervised Plaintiff's cell transfer he would have been assigned to a bottom bunk or else left in his original cell.

76.     But for the negligent failure to supervise Plaintiff's transfer out of his original cell, Plaintiff would not have sustained his permanent injuries.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.



MICHAEL POREDA, ESQ.
*Attorney for Plaintiff*

Date: July 10, 2021

17

### NOTICE OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that Michael Poreda, Esq. is hereby designated as Trial Counsel in the above-captioned matter.

_____

_____
Michael Poreda, Esq.
*Attorney for Plaintiff*
Date: July 10, 2021

### CERTIFICATION OF NO OTHER ACTION

Pursuant to Rule 4:5-1, it is hereby certified that to the best of my knowledge and belief, there are no other pending actions or proceedings involving the matter in controversy, none are contemplated, and I do not presently know the identity of any other party who should be joined.

_____

_____
Michael Poreda, Esq.
*Attorney for Plaintiff*
Date: July 10, 2021

18

# EXHIBIT B

2015 WL 5693805
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Nathan RILEY, Plaintiff,

v.

David GRAINEY, et al., Defendants.

NO. 3:12–CV–02470
|
Signed 09/24/2015

**Attorneys and Law Firms**

Nathan Riley, Waynesburg, PA, pro se.

Maria G. Macus, Chief Counsel's Office, Mechanicsburg, PA, John J. Hatzell, Jr., Philadelphia, PA, for Defendants.

### *ORDER*

A. Richard Caputo, United States District Judge

**\*1 NOW,** this *24th* day of September, 2015, upon review of the Report and Recommendation of Magistrate Judge Mehalchick (Doc. 58) for plain error or manifest injustice, **IT IS HEREBY ORDERED** that:

(1) The Report and Recommendation (Doc. 58) is **ADOPTED in its entirety.**

(2) Defendants' Motion to Dismiss (Doc. 41) is **GRANTED.**

(3) Plaintiff's Motion for Leave to Obtain Discovery Material (Doc. 57) is **DENIED.**

(4) The Clerk of Court is directed to mark the case as **CLOSED.**

### *REPORT AND RECOMMENDATION*

KAROLINE MEHALCHICK, United States Magistrate Judge

This matter comes before the Court by the District Court's Order dated July 9, 2015, rejecting the Court's Report and Recommendation and directing the Court to reconsider Defendants' motion to dismiss in light of Plaintiffs subsequent filing of a brief in opposition (Doc. 55) to Defendants' motion to dismiss. Having reviewed the motion papers in accordance with the District Court's Order, it is recommended that Defendants' motion (Doc. 41), be granted. [1]

### I. *FACTUAL BACKGROUND*

This is a *pro se* prisoner civil rights action, initiated upon the filing of the original complaint in this matter on December 11, 2012, to redress injuries allegedly sustained by Plaintiff Nathan Riley as a result of denying Riley a "Z–Code" housing restriction in violation of the First, Eighth, and Fourteenth Amendments, as well as the Americans with Disabilities Act ("ADA"). (Doc. 1).

On May 20, 2014, the Court dismissed Plaintiff's complaint, but permitted Riley to amend his complaint only with respect to his ADA claims against Defendants Palya, Balestrieri, Folino, and Varner in their official capacities. (Doc. 35). Riley alleges in his amended complaint that on December 16, 2010, he was released from administrative segregation at Greene State Correctional Institution into the general population and was placed in a double cell, despite his objections that he be housed in a single cell. He alleges that before being placed into administrative segregation, he was provided with a Z-code, single-cell housing designation. Specifically, he claims that he suffers from "pre-existing physical and psychological disability," caused by an unstable upbringing, which has resulted in altercations with cellmates due to his inability to "think and interact with people" and his "increasing agitation and paranoia." (Doc. 40, at 2). As such, he alleges that Defendants violated the ADA by refusing to reinstate his Z-code, single-cell housing restriction as an accommodation for his post-traumatic stress disorder and anti-social personality disorder.

On September 10, 2014, Defendants filed a motion to dismiss (Doc. 41), together with a brief in support of their motion (Doc. 42). On March 9, 2015, this Court issued an Order directing Riley to file a brief in opposition to Defendants' motion to dismiss by April 9, 2015. (Doc. 51). Riley did not file a brief in opposition; thus, the Court deemed Defendants' motion to dismiss as unopposed and entered a Report and Recommendation granting Defendants' motion to dismiss. (Doc. 52). Riley subsequently filed an objection to this Court's Report and Recommendation, whereby he submitted that he had timely placed a brief in opposition to Defendants' motion to dismiss to prison officials to be placed in the mail for processing. (Doc. 53). On the basis of that representation, the District Court granted Riley an additional thirty (30) days to re-file his brief in opposition. (Doc. 54). A brief in opposition was filed on July 1, 2015. (Doc. 55). Having been fully briefed, this matter is now ripe for disposition.

II. *LEGAL STANDARD*

 **\*2** Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The United States Court of Appeals for the Third Circuit, discussing the evolving standards governing pleading practice in federal court, has stated in relevant part:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips [ v. County of Alleg hen y,* 515 F.3d 224 (3d Cir.2008) ]and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1955, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside,*578 F.3d 203, 209–10 (3d Cir.2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). A court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555. In *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Additionally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in

Case 2:19-cv-16875-CALW-CLW Document 63-4 Filed 02/26/21 Page 221 of 330 PageID: 824

Riley v. Grainey, Not Reported in Fed. Supp. (2015)

support of his claim which would entitle him to relief. *Haines v. Keener*, 404 U.S. 519, 520–21 (1972). In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

III. *DISCUSSION*[2]

**\*3** To establish a violation of Title II of the Americans with Disabilities Act, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participating in, or denied the benefit of, a public entity's services, programs, or activities; and that (3) such exclusion, denial of benefits, or discrimination was by reason of disability. *See* 42 U.S.C. § 12132; *Bowers v. National Collegiate A thletic Ass'n,* 475 F.3d 524, 550 (3d Cir.2007).

Here, Riley has arguably alleged that his post-traumatic stress disorder substantially limits his ability to engage in a major life activity; namely, to think and interact with others. *See Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 307 (3d Cir.1999) ("We accept that thinking is a major life activity."). However, Riley has failed to adequately plead that he was denied the benefit of a specific prison service, program, or activity as a result of Defendant's failure to accommodate him with a single cell. While Riley argues in his brief in opposition that a "Z code is a 'service,' 'program,' or 'activity' as contemplated by the ADA," and references the Z Program Code Policy, it nonetheless appears that his only criticism is that he was not given the medical accommodation he requested—a single cell. *See Iseley v. Beard,* 200 Fed. Appx. 137, 142 (3d Cir.2006) (finding that plaintiff had not claimed that he was excluded from any program on the basis of his disability but rather alleged "that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions.")(*citing Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996) (" [I]ncarceration, which requires the provision of a place to sleep, is not a 'program' or 'activity.' Sleeping in one's cell is not a 'program' or 'activity' ")). Indeed, Riley has merely challenged a prison's medical decision that he does not require a single cell, which does not implicate the ADA. *Thomas v. Pa. Dep't of Corr.,* 615 F.Supp.2d 411, 429 (W.D.Pa.2009) (holding that plaintiffs requests for a handicap cell that were denied based on a medical determination that they were not warranted did not support discriminatory treatment in violation of Title II of the ADA); *Redding v. Hanlon,* No. 06–4575 (DWF/RLE), 2008 WL 762078, at *16 (D.Minn. March 19, 2008) (dismissing inmate's ADA claim where the plaintiff alleged that the defendants had denied him the single cell accommodation ordered by his doctor, not that he had been denied access to any service or program).

Nevertheless, even if Riley has sufficiently alleged denial of a service, program, or activity, in refusing to reinstate Riley's Z code housing status, Riley has failed to allege that he was prevented from participating in or benefitting from such a service, program, or activity *on the basis* of his disability. While Riley's amended complaint contains the assertion that he "is being discriminated against by [D]efendants Palya, Balestrieri, Folino and Varner, as a result of [his] disability," it does not contain facts which would support an inference that he was denied a single cell *because of* his disability. In fact, the request slip attached as an exhibit to Plaintiffs complaint actually belies the argument that he was denied a single cell due to his disability, as the exhibit notes that Riley received a Z code status based on his age and that the Z code status was removed in 1997, prior to his transfer to SCI–Greene. (Doc. 1, at 20).Consequently, "[a]n inmate's failure to allege facts showing that the exclusion or denial of benefits was 'by reason of his disability' warrants dismissal upon a defendant's Rule 12(b)(6) motion." *Desalis v. Pennsylvania Dep't of Corr.,* No. CIV.A. 12–611, 2013 WL 2458346, at *2 (E.D. Pa. June 6, 2013). Accordingly, it is recommended that Riley's ADA claim against Defendants Palya, Balestrieri, Folino and Varner be dismissed for failure to state a claim.

IV. *RECOMMENDATION*

**\*4** Based on the foregoing, it is recommended that:

1. Defendants' motion to dismiss (Doc. 41) be **GRANTED** and the amended complaint (Doc. 40) be **DISMISSED** for failure to state a claim;

2. It is further recommended that Plaintiff's motion for leave to obtain discovery material (Doc. 57), filed on July 21, 2015, be **DENIED AS MOOT;**

3. The Clerk be directed to **CLOSE** this case.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 5693805

## Footnotes

1.  Following the District Court's rejection of the undersigned Magistrate Judge's Report and Recommendation, Plaintiff filed a motion for leave to obtain discovery material. (Doc. 57). However, as the recommendation to grant Defendants' motion to dismiss remains unchanged, it will be further recommended that Plaintiffs motion (Doc. 57) be denied as moot.

2.  Defendants also seek dismissal of Riley's claims on the basis that Defendants Folino and Varner lack the requisite personal involvement to sustain a § 1983 action. However, this Court need not address this argument in order to resolve Defendants' motion to dismiss.

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT Q



JAMES R. WRONKO
JAMES V. LOEWEN
MARCO M. BENUCCI

KEVIN P. HEWITT, JR.•
MICHAEL POREDA ♦

• Member of MI Bar
♦ Member of NY Bar

OF COUNSEL
GILBERT G. MILLER

website: www.newjerseylawyer.org
main email: WLB@newjerseylawyer.org

69 GROVE STREET
SOMERVILLE, NJ 08876
TEL: (908) 704-9200
FAX: (908) 704-9291

1130 U.S 202, SUITE A/7
RARITAN, NJ 08869
TEL: (908) 393-6445
FAX: (908 393-6447

**Please reply to Somerville**

September 7, 2021

The Honorable Leda Wettre
United States District Court for the District of New Jersey
50 Walnut Street
Newark, NJ 07102

**RE: POLYNICE v. NEW JERSEY DEP'T OF CORRECTIONS**
Docket No. 2:19-cv-16875-MCA-LDW

Dear Judge Wettre:

I represent Plaintiff in this case. Please accept this letter in reply to the Department of Corrections' opposition to Plaintiff's motion to amend the Complaint.

The Department of Corrections's only argument is that non-binding case law exists for the proposition that safe sleeping accommodations are not a "service, program, or activity" within the meaning of the ADA. Nothing could be further from the truth. The case that the Department of Corrections cites for this proposition, <u>Riley v. Grainey</u>, No. 3:12-CV-02470, 2015 WL 5693805, at *3 (M.D. Pa. Sept. 24, 2015), plainly does not reach the conclusion that a safe sleeping space is not a "service, program, or activity." The <u>Rainey</u> court stated: "Nevertheless*, **_even if_** Riley has sufficiently alleged denial of a service, program, or activity, in refusing to reinstate Riley's Z code housing status, Riley has failed to allege that he was prevented from

1

participating in or benefitting from such a service, program, or activity on the basis of his disability." Riley v. Grainey, No. 3:12-CV-02470, 2015 WL 5693805, at *3 (M.D. Pa. Sept. 24, 2015) (emphasis added). In short, the court reaches no conclusion about whether a single cell qualified as a "service, program, or activity."

If the Rainey court did consider whether a cell counted as a "service, program, or activity," it only could have concluded that it does. The Third Circuit has held that virtually all aspects of prison life are "services, programs, and activities." In Furgess v. Pennsylvania Department of Corrections, 933 F.3d 285, 290, the Court stated:

> Looking first to the statutory language, Section 504 of the RA defines a "program or activity" quite broadly to include "*all* of the operations of" a state instrumentality. 29 U.S.C. § 794(b). We have confirmed these terms' broad meaning, calling them "all-encompassing." Yeskey v. Com. of Pa. Dep't of Corr., 118 F.3d 168, 170 (3d Cir. 1997). The ADA does not define "services, programs, or activities," but both Congress and this Court have recognized that Title II provides at least the same degree of protection as Section 504. Thus, the phrase "service, program, or activity" under Title II, like "program or activity" under Section 504, is "extremely broad in scope and includes anything a public entity does." Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs., 796 F.3d 293, 301 (3d Cir. 2015).

Furgess v. Pennsylvania Dep't of Corr., 933 F.3d 285, 289 (3d Cir. 2019).

Surely, the provision of a safe place to sleep falls within the extremely broad scope of the ADA's "service, program, or activity" language. Sleep is a major life activity, and in an environment where virtually every aspect of life is controlled by the state, the provision of a bed that is appropriate to the level of ability of the prisoner qualifies as a "service, program, or activity."

Respectfully Submitted,

MICHAEL POREDA

# EXHIBIT

# R

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**Chambers of**
## Leda Dunn Wettre
**United States Magistrate Judge**

**Martin Luther King Federal Building
& U.S. Courthouse
50 Walnut Street
Newark, NJ 07101
(973) 645-3574**

October 25, 2021

To:    All counsel of record

## **LETTER ORDER**

Re:    _Polynice v. New Jersey Department of Corrections, et al._
       Civ. A. No. 19-16875 (MCA) (LDW)

Dear Counsel:

This letter order addresses plaintiff Edwin Polynice's Motion for Leave to File an Amended Complaint. (ECF No. 44). Defendant George O. Robinson, as well as proposed defendants New Jersey Department of Corrections ("NJDOC") and University Correctional Health Care ("UCHC"), oppose the motion. (ECF Nos. 46, 54).

Plaintiff alleges that while incarcerated at Northern State Prison, he was directed to use a top bunk despite medical restrictions necessitating that he have a bottom bunk. (Compl. ¶¶ 21-23, ECF No. 1). Plaintiff contends that he fell from the top bunk on October 1, 2017, sustaining severe injuries. (_Id._ ¶¶ 25-31). Plaintiff filed the initial complaint on August 19, 2019, asserting civil rights claims pursuant to 42 U.S.C. § 1983 and negligence claims pursuant to the New Jersey Tort Claims Act ("NJTCA") against the NJDOC, Northern State Prison, Administrator George Robinson, and Sergeant Gibson.[1]

Defendants NJDOC, Northern State Prison, and Robinson were successfully served with the summons and complaint, (ECF Nos. 3, 4, 5), and they moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 9). In an Opinion and Order dated May 28, 2020, the Honorable Madeline Cox Arleo, U.S.D.J. dismissed all claims in the complaint except a § 1983 supervisory liability claim against Administrator George Robinson in his personal capacity premised on policymaking and failure to train and/or supervise. (ECF Nos. 14, 15). Defendant Robinson answered the remaining claim on June 23, 2020. (ECF No. 16).

Plaintiff's current counsel did not draft the initial complaint, but he substituted into the case on March 6, 2020, prior to Judge Arleo's decision on defendants' Motion to Dismiss. (ECF No.

---

[1] Sergeant Gibson has not appeared in this action, and plaintiff has been on notice since June 23, 2020 at the latest that "Defendant Sergeant Gibson is not identified as ever being an employee of Northern State Prison." (Answer ¶ 55, ECF No. 16).

13).  He also participated in the Rule 16 initial scheduling conference before the undersigned on August 13, 2020, at which the Court set a schedule for discovery on the sole remaining claim in the case.  Ten days after the Rule 16 conference, plaintiff timely filed a Motion to Amend the complaint.  (ECF No. 22).  Plaintiff's proposed Amended Complaint would have significantly expanded the lawsuit by:  (1) pleading a § 1983 claim for deliberate indifference to medical needs against Robinson and Gibson; (2) repleading negligence claims under the NJTCA against the NJDOC, Robinson, and Gibson; (3) asserting new federal and state law claims for failure to accommodate a disability against the NJDOC, Robinson, and Gibson; (4) asserting a negligent supervision claim against NJDOC; (5) adding University Correctional Health Care ("UCHC") and Dr. Sherita Latimore-Collier as defendants and asserting a negligence claim related to plaintiff's alleged kidney failure (an injury unrelated to those plaintiff allegedly sustained in the fall from the top bunk); and (6) asserting § 1983 claims against UCHC and Latimore-Collier and a negligence claim against UCHC on behalf of a class of inmates who received allegedly deficient medical care while incarcerated in NJDOC facilities.  (*Id.*).  However, after reviewing UCHC's opposition to the Motion to Amend and pursuing settlement negotiations, plaintiff's counsel subsequently informed the Court at an October 2, 2020 telephone conference that he did not intend to pursue some or all of the claims asserted in the proposed Amended Complaint and consented to termination of the Motion to Amend without prejudice.  (ECF No. 31).

The parties then proceeded with fact discovery on the sole active claim in the case.  The Court held telephonic status conferences with the parties on November 24, 2020, January 20, 2021, and May 3, 2021 and inquired during each of these calls whether plaintiff intended to file an Amended Complaint.  Yet plaintiff did not file the instant Motion to Amend until May 26, 2021 – nearly two years after the lawsuit was commenced, one year after Judge Arleo dismissed the majority of plaintiff's claims, and after the parties had substantially completed fact discovery on the only claim in the case.[2]  (ECF No. 44).  This time, plaintiff proposes to add UCHC and Nurse Practitioner Latifa Fedai as defendants, name Raymond Reyes and Ryan Molloy in place of S.C.O. Officer John Doe, name Sergeant Christopher Gibbons in place of the improperly identified defendant Gibson, add § 1983 deliberate indifference to medical needs claims against Robinson, Gibbons, Molloy, Reyes, and Fedai, assert NJTCA negligence claims and federal and state failure to accommodate a disability claims against "all DOC defendants," and assert a negligent training and supervision claim against NJDOC.  (Proposed Am. Compl., ECF No. 44-2).  These latest revisions, by counsel's own admission, are "very extensive."  (Poreda Cert. ¶ 11, ECF No. 44-1).  Proposed defendant UCHC opposes the amendment as untimely and futile.  (ECF No. 46).  The Office of the Attorney General filed a "Motion to Dismiss Three Counts of Plaintiff's Complaint," presumably on behalf of defendant Robinson and former/prospective defendant NJDOC, which the Court construes as an opposition to the Motion to Amend based on futility.  (ECF No. 54).

The decision whether to allow amendment rests within the "sound discretion" of the Court.  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).  Although Rule

---

[2] At a July 8, 2021 telephone conference before the undersigned, before the Motion to Amend was fully briefed, counsel informed the Court that plaintiff had completed fact discovery, although it is unclear whether defendant has done so.  No party has expressed an intent to utilize experts in this case, and the Office of the Attorney General has requested a schedule for filing a dispositive motion.  (ECF No. 55).

15(a)(2) of the Federal Rules of Civil Procedure provides that a court should "freely give leave [to amend] when justice so requires," the Court may deny leave to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [or] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008). In considering whether plaintiff's delay in seeking to amend the complaint is undue, the Court "focus[es] on the movant's reasons for not amending sooner . . . and balance[s] these reasons against the burden of delay on the District Court." *Id.* (quotation omitted). *See Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (noting that "the movant must demonstrate that its delay in seeking to amend is satisfactorily explained") (quotation omitted)).[3]

Plaintiff attributes the delay in formally seeking to amend the complaint to the "lack of transparency about healthcare within the Department of Corrections" and "almost a year" of informal negotiations with UCHC regarding the "merits of the amendment." (Pl. Reply Br. at 10-11, ECF No. 50). The Court understands that plaintiff devoted a significant amount of time to determining how to proceed against proposed defendant UCHC and whether to pursue claims related to plaintiff's alleged kidney failure in this action or in a separate case, as well as to attempting settlement negotiations to avoid motion practice. But this does not explain why plaintiff waited until fact discovery was complete or nearly complete to formally assert the bulk of the claims in the proposed Amended Complaint, which relate to plaintiff's fall from the top bunk and involve defendants beyond UCHC. Importantly, all of the claims that are the subject of the instant motion are substantially the same as the claims plaintiff sought leave to assert in the August 23, 2020 Motion to Amend and then seemingly abandoned by agreeing to terminate the motion and proceeding to complete discovery on a single § 1983 claim against defendant Robinson. Plaintiff had an opportunity to reshape this action early on by filing an Amended Complaint alleging deliberate indifference to medical needs, negligence, failure to accommodate a disability, and negligent training and supervision more than a year ago, but he ultimately decided not to seek amendment at that time and has in no way accounted for the delay in seeking leave to reassert the exact claims he previously declined to pursue.

---

[3] This motion was filed prior to the expiration of the deadline for any request for leave to file an amended pleading set in the Court's May 3, 2021 Amended Scheduling Order. (ECF No. 43). However, as the Court warned plaintiff during the May 3, 2021 telephonic status conference, it does not consider timeliness under a scheduling order to be dispositive of the question of undue delay. *Ford Motor Co. v. Edgewood Props., Inc.*, Civ. A. No. 06-1278, 2011 WL 1321605, at *4 (D.N.J. Apr. 4, 2011) ("[F]iling a motion to amend within the time allowed in an applicable scheduling order does not necessarily mean the motion is not unduly delayed; it simply means that the party does not need to meet Rule 16's higher, 'good cause' standard.").

Additionally, the Court notes that plaintiff's "very extensive" amendments would exponentially expand the scope of an action that is otherwise proceeding to briefing of dispositive motions. The filing of the Amended Complaint at this late stage would require service of process on five additional defendants, many of whom would have to request representation from the Office of the Attorney General or secure private counsel, and all of whom would, if the opposition to the Motion to Amend is any indication, likely move to dismiss the Amended Complaint. The new defendants would then be entitled to take discovery on any surviving claims. Thus, allowing plaintiff to amend at this late stage would further delay resolution of a case that has been pending for over two years and subject the Court to further motion practice. *See Bjorgung*, 550 F.3d at 267 (affirming denial of leave to amend where delay in filing proposed amended complaint could "send the court through a substantial period of additional discovery and motions"). In light of the burden such amendment would impose on the Court, and the lack of an adequate explanation for plaintiff's late-breaking decision to officially pursue multiple new claims against five new defendants, the Court finds the proposed Amended Complaint to be the product of undue delay. Having so determined, the Court need not consider whether the proposed amendments would be futile.

Accordingly, plaintiff's Motion to Amend is **DENIED**. The Clerk of Court is directed to terminate the motion at ECF No. 44. The parties are directed to submit a letter proposing a schedule for any remaining discovery and briefing of dispositive motions no later than **November 8, 2021**. It is **SO ORDERED**.

*s/ Leda Dunn Wettre*
Hon. Leda Dunn Wettre
United States Magistrate Judge

Orig: Clerk
cc:    Hon. Madeline Cox Arleo, U.S.D.J.

4