UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN POLYNICE, *Plaintiff*, vs. NEW JERSEY DEPARTMENT OF CORRECTIONS, et al., *Defendants*. | Docket No. 2:19-CV-16875-MCA-LDW <br><br> **Civil Action** |

BRIEF IN SUPPORT OF PLAINITFF'S CROSS-MOTION FOR RELIEF FROM THE MAGISTRATE'S ORDER OF OCTOBER 25, 2020, DENYING AN AMENDMENT OF THE COMPLAINT

I

**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

1

**PRELIMINARY STATEMENT**

Plaintiff makes this cross-motion Pursuant to Fed. R. Civ. Pro. 60 for total or partial relief from the magistrate's Letter Opinion of October 25, 2021 (**Exhibit R**), denying in whole, Plaintiff's Motion to Amend the Complaint. The essential reason for this cross-motion is that the order denying the Motion to Amend the Complaint did not apply an appropriate legal standard. The order amounts to manifest injustice and an abuse of discretion. This court has inherent power to correct interlocutory orders.

This case involves an injury Plaintiff suffered at the hands of the New Jersey Department of Corrections and an employee of its medical contractor. The medical contractor is Rutgers University – University Correctional Health Care ("Rutgers" or "UCHC"), and the employee is Latifa Fedai, APN.

The Plaintiff timely filed a motion to amend on August 23, 2020. The proposed amendments, at that time, were extensive and complicated. Some (but not all) of the proposed amendments were based on a rapidly evolving set of facts, and those evolving facts made the legality of the amendment a complex issue to adjudicate. Pursuant to the court's hopes that a few months' time would simplify its adjudication duties, the court terminated the motion on October 2, 2020 **without prejudice**. This was done over Plaintif's explicit request that the two simple, uncontested proposed amendments that Plaintiff deems most critical, negligence and disability discrimination against the Department of Corrections, be considered at that time. (*See* **Exhibits F & G**). The court assured Plaintiff it was not necessary to amend at that time, as the termination was **without prejudice.** Plaintiff asked for a new deadline to amend (**Exhibit I**), which was set for June 1, 2021 (**Exhibit J**). When a second, timely motion to amend was filed on May 26, 2021, the court then decided that this was too late for any amendments and that it

couldn't understand the gap between the original and final motions to amend, even though the delay was the court's own doing.

Motions to amend are to be granted liberally, with reasons for denial being undue prejudice to Defendants or futility. Denial of Plaintiff's motion is not based on either consideration. This is a clear abuse of discretion. Moreover, it is a manifest injustice to essentially kill the Plaintiff's entire case without having so much as given the Plaintiff a chance via oral argument to defend the timing of the motion, which was not a concern raised by either set of Defendants in their oppositions.

The Plaintiff's motion to amend deserves a hearing on the merits because Plaintiff did everything he was supposed to do pursuant to the court's wishes and its scheduling orders. Plaintiff feels legitimately betrayed by the magistrate who told him that if he agreed to termination of his August 2020 motion to make things easier for the court, that the termination would be without prejudice. The court should correct the magistrate's error under its inherent power to correct any interlocutory order and/or Federal Rule of Civil Procedure 60.

## FACTUAL BACKGROUND OF THE CASE

This case involves an accident that occurred at Northern State Prison that would not have happened but for the negligence, deliberate indifference, and failure to accommodate a disability by Defendants. The victim of the accident was a prisoner, the Plaintiff, Edwin Polynice. On the night of September 30, 2017, guards at Northern State Prison forced Polynice into a top bunk. Polynice had diabetes and uncontrolled high blood pressure that gave him bouts of dizziness. Polynice told his jailors that he needed to be in a bottom bunk because of the disability. This request was denied. The following morning, Polynice had a dizzy spell while trying to get out of bed, and he fell, cracking his head open on the toilet. The injury put Plaintiff in the infirmary for

ten days and left him with chronic headaches and back pain. The full extent of the injuries is still not known because A.) The Department of Corrections did not do its job of trying to diagnose the injuries and B.) The Plaintiff, though released from jail, is still trying to get an MRI of his back.

## PROCEDURAL HISTORY

The case was initially filed by another lawyer on August 19, 2019 against the Department of Corrections, Northern State Prison, Administrator George Robinson, "Sgt. Gibson," John Doe Defendants, and against the "Northern State Prison Medical Department," which, unbeknownst to the original attorney, is actually a separate entity, Rutgers University – University Correctional Health Care.

The Attorney General filed a Motion to Dismiss on October 2, 2019. On March 6, 2020, I entered a substitution of attorney. On May 28, 2020, Judge Arelo issued an order granting the Attorney General's motion on all counts except the deliberate indifference of Administrator George Robinson. Dismissal was without prejudice on all counts. (**Exhibit B**). Notably, Judge Arleo dismissed the negligence cause of action on a hyper-technicality – the failure to specifically state that a Notice of Tort Claim had been filed. A timely Tort Claim Notice had indeed been filed. (**Exhibit A**).

I submitted a letter in July 2020 to the court notifying the court that I had not been receiving court notifications, despite entering a notice of appearance. This was due to the errors with the court's technology, not in the Plaintiff's control. (**Exhibit C**). Concurrently, Edwin Polynice became incommunicado, when he was placed for an extended period of time in "special custody." I later learned that this was St. Francis Hospital, where he was being kept due to kidney failure. When Polynice was returned to South Woods State Prison and was able to

contact me, which was around August 1, 2020, Polynice attributed the kidney failure to the prison's forgetting to refill his high blood pressure medication prescription. Polynice's claims sounded similar to a series of complaints I had received from many prisoners. The Department of Corrections routinely fails to refill prescriptions for critical chronic care drugs for conditions like heart disease, high blood pressure, diabetes, and pain management.

    I prepared an Amended Complaint which still had many John Doe Defendants because there had not yet been any discovery. The proposed Amended Complaint had a series of components: 1.) It plead compliance with the Tort Claim Notice provision of the Tort Claims Act so as to revive the dismissed negligence cause of action; 2.) It plead an explicit disability discrimination cause of action based on the same set of facts; 3.) It made factually specific allegations about the deliberate indifference of the prison guards who had put him in a top bunk, thus correcting technical failures of the original Complaint; 4.) It plead medical malpractice for the kidney failure against UCHC; 5.) It pleaded deliberate indifference against Medical Director Sherita Latimore-Collier for the kidney failure; 6.) It proposed a class action of all prisoners injured by the Department of Corrections' systematic practice of not letting critical prescriptions lapse. (**Exhibit D**).

    This was not to be the last amendment of the Complaint. There were still John Doe Defendants that needed to be uncovered through paper discovery, including one I could not have known about – Nurse Practitioner Latifa Fedai.

    The magistrate's individual rules state the following, which show the magistrate's preference for working out cases without motions to amend, if possible:

> **Applications to amend or supplement pleadings:** Counsel shall circulate any desired amendment and shall seek written consent of all

> parties, as per Federal Rule of Civil Procedure 15(a)(2), before pursuing amendment by motion.  Any request for leave of the Court to file a motion to amend must contain a redlined version of the proposed amended pleading as an exhibit.  If a party seeks to file a motion to amend after the deadline set by a Scheduling Order, that party must show good cause why the amendment could not have been sought earlier.

I ultimately did not get consent from the other parties to amend the Complaint.  I filed the motion to amend the Complaint on August 23, 2020.  (**Exhibit D**).

The Rutgers Defendants opposed, arguing that the medical malpractice claims were premature because Rutgers was entitled to 6 months from the filing of the Tort Claims Notice before a claim could be filed.  (**Exhibit E**).

By letter dated September 25, 2020, I asked the court for a one-cycle adjournment to see if the some of the new claims against Rutgers could be resolved out of court.  I further indicated that I intended to amend the Complaint against the Department of Corrections Defendants in any event.  The letter stated, in part:

> As I sat down to compose the reply to UCHC's opposition this afternoon, I perceived an opportunity to potentially resolve the dispute with UCHC out of court. I sent UCHC's attorney, Mr. Pyle, a proposal but have not yet heard back yet. If he accepts, I would ***not*** withdraw the Motion, but I would submit a revised proposed Amended Complaint, one that only pertains to the undisputed portions relevant to the Department of Corrections Defendants.  (emphasis added). (**Exhibit F**).

I told the court by letter dated September 28, 2020 that I would not be filing a reply to Rutgers' opposition, but I asked that the motion continue against the Department of Corrections. (**Exhibit G**).

On October 2, 2020, the court held a conference. At the conference, I brought up the fact that future amendments would be needed because I didn't have any information necessary to name the DOC John Doe defendants.

The court asked that I consent to termination of the motion **without prejudice.** The court asked that I consent to termination of the motion **without prejudice** because it hoped to rule on an ultimately simpler motion. I agreed to this, reasonably believing that the court would appoint the Plaintiff a new deadline to amend and that the new amendments would be judged **on the merits**, after negotiation and discovery revealed the true nature of the dispute.

On October 19, 2020, I sent the court an update on the case. (**Exhibit H**). I asked for time to review medical records recently received from Rutgers before amending the Complaint. On November 24, 2020, there was a court conference wherein the court asked that I circulate a new proposed amendment to see if I could get consent from the parties to consent.

On December 17, 2020, I circulated a proposed amendment to the Complaint. A new Defendant emerged from the medical records, Latifa Fedai, a nurse who revoked the Plaintiff's bottom bunk restriction without cause when he was transferred from South Woods State Prison to Northern State Prison. The Defendants objected.

On December 23, 2020, I wrote the court a letter explaining this state of affairs and notified the court that I thought the Defendants' objections, while ultimately not meritorious, were legitimate enough to warrant a motion hearing. I asked for the court to schedule the filing of a motion at the January 20, 2020 status conference. (**Exhibit I**).

A status conference was held on or about January 21, 2020. At this conference, if not earlier, I informed the magistrate that Plaintiff needed paper discovery to commence between

Plaintiff and the DOC so that John Doe Defendants could be identified and the Complaint appropriately amended.

The scheduling order produced on January 21, 2020 did not schedule the motion to amend.  (**Exhibit J**).

After January 21, 2020, Plaintiff and Department of Corrections began to conduct paper discovery on all aspects of the accident.  Pre-amendment discovery was *not* limited to the one active count in the Complaint as the magistrate states in the court's decision of October 25, 2021. This was forward-looking discovery aimed at all possible causes of action related to the accident. During the course of discovery, it was determined that the jailors who were deliberately indifferent to Polynice's health and safety were Officers Reyes and Molloy.  It was also discovered that the Defendant originally plead as "Sgt. Gibson" was actually called "Chrisopher Gibbons."  Also, it was discovered that there was liability against one UCHC employee, Latifa Fedai, who had revoked the Plaintiff's bottom bunk pass without reason.

During the months of pre-amendment discovery, which the court sanctioned with the hopes that it would trim the court's ultimate workload, I determined by conferring with experts, after Rutgers refused to cooperate in reviewing the medical record with me, that the Plaintiff had pre-existing kidney issues that might have inevitably lead to failure of his kidneys notwithstanding a lapse in prescriptions.  I therefore determined that we would not sue UCHC for medical malpractice or Sherita Lattimore-Collier and would not pursue the class action.

On April 28, 2021, Deputy Attorney General Chanell Branch drafted an update to the court notifying the court that discovery would need to be extended and that I still intended to file a motion to amend.  (**Exhibit H**).

On May 4, 2021, there was a case status conference, in which I informed the court I had the discovery to name all the critical John Doe defendants and could file the finalized motion to amend. The court set a deadline for a motion to amend on June 1, 2021. I timely filed a motion to amend on May 26, 2021. (**Exhibit M**).

The court did not return the motion to amend until five months later, on October 25, 2021. I was shocked to see that the court not only denied the motion, but blamed me for withdrawing the motion and waiting a few months to refile, even though that delay was desired by the court for its own docket management interests. This was incredibly unfair considering that the motion was NOT withdrawn. It was terminated **without prejudice** by the court, and over my request to continue the motion as to the amendments against the Department of Corrections. Moreover, the motion I ultimately filed was timely under the case management order.

## LEGAL STANDARD FOR AN ORDER TO AMEND AN INTERLOCUTORY ORDER

Rule 60(b)(6) gives federal courts broad authority to grant relief from an order "upon such terms as are just." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 848 (1988). Motions to correct an order must be made within a years' time. Fed. R. Civ. Pro 60(c)(1). In so deciding the motion, it is appropriate to consider the risk of injustice to the particular parties, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process. *Id.*

In addition to Rule 60, the District Court has the inherent power to reconsider prior interlocutory orders. *State Nat'l Ins. Co. v. Cty. of Camden*, 824 F.3d 399, 406 (3d Cir. 2016). *See also United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973) ([S]o long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders and can

9

reconsider them when it is consonant with justice to do so.") (emphasis added); *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) ("A district court has the inherent power to reconsider and modify its interlocutory orders *prior to the entry of judgment ....*"); *U.S. ex rel. Haskins v. Omega Inst., Inc.*, 25 F. Supp. 2d 510, 514 (D.N.J. 1998) ("courts retain jurisdiction over their interlocutory orders which are not certified for immediate appeal and may modify them at any time before trial").

## LEGAL STANDARD FOR A MOTION TO AMEND

15(a)(2) of the Federal Rules of Civil Procedure provides that a court should "freely give leave [to amend] when justice so requires." The standard for granting motions to amend the pleadings is quite liberal. *Fin. Info. Grp., Inc. v. Labworks, LLC*, No. CV 07-1927 (AET), 2008 WL 11510415, at *1 (D.N.J. Jan. 7, 2008). Requests to amend should only be denied when the amendments are inequitable or futile. *Crump v. Passaic Cty.*, 147 F. Supp. Inequity may emerge where there is bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008). In considering whether plaintiff's delay in seeking to amend the complaint is undue, the Court "focus[es] on the movant's reasons for not amending sooner . . . and balance[s] these reasons against the burden of delay on the District Court." *Id.* (quotation omitted). *See Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (noting that "the movant must demonstrate that its delay in seeking to amend is satisfactorily explained")

10

(quotation omitted)).  On appeals, an appellate court will overturn denials of motions to amend that are an "abuse of discretion."  *Holiday Vill. E. Homeowner's Ass'n v. QBE Ins Corp.*, 517 F. App'x 113, 114 (3d Cir. 2013).

## **LEGAL ARGUMENT**

### I.  THE COURT DID NOT APPLY AN APPROPARITE LEGAL STANDARD IN THE DECISION DENYING THE MOTION TO AMEND.

In producing an analysis of the decision to deny the motion, the magistrate's only real concern is the approach of the discovery end date.  The magistrate says that she cannot explain the reason I did not amend sooner, but it should have been amply apparent to her– it was because she told me not to and terminated my motion **without prejudice**, and gave me until June 1, 2021 to refile, which I did.  Her decision cites no concerns of futility nor of prejudice, which are the only true reasons to deny a motion to amend.

In the Department of Corrections's opposition to my motion to amend, the only substantive objection was on the grounds of futility as to the disability discrimination claim only.  The DOC's opposition takes the frankly unbelievable position that a safe space to sleep is not an entitlement in prison.  The Department of Corrections made no objection to the inclusion of the negligence cause of action or the addition of Raymond Reyes or Ryan Molloy or Christopher Gibbons.  Nevertheless, the magistrate took it upon herself to deny those amendments without a reason countenanced by the legal standard governing amendments.  The magistrate's decision talks of delay, but not of delay that is *undue* in terms of its prejudice to Defendants.  Plaintiff did not have dilatory or bad faith motive.  The motive for the delay was to spare the court unnecessary workload, at the court's request.  The court cannot speak of previous opportunities to amend ignored, as the Plaintiff's original motion was terminated by the court to shield it from

potentially unnecessary workload, and when Plaintiff requested a date by which to amend, Plaintiff amended within that time frame.

## II.     THE COURT'S DECISION MAKES MATERIAL MISTATEMENTS OF FACT AND OMISSIONS

The court's decision cites my motion to amend the complaint as "late" and "extensive," neither of which are true, nor are they relevant to the legal standard.  But I think it bears reviewing these mistakes to make the point that the magistrate below made this decision in haste and without due regard to her duty to follow the law, which only warrants denial in cases of prejudice or futility.

Regarding the lateness of the amendment, this is a 2019 case.  It is not old, especially not for a prison case where the identity of the defendants could not have been known until the completion of paper discovery. Second, I tired to amend in August 2020, and this court asked me to hold off until I had a better handle on what was going on so that there were would not have to be additional motions to amend and so that we would not drag defendants into the case needlessly.  The time that she gave me resulted in that outcome for Rutgers.[1]  It also resulted in a substantively easier motion for the court to adjudicate.

Second, I did NOT say the amendments were extensive.  I said the ultimate amendments were NOT extensive.  Specifically, I stated in the motion to amend:

> I ask leave to dispense with the Local Rule 15.1 requirement to provide a redlined version of the proposed amendments as they are, linguistically speaking, very extensive, ***but substantively not extensive***.  In short, I do not think the redlined complaint would be worth very much and would be an extensive undertaking.  This is because the original Complaint was drafted

---

[1] The name Rutgers University – University Correctional Health Care appears in the caption on the proposed Amended Complaint in error.  Substantively, the complaint alleges no liability against UCHC, only against one UCHC employee, Latifa Fedai.

12

by another law firm that didn't seem to understand New Jersey prison litigation. Substantively, the changes are as follows:

a. Latifa Fedai, a nurse practitioner, has been added as a defendant. The proposed amendments regarding Fedai are based on recently discovered medical records in which she denies Plaintiff's request for a bottom bunk restriction.

b. Discovery having revealed that the unknown officer who ordered Plaintiff onto the top bunk from which he fell was either Raymond Reyes or Ryan Molloy.

c. The original complaint made allegations against the "Medical Department – Northern State Prison," which is the inappropriate name for Rutgers University – University Correctional Health Care, which is named in the proposed amendments.

d. The original Complaint improperly identified a responsible officer "Sergeant Gibson." The correct name is Sergeant Christopher Gibbons. He has been named in the proposed amendments.[2]

A third problem with the magistrate's decision is that it made prejudicial findings against Plaintiff even where the Defendant made no objections. For example, the Defendants made no objection to the addition of defendants Molloy, Reyes, and Gibbons. It made no objection to the re-pleading of the negligence cause of action. Months after the deadline to oppose, the DOC made a weak objection to the disability discrimination causes of action only, and Plaintiff replied to those. Yet, without so much as holding oral argument or requesting further briefing, the court decided *sua sponte* that it was too late to add those defendants notwithstanding the fact that I could not have known about their existence until about a month before I filed the motion AND

---

[2] I forgot to mention that the complaint also sought to revive the negligence claim against the DOC by specifically pleading compliance with the Tort Claims Act.

13

the court gave me until June 1, 2021 to name them.  The court gave me no opportunity to present to it the legitimate reasons for the "delay".

A fourth problem was that the magistrate shirked the responsibility of making substantive calls about disputed issues – namely – on the viability of proposed disability discrimination cause of action against Defendants.

This decision denying Plaintiff's motion to amend makes several critical misstatements and omission of fact that should be reviewed, and the outcome accordingly reversed.  Some of those appear in this portion of the decision:

> Plaintiff attributes the delay in formally seeking to amend the complaint to the "lack of transparency about healthcare within the Department of Corrections" and "almost a year" of informal negotiations with UCHC regarding the "merits of the amendment." (Pl. Reply Br. at 10- 11, ECF No. 50). The Court understands that plaintiff devoted a significant amount of time to determining how to proceed against proposed defendant UCHC and whether to pursue claims related to plaintiff's alleged kidney failure in this action or in a separate case, as well as to attempting settlement negotiations to avoid motion practice. But this does not explain why plaintiff waited until fact discovery was complete or nearly complete to formally assert the bulk of the claims in the proposed Amended Complaint, which relate to plaintiff's fall from the top bunk and involve defendants beyond UCHC. Importantly, all of the claims that are the subject of the instant motion are substantially the same as the claims plaintiff sought leave to assert in the August 23, 2020 Motion to Amend and then seemingly abandoned by agreeing to terminate the motion and proceeding to complete discovery on a single § 1983 claim against defendant Robinson.

First, I do **not** solely attribute the delay to the lack of transparency about healthcare within the Department of Corrections" and "almost a year of informal negotiations with UCU regarding the merits of the amendment." I made no excuse for the lateness of the amendment at all in the moving papers because there was no objection about the delay between the first and second motions.  But here, I would attribute the "delay" mostly to the

14

court's critical role in stalling of the amendment by asking me, against my objection, to terminate my August 2020 motion to amend **without prejudice.** "Without prejudice" signaled to me that a new deadline to amend would be set by which I could move to amend. The court set that deadline on June 1, 2021, and the motion was filed before that. In short, the motion was **timely filed**.

I did ask the court to allow me to file the negligence and disability discrimination claims ) against the Department of Corrections sooner, (see **Exhibits F & G**) and the court asked me not to when it asked for my consent to terminate the motions. The termination **"without prejudice"** reasonably signaled to me that a new deadline to amend would be put into place and that I would be given a substantive hearing on the merits of the amendment at that time.

Second my "waiting until fact discovery was complete or nearly complete to formally assert the bulk of the claims in the proposed Amended Complaint, which relate to plaintiff's fall from the top bunk and involve defendants beyond UCHC" does make sense. And it has to do with the "lack of transparency" of which I complained. I did not know and could not know who Latifa Fedai was without discovery. We did not know and could not have know the identities of Molloy, Reyes, or Gibbons without discovery. That is why there were new names in the proposed amendment of May 2021. Even if I'd been permitted to amend in August 2020, these extra amendments in May 2021 still would have been made because I could not have known the true identity of the John Doe Defendants or Latifa Fedai without the completion of paper discovery.

Third, this opinion states that discovery only took place on the one remaining claim in the original complaint. This is not true. The court did not look at our interrogatories or

document production or deposition transcripts when making this call. Discovery substantively included all the causes of action in the proposed Amendment of May 2021, and there would be no need for additional discovery had the amendment been granted.

I also take issue with this particularly condescending passage from the decision:

> Plaintiff had an opportunity to reshape this action early on by filing an Amended Complaint alleging deliberate indifference to medical needs, negligence, failure to accommodate a disability, and negligent training and supervision more than a year ago, but he ultimately decided not to seek amendment at that time and has in no way accounted for the delay in seeking leave to reassert the exact claims he previously declined to pursue.

I most certainly did account for the delay. It was because the court asked me not to file a motion to amend until I had a better handle on the justified cause of action, and I reasonably relied upon the termination without prejudice for that. I asked the court for a schedule to amend on December 23, 2020 (**Exhibit I**), and the court set the date to amend on June 1, 2020 (**Exhibit L**). I complied with the court's scheduling order and that's the most fundamental explanation for why the amendment came when it did.

In light of this, I can easily make the point that the court's denial of the amendment was an abuse of discretion, a manifest injustice and the court should use its inherent power to correct interlocutory orders to correct the error now rather than force the parties to go to appeal and re-opening of the case. If the court had taken the time to look at the amendments and decided they were futile, I would have been contented, but this decision, which pays no attention to substance of the amendments and places the denial solely upon timing, despite the fact that Plaintiff fully

16

complied with the court's scheduling order and its wishes to terminate the original motion constitutes. an abuse of discretion.

### III. PARTIAL RELIEF FROM THE MAGISTRATE JUDGE'S DECISION WOULD BE APPROPRIATE.

There were various proposed amendments to the Complaint, and to deny each, it must be explained by the court why the granting of each amendment was too prejudicial to the Defendants or was otherwise futile. The Department of Corrections already made an argument as to futility of the disability discrimination claim, (**Exhibit P**), and Plaintiff replied (**Exhibit Q**). Notably, the Department of Corrections made no objection to the addition of Defendants Reyes or Molloy or Gibbons and made no objection to the re-pleading of the negligence cause of action. Therefore, the court's denial of the amendment was even more egregious because the Department of Corrections' not objecting gave the Plaintiff no opportunity to argue with the court as to why these timely amendments were appropriate. Fedai and Plaintiff disputed all aspects of the amendment as to Fedai. Rutgers opposed (**Exhibit N**), and the Plaintiff replied. (**Exhibit O**). Those issues were fully briefed and should have been disposed of on the merits because the magistrate's arbitrary decision that it was too late amend, even though it was within the timeframe permitted by the scheduling order, is untethered to the legal standard for denying amendments.

### CONCLUSION

If the court had taken the time to look at the amendments and decided they were futile, Plaintiff would have been contented, but this decision, which pays no attention to substance of the amendments, places the denial solely upon the timing of the motion, without weighing the

17

prejudice to either party or making any determinations that any of the amendments were futile. This is plain departure from the law. If this case must proceed to appeal, it will surely be viewed as an abuse of discretion, and that is why I am asking the court to use its broad power under Federal Rule of Civil Procedure 60 to repair the mistake now, as an appeal will be worse for all parties and this court than amending the complaint now.

                                                Respectfully Submitted,

                                                *[signature]*

                                                _____

                                                  MICHAEL POREDA

Dated: February 6, 2022