**EXHIBIT C**

**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDWIN POLYNICE, *individually and on behalf of a class of similarly situated individuals,*<br><br>*Plaintiff,*<br><br>vs.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, ADMINISTRATOR GEORGE ROBINSON, SERGEANT GIBSON, S.C.O. JOHN DOE, RUTGERS UNIVERSITY – UNIVERSRITY CORRECTIONAL HEALTH CARE ("UCHC"), SHERITA-LATIMORE-COLLIER, M.D., UCHC JOHN DOES 1-20, DOC JOHN DOES 1-10,<br><br>*Defendants.* | Docket No. 2:19-CV-16875-MCA-LDW<br><br><u>Civil Action</u><br><br>**AMENDED COMPLAINT** |

Edwin Polynice, by way of this Amended Complaint hereby brings the following action against the Defendants as follows:

## JURISDICTION AND VENUE

1.) This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the question arises under the laws and Constitution of the United States.

2.) This Court has jurisdiction over state law claims herein presented pursuant to 28 U.S.C. § 1367 because the claims are part of a case over which the court has federal question jurisdiction.

3.) Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because all relevant events took place in New Jersey.

## PARTIES

4.) Plaintiff Edwin Polynice is a resident of New Jersey whose date of birth is November 15, 1978. He was in the custody of the New Jersey Department of Corrections from June 2012 until August 2020. His SBI number was 864138C. He last resided at South Woods State Prison, 215 South Burlington Road, Bridgeton, NJ 08302. Due to the recent award of eight months of public health emergency credits, Polynice was just released from prison. He plans to reside upon release at 60 North Arlington Avenue, Apt. 104, East Orange, NJ 07017.

5.) Defendant New Jersey Department of Corrections is a New Jersey State agency headquartered at Whittlesey Road, Trenton, NJ 08625.

6.) Newly added Defendant Rutgers University – University Correctional Health ("UCHC") care is a corporate entity headquartered at 7 College Avenue, New Brunswick, NJ 08901. UCHC is the medical contractor that provides medical services to inmates within the custody of the New Jersey Department of Corrections.

7.) Newly added Defendant Sherita Latimore-Collier, M.D. is the Medical Director of South Woods State Prison. She is an employee of UCHC.

8.) Defendant George Robinson is currently the Administrator of the Adult Diagnostic and Treatment Center, a prison facility operated by the New Jersey Department of Corrections. At the times relevant to this complaint, he was the Administrator of

Northern State Prison, P.O. Box, 2300, 168 Frontage Road, Newark, NJ 07114. He is an employee of the New Jersey Department of Corrections.

9.) Defendant Sergeant Gibson, on information and belief, is that name of the correctional sergeant who, on September 30, 2017, was responsible for overseeing the inmates living in Delta Unit 1-E at Northern State Prison. Sergeant Gibson is an employee of Defendant New Jersey Department of Corrections.

10.) Defendant S.C.O. John Doe was an NJ DOC correctional officer employed at Northern State Prison on September 30, 2017.

11.) Newly added Defendants UCHC John Does 1-20 are employees of UCHC, including nurses, doctors, and supervisors.

12.) Newly added Defendants DOC John Does 1-20 are employees and supervisors of the DOC.

## FACTS

13.) Plaintiff is known to have hypertension, diabetes, and history of renal insufficiency.

14.) These are disabilities within the meaning of the New Jersey Law Against Discrimination, the Rehabilitation Act, and the Americans with Disabilities Act.

15.) Plaintiff must take insulin for his diabetes.

16.) Plaintiff must take blood pressure medication to control his high blood pressure.

17.) Hypertension and diabetes are two conditions which can exacerbate renal insufficiency and lead to renal failure.

18.) Due to the diabetes, as well as a tear to his Achilles tendon, Plaintiff was bottom bunk restricted.

19.) The bottom bunk restriction was a reasonable accommodation for Plaintiff's disabilities.

20.) On September 30, 2017, Plaintiff was living in Delta Unit 1-E at Northern State Prison, assigned to a bottom bunk.

21.) For unknown reasons, on September 30, 2020, Plaintiff was told by S.C.O. John Doe to move out of his bottom bunk and move to cell 104 and sleep in a top bunk.

22.) Polynice told S.C.O. John Doe that he needed to be on the bottom bunk due to his disabilities.

23.) When S.C.O. John Doe protested that Polynice was no longer entitled to the accommodation, Polynice told him that the accommodation was for the remainder of his incarceration.

24.) Plaintiff's right to a safe place to sleep is clearly established law. N.J.A.C. 10A:31-3.6 states: "A qualified inmate with a disability shall be housed in a manner that provides for his or her safety, security and accessibility to facility programs or activities. Rooms, sleeping units, or housing units shall be designed for use by qualified inmates with disabilities."

25.) Following his explanation, Polynice was ordered to utilize the top bunk, in clear violation of DOC regulation, state law, and federal law.

26.) S.C.O. John Doe reiterated that this order had come from Sergeant Gibson.

27.) Polynice was compelled to follow the order.

28.) On October 1, 2017, at approximately 12:35pm, while attempting to dismount the top bunk to take a daily shower, Plaintiff Edwin Polynice became extremely dizzy from a drop in his blood sugar and fell.

29.) During this fall, Plaintiff, Edwin Polynice attempted to land on a stool, but slipped. He fell, striking his head on the toilet and his leg against the stool.

30.) Post-fall, Mr. Polynice sustained severe injuries leading to thirteen stitches and five staples.

31.) Mr. Polynice also suffered a dislocated shoulder, severe neck pain, and bruising on his legs.

32.) Plaintiff, Edwin Polynice, required an extended stay in the prison infirmary for ten days due to these injuries.

33.) Throughout his time in the infirmary, he experienced debilitating headaches with the pain extending throughout his entire head, chronic pain in his facial area, ongoing dizziness, and a bruised leg.

34.) Additionally, Plaintiff, Edwin Polynice, continues to experience neck pain, headaches, and lower back pain.

35.) Despite the ongoing pain, Plaintiff was never given any treatment or diagnostic other than Tylenol.

36.) At some point after his accident, Plaintiff was transferred to South Woods State Prison.

37.) On or about July 4, 2020, Plaintiff was living at South Woods State Prison.

38.) On or about July 4, 2020, Plaintiff ran out of his prescriptions of the blood pressure medications coreg and clonidine.

39.) Even before this, he alerted his medication nurse to the fact that he needed his prescriptions refilled.

40.) The prescriptions were never refilled.

41.) Plaintiff's blood pressure spiked out of control in the absence of his medications.

42.) Plaintiff previously had a history of renal insufficiency and diabetes.

43.) Diabetes and high blood pressure both placed Plaintiff at increased risk for kidney insufficiency and kidney failure.

44.) As a result of Plaintiff's uncontrolled blood pressure, Plaintiff became extremely ill.

45.) On or about July 27, 2020, Plaintiff was taken to St. Francis Medical Center due to the illness.

46.) Here, he was diagnosed with kidney failure.

47.) Plaintiff was placed on dialysis and hospitalized for several weeks.

48.) As a result of the kidney failure, Plaintiff will incur the expenses of dialysis until he can obtain a kidney transplant.

49.) Plaintiff will have to incur the expense of a kidney transplant.

50.) Once he obtains the kidney transplant, he will need additional medical care and oversight of the transplant and a shortened life span due to the transplant.

51.) Plaintiff will incur future medical expenses as a result of the kidney transplant.

52.) UCHC is aware and has been aware for some time of a fault in its prescription refill system that allows inmates on life-sustaining chronic care drugs to experience gaps of days or weeks between prescription refills in which inmates are left without access to the medications.

53.) Sherita Lattimore-Collier and UCHC John Does 1-20 have been aware for some time of a fault in UCHC's prescription refill system that allows inmates on life-sustaining chronic care drugs to experience gaps of days or weeks between prescription refills.

54.) Inmates have died due to this fault.

55.) Despite knowledge of this problem, UCHC, Lattimore-Collier, and John Does 1-20 have done nothing to remedy it.

56.) Upon information and belief, representatives and/or employees of Defendant New Jersey Department of Corrections and UCHC at all times material hereto, failed to properly evaluate Mr. Polynice's medical needs and restrictions, while simultaneously ignoring previously-mandated medical advice.

57.) Furthermore, Mr. Polynice was exposed to harmful and hazardous conditions. Therefore, Defendants failed to do their duty to maintain a safe and suitable environment, keeping Mr. Polynice safe from injury and harm.

58.) In the events described above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Mr. Polynice of his right and privileges secured by the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

59.) The failures of Defendants to properly protect and carry out medical instructions for Mr. Polynice's imminent risk for a head, neck, and back injuries, as well as injuries extending from his chronic conditions, demonstrated a deliberate indifference to and a conscious disregard for medical needs and requirements and the overall safety of Mr. Polynice.

60.) In the events described above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Mr. Polynice of his right and privileges secured by the United States Constitution and 42 U.S.C. § 1983.

61.) The failures of Defendants to properly adhere to Mr. Polynice's medically mandated restrictions, demonstrated a deliberate indifference to and a conscious disregard for the medical requirements and the overall safety of Mr. Polynice.

62.) In the events described above Defendants failed to provide Plaintiff with reasonable accommodations for a disability, resulting in permanent injuries.

63.) As a result of this neglectful, reckless, and/or intentional conduct, Plaintiff has lost the use of his back, neck, and kidneys.

## STATEMENT ON COMPLIANCE WITH NOTICE OF TORT CLAIM RULES

64.) On or about December 19, 2017, Plaintiff, or his then-counsel, Jean Ross, filed a Notice of Tort Claim seeking $100,000 for the injuries sustained in the fall.

65.) Plaintiff filed a notice of tort claim on Rutgers University for its negligence on August 18, 2020.

## CLASS ALLEGATIONS

66.) The gap in Plaintiff's chronic care medication is not an isolated incident.

67.) Every day, in every prison run by the New Jersey Department of Corrections, inmates are left with empty bottles of prescription medications for serious chronic problems such as heart disease, diabetes, high blood pressure, pain management, and psychiatric disorders.

68.) Inmates wait days and weeks while UCHC refills prescriptions that it knows inmates are in peril without.

69.) These gaps in prescription refills have been recognized as unacceptable by UCHC employees.

70.) Yet UCHC does nothing to remedy this life-endangering problem.

71.) Plaintiff's kidney failure is not an isolated event.

72.) Other inmates have suffered injury and death as a result of UCHC's callous disregard of this problem.

73.) On information and belief, the callous disregard is actually a calculated effort to cut costs.

## FIRST CLAIM FOR RELIEF
## 42 U.SC. § 1983 – EIGHTH AMENDMENT – DELIBERATE DIFFERNECE TO INMATE SAFETY –AGAINST GEORGE ROBINSON, SGT. GIBSON, S.C.O. JOHN DOE, and DOC JOHN DOES 1-20

74.) The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

75.) Defendant New Jersey Department of Corrections, by and through their Administrator George Robinson and DOC John Does 1-20, who are other policymakers, developed policies, procedures and/or customs which caused the deprivation of Plaintiff, Edwin Polynice's constitutional rights.

76.) Said policies were inherently deficient, or inappropriate as formulated, as to the adherence of mandated medical care provided to an inmate that presented with documented medical issues.

77.) Defendant New Jersey Department of Corrections, by and through Defendant Administrator George Robinson and DOC John Does 1-20, who are other policymakers, recklessly, and/or intentionally and/or with deliberate indifference to inmate safety:

a. failed to properly train and supervise Defendant Sergeant Gibson and Defendant S.C.O. John Doe with regard to adequately assessing, monitoring and providing necessary and reasonable accommodations for inmates with medical issues, including but not limited to inmates with documented medical restrictions and

b. failed to properly train and supervise Defendant Sergeant Gibson and Defendant S.C.O. John Doe, or other prison staff to maintain a safe and suitable environment, and to keep inmates safe from injury or serious harm.

c. maintained policies, procedures and/or customs that were deliberately indifferent to the constitutional rights of inmates to be adequately screened for medical issues, to provide necessary and reasonable accommodations for inmates with medical issues; and to be kept safe from injury or serious harm;

d.  failed to enforce the contractual obligations of UCHC to monitor and treat inmates with medical issues, including but not limited to inmates with documented medical restrictions.

e.  with full knowledge, allowed institutional policies and procedures regarding intake, medical screening, custodial watch and medical treatment to be ignored and violated with reckless abandon; and

f.  failed to provide adequate and needed health care for inmates at the Detention Unit of the Northern State Prison.

78.) The actions and/or failures to act by Defendant, New Jersey Department of Corrections, Defendant Administrator George Robinson, Defendant Sergeant Gibson and Defendant S.C.O. John Doe, as illustrated above, amounted to a deliberate indifference of Mr. Polynice's constitutional rights and proximately caused his injuries.

79.) The violation of Mr. Polynice's rights under the United States Constitution was the proximate cause of damages to Plaintiff, thereby entitling Plaintiff to compensatory damages from Defendants, Administrator George Robinson, Sergeant Gibson, and S.C.O. John Doe in an amount exceeding $1,000,000.00.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## SECOND CLAIM FOR RELIEF
## NEGLIGENCE AGAINST ALL DOC DEFENDANTS

80.) If not reckless, intentional, or deliberately indifferent to inmate safety, the decision to place Plaintiff in the top bunk was negligent.

81.) But for the exercise of due care to listen to Plaintiff's truthful pleading that he was bottom-bunk restricted due to his health issues, Plaintiff would not have suffered permanent injuries.

82.) Had Defendants exercised due care, they would have placed Plaintiff in a bottom bunk, and he would not have fallen even if he had an attack of low blood sugar.

83.) The failure to exercise due care proximately resulted in Plaintiff's permanent injuries.

84.) The failure to exercise due care was the fault of S.C.O. John Doe, Sergeant Gibson, John Does 1-20, and/or George Robinson.

85.) The Department of Corrections is liable on the theory of respondeat superior for the negligence of its employees.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## THIRD CLAIM FOR RELIEF
### NEW JERSEY LAW AGAINST DISCRIMINATION – FAILURE TO ACCOMMODATE A DISABILITY AGAINST DOC DEFENDANTS

86.) Plaintiff was a person with a disability, namely his diabetes and his Achilles tendon tear.

87.) The New Jersey Law Against Discrimination entitles Plaintiff to reasonable accommodations that would give him a safe place to sleep.

88.) Department of Corrections Defendants denied Plaintiff access to a bottom bunk.

89.) This denial caused Plaintiff permanent injuries.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## FOURTH CLAIM FOR RELIEF
### AMERICANS WITH DISABILITIES ACT
### AGAINST DOC DEFENDANTS

90.) Plaintiff was a qualified person with a disability, namely his diabetes and his Achilles tendon tear.

91.) One of the public programs, services, or activities of the prison is the provision of safe places to sleep.

92.) Plaintiff's disabilities could have been reasonably accommodated by the provision of a bottom bunk. This would have provided him with a safe place to sleep.

93.) Department of Corrections Defendants denied Plaintiff access to a bottom bunk.

94.) This denial caused Plaintiff permanent injuries.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## FIFTH CLAIM FOR RELIEF
## REHABILITATION ACT

95.) Like the Americans with Disabilities Act, the Rehabilitation Act also requires prisons to provide inmates with disabilities reasonable accommodations so that they can access all the programs, services, and activities of the prison.

96.) The substantive standards for liability under the Rehabilitation Act are the same as under the Americans with Disabilities Act.

97.) The DOC Defendants are liable to Plaintiff under the Rehabilitation Act based upon the same facts recited in the Fourth Claim for Relief above.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

## SIXTH CLAIM FOR RELIEF
## NEGLIGENT TRAINING AND SUPERVISION AGAINST NEW JERSEY DEPARTMENT OF CORRECTIONS

98.) DOC John Does 1-20 and/or Sergeant Gibson had a duty to train SCO John Doe and/or Sergeant Gibson in the proper handling of prisoners with disabilities, especially disabilities that might not be visible.

99.) DOC John Does 1-20 and/or Sergeant Gibson failed to train SCO John Doe and/or Sergeant Gibson in the proper handling of prisoners with disabilities, especially disabilities that might not be visible.

100.) Bur for this failure to train, Plaintiff would not have sustained his permanent injuries.

101.) DOC John Does 1-20 and/or Sergeant Gibson had a duty to supervise the transfer of Plaintiff from his bottom bunk to cell 104.

102.) DOC John Does 1-20 and/or Sergeant Gibson failed to properly supervise the transfer of Plaintiff from his bottom bunk to cell 104.

103.) Had the Defendants properly supervised Plaintiff's cell transfer he would have been assigned to a bottom bunk or else left in his original cell.

104.) But for the negligent failure to supervise Plaintiff's transfer out of his original cell, Plaintiff would not have sustained his permanent injuries.

105.) The Department of Corrections is liable *respondeat superior* for the negligent training and supervision of its staff.

## SEVENTH CLAIM FOR RELIEF
### NEGLIGENCE OF UNIVERSITY CORRECTIONAL HEALTH CARE

106.) Rutgers University – University Correctional Health Care and its employees had a duty to make sure that KOP (keep on person) prescriptions for chronic care inmates are promptly refilled such that inmates do not experience gaps in access to life-sustaining medications.

107.) UCHC and its employees were negligent and failed to make sure that Plaintiff did not suffer a gap in his coreg and clonidine.

108.) As a proximate result of UCHC's negligence, Plaintiff suffered kidney failure.

109.) UCHC has also been negligent with regard to all inmates who have suffered similar lapses in refill of life-sustaining prescription medications.

110.) UCHC's negligence has caused injury and death to inmates in all prisons run by the New Jersey Department of Corrections, and continues to place all class members' lives in jeopardy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

**WHEREFORE**, the class whom Plaintiff represents demands injunctive relief, along with counsel fees and costs of suit.

## EIGHTH CLAIM FOR RELIEF
## 42 U.S.C. § 1983 AGAINST SHERITA LATTIMORE-COLLIER, UCHC JOHN DOES 1-20, AND UCHC FOR DELIBERATE INDIFFERENCE IN VIOLATION OF THE EIGHTH AMENDMENT

111.) Gaps in prescription refill is chronic problem that plagues all of the prisons run by the New Jersey Department of Corrections.

112.) UCHC employees, including South Woods State Prison's Medical Director, Sherita Lattimore-Collier, and UCHC John Does 1-20, are well aware of the gaps occurring in prescription medication refills.

113.) Lattimore-Collier and UCHC John Does 1-20 refuse to do anything about the gaps in the refill of prescription medications out of callous disregard and deliberate indifference.

114.) In fact, Lattimore-Collier and UCHC John Does 1-20 do nothing because they are motivated by the practice's cost saving effects.

115.) The gaps in prescription refills is a policy, practice, or custom of UCHC.

116.) As such, UCHC is directly liable for the damages to Plaintiff and other class members.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and each of them, for compensatory and punitive damages, counsel fees, and all costs of suit.

**WHEREFORE**, the class whom Plaintiff represents demands injunctive relief, along with counsel fees and costs of suit.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

MICHAEL POREDA, ESQ.
*Attorney for Plaintiff*

Date: August 23, 2020

## NOTICE OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that Michael Poreda, Esq. is hereby designated as Trial Counsel in the above-captioned matter.

_____
Michael Poreda, Esq.
*Attorney for Plaintiff*

Date: August 23, 2020

## CERTIFICATION OF NO OTHER ACTION

Pursuant to Rule 4:5-1, it is hereby certified that to the best of my knowledge and belief, there are no other pending actions or proceedings involving the matter in controversy, none are contemplated, and I do not presently know the identity of any other party who should be joined.

_____
Michael Poreda, Esq.
*Attorney for Plaintiff*

Date: August 23, 2020