**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDWIN POLYNICE,<br><br>        *Plaintiff*,<br><br>vs.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, et al.,<br><br>        *Defendants*. | Docket No. 2:19-CV-16875-MCA-LDW<br><br>**Civil Action** |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR RELIEF FROM AN ORDER**

**By:**

**Michael Poreda, Esq.**
*Attorney for Plaintiff*

I.      THE AMENDMENTS DO RELATE BACK.

There are two questions in deciding whether to permit the amendment. First, there is the question of whether the proposed amendments "relate back" under Rule 15(c). The amendments relate back in two possible ways. Second, there is the question of whether to permit the amendment at all under Rule 15(a). It should be permitted.

   a. The Amendment Relates Back Under Rule 15(c)(1)(A).

Rule 15(c) has three prongs. Each prong is a possible way that a proposed amendment may relate back. Two of the prongs apply here. Defendants suggest on page 16 of their opposition that a plaintiff must meet all three prongs in order to relate back. This is false. Rule 15 (c) uses the conjunction, "or" to connect the three prongs not "and," as the Defendants use in their interpretation of the Rule on Page 16 of their brief. To be clear, Rule 15(c) says that:

(c) RELATION BACK OF AMENDMENTS.
   (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
      (A) the law that provides the applicable statute of limitations allows relation back;
      (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; **or**
      (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
         (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
         (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.
   Prong B admittedly doesn't apply because this only relates to causes of action and not the addition of new parties. However, Plaintiff's amendments relate back under Prongs A and C.

With regards to Prong A, the statute of limitations has not run as to Rutgers or Fedai, but for two different reasons. The statute of limitations does not bar suit against Rutgers due to New Jersey's fictitious party practice rules, and it does not bar suit against Fedai due to the discovery rule.

### i. Rutgers – Fictitious Party Practice

The statute of limitations has not barred the case as to Rutgers or Fedai because of New Jersey's fictitious party practice rule, Rule 4:26–4. Rule 15(c)(1) was amended to make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law which will, generally, be state law. § 10:28.Pleadings and service—Amended and supplemental pleadings, 20 N.J. Prac., Skills And Methods § 10:28 (3d ed.). Where, as here, federal jurisdiction is based on a federal question, the reference may be to the law of the state governing relations between the parties. *Id.* (citing *Board of Regents of University of State of N.Y. v. Tomanio*, 446 U.S. 478 (1980)).

N.J. Ct. R. 4:26-4 provides that where a "defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name." Where "a defendant is sued in a fictitious name because of the plaintiff's inability to ascertain his identity despite diligent efforts, the complaint may be amended after the statute of limitations has run to substitute the defendant's true name and effect service on him, particularly where the defendant can show neither prejudice resulting from nor reliance upon the lapse of time." Comment to N.J.Ct.R. 4:26–4 (S. Pressler ed. 1992) (citing Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 299 A.2d 394 (1973), and Stegmeier v. St. Elizabeth Hosp., 239 N.J. Super. 475, 484–86 (App. Div. 1990)). "Thus, New Jersey law does provide a mechanism by which the name of a

party not known to a plaintiff at the time of instituting a suit may be substituted for a fictitious name after the running of the statute provided that the description of the fictitious defendant was sufficient to identify it." Bryan v. Associated Container Transp. (A.C.T.), 837 F. Supp. 633, 643 (D.N.J. 1993). "It is evident that . . . an injured party who does not know the specific identity of the alleged wrongdoer is protected . . . by New Jersey's allowance of fictitious party practice under Rule 4:26–4. Thus, a party who knows that he or she has been injured and knows that the injury is the fault of another, but who does not know the identity of the party potentially at fault, can avoid the harsh result the statute of limitations otherwise would impose by naming fictitious "John Doe" defendants." Amland Properties Corp. v. Aluminum Co. of Am., 808 F. Supp. 1187, 1192 (D.N.J. 1992).

In this case, Plaintiff could not reasonably have known that Rutgers or Fedai were the actual providers of medical services within the Department of Corrections. Rutgers intentionally does not make it readily known that it provides prisoners medical services and does not identify its individual providers. As your honor surely knows, prison medical systems operate on a backwards economic model where money is made by withholding services rather than by providing them. Thus inadequate care is rampant, and it serves the interests of Rutgers to keep its identity and the identity of its providers secret from prisoners. It can then try to rely upon technicalities like the statute of limitations to avoid liability for a system of "care" that is designed to fail.

The drafters of the original Complaint made the identity of Rutgers and Fedai clearly discernable from their description. They noted that they were suing the corporate entity that managed the health services unit at Northern State Prison, which is, once the Department of Corrections's corporate shell game is uncovered, unambiguously, Rutgers University –

University Correctional Health Care. They also named John Doe healthcare providers who were responsible for Plaintiff's injuries.

### ii. Fedai – Discovery Rule

As for Latifa Fedai, the statute of limitations has not passed because the statute of limitations period did not begin to accrue until the Plaintiff become aware of what Fedai had done to him. Under the "discovery rule," a cause of action does not accrue . . . until a plaintiff is aware that he or she is injured *and* that the injury is due to the fault or neglect of an identifiable defendant against whom the action can be brought." Amland Properties Corp. v. Aluminum Co. of Am., 808 F. Supp. 1187, 1191 (D.N.J. 1992).

Under the discovery rule, a cause of action does not "accrue," for the purpose of the statute of limitations "until the plaintiff 'learns, or reasonably should learn, the existence of that *state of facts* which may equate in law with a cause of action." Vispisiano v. Ashland Chemical Co., 107 N.J. 416, 426 (1987) (quoting Burd v. New Jersey Telephone Co., 76 N.J. 284, 291 (1978)); see also Apgar v. Lederle Laboratories, 123 N.J. 450, 455 (1991). "The discovery rule allows the plaintiff to amend his complaint after the limitations period has run, even if the defendant did not have notice of the action within the statutory time limit." Love v. Rancocas Hosp., 270 F. Supp. 2d 576, 582 (D.N.J. 2003) (citing See Viviano v. CBS, Inc., 101 N.J. 538, 548, 503 A.2d 296 (1986)).

In this case, Plaintiff was unaware that Fedai might be responsible for his fall. He thought he had a bottom bunk restriction and that correctional officers refused to allow him to use it. After reviewing the medical record that was diligently obtained before the commencement of formal discovery, it was discovered that when Plaintiff was moved from New Jersey State Prison to Northern State Prison, that Latifa Fedai decided he didn't qualify for a

bottom bunk restriction. Thus, pursuant to the discovery rule, the statute of limitations against Fedai only began to run at the time Plaintiff obtained and reviewed his medical record, which was in late 2020.

### b. The Amendment Also Relates Back under Rule 15(c)(1)(C)

An amendment to add a party can relate back notwithstanding the statute of limitations under Rule 15(c)(1)(C). There are three essential requirements for this kind of relation back: (1) that the allegations arise out of the same occurrence complained of in the original complaint; (2) within a period permitted for the serving of the complaint (which is an extendable 90 days), the newly added Defendant has enough notice such that it isn't prejudiced; and (3) but for the Plaintiff's mistaken identity of the Defendant, the Defendant would have known of its liability.

Regarding the first requirement, there's no question that Rutgers's failure to diagnose and treat was alleged in the original Complaint. Therefore, the Plaintiff meets the first requirement.

Regarding the third requirement, anyone reading the original Complaint who knew that Rutgers staffed the medical unit at Department of Corrections prisons would know that the Plaintiff meant to plead a cause of action for failure to diagnose and treat against Rutgers.

Regarding the second requirement, the language of Rule 15(c)(1)(C) says that an amendment changing the name of the party must be made "within the period provided by Rule 4(m) for serving the summons and complaint." While this period is 90 days[1] by default, it is extendable. See F.R.C.P. 4(m) ("If a defendant is not served within **90** days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But

---

[1] The time period was previously 120 days, but Rule 15 was amended in 2015 to permit an extendable 90 day period. Brandon J. Held, Robert C. Graham, Jr., Fidelity Law and the 2015 Amendments to the Federal Rules of Civil Procedure, 22 Fidelity L.J. 223 (2016).

if the plaintiffs show good cause for the failure, the court must extend the time for service for an appropriate period."). The choice of whether or not to extend the time depends upon the post-filing conduct of the Plaintiff. Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 554, 130 S. Ct. 2485, 2497, 177 L. Ed. 2d 48 (2010). In this case, Plaintiff's post-filing conduct has been scrupulously diligent. The seemingly long delay has nothing to do with Plaintiff's conduct. The majority of the delay has to do with Defendants immediately filing a motion to dismiss in October 2019, which wasn't returned until the end of May 2020. The motion to dismiss essentially froze the progress of the case for seven months. Due to the court's technical problems with PACER, I wasn't notified until July about the decision, and the following month, I served Rutgers with extensive amendments to the case, which have been the source of negotiation for almost a year. This sequence of events demonstrates good cause for an extension of the 90 period.

### c. There is no basis for denying the Amendment under Rule 15(a).

To cite the Defendants' recitation of the law (Opposition Brief at 15):

> Under Rule 15(a), "prejudice to the non-moving party is the touchstone for denial of an amendment." Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978). Absent substantial or undue prejudice, denial "must be based on bad faith or dilatory motives, undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of the amendment." Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993). "Delay alone is not sufficient to justify denial of leave to amend." Arthur, 434 F.3d at 204 (citing Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984)).

Here, Plaintiff's delay was not at all undue. The delay is due to the lack of transparency about healthcare within the Department of Corrections. Plaintiff attempted to amend the Complaint within a few weeks of learning that it had survived a motion to dismiss, and the months that have elapsed occurred amid constant communication between all the parties about

the merits of the amendment. The addition of Fedai was proposed within a month of the discovery of her liability. Moreover, Defendants have not articulated any prejudice suffered as a result of the delays.

## II. THERE IS NO REQUIREMENT THAT PLAINTIFF FILE MULTIPLE TORT CLAIM NOTICES FOR THE SAME ACCIDENT.

It is uncontested that Plaintiff did file a Tort Claim Notice. There is no requirement in the law that Plaintiff has to file multiple Tort Claim Notices for one accident. This would be especially absurd to entertain where, as here, the Department of Corrections, which is one arm of the state, and Rutgers University, which is a second arm of the state, merged in a way such that Rutgers was the agent and employee of the Department of Corrections.

As for Ms. Fedai or Rutgers not being mentioned in the first tort claim notice, this is irrelevant because they were both agents of the Department of Corrections. N.J.S.A. 59:8–10(c) provides that "[s]ervice of the notice required by this chapter upon the public entity shall constitute constructive service upon **any employee** of that entity." Under basic agency principles, Fedai and Rutgers University – University Correctional Health Care are employees or agents of the Department of Corrections.

Basic agency principles dictate that a master must accept liability for the torts of its agents. Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1435 (3d Cir. 1994). "An agent is a person who represents another in contractual negotiations or transactions akin thereto. A servant is a person who is employed to perform personal services for another in his affairs, and who, in respect to his physical movements in the performance of the service, is subject to the other's control or right of control. Persons who render service but retain control over the manner of doing it are not servants." Id.

In a prison, every act of the individual medical providers are physically controlled by the Department of Corrections. As for Rutgers, even University Correctional Health Care's website admits that it operates "under the supervision" of the Department of Corrections and that it has no function other than to be the medical agent for the Department of Corrections and two other related agencies. [2]

If Rutgers had held itself out as a separate entity, then the original filer of the Complaint would have named Rutgers. Rutgers hides itself so well among the Department of Corrections that medical records don't even say "Rutgers" on them; only the name of the prison appears.

### III. IN THE ALTERNATIVE, THE PROPOSED AMENDED COMPLAINTS CIRCULATED IN AUGUST 2020 AND DECEMBER 2020 SHOULD CONSTITUTE SUBSTANTIAL COMPLIANCE.

To the extent that the Original Tort Claim was inadequate as to Rutgers or Fedai, I placed Rutgers on notice of the claims against it by submitting a proposed amendment to Rutgers on August 23, 2021. [See Exhibit C and ECF. No. 22]. As for Fedai, a proposed amendment naming her liability was circulated in December 2020. To the extent this is late notice, Plaintiff asks the court permission to file a motion to have that count as a late notice of claim.

Plaintiff acknowledges that "a claimant may not bring an action against a public entity under the TCA unless he complies with its notice requirements." Salah v. Gilson, No. A-3617-11T2, 2013 WL 1688379, at *6–8 (N.J. Super. Ct. App. Div. Apr. 19, 2013) (citing N.J.S.A. 59:8–3, 59:8–4 and 59:8–8). But the notice requirement is not ironclad. It is subject to a substantial compliance doctrine. Substantial compliance "means that the notice has been given in a way,

---

[2] "Established in 2005 through inter-State agency agreements, University Correctional Health Care (UCHC) and its staff of mental health professionals provide mental health and sex offender specific treatment services to the inmates, residents and parolees under the supervision of the New Jersey Department of Corrections (NJDOC), the Juvenile Justice Commission (JJC) and the New Jersey State Parole Board (SPB)." https://ubhc.rutgers.edu/clinical/uchc/overview.xml

which though technically defective, substantially satisfies the purposes for which notices of claims are required." Lebron v. Sanchez, 407 N.J. Super. 204, 216 (App. Div. 2009). The purpose of the notice to the public entity defendant is: (1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense[;] (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) to inform the [public entity] in advance as to the indebtedness or liability that it may be expected to meet. Beauchamp v. Amedio, 164 N.J. 111, 121-22 (2000). The TCA provides that "[n]o action shall be brought against a public entity or public employee ... unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. 59:8–3. The claim must be filed not later than the ninetieth day after the accrual of the cause of action, N.J.S.A. 59:8–8, and it must contain the following information: (1) the name and address of the claimant and the address(es) to which notice should be sent; (2) the date, location, and circumstances of the occurrence or transaction which gave rise to the claim; (3) a description of the injury or damages claimed; (4) the name(s) of the public entity or employee involved; and (5) the amount claimed. N.J.S.A. 59:8–4. The doctrine of substantial compliance serves "the purpose of alleviating the hardship and unjust consequences which attend technical defeats of otherwise valid claims." Anske v. Borough of Palisades Park, 139 N.J. Super. 342, 347 (App.Div.1976).

    The Original Tort Claim explained everything that was needed for Rutgers to investigate the accident and the subsequent treatment of Mr. Polynice. Within 90 days of the accident, Defendants knew what happened to Mr. Polynice thanks to the filing of the Tort Claim Notice. In

the Tort Claim Notice, he alleged to have been assigned a bottom bunk, and that the bottom bunk restriction was ignored by the correctional officers. Now the truth seems that Mr. Polynice's right to the bottom bunk had been taken away by Fedai, but that is a fact Defendants could have discerned sooner than Polynice, as Defendants were the ones in control of Polynice's medical records. Defendants also knew about Polynice's injuries, including ongoing "headaches as a result of head trauma." If the Defendants had any real interest in investigating and remediating the problem, they could have interviewed Mr. Polynice and learned that the condition was not being treated appropriately as the months rolled on past the accident. If the Defendants had any real interest in Plaintiff's health, which his complaint about ongoing headaches should have triggered, Rutgers staff would have been sent to look at Plaintiff and evaluate liability.

To the extent that the information in the original Tort Claim Notice was not sufficient, a more detailed set of allegation about Mr. Polynice's accident and subsequent mistreatment was mailed to Rutgers on August 23, 2021. Rutgers promptly turned the case over to an attorney. Rutgers has had six months to remediate the situation, and has rejected an offer by Mr. Polynice to settle both this case and the case involving his kidney failure. Therefore, all the purposes of the Tort Claims Act have been served, and substantial compliance should be deemed as having been met. Any protestation that Rutgers didn't have adequate pre-suit notice is laughably insincere.

### IV. IN THE ALTERNATIVE, THE PLAINTIFF HAS SHOWN EXTRAORDINARY CIRCUMSTANCES WARRANTING LEAVE TO FILE A MOTION TO FOR A LATE TORT CLAIM NOTICE.

The Tort Claims Act permits the late filing of Tort Claims Notices with leave of court. N.J.S.A. 59:8-9 states: "A claimant who fails to file notice of his claim within 90 days as

provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by Section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim."

In this case, the extraordinary circumstances include Plaintiff's actually filing a timely tort claim notice, the sharing of the two proposed amended Complaints with Rutgers within 90 days of accrual of the claims against them, as well as Rutgers obfuscating itself under the cloak of the Department of Corrections.  *See* § 27:16. New Jersey Tort Claims Act—Claims procedure, 35A N.J. Prac., Local Government Law § 27:16 (4th ed.) (citing Dunn v. Borough of Mountainside, 301 N.J. Super. 262, 693 A.2d 1248 (App. Div. 1997)) (noting that "when the conduct of a public agency has led to inability of a plaintiff to provide adequate notice, notwithstanding plaintiff's due diligence, the Supreme Court has permitted an amended filing beyond the jurisdictional time limits.").

## V.    THE TORT CLAIM NOTICE PROVISION HAS NO RELEVANCE TO THE DELIBERATE INDIFFERENCE CLAIM AGAINST FEDAI OR THE DISABILITY DISCRIMINATION CLAIMS AGAINS THE DEPARTMENT OF CORRECTIONS.

One of the proposed amendments is a claim against Fedai for deliberate indifference to a serious medical need, a Section 1983 claim.  The Tort Claim Notice requirement has no bearing

on this claim.  Additionally, the disability discrimination claims against the Department of Corrections in the proposed amendments are not subject to the Tort Claims Act.

.

                          Respectfully Submitted,

                          MICHAEL POREDA