UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN POLYNICE,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS,<br><br>Defendants. | Civil Action No. 19-16875 (MCA)<br><br><br>OPINION |

This matter has been opened to the Court by Administrator George Robinson's ("Defendant" or "Robinson") motion for summary judgment, brought pursuant to Fed. R. Civ. P. 56, seeking dismissal of Plaintiff Edwin O. Polynice's ("Polynice" or "Plaintiff") supervisory liability claims, which arise under 42 U.S.C. § 1983. For the reasons explained herein, the motion for summary judgment is granted as to Defendant Robinson.

I. **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

a. **Undisputed Facts**

Plaintiff Edwin Polynice was housed at South Woods State Prison ("SWSP") beginning in 2012. Defendant's Statement of Undisputed Material Facts ("SOMF") ¶ 1 (citing Ex. B, Excerpts of Deposition of Plaintiff at 10:17-22). On or around 2016, Plaintiff got into a physical fight with his bunkmate, which resulted in a transfer to Trenton State Prison for the disciplinary charge. SOMF ¶ 2 (citing Ex. B at 24:9-18). While at Trenton State Prison, Plaintiff requested a transfer to Northern State Prison ("NSP") to be closer to his family. SOMF ¶ 3 (citing Ex. B at 20-21). His subsequent transfer to NSP on or around 2017 is relevant to this lawsuit. SOMF ¶ 4 (citing Ex. A, Tort Claim Notice at ¶11; Ex. B. at 14:24-15:2).

1

At all times relevant to this lawsuit, Defendant George Robinson was the administrator at NSP. SOMF ¶ 6 (citing Ex. A at ¶12). Plaintiff alleges that the policies and/or procedures that violated his rights in this matter is N.J.A.C. 10A:31- 3.6 in that "a qualified inmate with a disability shall be housed in a manner that provides for his or her safety, security, and accessibility to facility programs and activities. Rooms sleeping units, or housing units shall be designed for use by qualified inmates with disabilities." SOMF ¶ 7 (citing Ex. C, Excerpt from Plaintiff's Answers to Defendants' First Interrogatories at ¶ 5).

Prior to his incarceration, in or around 2002, Plaintiff was diagnosed with Type 1 diabetes. SOMF ¶ 8 (citing Ex. B at 10:24-11:8). On or around 2012, prior to Plaintiff's placement in the custody of the New Jersey Department of Corrections ("DOC"), Plaintiff suffered an injury to his Achilles tendon. SOMF ¶ 9 (citing Exhibit B at 11:9- 24). Due to the Achilles tendon injury, Plaintiff went to prison with the boot on his foot. SOMF ¶ 10 (citing Ex B at 11:23-24).

While housed at SWSP, Plaintiff was bottom bunk restricted by a nurse. SOMF ¶ 11 (citing Ex B at 16:2-6, 23:25). The bottom bunk restriction was in the system allowing an officer to check that Plaintiff should solely be on the bottom bunk. SOMF ¶ 12 (citing Ex B at 18:4-19). At his deposition, Plaintiff testified that if an inmate did not have a bottom bunk restriction the officers could deny them the right to sleep on the bottom bunk because the officers always checked their paperwork. SOMF ¶ 13 (citing Ex B at 21-23). While at SWSP, however, Plaintiff had no problems receiving a bottom bunk assignment. SOMF ¶ 14 (citing Ex. B at 19:5-9; 28:6-11). While Plaintiff was in Trenton State Prison, he also had a bottom bunk. SOMF ¶ 15 (citing Ex. B at 26:13-18; 28:12-19).

2

"On January 24, 2017, Latifia (sic) Fedei (sic), APN revoked [Plaintiff's] bottom bunk restriction at Northern State Prison and did not provide Plaintiff with an explanation; instead, she gave a vague excuse that he didn't meet the standards. SOMF ¶ 16 (citing Ex. C, Excerpt from Plaintiff's Answers to Defendants' First Interrogatories at ¶ 2). It is undisputed that Latifa Fedai, APN is not an employee of the DOC. SOMF ¶ 17 (Ex. D, Excerpt from Defendant Answers to Plaintiff's Interrogatories at ¶12, 13). After Fedai revoked Plaintiff's bottom bunk restriction at NSP, he no longer received a bottom bunk assignment from January to September 2017. SOMF ¶ 18 (citing Ex. B at 33:6-19). It is undisputed that Plaintiff received a top bunk assignment because Fedai revoked his bottom bunk restriction. SOMF ¶ 30 (citing Ex. B at 53:25-54:3; 54:13-22).

After the revocation, Plaintiff received a top bunk assignment at Northern State Prison. SOMF ¶ 19 (citing Ex. B at 41:5-15). Plaintiff testified that he complained to doctors and nurses regarding his need for a bottom bunk restriction and that he complained in the kiosk at least five or ten times. SOMF ¶ 20 (citing Ex. B at 36:11- 37:3). Plaintiff does not remember when he filed a grievance about his bottom bunk revocation, but he remembers speaking to a Lieutenant, a high ranking officer, who informed him that the officers comply with whatever the nurse inputs. SOMF ¶¶ 21-22 (citing Ex. B at 29:10-30:9). The Lieutenant explained that the officers could not override the medical staff's recommendation. SOMF ¶ 23 (citing Ex. B at 33:22-34:5).

On or around September 22, 2017, Plaintiff had a physical fight with his "bunky" and was moved to cell 112 to await his disciplinary hearing. SOMF ¶ 24 (citing Ex. B at 34:6-15). On or around September 30, 2017, Plaintiff was moved to cell 104. SOMF ¶ 25 (citing Ex. A at ¶21). On or around October 1, 2017, Plaintiff experienced dizziness due to low blood sugar and fell off the top bunk in cell 104. SOMF ¶ 26 (citing Ex. B at 50:17-51:3). A medical Code 53

3

was called, and Plaintiff was taken to the infirmary where he received 13 stitches for his injuries. SOMF ¶¶ 26-27 (citing Ex. B at 48:31-25; 50:17-51:3). Since the incident, Plaintiff reports headache, neck, and back pain. SOMF ¶ 28 (citing Ex. B at 53:11-17).

After the October 1, 2017 incident, the medical staff placed a bottom bunk restriction into the system, and Plaintiff continued to have a bottom bunk until his release from incarceration. SOMF ¶ 29 (Ex. B at 53:21-24). Once medical staff reinstated the bottom bunk restriction, Plaintiff always received a bottom bunk. SOMF ¶ 31 (citing Ex. B at 56:8-23). On or about November 4, 2020, Plaintiff was released from NJDOC's custody. SOMF ¶ 5 (citing Ex. B at 57:9-11).

### a. Procedural History

On August 19, 2019, Plaintiff filed his initial complaint in the United States District Court, Newark Vicinage asserting civil rights claims pursuant to 42 U.S.C. § 1983 and negligence claims pursuant to the New Jersey Tort Claims Act ("NJTCA") against the NJDOC, Northern State Prison, Administrator George Robinson and Sergeant Gibson.[1] (ECF No. 1). Defendants NJDOC and Robinson then moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 9. On May 28, 2020, the Court granted the motion to dismiss in part and denied it in part. The Court denied the motion to dismiss with respect to the § 1983 supervisory liability claim against Administrator George Robinson in his personal capacity premised on policymaking and failure to train or supervise. *See* ECF Nos. 14, 15. The Court otherwise granted the motion to dismiss as to NJDOC and Robinson.

---

[1] Defendant Sergeant Gibson was never served, and Defendant Robinson represents that he has not been identified as an employee of Northern State Prison. *See* ECF No. 16, Defendant Robinson's Answer ¶55.

4

Defendant Robinson filed an answer to the complaint on the remaining supervisory liability claim on June 23, 2020, ECF No. 16, and discovery commenced.

On August 23, 2020, Plaintiff filed a motion to amend to add University Correctional Health ("UCHC"), Defendant Sherita Latimore-Collier, M.D., and John Doe Defendants and to add additional claims. ECF No. 22. UCHC opposed the motion to amend, and, on October 2, 2020, the Magistrate Judge terminated the motion to amend without prejudice. ECF Nos. 27, 31.

On May 26, 2021, Plaintiff filed a second motion to amend the Complaint seeking to add additional defendants, including UCHC and APN Latifa Fedai. ECF No. 44. UCHC and Robinson separately opposed the motion to amend. *See* ECF Nos. 46, 54. The Magistrate Judge denied the motion to amend on October 25, 2021. ECF No. 59.

Robinson filed the instant summary judgment motion on January 25, 2021. ECF No. 62. Plaintiff did not submit a brief opposing summary judgment and instead filed what he characterized as a "cross motion" to alter judgment under Rule 60, which seeks relief from the Magistrate's October 25, 2021 Order denying his motion to amend. *See* ECF No. 63. Thereafter, the Magistrate Judge entered a text order stating that Plaintiff's motion to alter judgment "does not respond to defendant Robinson's pending motion for summary judgment or affirmatively seek summary judgment on the claim against Robinson, it will be treated as a separate motion and not a cross motion."[2] *See* ECF No. 65.

The motion for summary judgment is ready for disposition.

---

[2] This Court agrees that the motion to alter judgment does not respond to the summary judgment motion. The Court will resolve the motion to alter judgment by separate Opinion and Order.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 447 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex*, 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg.*, Inc., 243 F.3d 130, 138 (3d Cir. 2001).

The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Thus, there can be "no genuine issue as to any material fact," if a party fails "to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992). Finally, where a motion for summary judgment is unopposed, "the court still must find for itself that there is no genuine dispute of material fact and that the movant deserves judgment as a matter of law." *United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021) (citing Fed. R. Civ. P. 56(a)); *see also Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990).

### III. ANALYSIS

Defendant Robinson has moved for summary judgment on Plaintiff's § 1983 supervisory liability claim in connection with the revocation of Plaintiff's bunk restriction and his subsequent injury. The Eight Amendment protects prisoners from the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. To prevail on any Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively, "sufficiently serious;" and (2) "a sufficiently culpable state of mind" of the defendant official. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official acts with deliberate indifference to an inmate's serious medical need when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." *Farmer*, 511 U.S. at 837. Courts have generally viewed claims involving the failure to assign a proper bunk to accommodate an inmate's medical needs through the lens of the Eighth Amendment's prohibition on cruel and unusual punishment. *See, e.g., Glazewski v. Corzine*, 385 F. App'x 83, 89 (3d Cir. 2010) (treating allegations of being

given a top bunk as part of a conditions of confinement claim); *Little v. Ebbert*, No. 1:17-CV-01915, 2018 WL 6504201, at *4 (M.D. Pa. Dec. 11, 2018) (same).

To succeed on an Eighth Amendment conditions of confinement claim, a plaintiff must demonstrate both an objective element – that the deprivation was sufficiently serious, and a subjective element – that the prison officials acted with a sufficiently culpable mind. *Wilson v. Seiter*, 501 U.S. 294 (1991). Prison conditions may objectively violate the Eighth Amendment proscription against cruel and unusual punishment when inmates are deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Such necessities include food, clothing, shelter, medical care and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). "Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard[.]" *Wilson*, 501 U.S. at 303.

Because deliberate indifference is a subjective standard, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). It is not sufficient that the official should have known of the risk. *Id.* at 133. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

The deliberate indifference standard also applies to Eighth Amendment supervisor liability claims brought pursuant to § 1983. It is "well-recognized that '[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of

respondeat superior.'" *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (alteration in original) (citing *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012)), judgment rev'd on other grounds sub nom. *Taylor v. Barkes*, 575 U.S. 822 (2015). Rather, because "state actors are liable only for their own unconstitutional conduct," a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *Id.; see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In light of the personal involvement requirement in § 1983 actions, the Third Circuit has "identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes*, 766 F.3d at 316. "First, liability may attach if a supervisor, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (alteration in original) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). Alternatively, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct." *A.M. ex rel. J.M.K.*, 372 F.3d at 586 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.")

Here, there is no evidence before the Court to suggest that Defendant Robinson was directly involved in the events at issue, i.e., that he participated in revoking Plaintiff's bunk restriction, directed others to revoke it, or knew that it had been denied improperly and failed to act. Therefore, Plaintiff's claim against Robinson turns on whether Robinson "established and

9

maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes*, 766 F.3d at 316.

The Third Circuit has developed a four-part test for determining whether an official may be held liable for deficient policies or a failure to train and/or supervise. *See id.* at 317. The test requires that a plaintiff: identify a supervisory policy or practice that the supervisor failed to employ, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. *Id.* (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Defendant Robinson contends, and Plaintiff does not dispute, that there is a policy at NSP in which prison officials follow medical professionals' recommendations regarding bunk restrictions within NSP's housing units. Plaintiff has not provided any evidence to suggest, however, that Robinson was aware that NSP's policies or procedures for providing bunk restrictions created unreasonable risk of harm to Plaintiff in particular or to inmates generally. Nor is there any evidence that Robinson was indifferent to a serious risk of harm in connection with such policies, or that the Plaintiff's injury was caused by the failure to implement a supervisory policy or procedure <u>or</u> by a failure to supervise or train. Instead, the evidence at summary judgment indicates that Fedai revoked Plaintiff's bunk restriction, and corrections officers denied him a lower bunk based on the paperwork on file.[3]

---

[3] Although Defendant Robinson asks the Court to find that his subordinates did not act with deliberate indifference, the Court need not and does not address whether the corrections officers who refused to provide Plaintiff with a lower bunk acted with deliberate indifference.

10

Robinson also argues that the Court should grant summary judgment on Plaintiff's supervisor liability claim because Robinson is not a medical expert and cannot be charged with deliberate indifference. *See* Robinson's Brief at 9-10. Defendant Robinson relies on *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (holding that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."). The Court need not decide whether *Spruill* is applicable because there is no evidence that Robinson acted with deliberate indifference in his role as a supervisor. There is no evidence before the Court, for instance, that Robinson knew that medical personnel or prison staff were improperly denying prisoners bottom bunk restrictions or that there was a pattern of prior incidents or injuries sufficient to put Robinson on notice of deficient policies and/or the need for additional supervision and training.

For all these reasons, summary judgment is granted to Defendant Robinson on the remaining § 1983 supervisory liability claim, and this matter shall be administratively terminated for docket management purposes pending the Court's resolution of Plaintiff's motion to alter judgment.

## IV. CONCLUSION

For the reasons explained in this Opinion, the Court grants summary judgment to Defendant Robinson. This matter shall be administratively terminated for docket management purposes pending the Court's resolution of Plaintiff's motion to alter judgment.

An appropriate order follows.

Madeline Cox Arleo, District Judge
United States District Court

DATED: August 31, 2022.