UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN POLYNICE,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS,<br><br>Defendants. | Civil Action No. 19-16875 (MCA)<br><br>MEMORANDUM OPINION |

This matter has been opened to the Court by Plaintiff's filing of a motion pursuant to Fed. R. Civ. P. 60(b), seeking relief from the Magistrate Judge's October 25, 2021 Order denying his Second Motion to Amend on the basis of undue delay. For the reasons explained in this Memorandum Opinion, the Court will deny the motion, enter judgment in favor of Defendant Robinson, and close this matter accordingly.

I.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On August 19, 2019, Plaintiff filed his initial complaint in the United States District Court, Newark Vicinage, asserting civil rights claims pursuant to 42 U.S.C. § 1983 and negligence claims pursuant to the New Jersey Tort Claims Act ("NJTCA") against the NJDOC, Northern State Prison, Administrator George Robinson and Sergeant Gibson. The Original Complaint was filed by Joseph D. Lento, Esquire. *See id.*

Plaintiff's Complaint arises from his fall from an upper bunk bed at Northern State Prison on October 1, 2017. On October 2, 2019, Defendants NJDOC and Robinson ("DOC Defendants") moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 9. On March 6, 2020, Plaintiff's current counsel, Michael Poreda,

1

Esquire, entered an appearance. *See* ECF No. 13. On May 28, 2020, the Court granted the motion to dismiss in part and denied it in part. The Court denied the motion to dismiss with respect to the § 1983 supervisory liability claim against Robinson in his personal capacity premised on policymaking and failure to train or supervise. *See* ECF Nos. 14, 15. The Court otherwise granted the motion to dismiss as to NJDOC and Robinson, including the dismissal of the NJTCA claims against the DOC Defendants for failure to allege that Plaintiff filed a Tort Claims Notice.

Plaintiff filed a motion to amend on or about August 23, 2020. *See* ECF No. 22. As in his Original Complaint, Plaintiff alleged that John Doe corrections officers ordered him to take a top bunk even after Plaintiff informed the officers that he had a bottom bunk pass. ECF No. 22-2, First Proposed Amended Complaint at ¶¶ 21-23. Plaintiff further alleged that the order to take the top bunk had come from a Sergeant Gibson. *See id.* at ¶¶ 26-27. In his First Proposed Amended Complaint, Plaintiff reasserted the negligence claims against the DOC Defendants and pleaded compliance with the NJTCA Tort Claims Notice requirements. *See* First Proposed Amended Complaint ¶¶ 64-65. Plaintiff also added ADA/Rehabilitation Claims against the DOC Defendants. *See id.* at ¶¶ 97-97.

The First Proposed Amended Complaint also included new and seemingly unrelated negligence claims against University Correctional Health Care ("UCHC") Defendants regarding the failure to refill Plaintiff's chronic care medication in July 2020, which resulted in Plaintiff's kidney failure. *See id.* at ¶¶ 37-56,106-10. The UCHC Defendants[1] opposed the motion to

---

[1] The motion to amend sought to add University Correctional Health ("UCHC") and Defendant Sherita Latimore-Collier, M.D.

2

amend, and, on October 2, 2020, the Magistrate Judge, the Honorable Leda D. Wettre ("Judge Wettre"), terminated the motion to amend without prejudice. ECF Nos. 27, 31.

In his Certification in support of the Rule 60(b) motion, Poreda avers that at the conference on October 2, 2020, he agreed to terminate the first motion to amend at the request of Judge Wettre in order to conduct pre-amendment discovery to name the unidentified parties and avoid unnecessary motion practice. *See* Certification of Michael Poreda, Esq. ("Poreda Cert.") ¶¶ 49-52.

Poreda further contends that it was not until the NJDOC provided Plaintiff's medical records in November 24, 2020,[2] that he learned that that Polynice's bottom bunk restriction had actually been revoked by Latifa Fedai, APN, before Plaintiff suffered his injury, which could account for the DOC's decision to place him on the top bunk.[3] *See* ECF No. 50, Reply at 6. Counsel states that he circulated a new motion to amend on December 17, 2020, which named Fedai, but the UCHC Defendants objected. *See* Poreda Cert. at ¶¶ 55-57.

On December 23, 2020, Poreda wrote Judge Wettre a letter asking, among other things, for the Court to schedule the filing of a motion to amend at the January 20, 2020 status conference, but the January 21, 2020 Scheduling Order did not schedule the motion to amend. Poreda Cert. ¶¶ 58-59 (citing Exhibit I).

On May 26, 2021, approximately six months after Poreda learned of Fedai's involvement in revoking the bunk pass and within the time provided by the Scheduling Order dated May 4,

---

[2] The Reply brief lists the date as November 24, 2021, but the year appears to be a typo given that the Reply Brief was filed on June 18, 2021.

[3] The First Proposed Amended Complaint did not include allegations that Latifa Fedai, APN or a John Doe or Unknown Person improperly revoked Plaintiff's bunk pass. Curiously, Poreda appears to contend that Plaintiff was not aware that his bottom bunk restriction had been revoked by Fedai, or anyone, and that he was under the belief that he still had the bottom bunk restriction, which contradicts his deposition testimony and Answers to Interrogatories. *See id.*

2021, Plaintiff filed a Second Motion to Amend. *See* ECF Nos. 43, 44. Plaintiff's Second Proposed Amended Complaint once again names NJDOC and Defendant Robinson as Defendants, as well as newly named Defendants UCHC, Latifa Fedai, APN, Defendant Sergeant Christopher Gibbons (previously misidentified as Sergeant Gibson), and correctional officers Ryan Molloy, Raymond Reyes, who were previously identified as John Does.[4] *See* Second Proposed Amended Complaint at ¶¶ 5-11.

The Second Proposed Amended Complaint provides the following relevant facts:

> 14.) Plaintiff is known to have diabetes, diabetic neuropathy in his feet as well as a history of a torn Achilles tendon. These disabilities substantially limit his activities of daily living, to wit, his ability to climb and jump.
>
> 15.) These are disabilities are therefore within the meaning of the New Jersey Law Against Discrimination, the Rehabilitation Act, and the Americans with Disabilities Act.
>
> 16.) Due to Plaintiff's disabilities, he was given a permanent bottom bunk restriction in 2013, when he arrived at South Woods State Prison.
>
> 17.) Plaintiff often experienced dizziness from fluctuations in blood sugar due to the diabetes. The bottom bunk restriction served to protect him during dizzy spells.
>
> 18.) In January 2017, he was transferred to Northern State Prison, after having spent several months in New Jersey State Prison.
>
> 19.) Plaintiff requested the continuation of his standing bottom bunk order.
>
> 20.) This was denied without genuine cause by Latifa Fedai, APN on January 24, 2017. This was supposedly based on Polynice "not meeting the requirements," however she never articulated the requirements to him, and future acts by UCHC employees would prove that this was a sadistic and deliberate lie.

---

[4] In his certification submitted with his Rule 60(b) motion, Plaintiff's counsel indicates "there were actually no substantive allegations against UCHC [in the Second Proposed Amended Complaint]. The only allegation related to Rutgers was the deliberate indifference against its employee, Latifa Fedai[.]" Poreda Certification at ¶ 76(d) n.1.

21.) Plaintiff formally grieved the denial of the bottom bunk through the kiosk system at Northern State Prison, but his grievance was either denied or not responded to.

22.) Plaintiff was nevertheless able to secure a bottom bunk informally.

23.) On September 30, 2017, Plaintiff was living in Delta Unit 1-E at Northern State Prison, assigned to a bottom bunk.

24.) For unknown reasons, on September 30, 2020, Plaintiff was told by a corrections officer, either Molloy or Reyes, to move out of his bottom bunk and move to cell 104 and sleep in a top bunk.

25.) Polynice told Molloy or Reyes that he needed to be on the bottom bunk due to his disabilities.

26.) When Molloy or Reyes protested that Polynice was no longer entitled to the accommodation, Polynice told him that the accommodation was for the remainder of his incarceration.

27.) Plaintiff's right to a safe place to sleep is clearly established law. N.J.A.C. 10A:31-3.6 states: "A qualified inmate with a disability shall be housed in a manner that provides for his or her safety, security and accessibility to facility programs or activities. Rooms, sleeping units, or housing units shall be designed for use by qualified inmates with disabilities."

28.) Following his explanation, Polynice was ordered to utilize the top bunk, in clear violation of DOC regulation, state law, and federal law.

29.) Molloy or Reyes reiterated that this order had come from Sergeant Gibbons.

30.) Polynice was compelled to follow the order.

31.) On October 1, 2017, at approximately 12:35pm, while attempting to dismount the top bunk to take a daily shower, Plaintiff Edwin Polynice became extremely dizzy from a drop in his blood sugar and fell.

32.) During this fall, Plaintiff, Edwin Polynice attempted to land on a stool, but slipped. He fell, striking his head on the toilet and his leg against the stool.

Second Proposed Amended Complaint ¶¶ 14-32.

In Count One of the Second Proposed Amended Complaint, Plaintiff asserts claims of deliberate indifference under the Eighth Amendment against Fedai for her failure to renew the

5

bottom bunk pass.  Count One provides incorporates the facts above and adds these additional facts about Fedai's refusal to renew Plaintiff's bottom bunk pass:

> 45.) When Latifa Fedai refused to give Plaintiff the bottom bunk that he requested, it was without genuine basis.
>
> 46.) Fedai knew that the Plaintiff had health conditions that rendered the top bunk dangerous. She nevertheless denied him the request without genuine reason, rendering the decision deliberatively indifferent.

Second Proposed Amended Complaint ¶¶ 45-46.

Count One also asserts deliberate indifference claims against Defendants Robinson in his supervisory capacity based on his failure to implement policies, procedures, and customs, and his failure to supervise and train his subordinates Gibson, Molloy, and Reyes.  *See* Second Proposed Amended Complaint ¶¶ 47-51.

In Count Two, Plaintiff pleads a negligence claim against all DOC Defendants.  *See* Second Proposed Amended Complaint at ¶¶ 52-57.  Relatedly, Count Six pleads a negligent training and supervision claim against the DOC Defendants.  *See* Proposed Amended Complaint at ¶¶ 70-77.  Plaintiff's Second Proposed Amended Complaint also pleads compliance with the New Jersey Tort Claims Act.  *See* Second Proposed Amended Complaint at ¶ 43 (On or about December 19, 2017, Plaintiff, or his then-counsel, Jean Ross, filed a Notice of Tort Claim seeking $100,000 for the injuries sustained in the fall.).

Count Three pleads a New Jersey Law Against Discrimination Claim ("New Jersey LAD") against the DOC Defendants, and Counts Four and Five plead ADA/Rehabilitation Act Claims against the DOC Defendants.  *See* Proposed Amended Complaint at ¶¶ 58-66.

After briefing, Judge Wettre denied the motion to amend on October 25, 2021, on the basis of undue delay, finding that Plaintiff had not adequately explained the delay in seeking to amend his Complaint to add new five new Defendants, given that he had seemingly abandoned

the prior motion to amend and agreed to proceed in discovery on a single claim against Robinson. *See* ECF No. 59 at 3-4. Judge Wettre also noted that the extensive amendments meant that new defendants would need to be served, obtain counsel, and take discovery, thus extending the resolution of a case that had been pending for more than two years. *See id.* at 4. Plaintiff did not appeal that determination to this Court within the time provided by L. Civ. R. 72.1.

Thereafter, pursuant to the Scheduling Order dated November 10, 2021, ECF No. 61, Defendant Robinson filed a motion for summary judgment on January 25, 2022. ECF No. 62. Plaintiff did not submit a brief opposing summary judgment and instead filed what he characterized as a "cross motion" to alter judgment under Rule 60, which sought relief from the Magistrate's October 25, 2021 Order denying his motion to amend. *See* ECF No. 63. Thereafter, the Judge Wettre entered a text order stating that Plaintiff's motion to alter judgment "does not respond to defendant Robinson's pending motion for summary judgment or affirmatively seek summary judgment on the claim against Robinson, it will be treated as a separate motion and not a cross motion." *See* ECF No. 65.

On August 31, 2022, this Court granted summary judgment to Defendant Robinson on Plaintiff's § 1983 supervisory liability claims and administratively terminated the matter pending the Court's resolution of the instant motion. *See* ECF Nos. 74-75.

## II. STANDARD OF REVIEW

Plaintiff brings his motion pursuant to Fed. R. Civ. P. 60(b) and seeks relief from the October 25, 2021 Order denying his Second Motion to Amend on the basis of undue delay. A court may relieve a party from a final judgment, order, or proceeding for any reason that justifies

relief. Fed. R. Civ. P. 60(b)(6).[5] A party must make such a motion within a reasonable time. Fed. R. Civ. P. 60(c)(1). As the Third Circuit explained in *Torres v. Chater*, 125 F.3d 166, 168 (3d Cir. 1997), Rule 60(b) applies only to "final" judgments, orders, and proceedings, so that "purely interlocutory" orders are "not within the scope of Rule 60(b)."[6] "Apart from Rule 60(b), the District Court has the inherent power to reconsider prior interlocutory orders," as long as it retains jurisdiction over the case. *State Nat'l Ins. Co. v. County of Camden*, 824 F.3d 399, 406 (3d Cir. 2016).

Once judgment has been entered, Rules 59 and 60 govern the opening of final judgments. *Ahmed v. Dragovich*, 297 F.3d 201, 207–08 (3d Cir. 2002). When a party requests post-judgment amendment of a pleading, a court will normally conjoin the Rule 60(b) and Rule 15(a) motions to decide them simultaneously, as it would be a needless formality for the court to grant the motion to reopen the judgment only to deny the motion for leave to amend. *S. Jersey Gas Co.*, 429 Fed. App'x. at 131 (internal citation and quotations omitted).

---

[5] Rule 60(b) applies when a motion is filed within one year following entry of a judgment. Rule 60(b) provides for relief from judgment based on "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct of an adverse party; (4) a void judgment; (5) the satisfaction, release or discharge of a judgment or inequity in the prospective application of the judgment; or (6) any other reason justifying relief from operation of the judgment." *Garland v. Malinich*, 181 F. App'x. 276, 278 (3d Cir. 2006). Plaintiff appears to rely on subsection six.

[6] Indeed, the Third Circuit has disapproved of the filing of Rule 60(b) motions prior to the entry of a final judgment. *See, e.g., State National Insurance Company v. Cnty. of Camden*, 824 F.3d 399, 406, 411 n.47 (3d Cir. 2016) ("Thus, because the underlying dismissal of Whiteside was not a 'final judgment, order, or proceeding,' State National's Rule 60(b)(6) motion was not a proper avenue by which to challenge her dismissal.") (We do not suggest that State National could never have sought Rule 60(b) relief—only that it could not do so before a "final judgment, order, or proceeding."). The Third Circuit suggests that Fed. R. Civ. P. 59(e) may be used to challenge a nonfinal order; however, a Rule 59 motion is timely when it is filed within twenty-eight days of the order or judgment for which reconsideration is sought. *State National Insurance Company*, 824 F.3d at 410. Plaintiff did not file a motion for reconsideration within 28 days of the decision he challenges.

Finally, motions to amend are government by Fed. R. Civ. P. 15(a). Pursuant to that Rule, leave to amend pleadings "shall be freely given when justice so requires." Leave shall be freely given in the absence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies in previous amendments, undue prejudice or futility of the amendment. *Foman v. Davis*, 371 U.S. 178 (1962). *See also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir.2004) ("[A]bsent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless 'denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.'") (quoting *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1196 (3d Cir.1994)).

### III.   ANALYSIS

From the outset, Plaintiff offers no explanation for why he did not appeal Judge Wettre's denial of his motion to amend. Under L. Civ. R. 72.1(c)(1), "[a]ny party may appeal from a Magistrate Judge's determination of a non-dispositive matter within 14 days after the party has been served with a copy of the Magistrate Judge's order[.]"[7] The Federal Magistrates Act of 1968 ("FMA") provides that a District Court reviewing a Magistrate Judge's decision on a non-dispositive motion may reverse a Magistrate Judge's determination if it is "clearly erroneous or contrary to law." *Id.* (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L.Civ.R. 72.1(c)(1)). When a Magistrate Judge's decision on a non-dispositive motion reaches legal conclusions, those legal conclusions are subject to a de novo review. *Id.* Plaintiff should have

---

[7] Where a motion for reargument of the matter pursuant to L.Civ.R. 7.1(i) has been timely filed and served, the time to appeal will begin to run when the parties are served with a copy of the Magistrate Judge's order rendering a determination on the merits of such a motion. *See id.*

filed an appeal of Jude Wettre's decision to this Court rather than wait for Defendants to seek summary judgment on the final remaining claim and seek relief under Rule 60.

In his motion for relief, Plaintiff argues that Judge Wettre erred when she denied his second motion to amend on the basis of undue delay and that his arguments for amending should be reviewed on the merits. As noted above, the Court has inherent authority to review its interlocutory orders.

The Court begins with the § 1983 deliberate indifference claim against Fedai. Plaintiff filed his motion to amend to add Fedai on May 26, 2021, which was well after the two-year statute of limitations on his § 1983 claims expired. Because the statute of limitations bars Plaintiff's proposed claims against Fedai, plaintiff cannot amend his Complaint unless it "relates back" to the date the original complaint was filed. Fed. R. Civ. P. 15(c) addresses when an amended pleading relates back to the date of a timely filed original pleading:

> (c) Relation Back of Amendments.
>
> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Plaintiff contends that amendment to add Fedai is permissible under Rule 15(c)(1)(A) and (c)(1)(C).

Plaintiff argues that the discovery rule is applicable to his deliberate indifference claim against Fedai and that New Jersey's fictitious party practice rules permit the substitution of Fedai/UCHC.

The Court disagrees that the discovery rule is applicable to Plaintiff's claims against Fedai. Federal law governs a cause of action's accrual date. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Under federal law, a claim accrues when the facts which support the claim reasonably should have become known to the plaintiff. *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (quoting *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001)); *see also Large v. County of Montgomery*, 307 F. App'x. 606, 606 (3d Cir. 2009). "The determination of the time at which a claim accrues is an objective inquiry; [courts] ask not what the plaintiff actually knew but what a reasonable person should have known." *Kach*, 589 F.3d at 634. Importantly, accrual is not tied to whether the potential claimant knew or should have known that the injury constitutes a legal wrong. *Giles v. City of Philadelphia*, 542 F. App'x. 121, 123 (3d Cir. 2013) (citing *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982)). Rather, "a cause of action accrues when the fact of injury and its connection to the defendant would be recognized by a reasonable person." *Kriss v. Fayette Cty.*, 827 F. Supp. 2d 477, 484 (W.D. Pa. 2011) aff'd, 504 F. App'x. 182 (3d Cir. 2012). Accordingly, "[a]s a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach*, 589 F.3d at 634.

In addition, state law, unless inconsistent with federal law, governs whether a limitations period should be tolled.[8] *See Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). Under New Jersey law, a statute of limitations can be tolled based upon equitable principles, such as the discovery rule. *Freeman v. State*, 347 N.J. Super. 11, 28 (N.J. App. Div. 2002). The discovery rule postpones accrual of a claim where a plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, [he is reasonably unaware] that it was the fault of an identifiable person." *See Caravaggio v. D'Agostini*, 166 N.J. 237, 246 (2001). "The question in a discovery rule case is whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another." *Caravaggio*, 166 N.J. at 246. In such a case, "the accrual of the claim will be postponed until the 'injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered[,] that he may have a basis for an actionable claim.'" *Dique*, 603 F.3d at 185 (quoting *Lopez v. Swyer*, 62 N.J. 267, 270 (1973)) (brackets in original); *see also Lapka v. Porter Hayden Co.*, 162 N.J. 545, 554 (2000). In other words, "[t]he discovery rule prevents the statute of limitations from running when injured parties reasonably are unaware that they have been injured, or, although aware of an injury, do not know that the injury is attributable to the fault of another." *Kendall v. Hoffman-La Roche, Inc.*, 209 N.J. 173, 191 (N.J. 2012) (quoting *Baird v. Am. Med. Optics*, 155 N.J. 54, 66 (N.J. 1998)). In circumstances where the relationship between a plaintiff's injury and defendant's fault is not self-evident, "it must be

---

[8] Under federal law, tolling is extraordinary relief that is appropriate only "in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum." *Lake v. Arnold*, 232 F.3d 360, 370, n. 9 (3d Cir. 2000).

shown that a reasonable person, in plaintiff's circumstances, would have been aware of such fault in order to bar her from invoking the discovery rule." *Kendall*, 209 N.J. at 192.

Here, Plaintiff seeks to delay the accrual of his claim against Fedai until November 2020, the date his counsel received Plaintiff's medical records showing that she revoked his bunk pass. This argument is misplaced because Plaintiff knew that he was injured at the time he fell out of the top bunk and that the injury was attributable to the fault of another. Plaintiff need not know the identity of every possible defendant, or even the correct one, for his Eighth Amendment claims to accrue. Indeed, the Complaint itself alleges that Fedai denied Plaintiff's request for a continuation of his bottom bunk order prior to his fall because he did allegedly not meet the requirements, and he grieved the revocation prior to his fall in October 2017:

> 18.) In January 2017, he was transferred to Northern State Prison, after having spent several months in New Jersey State Prison.
>
> 19.) Plaintiff requested the continuation of his standing bottom bunk order.
>
> 20.) This was denied without genuine cause by Latifa Fedai, APN on January 24, 2017. This was supposedly based on Polynice "not meeting the requirements," however she never articulated the requirements to him, and future acts by UCHC employees would prove that this was a sadistic and deliberate lie.
>
> 21.) Plaintiff formally grieved the denial of the bottom bunk through the kiosk system at Northern State Prison, but his grievance was either denied or not responded to.

*See* Second Proposed Amended Complaint at ¶¶ 18-21.

Moreover, Plaintiff is seeking relief from judgment under Rule 60(b) after the filing of a summary judgment motion, and his arguments ignore the evidence submitted by the DOC defendants at summary judgment. Plaintiff's deposition testimony and answers to interrogatories also show that he knew at or near the time of his injury in 2017 that Fedai or other medical personnel at Northern State Prison had revoked his bunk pass, that he unsuccessfully grieved the

13

revocation, and that corrections officers had to comply with whatever medical personnel entered into the system. Indeed, in his Answers to Interrogatories, Plaintiff stated the following:

> Edwin Polynice will testify that he was assigned a bottom bunk permanently in 2013 due to his uncontrollable high blood pressure, diabetes, diabetic neuropathy in his feet, as well as a torn Achilles tendon. These disabilities substantially limited his ability to climb and jump. He often experienced dizzy spells from fluctuations in blood sugar and from uncontrollable high blood pressure. On January 24, 2017, Latifa Fedai, APN revoked his bottom bunk restriction at Northern State Prison and didn't tell the Plaintiff why, except for a vague excuse that he didn't meet the standards.

ECF No. 62-3, Exhibit C, Plaintiff's Answer to Interrogatories at ¶ 2. Moreover, shortly after his accident, a doctor told Plaintiff there was no active bunk restriction in his chart:

> On October 2, 2017, Plaintiff told Dr. Connolly that he was supposed to have been assigned to the bottom bunk due to diabetes and Achilles tendon problems. She saw no active bottom bunk restriction in his chart. She agreed that he should have been in the bottom bunk and told him she would renew his bottom bunk restriction.

Given these circumstances, a reasonable person in Plaintiff's position would have known prior to the expiration of the statute of limitations that he was injured by the person who revoked his bottom bunk order. At the very least, Plaintiff should have pleaded a deliberate indifference and/or negligence claim in his Original Complaint against a John or Jane Doe defendant(s) who improperly revoked the bottom bunk order.[9]

---

[9] In his briefing, Plaintiff claims he originally thought that corrections officers improperly denied him a bottom bunk pass but later learned that Fedai had removed his bottom bunk restriction. This is inconsistent with the Plaintiff's Second Proposed Amended Complaint, his deposition testimony, and his Answers to Interrogatories. The Court appreciates the difficulty of representing an incarcerated plaintiff and acknowledges that Plaintiff may not have told his prior or current counsel all the facts from the outset of the case, and that counsel may not have known that Fedai revoked the bunk pass until November 2020. Nevertheless, Plaintiff's situation is not one where the discovery rule is applicable.

Plaintiff also contends his amendment is permissible to identify Fedai and/or UCHC, who he contends were previously misidentified in the Original Complaint. Once again, the Court disagrees. Civil rights claims may be asserted against fictitious defendants pursuant to New Jersey's fictitious defendant rule, which reads as follows:

> In any action, ... if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification.

N.J.R. 4:26–4. Thus, "[i]f a defendant is properly identified by a fictitious name before expiration of the applicable limitations period, an amended complaint substituting a fictitiously named defendant's true name will relate back to the date of filing of the original complaint." *Claypotch v. Heller*, Inc., 823 A.2d 844, 848 (N.J. Super. Ct. App. Div. 2003). The rule is unavailable "if a plaintiff should have known, by exercise of due diligence, [the] defendant's identity prior to the expiration of the statute of limitations." *Id.* "The fictitious party rule may be used only if the plaintiff exercised due diligence to ascertain the defendant's true name before and after filing the complaint." *DeRienzo v. Harvard Industries, Inc.*, 357 F.3d 348, 353 (3d Cir. 2004) (citing *Farrell v. Votator Div. of Chemetron Corp.*, 62 N.J. 111, 299 A.2d 394, 396 (1973)). The fictitious name designation also must have appended to it "an appropriate description sufficient to identify" the defendant. *Id.* (quoting *Rutkowski v. Liberty Mut. Ins. Co.*, 209 N.J. Super. 140, 506 A.2d 1302, 1306–07 (1986)).

Here, Plaintiff did <u>not</u> include a John or Jane Doe defendant who revoked his bottom bunk pass in his Original Complaint (or in his First Proposed Amended Complaint), and he has not shown that he was diligent in ascertaining the identity of Fedai (or UCHC) <u>before and after</u> filing the Complaint. *See, e.g., McGill v. John Does A-Z*, 541 F. App'x 225, 228 (3d Cir. 2013) (noting that the plaintiff's efforts to identify John Doe after filing complaint could not make up

15

for lack of diligence for four years before filing complaint). The passing reference to the medical department at Northern State Prison in the Original Complaint is insufficient to identify Fedai, and even if it were sufficient to identify UCHC, Plaintiff has not pleaded any claims for relief against this entity in his Second Proposed Amended Complaint.[10]

Plaintiff also argues that amendment is permissible under Rule 15(c)(1)(C). Relation back under this subsection is available if a proposed defendant received actual or constructive notice of the action within 90 days of the filing of a complaint. *Browning v. Safmarine, Inc.*, 287 F.R.D. 288, 290 (D.N.J. 2012) (citing Fed. R. Civ. P. 4(m)). The Rule also requires that the proposed defendant have actual or constructive knowledge that he or she would have been named but for a "mistake" on the part of the plaintiff.[11] *Id.*

Here, Plaintiff does not meet the notice requirement as to Fedai, who is the relevant Defendant. Rule 15(c)(1)(C)(i), the notice requirement, does not require that the newly named defendant receive notice of the original complaint by service of process; instead, "notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 195 (3d Cir. 2001). In the Third Circuit, notice can be actual or constructive. *Id.* The Third Circuit recognizes two methods of constructive notice. *Id.* at 196–97. The first is the "shared attorney" method which requires that

---

[10] Although the Second Proposed Amended Complaint names UCHC, there are no claims asserted against this entity and Plaintiff's counsel appears to acknowledge this fact in his certification.

[11] The Third Circuit construes the "mistake" requirement broadly to encompass "John Doe" amendments, as long as the other requirements of Rule 15(c) are satisfied. *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 175 (3d Cir.1977); *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 191 (3d Cir. 2001) (Rule 15(c)(1)(C) applies where a plaintiff seeks to replace a "John Doe" or "Unknown Person" with the name of a real defendant).

the newly named defendant share an attorney with one of the defendants named in the original complaint. *Id.* at 196. The second is the "identity of interest" method which requires that the parties be "so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* at 197 (quoting 6A Charles A. Wright et al., Federal Practice & Procedure § 1499, at 146 (2d ed. 1990)). Thus, in this case, to satisfy Rule 15(c)(1)(C)(i), Plaintiff must show that within the 90-day period after the filing of the Original Complaint, that is by November 17, 2019, Fedai received actual or constructive notice of his lawsuit. Plaintiff provides no evidence of actual or imputed notice within the 90-day period for either Fedai (or UCHC), and suggests instead that the 90-day period may be extended, which would defeat the purpose of the Rule.[12]

Because Plaintiff is unable to show that the deliberate indifference claims against Fedai relate back to the filing of the original complaint pursuant to Rules 15(c)(1)(A) or (C), Plaintiff's proposed amendment as to Fedai are untimely and, thus, futile.

Count One also asserts deliberate indifference claims against Robinson based on his failure to implement policies, procedures, and customs, and his failure to supervise and train his subordinates Gibson, Molloy, and Reyes.[13] The Court has already granted summary judgment to Defendant Robinson on this claim, and declines to revisit that determination.

The Second Proposed Amended Complaint also sought to bring an ADA/Rehabilitation Act claims against the DOC Defendants. The Court, however, agrees with the DOC Defendants

---

[12] The time period was previously 120 days, but Rule 15 was amended in 2015 to permit an extendable 90-day period.

[13] The Second Proposed Amended Complaint does not allege deliberate indifference claims against Gibson, Malloy, and Reyes, and even if it did, the conduct of these Defendants, as pleaded in the Amended Complaint, amounts to no more than negligence.

that Plaintiff fails to state a claim for relief under the ADA/Rehabilitation Act. The ADA and the Rehabilitation Act have the same standard for liability and are to be interpreted consistently. *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012). They prohibit federally funded state <u>programs</u> from discriminating against a disabled individual solely by reason of his or her disability. Enforcing regulations require public entities to "make reasonable modifications" to their programs and policies in order to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7). To state a claim under these Acts, a plaintiff must show (a) that he or she has a disability, (b) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, and (c) that such exclusion, denial of benefits, or discrimination was by reason of his or her disability. *See* 29 U.S.C. § 794; 42 U.S.C. § 12132.

To state a claim for relief, a plaintiff must allege that he or she has been denied participation in or access to a public entity's services, programs, or activities. In *Matthews v. Pennsylvania Dept. of Corrections*, 613 F. App'x. 163, 165–66 (3d Cir. 2015), for example, the plaintiff-prisoner was diagnosed and treated for Achilles tendinitis. *See id.* His treatment with several casts and crutches made it difficult for him to manage stairs and his top bunk, and he asked prison officials to recommend a reassignment to a bottom bunk or a bottom-tier cell and also requested a wheelchair. *Id.* These requests, however, were ignored or denied. *Id.* Like Plaintiff, Matthews subsequently fell from the top bunk of his cell and sustained injuries. *See id.* at 166.

In addition to § 1983 claims, Matthews alleged claims under the ADA/Rehabilitation Acts. Crucially, in his Complaint,

> Matthews allege[d] that his inability to descend the stairs safely limited his access to various programs and services. "[S]everal

> times" he was unable to use the phones, he "frequently missed meals due to his inability to reach the dining hall in time," and he "experienced diminished access" to the commissary, recreation, and religious services.

*Id.* at 166. In reversing the dismissal of the ADA/Rehabilitation claims, the Third Circuit held that "Matthews's complaint sufficiently alleges that he was deprived of public benefits that, with reasonable accommodation such as a lower bunk in a lower-tier cell, he would have been eligible to receive." *Id.* at 169. As further explained by the Third Circuit: "The provision of food was surely a benefit Matthews was entitled to receive. While the complaint is, again, non-specific about why and how often Matthews missed meals, we read his complaint to allege that his Achilles tendinitis so limited him that, absent a relocation to a lower-tier cell, he was effectively forced to choose between food and safety." *Matthews*, 613 F. App'x. at 169.

In contrast, Plaintiff's Complaint does not allege that he was excluded from participation in any of Northern State Prison's services, programs, and/or activities as a result of his disability, as required to state a claim under the ADA/Rehabilitation Acts. Plaintiff conflates the reasonable accommodation, i.e., the denial of the bottom bunk, with the denial of services, programs, and/or activities and alleges that he was denied a safe place to sleep in violation of N.J.A.C. 10A:31-3.6:

> Plaintiff's right to a safe place to sleep is clearly established law. N.J.A.C. 10A:31-3.6 states: "A qualified inmate with a disability shall be housed in a manner that provides for his or her safety, security and accessibility to facility programs or activities. Rooms, sleeping units, or housing units shall be designed for use by qualified inmates with disabilities."

The ADA/Rehabilitation Acts do not create a cause of action for violations of state regulations, and the Court declines to find that "a safe place to sleep" is a service, program, or activity. Absent facts showing that Plaintiff was denied access to Northern State Prison's services, programs, activities, he fails to state a claim for relief under the ADA/Rehabilitation Act against

the DOC Defendants, and the proposed amendments to assert ADA/Rehabilitation claims are futile.[14]

Although Plaintiff also sought to amend to add negligence and negligent supervision claims against the NJDOC, Robinson, Gibson, Malloy, and Reyes in Counts Two and Six as well as New Jersey LAD claims in Ground Three, these claims arise solely under state law. Having determined that proposed amendments as to the federal claims are futile, the Court declines to review the merits of the state law claims.

## IV.   CONCLUSION

For the reasons expressed in this Memorandum Opinion, the Court finds that the amendments as to the federal claims against Fedai and the DOC Defendants are futile. The Court denies Plaintiff's Rule 60(b) motion, enters judgment for Defendant Robinson, and directs the Clerk to mark this matter CLOSED.

**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**

DATED: September __30__, 2022.

---

[14] As explained in *Matthews*, the individual defendants are not proper defendants in an ADA/Rehabilitation Act claim. *See Matthews v. Pennsylvania Dept. of Corrections*, 613 F. App'x. at 170 ("we agree with the Courts of Appeals for the Second and Eighth Circuits that Title II of the ADA does not provide for suits against state officers in their individual capacities").